1  JENNER & BLOCK LLP
2  STEVEN B. FABRIZIO (*pro hac vice*)
      sfabrizio@jenner.com
3  1099 New York Avenue, NW
   Suite 900
4  Washington, DC  20001
5  Telephone:  (202) 639-6000
   Facsimile:  (202) 661-4823
6
7  GIANNI P. SERVODIDIO (*pro hac vice*)
      gps@jenner.com
8  919 Third Avenue, 37th Floor
9  New York, NY 10022
   Telephone:  (212) 891-1600
10  Facsimile:  (212) 891-1699
11
12  *Attorneys for Plaintiffs*
13
14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA
16
17  COLUMBIA PICTURES
    INDUSTRIES, INC., *et. al.*
18
19                                   *Plaintiffs*,
20
21              v.
22  GARY FUNG, *et. al.*
23
24                                   *Defendants*.
25
26
27
28

Case No. CV-06-05578 SVW (JCx)

The Hon. Stephen V. Wilson

**PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO STRIKE AND EVIDENTIARY OBJECTIONS TO PLAINTIFFS' DECLARATIONS PURSUANT TO THE COURT'S AUGUST 25, 2009 ORDER RE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

Ctrm:      6

**<u>REDACTED PURSUANT
TO PROTECTIVE ORDER</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

ARGUMENT ......................................................................................... 2

I.   General Objections Common to Multiple Declarations. ................................. 2

    A.   Boilerplate objections .......................................................... 2

    B.   Relevance ...................................................................... 3

    C.   Lack of Discovery .............................................................. 3

    D.   Objection Based on Allegedly Conflating Dot-Torrent
        Downloads With Content Downloads» ........................................ 4

II.  Remaining Objections to Supplemental Waterman Declaration. ...................... 5

III. Remaining Objections to Supplemental Horowitz Declaration. ..................... 9

IV.  Remaining Objections to Pozza Declaration. ........................................ 13

V.   Remaining Objections to Sehested, Ishikawa, and Grodsky
    Declarations. ...................................................................... 15

# TABLE OF AUTHORITIES

CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .................. 6, 14

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518 (7th Cir. 1989) ......... 16, 17, 19

*Boyd v. City & County of San Francisco*, 576 F.3d 938 (9th Cir. 2009) ..7, 9, 11, 14

*Brae Transportation, Inc. v. Coopers & Lybrand,* 790 F.2d 1439 (9th Cir.1986)............................................................................................................4

*Brewer v. Fortis Insurance Co.*, No. C03-05150 SI, 2005 WL 645414 (N.D. Cal. Mar. 21, 2005).............................................................................................2

*British Airways Board v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978) .......... 14, 17, 20

*California ex rel. California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772 (9th Cir.1998) .................................................................................4

*Daily Herald Co. v. Munro*, 758 F.2d 350 (9th Cir. 1984) .............................. 16, 19

*Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)............... 3, 16

*Doe v. Cutter Biological, Inc.*, 971 F.2d 375 (9th Cir. 1992) ............................ 8, 10

*Dorn v. Burlington Northern Santa Fe Railroad Co.*, 397 F.3d 1183 (9th Cir. 2005) ...................................................................... 5-6, 9, 11, 18, 20

*Ellis v. Pa. Higher Education Assistance Agency*, No. CV 07-04498 DDP, 2008 WL 5458997 (C.D. Cal. Oct. 30, 2008) ................................................. 3, 16

*FEC v. Christian Coalition*, 52 F. Supp. 2d 45 (D.D.C. 1999)................................3

*Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85 (2d Cir. 2000) .............................8

*Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1184 (9th Cir. 2002) .......................6

*In re Silicone Gel Breast Implants Products Liability Litigation*, 318 F. Supp. 2d 879 (C.D. Cal. 2004) ....................................................................6, 9, 11, 18

*L.A. Times Communications LLC v. Department of the Army*, 442 F. Supp. 2d 880 (C.D. Cal. 2006) ................................................................................. 16, 19

*Los Angeles News Serv. v. Conus Commc'ns. Co.*, 969 F. Supp. 579, 583 (C.D. Cal. 1997) ........................................................................................ 6

*National Center for Policy Analysis v. Fiscal Associates, Inc.*, No. Civ. A. 97-2660, 2002 WL 433038 (N.D. Tex. Mar. 15, 2002) ................................. 2

*Newman v. County of Orange*, 457 F.3d 991 (9th Cir. 2006) ................. 14, 17, 20

*Rodrigues v. City of Fresno*, No. 1:05CV1017, 2006 WL 1319407 (E.D. Cal. May 12, 2006) ......................................................................................... 2

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ............... 8

*U-Haul International, Inc. v. Lumbermens Mutual Casualty Co.*, 576 F.3d 1040 (9th Cir. 2009) ................................................................................ 17

*United States v. Catabran*, 836 F.2d 453 (9th Cir. 1988) ............................ 15

*United States v. Hairston*, 64 F.3d 491 (9th Cir. 1995) ....................... 17, 20

*United States v. Olafson*, 213 F.3d 435 (9th Cir. 2000) ............................ 14

*United States v. Scales*, 594 F.2d 558 (6th Cir. 1979) ................................ 16

*United States v. Sutton*, 795 F.2d 1040 (Temp. Emer. Ct. App. 1986) ................ 19

*United States v. Tank*, 200 F.3d 627 (9th Cir. 2000) ................................ 21

*United States v. Winn*, 767 F.2d 527 (9th Cir. 1985) ............................... 14

*Volk v. D.A. Davidson & Co.,* 816 F.2d 1406 (9th Cir.1987) ....................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(f) ............................................................................. 4

Fed. R. Evid. 401 ................................................................................ 3

Fed. R. Evid. 702 .................................................................. 8, 9, 11, 18

Fed. R. Evid. 702 advisory committee note (2000) ............................... 6, 9

Fed. R. Evid. 703 .................................................................. 8, 10, 18

Fed. R. Evid. 803(6) ............................................................................ 17

Fed. R. Evid. 1006 ................................................................................. 15

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (rev. ed. 2009) ....... 6

iv

Plaintiffs submit the following combined response to the defendants' motions to strike and objections to the declarations of Richard Waterman, Ellis Horowitz, Duane C. Pozza, Thomas Sehested, Mark Ishikawa, Ben Grodsky, Jeffrey Bedser, Jane Sunderland, Jonathan Whitehead, David Kaplan, Alfred Perry, and Rani Cheerkori, submitted by plaintiffs pursuant to the Court's August 25, 2009 Order.

In response to the Court's August 25, 2009 Order requesting supplemental briefing, plaintiffs submitted detailed evidence establishing direct infringement by defendants' U.S. users.  This evidence includes, *inter alia*:

1.  Expert testimony from plaintiffs' statistician, Professor Richard Waterman establishing that, as a statistically certainty, defendants' U.S. users downloaded dot-torrent files corresponding to plaintiffs' copyrighted works;

2.  Expert testimony from Professor Ellis Horowitz establishing that defendants' own data shows that defendants' U.S. users downloaded ███████ ███ unique dot-torrent files corresponding to plaintiffs' copyrighted works;

3.  Testimony from Mr. Sehested, Mr. Ishikawa, Mr. Grodsky, and Mr. Bedser verifying that the dot-torrent files downloaded by defendants' U.S. users point to infringing copies of plaintiffs' works;

4.  Testimony from plaintiffs verifying their ownership or control of the distribution rights in the works at issue and confirming that they did not authorize those works for distribution through defendants' websites or the BitTorrent network;

5.  Testimony from plaintiffs' counsel summarizing and authenticating evidence in the record.

Defendants' response to this evidence is telling.  Rather than counter plaintiffs' showing of direct infringement with any evidence, defendants have interposed a litany of indiscriminate objections and filed so-called "motions to strike" in response to all but one of plaintiffs' declarations.  Defendants' barrage of objections is highly improper, but more importantly, provides no substantive basis

to exclude any of the testimony at issue.  Indeed, even a cursory review of defendants' numerous submissions reveals that they are almost all essentially the same; in many cases defendants simply cut and pasted the identical boilerplate objections to much of plaintiffs' declarants' testimony without even pretending to argue how such objections relate to the pertinent testimony.  For sake of the Court's time and resources, plaintiffs group defendants' similar objections together, beginning with objections common to all or nearly all declarations.[1]

## ARGUMENT

## I.    General Objections Common to Multiple Declarations.

**A.    Boilerplate objections**.  For virtually all declarants, defendants make the identical boilerplate objections that the declarants lack personal knowledge, do not set out facts admissible in evidence, do not show that the declarant is competent to testify on the matters, and that their statements are based on hearsay and are irrelevant.  However, defendants do not even attempt to connect their objections to specific testimony or issues.  For this reason alone, defendants' objections should be overruled.  *See Rodrigues v. City of Fresno*, No. 1:05CV1017, 2006 WL 1319407, at *3 (E.D. Cal. May 12, 2006) (boilerplate objections result in "unnecessary waste of resources by the parties and the Court"); *Brewer v. Fortis Ins. Co*., No. C03-05150 SI, 2005 WL 645414, at *4 n.5 (N.D. Cal. Mar. 21, 2005) (overruling defendant's objections to plaintiff's expert declaration because they were boilerplate); *Nat'l Ctr. for Policy Analysis v. Fiscal Assocs., Inc.*, No. Civ. A. 97-2660, 2002 WL 433038, at *1 n.1 (N.D. Tex. Mar. 15, 2002) (overruling boilerplate

---

[1] Abbreviations are in the form "[Declarant] Decl." and [Declarant] Obj.," referring to the declaration submitted Sept. 15, 2009 for the declarant, and defendants' motion to strike and objections to the declarant's testimony, respectively.  For example, "Pozza Decl." refers to the declaration of Duane C. Pozza submitted Sept. 15, 2009, and "Pozza Obj." refers to defendants' motion to strike and objections to that declaration.

1  objections to summary judgment evidence); *FEC v. Christian Coal.*, 52 F. Supp. 2d

2  45, 54 n.9 (D.D.C. 1999) ("The Court may deem the objections to be waived . . .

3  because it is so obvious that a party abuses the judicial system by indiscriminately

4  asserting a blanket, boilerplate objection to every document offered by the opposing

5  party.").

6      **B.**     <u>**Relevance**</u>.  Defendants cut and paste the same objection to each

7  declaration based on "lack of relevance" under Fed. R. Evid. 401. *See* Horowitz

8  Obj. 1, Waterman Obj. 1, Pozza Obj. 1, Sehested Obj. 1, Ishikawa Obj. 1, Grodsky

9  Obj. 1, Bedser Obj. 1, Sunderland Obj. 1, Cheerkori Obj. 1, Kaplan Obj. 1,

10  Whitehead Obj. 1, Perry Obj. 1. Again, this boilerplate objection should be rejected.

11  Establishing relevance is a low burden that plaintiffs easily meet. *See* Fed. R. Evid.

12  401 (evidence is admissible that has "any tendency to make the existence of any fact

13  that is of consequence to the determination of the action more probable or less

14  probable than it would be without the evidence"); *Daubert v. Merrill Dow Pharm.,*

15  *Inc.,* 509 U.S. 579, 587 (1993) (Rule 401 establishes "liberal" standard of

16  relevance); *Ellis v. Pa. Higher Educ. Assistance Agency*, No. CV 07-04498 DDP

17  (CTx), 2008 WL 5458997, at *10 (C.D. Cal. Oct. 3, 2008) ("FRE 401's test of

18  relevance is a liberal one"). Here, defendants concede that Dr. Waterman's

19  evidence of U.S. downloads is "an obvious conclusion," Defs' Mot. to Strike and

20  Obj. to Supp. Waterman Decl. at ¶ 6; and they do not dispute Prof. Horowitz's

21  evidence of downloads by U.S. users identified by their IP addresses. The

22  remaining declarations provide conclusive evidence that the content files associated

23  with the applicable dot-torrent files were infringing copies of plaintiffs' works. All

24  of this unquestionably constitutes "relevant" evidence of direct infringement.

25      **C.**     <u>**Lack of Discovery**</u>.  Defendants object to plaintiffs' declarations

26  arguing that information or testimony was not provided in discovery, and that

27  defendants are "unfairly prejudiced by the same." *See* Waterman Obj. 7, Horowitz

28

**PLS' COMBINED RESP. TO DEFS' MOTIONS
TO STRIKE AND EVID. OBJS. TO PLS'
DECLS. PURSUANT TO AUGUST 25, 2009**

Obj. 16, Pozza Obj. 5, Sehested Obj. 4, Ishikawa Obj. 4, Grodsky Obj. 6, Bedser

Obj. 9, Cheerkori Obj. 3, Whitehead Obj. 3, Sunderland Obj. 3, Kaplan Obj. 3, Perry

Obj. 3.  Defendants' objection misses the mark.  First, the Court invited additional

evidence to augment the record in its Order, *see* August 25, 2009 Order at 4, and

gave the defendants the opportunity to show disputed issues of fact in response, *id*.,

but they have not done so.[2]  Second, defendants ignore that Dr. Waterman and Dr.

Horowitz rely solely on evidence that ***was produced either by defendants***

***themselves*** or by plaintiffs in discovery, or that is publicly available.  *See* Supp.

Waterman Decl. ¶¶ 6-8; Supp. Horowitz Decl. ¶¶ 8, 14-19, 24; *see also* Bedser

Decl.¶ 3; Pozza Decl ¶¶ 2-5 (same).  Indeed, defendants admit that they produced

the IP address information that is the source of Dr. Horowitz's analysis.  Horowitz

Obj. 10.  Finally, defendants do not even purport to claim that they are entitled to or

need additional discovery to respond to plaintiffs' declarations under the applicable

standard under Fed. R. Civ. P. 56(f).  *See Brae Transp., Inc. v. Coopers & Lybrand,*

790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to

a need for discovery do not qualify as motions under Rule 56(f)."); *California ex rel.*

*Cal. Dep't of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir.

1998) (party must set forth the particular facts expected from further discovery);

*Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir. 1987) (party must

explain facts essential to justify its opposition).

### D.    Objection Based on Allegedly Conflating Dot-Torrent Downloads With Content Downloads.

Defendants indiscriminately object that plaintiffs' declarants conflate the fact

of a dot-torrent download by a U.S. user with a download of the associated content

---

[2] As defendants note, plaintiffs served objections to defendants' first set of interrogatories on June 18, 2007.  Defendants never even requested a meet-and-confer to discuss those objections, much less file a motion to compel.

1  file.  *See* Waterman Obj. 2; Horowitz Obj. 9, 11, Pozza Obj. 4.  Defendants are

2  mistaken.  Dr. Horowitz has testified that "[t]he only purpose of a dot-torrent file is

3  to enable users to identify, locate, and download a copy of the actual content item

4  referenced by the dot-torrent file," Supp. Horowitz Decl. ¶ 5, and that "[o]nce the

5  user has clicked the 'download torrent' button or link, the user's computer is

6  commonly configured such that the desired content file should begin downloading

7  to the user's computer without any further action or input from the user," *id*. ¶ 6.

8  Defendants offer no evidence to the contrary.  Their so-called evidentiary objection

9  is an attempt to rehash the same untenable legal arguments set forth in their

10  supplemental brief, and provides no basis to exclude any of plaintiffs' testimony.[3]

11  **II.    Remaining Objections to Supplemental Waterman Declaration.**

12      Defendants concede the accuracy of Dr. Waterman's conclusion that

13  defendants' U.S. users repeatedly downloaded dot-torrent files corresponding to

14  plaintiffs' copyrighted works (as listed in Ex. B to the September 4, 2007 Emerson

15  Declaration).  Indeed, defendants concede that "[s]uch a conclusion of likelihood is

16  obvious."  Waterman Obj. 6.  Defendants' objection – that Dr. Waterman somehow

17  dressed up an "obvious conclusion in a mathematical costume," *id*. – is not an actual

18  substantive objection.  As such, defendants do not seriously contest that Dr.

19  Waterman's supplemental testimony satisfies the *Daubert* standards for

20  admissibility of expert testimony under Fed. R. Evid. 702, because it based on

21  sufficient data and applies an indisputably reliable methodology.  *See Dorn v.*

22

23  _____

[3] Defendants' only specific objection to the foregoing testimony is to incorporate
their previous objections to Dr. Horowitz's testimony.  *See* Horowitz Obj. 3.  But,

24  defendants' previous objections to Dr. Horowitz's declaration were mere boilerplate

25  objections to his testimony "in its entirety"; the only specific portions of his
testimony discussed in defendants' objections relate to filtering, which is not at issue

26  here.  *See* Defs' Objs. to Pls. Evid. Submitted in Support of Pls.' Mot. for Summ.

27  Judg., dated Oct. 3, 2007 (Docket. #319), at 19-21.

28

1  *Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) (*Daubert* sets

2  forth a "liberal standard of admissibility"); *In re Silicone Gel Breast Implants Prods.*

3  *Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (recognizing a "presumption

4  of admissibility" as to expert testimony); Fed. R. Evid. 702 advisory committee note

5  (2000) ("the rejection of expert testimony is the exception rather than the rule").

6    Objection 1.  Defendants argue that Dr. Waterman's testimony somehow fails

7  to meet the low threshold for relevance because a "probability is not an 'actual

8  dissemination' involving two or more participants."  Obj. 1.  This is meritless.

9  Courts routinely rely on statistical evidence to establish relevant facts.  *See, e.g.,*

10  *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1184 (9th Cir. 2002) (holding

11  statistical evidence sufficient to show certain facts).  Here, Dr. Waterman testified

12  that the probability that defendants' U.S. users downloaded torrent files for

13  plaintiffs' works was so high that it was effectively "certain."  Supp. Waterman

14  Decl. ¶ 13.  Given Dr. Horowitz's unrebutted testimony regarding the purpose and

15  functionality of these dot-torrent files, Dr. Waterman's analysis and conclusions

16  unquestionably constitute "relevant" evidence. *See supra* 1.B.

17    Defendants also argue that plaintiffs are required to prove a download by one

18  U.S. user from another U.S. user, which Dr. Waterman did not purport to do.  That

19  argument is legally wrong, and in any event, provides no basis to exclude the

20  testimony.  *See* Pls.' Reply Br. at 1, 4 Melville B. Nimmer & David Nimmer,

21  *Nimmer on Copyright* § 17.02, at 17-21 (rev. ed. 2009) ("regardless of how much

22  infringing conduct may or may not occur abroad, when violation of one of the

23  exclusive rights in copyrighted works is completed within the United States, the

24  activity becomes actionable under domestic law"); *Los Angeles News Serv. v. Conus*

25  *Commc'ns. Co.*, 969 F. Supp. 579, 583 (C.D. Cal. 1997); *A&M Records, Inc. v.*

26  *Napster, Inc.*, 239 F.3d 1004, 1014-15 (9th Cir. 2001) (download itself violates

27  reproduction right).

28

1    Objection 2.  Defendants speculate that the dot-torrent files for which Dr.

2    Waterman analyzed the downloads may not point to infringing content.  That is

3    simply inaccurate.  Plaintiffs' declarant James Emerson verified that these dot-

4    torrent files lead to infringing content files.  *See* Emerson Decl., Docket #255.

5    Defendants have not challenged Mr. Emerson's conclusions and Dr. Waterman

6    relies on this part of Emerson's analysis in support of his testimony.  *See* Supp.

7    Waterman Decl. ¶ 4.

8    Objection 3.  Defendants vaguely object to Dr. Waterman's reliance on their

9    own data showing that approximately ▮ of all Isohunt and Torrentbox users are

10   located in the United States.  But defendants do not suggest that this data is wrong

11   nor dispute that it is corroborated by: i) their own business records; ii) publicly

12   available information, *see* Supp. Waterman Decl. ¶ 6, Ex. B; Pozza Decl. ¶ 2, Ex. 1,

13   and iii) Dr. Horowitz's analysis of the evidence in the record,  *see* Supp. Horowitz

14   Decl. ¶ 24, Ex. 5, 6.  In view of the foregoing, Dr. Waterman need not have

15   considered "alternative evidence."  *See Boyd v. City & County of San Francisco*,

16   576 F.3d 938, 946 (9th Cir. 2009) (rejecting conclusory criticisms of expert

17   methodology where opposing party failed to suggest reliable alternatives).

18   Objection 4.  Defendants object to Dr. Waterman's reliance on Dr.

19   Horowitz's analysis of IP address data on the grounds that they erroneously

20   produced the IP address data in response to the Magistrate Judge's Server Log

21   Order.  This objection is also directed to Dr. Horowitz (Obj. 10).  Defendants are

22   mistaken.  Dr. Horowitz specifically identifies the database tables on which he relies

23   for his analysis, *see* Supp. Horowitz Decl. ¶¶ 16-19, and defendants produced these

24   database tables in discovery long *before* the Server Log Order and *before* defendants

25   produced the Server Log Data with redacted IP addresses.  While it is no substitute

26   for what unredacted Server Log Data would reveal, it is a separate set of data.  Supp.

27   Horowitz Decl. ¶ 22.

28

1   Objection 5.  Defendants make boilerplate hearsay, personal knowledge, and

2   Fed. R. Evid. 702 and 703 objections to Paragraph 8.  In Paragraph 8, Dr. Waterman

3   merely notes that his reliance on Mr. Emerson's download analysis is a conservative

4   measure of the number of downloads of dot-torrent files for plaintiffs' copyrighted

5   works, as defendants only produced less than a month of server log data to plaintiffs.

6   Dr. Waterman's testimony about the limitations of the available data (as analyzed by

7   others) is full supported and defendants have not even attempted to articulate any

8   basis for it to be excluded.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d

9   1134, 1142 (9th Cir. 1997) (expert testimony may be admitted where work being

10  analyzed was done by others); *Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385

11  n.10 (9th Cir. 1992) (expert may "base her or his opinion on data 'made known to

12  the expert,' which 'need not be admissible in evidence.'"); *Gussack Realty Co. v.

13  Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) (holding that an expert may rely on

14  data provided by other experts).

15  Objection 6.  Defendants object on hearsay, personal knowledge, and Fed. R.

16  Evid. 702 and 703 grounds to Paragraphs 9 through 13, in which Dr. Waterman

17  explains the methodology and calculations of his analysis.  The hearsay and

18  personal knowledge objections to Dr. Waterman's expert testimony are meritless.

19  Rule 703 expressly permits experts to base opinions or inferences on "facts or data

20  … not admissible in evidence" that are "of a type reasonably relied upon by experts

21  in the particular field in forming opinions or inferences on the subject."  Fed. R.

22  Evid. 703; *see, e.g.*, *Doe*, 971 F.2d at 385 n.10 (expert may "base her or his opinion

23  on data 'made known to the expert,' which 'need not be admissible in evidence.'").

24  Indeed, defendants have no substantive criticism of Dr. Waterman's

25  methodologies or conclusions.  Dr. Waterman testified that he applied "universally

26  accepted statistical principles," using a common statistical model explained in a

27  leading treatise in the field, to analyze the available download data.  Supp.

28

8

1  Waterman Decl. ¶ 9.  The equations and calculations he used are set forth in

2  Paragraphs 9-10 and Exhibit C.  Defendants do not argue with any of these

3  calculations – indeed, they concede that Dr. Waterman's conclusion is "obvious."

4  His testimony is reliable and should be accepted.  *See Dorn,* 397 F.3d at 1196;

5  *Silicone Gel*, 318 F. Supp. 2d at 889; Fed. R. Evid. 702.

6  **III.    Remaining Objections to Supplemental Horowitz Declaration.**

7          Defendants make no substantive objections to Dr. Horowitz's methodology or

8  conclusions.  As explained by Dr. Horowitz and unrebutted here, defendants' own

9  data shows that their U.S. users downloaded ▮ different dot-torrent files

10 confirmed as corresponding to plaintiffs' copyrighted works, ▮▮▮▮▮▮▮

11 ▮▮▮▮.  Supp. Horowitz Decl. ¶ 21, Ex. 1.  His conclusions readily meet the

12 applicable threshold for admissibility under *Daubert* and should be accepted.  *See*

13 *Dorn,* 397 F.3d at 1196; *Silicone Gel*, 318 F. Supp. 2d at 889.

14         Objection 2, 11.  Defendants object to Paragraphs 4 and 14-22 and Exhibit 1

15 on hearsay, lack of personal knowledge, and Fed. R. Evid. 702 and 703 grounds.

16 These are meritless.  In Paragraph 4 and Exhibit 1, Dr. Horowitz summarizes his

17 analysis *of defendants' own data* to demonstrate downloads by defendants' U.S.

18 users.  Defendants do not identify any supposed "assumptions" Dr. Horowitz made

19 that undermine his conclusions.  Moreover, defendants are in possession *of the same*

20 *data*, yet raise no substantive objection to his methodology or conclusions.  Dr.

21 Horowitz adequately explains the bases of his conclusions and reliable methodology

22 he followed to analyze the data.  *See Dorn,* 397 F.3d at 1196 (Rule 702 contains

23 "liberal standard of admissibility"); Fed. R. Evid. 702 advisory committee note

24 (2000) ("the rejection of expert testimony is the exception rather than the rule"); *see*

25 *also Silicone Gel*, 318 F. Supp. 2d at 889; *Boyd*, 576 F.3d at 946 (rejecting

26 conclusory criticisms of expert methodology).

27

28

1      Further, defendants' hearsay and personal knowledge objections are

2 groundless as Rule 703 permits experts to base opinions or inferences on "facts or

3 data … not admissible in evidence" that are "of a type reasonably relied upon by

4 experts in the particular field in forming opinions or inferences on the subject."  Fed.

5 R. Evid. 703; *see Doe*, 971 F.2d at 385 n.10 (same).

6      Finally, defendants' assertion that Dr. Horowitz is "speculating" about the

7 operation of defendants' website is flatly contradicted by Dr. Horowitz's testimony

8 that he reviewed the data and source code produced by defendants as well as the

9 website.  Supp. Horowitz Decl. ¶¶ 2, 8, 14-16.  Dr. Horowitz also makes clear that

10 the verification of the content file corresponding to the downloaded dot-torrent file

11 was carried out by other declarants, as shown in the Grodsky, Ishikawa, Sehested,

12 Bedser, and Friedman declarations.  *Id.* ¶ 21.

13      Objection 4.  Defendants object to paragraphs 9 through 13, regarding Dr.

14 Horowitz's explanation of Server Log Data, based on boilerplate Fed. R. Evid. 401,

15 702, and 703 objections, and objections to its "tenor."  Dr. Horowitz has provided an

16 adequate foundation for his analysis of the operation of defendants' website, and

17 defendants can point to no flaw in his methodology.  *See supra* Horowitz Obj. 2, 11.

18 Dr. Horowitz explains the relevance of what the Server Log Data would show in

19 Paragraphs 9 through 12, independent of his understanding (discussed in ¶ 13)

20 whether defendants provided it in useful form (which they indisputably did not).

21      Objection 5, 7, 9.  Defendants object that Dr. Horowitz has "conflated"

22 torrent site and tracker data in Paragraphs 9, 10, and 12, citing objections on the

23 grounds of hearsay, personal knowledge, and Fed. R. Evid. 702 and 703.  However,

24 defendants do not explain what facts they believe he has conflated.  Dr. Horowitz in

25 fact discusses what each source of data – from the torrent site and from the tracker –

26 would separately show in Paragraphs 9 and 10, and summarizes those points in

27 Paragraph 12.

28

1    Regarding Paragraphs 10 and 12, defendants purport to object to Dr.

2  Horowitz's testimony because they despoiled the very Server Log Data for the

3  tracker the Court had ordered them to produce and preserve.  But that is not a proper

4  objection.  Dr. Horowitz's analysis, which has been accepted by the Magistrate

5  Judge in multiple orders, merely reiterates what the Server Log Data would show

6  *had it been preserved*.  *See* First Server Log Order at 5-10.  Moreover, Dr. Horowitz

7  explains his analysis in Paragraphs 9-12, and it is in no sense "conclusory."  Thus,

8  his conclusions about Server Log Data are reliable and should be accepted.  *See*

9  *Dorn,* 397 F.3d at 1196; *Silicone Gel*, 318 F. Supp. 2d at 889; Fed. R. Evid. 702.

10    Objection 6.  Defendants' objections to Paragraph 10 based on hearsay,

11  personal knowledge, and Fed. R. Evid. 702 and 703 should be overruled.

12  Defendants object to use of the word "identify" as vague, but that is not a ground for

13  excluding this testimony.  In fact, Dr. Horowitz's point is clear: Server Log Data

14  would allow plaintiffs to identify the IP address of defendants' users downloading

15  dot-torrent and content files.  Further, the phrase "in the normal course" is not

16  without foundation; it is supported by Dr. Horowitz's analysis of the operation of

17  dot-torrent file downloads in Paragraphs 4-5.  *See supra* Part I-C.  And the

18  defendants' argument that Dr. Horowitz *could have* tested his analysis by other

19  means (which defendants also could do, but have not) is irrelevant; what matters for

20  purposes of admissibility is that Dr. Horowitz's analysis is based on sound

21  methodologies – in this case, his familiarity with defendants' websites, and analysis

22  of the BitTorrent downloading process.  *See Boyd*, 576 F.3d at 946; *Dorn,* 397 F.3d

23  at 1196; Supp. Horowitz Decl. ¶ 2; Sept. 6, 2007 Horowitz Decl. (Doc. #310), ¶¶ 3-

24  7.  *See also supra* Horowitz Obj. 2, 11 (hearsay and personal knowledge objections

25  meritless).

26    Objection 8.  Paragraph 11 establishes that the geographic location of a

27  downloading user can be established using IP addresses in the server log data.

28

**PLS.' COMBINED RESP. TO DEFS' MOTIONS
TO STRIKE AND EVID. OBJS. TO PLS'
DECLS. PURSUANT TO AUGUST 25. 2009**

1  Defendants do not dispute or even address that point; their objections merely

2  reiterate boilerplate hearsay and personal knowledge objections, alleged conflation

3  of dot-torrent downloads and content downloads, and alleged conflation of torrent

4  site and tracker data.  These objections are addressed above.  *Supra* Part I-C;

5  Horowitz Obj. 2, 11; Horowitz Obj 5, 7, 9.

6      Objection 10.  Defendants object to the use of IP addresses that defendants

7  themselves provided in discovery.  As explained above in regard to Dr. Waterman's

8  testimony, this objection is meritless.  Dr. Horowitz specifically identifies the

9  database tables on which he relies for his analysis, *see* Supp. Horowitz Decl. ¶¶ 16-

10  19, and defendants' database tables were produced separately in discovery before

11  production of Server Log Data with redacted IP addresses.  *Id*. ¶¶ 13,22.

12      Objection 15.  Defendants object to Paragraph 25 and Exhibit 7 on the

13  grounds of Rules 702 and 703.  However, defendants identify no defects in the

14  methodology or bases of Dr. Horowitz's testimony here; he merely extracted ███

15  ████████████████████████████████████████████████ Dr.

16  Horowitz also testifies that the seeder and leecher data shows that other users have

17  downloaded or are downloading the content file to which the dot-torrent file

18  corresponds.  Defendants argue, without support, that the lack of any online

19  "seeders" at the snapshot in time of this data means that the "leechers" were not

20  receiving content.  But defendants ignore evidence that ████████████

21  ████████████████████████████.  *See* Pozza Decl. ¶¶ 3, 4,

22  Ex. 3; Pls' Statement of Undisputed Facts ("SUF") 65, 66.  Whether or not there

23  was an online seeder at the point in time the data was collected, the leecher data

24

25

26

27

28

1  clearly shows downloading of the content.[4]  In any event, defendants' objection here

2  is merely argumentative – it is not a ground for excluding the evidence altogether.

3  **IV.    Remaining Objections to Pozza Declaration.**

4       Objection 2.  Defendants object to Paragraph 3 of the Pozza Declaration,

5  (which summarizes evidence of ███████████████████████████████████

6  ██████████████████ on the grounds of hearsay), lack of personal knowledge, and

7  Fed. R. Evid. 702 and 703.  However, this paragraph merely summarizes evidence

8  established elsewhere in the record for the Court's convenience; the declarant does

9  not seek to establish facts by his testimony.  As explained in Paragraph 3, evidence

10 of ██████████████ is presented in Pls.' SUF 65 and 66, and the Supplemental

11 Horowitz Declaration ¶ 25 and Exhibit 7.  Dr. Horowitz testifies that the leecher

12 statistics indicate downloads by other users.  Supp. Horowitz Decl. ¶ 25.

13      Objection 3.  Defendants object to evidence based on the statements of the

14 Podtropolis site "VIP" "Firrasaltaher" on the grounds of relevance, hearsay, lack of

15 personal knowledge, and Fed. R. Evid. 702 and 703.  As explained in Paragraph 4 of

16 the Pozza Declaration, Firrasaltaher ███████████████████████████████

17 ██████████████████████████████████████████████████████████

18 ██████████.  The evidence submitted by Dr. Horowitz ██████████████

19 ██████████████████████████████ and identifies "leechers" who

20 have or are downloading those content files.  Plaintiffs identified Firrasaltaher

21 generally as a "moderator" but, more specifically, he has "VIP" status which affords

22 him greater site privileges than normal users, even if defendants do not consider him

23

24 ─────────────────────

   [4] Defendants confuse Exhibit 1, which provides evidence of *downloads* of certain

25 dot-torrent files from U.S. users, with Exhibit 7, which provides evidence of

   downloads of content files corresponding to dot-torrent files *uploaded* by U.S. users.

26 There is one title (Prison Break, Season 2, Episode 16), for which there is evidence

27 of both.

28

1  to be a moderator. *See* Pls.' SUF 36. His statements here are admissible because ██

2  ████████████████████████████████████████████████

3  ███████████ and he is unavailable as his identity is anonymous. *See United States*

4  *v. Winn*, 767 F.2d 527, 530-31 (9th Cir. 1985) (statements against interest

5  admissible where address of witness unknown); *United States v. Olafson*, 213 F.3d

6  435, 441-42 (9th Cir. 2000) (same). Firrasaltaher also has personal knowledge of

7  █████████████████████████████. Thus, this evidence is clearly

8  admissible. Defendants' conclusory assertions that his statements are not credible,

9  for unexplained reasons, do not provide a basis for excluding them from evidence,

10  *see Boyd*, 576 F.3d at 946, nor do they create an issue of fact. *See Newman v.*

11  *County of Orange*, 457 F.3d 991, 995 (9th Cir. 2006) ("conclusory allegations,

12  standing alone, are insufficient to prevent summary judgment"); *British Airways Bd.*

13  *v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("legal memoranda and oral

14  argument are not evidence, and they cannot by themselves create a factual dispute").

15        Defendants also argue, without evidentiary support, that the "seeder" count of

16  0 for the dot-torrent files ██████████████ shows that there was no actual

17  dissemination of the content file. This argument badly misapprehends the evidence.

18  Leaving aside the issue of whether *offering* a work for distribution violates

19  plaintiffs' exclusive rights, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004,

20  1014-15 (9th Cir. 2001) ("Napster users who upload file names to the search index

21  for others to copy violate plaintiffs' distribution rights"), the unrebutted evidence

22  establishes that the infringing works ██████████████ were *actually*

23  *distributed*. As explained by Dr. Horowitz, whether or not there was an online

24  seeder count of "0" at the point in time the data was collected is irrelevant: the fact

25  that were "leechers" for the works in question data shows downloading of the

26  underlying content file. Supp. Horowitz Decl. ¶ 25. The Fed. R. Evid. 702 and 703

27  objections here are misguided, as Dr. Horowitz testified to his analysis of the data,

28

1  discussed above at Horowitz Obj. 15.  Mr. Pozza does not purport to testify as an

2  expert.

3      Objection 4.  Defendants object to Exhibit 5 to the Pozza declaration on

4  relevance grounds.  Paragraph 5 of the Pozza Declaration and Exhibit 5 simply

5  summarize the evidence of direct infringement by U.S. users.  *See* Fed. R. Evid.

6  1006; *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988) ("The chart is

7  admissible as a summary under Rule 1006 if the underlying documents are

8  admissible and available to the opponent for inspection").  Defendants argue that

9  this Paragraph and Exhibit do not distinguish between downloads of dot-torrent files

10  and downloads of content files, and that plaintiffs much show a dissemination of

11  infringing materials "entirely within the United States."  Those arguments are

12  meritless.  *Supra* Part I-C; Waterman Obj. 1.  Defendants also argue the Masciarelli,

13  Geniac, and Firrasaltaher evidence is insufficient because plaintiffs may not have all

14  information about the dot-torrent files uploaded and/or downloaded by those

15  individuals (such as the infohash values).  That is irrelevant because those three

16  individuals ███████████████████████████, which is not controverted

17  by defendants.

18  **V.    Remaining Objections to Sehested, Ishikawa, and Grodsky Declarations.**

19      Objection 1 to Sehested, Ishikawa, and Grodsky.  Defendants object to the

20  declarations on Fed. R. Evid. 401 relevance grounds, asserting that the declarants do

21  not implicate defendants anywhere in the course of identifying the dot-torrent files

22  and infringing content files.  Defendants' objection is misguided.  Dr. Horowitz's

23  testimony expressly links the defendants' U.S. users' downloads to the dot-torrents

24  analyzed by the declarants.  Supp. Horowitz Decl. ¶ 21, Ex. 1.  The declarants here

25  testify to downloading and verifying the content associated with the dot-torrent files

26  identified on Exhibit 2 to their respective declarations and defendants do not purport

27  to object to this testimony identifying the verified content files in Paragraphs 3 and 4

28

and Exhibit 2.  Separately, Dr. Horowitz has testified that these dot-torrent files corresponding to content files were downloaded by defendants' U.S. users.  Supp. Horowitz Decl. ¶ 21, Ex. 1; *see also* Pozza Ex. 5 (summarizing content verification source for each dot-torrent file identified as downloaded by U.S. users by Dr. Horowitz).[5]  Thus, the relevance objection is baseless.  *See Daubert,* 509 U.S. at 587 (Rule 401 is "liberal" standard of relevance); *Ellis,* 2008 WL 5458997, at *10 (same).

     <u>Objection 2 to Sehested, Ishikawa, and Grodsky</u>.  Defendants object to the declarations on the grounds of hearsay, personal knowledge, and Fed. R. Evid. 702 and 703, because a portion of each declarant's analysis was performed by personnel acting under the declarant's supervision.  However, it is hornbook law that personal knowledge includes knowledge gained from persons acting under one's supervision. *See Daily Herald Co. v. Munro*, 758 F.2d 350, 355 n.6 (9th Cir. 1984) ("personal knowledge may be inferred to one in a responsible, supervisory position, where that person is required to be familiar with the practices of those he supervises"); *see also United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) (holding that individual who supervised compilation and organization of chart was proper witness to introduce it).  Indeed, it is well-settled that "[k]nowledge acquired through others may still be knowledge within the meaning of Fed. R. Evid. 602."  *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989); *see also L.A. Times Commc'ns LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal.

---

[5] As Dr. Horowitz explains in Paragraph 7 of his supplemental declaration, without rebuttal, "[a]n infohash identifies a specific content file.  Any dot-torrent file with the same infohash corresponds to the same content file.  Thus, any user who downloads a file represented by a particular infohash value will receive exactly the same content file, that is an exact digital copy of the content file.  It does not matter whether the dot-torrent file represented by the infohash was obtained from the Isohunt website, one of defendants' other websites or another source altogether."

1  2006) ("Although first-hand observation is the most common form of personal

2  knowledge, first-hand observation is not the only basis for personal knowledge").

3       Nor does reliance on such personnel create hearsay problems.  *See Agfa-*

4  *Gevaert*, 879 F.2d at 1523 ("Knowledge acquired through others may still be

5  personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay,

6  which is the repetition of a statement made by someone else – a statement offered

7  on the authority of the out-of-court declarant and not vouched for as to truth by the

8  actual witness").  Defendants also fail to address that the content verification

9  information was stored in the regular course of business as a business record, as

10  discussed in Paragraph 4, and is also admissible on that basis.  *See U-Haul Int'l, Inc.*

11  *v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043-44 (9th Cir. 2009); Fed. R.

12  Evid. 803(6).  Defendants question, in conclusory fashion, the "veracity,

13  professionalism, quality or integrity" of the declarant's personnel, but these are not

14  objections to admissibility.  And such conclusory objections cannot create an issue

15  of fact.  *See Newman,* 457 F.3d at 995; *British Airways*, 585 F.2d at 952.

16       Finally, Rule 702 and 703 do not apply because the declarants are being

17  offered as fact witnesses, not expert witnesses.  The declarants testify as to the

18  downloading, reviewing, and identifying content files associated with dot-torrent

19  files.  They have done so in the course of their job responsibilities, in which each

20  has extensive experience downloading, and analyzing content files from BitTorrent,

21  as discussed in Paragraph 1 of each declaration.  The declarants may testify as lay

22  witnesses on such routine matters.  *See United States v. Hairston*, 64 F.3d 491, 493

23  (9th Cir. 1995) (lay witnesses may testify on facts perceived in course of

24

25

26

27

28

1  employment); *Dorn,* 397 F.3d at 1192 (lay witnesses may testify about their own

2  perceptions).[6]

3     Objection 3 to Sehested and Ishikawa, and Objection 5 to Grodsky.

4  Defendants object that each declarant is testifying as an expert witness not

5  previously disclosed, and that defendants are prejudiced by lack of discovery. As

6  explained above, the declarants are in fact testifying as lay witnesses. *See* Obj. 2.

7  Moreover, defendants' objection that they are prejudiced by lack of additional

8  discovery is meritless. *See supra* Part I-B.

9     Objections 3 and 4 to Grodsky.   Defendants object based on hearsay,

10 personal knowledge, and Fed. R. Evid. 702 and 703, to a single line in Paragraph 3

11 of the Grodsky Declaration where he describes that the dot-torrent files downloaded

12 by Peer Media Tech correspond to content files that are identified by an infohash

13 value.  The hearsay and personal knowledge objections are meritless because Mr.

14 Grodsky testifies in Paragraph 3 that persons under his supervision actually

15 downloaded and reviewed both the dot-torrent files and content files. *See supra*

16 Grodsky Obj. 2.  The Rules 702 and 703 objections do not apply because Mr.

17 Grodsky is merely describing the downloaded dot-torrent files and content files by

18 the publicly accessible infohash value. *Id.*  Mr. Grodsky is not purporting to testify

19 generally about infohash values; Dr. Horowitz's uncontroverted testimony

20 separately establishes the uncontroversial point that a dot-torrent file's infohash

21 value corresponds to a unique content file, Supp. Horowitz Decl. ¶ 7.

22

23

24

---

25 [6] Even if the testimony was to be considered under Rule 702 and 703, defendants

26 provide no basis for criticizing the declarants' methodology or bases of their
   testimony. *See Dorn,* 397 F.3d at 1196; *Silicone Gel*, 318 F. Supp. 2d at 889; Fed.

27 R. Evid. 702, 703.

28

1  **VI.    Remaining Objections to Bedser Declaration.**

2          Mr. Bedser supervised and is familiar with the analysis done by Mr. Emerson

3  reflected in the Sept. 4, 2007 Emerson Declaration (Docket #255) filed in support of

4  Plaintiffs' Motion for Summary Judgment.  Mr. Bedser summarizes that analysis in

5  Paragraph 3 of his declaration, and testifies that he has identified the unique

6  infohash value for two of the dot-torrent files for which Mr. Emerson previously

7  downloaded and verified the infringing content.  Dr. Horowitz has separately

8  confirmed that dot-torrent files were downloaded by U.S. users.[7]

9          Objection 1.  Defendants object to the declaration based on relevance, arguing

10  that Mr. Bedser does not show a specific instance of infringement by defendants'

11  users.  As explained above, Dr. Horowitz demonstrates U.S. user downloads of dot-

12  torrent files pointing to dot-torrent files identified by Mr. Bedser.  Supp. Horowitz

13  Decl. ¶¶ 4, 14-21, Ex. 1.

14          Objection 2.  Defendants object to Paragraph 3 on the grounds of hearsay,

15  personal knowledge, and Fed. R. Evid. 702 and 703.  In this paragraph, Mr. Bedser

16  summarizes the activities of persons acting under his supervision, previously

17  testified to in the Emerson Declaration.  Mr. Bedser is permitted to rely on personal

18  knowledge gained by supervision to summarize what those under his supervision

19  have done, and such testimony is not hearsay.  *See Daily Herald,* 758 F.2d at 355

20  n.6; *Sutton*, 795 F.2d at 1057; *Agfa-Gevaert,* 879 F.2d at 1523; *L.A. Times*

21  *Commc'ns*, 442 F. Supp. 2d at 886.  Moreover, Mr. Bedser's summary does not

22  required specialized technical knowledge under Rules 702 and 703.  Finally, his

23

24  ───────────────

[7] Dr. Horowitz's identification of specific instances of downloads of 2 dot-torrent

25  files by U.S. users, based on the limited set of data produced by defendants, is in

26  addition to Dr. Waterman's uncontroverted testimony that *all* of the works identified

in Emerson Declaration Exhibit B, as a matter of statistical probability, were

27  certainly downloaded by at least one U.S. user.

28

19

1  testimony in Paragraph 3 is not offered to re-establish Mr. Emerson's testimony, but

2  to summarize it as context for his testimony in Paragraph 4.

3      Objection 3.  Defendants object to a single line in Paragraph 4 of the Bedser

4  Declaration where he describes that the dot-torrent files downloaded by ICG

5  correspond to content files identified by an infohash value, based on hearsay,

6  personal knowledge, and Fed. R. Evid. 702 and 703.  This objection is addressed

7  above in regard to the Grodsky Declaration, *supra* Grodsky Obj. 3, 4, and fails for

8  the same reason here.  Mr. Bedser has personal knowledge of the dot-torrent files

9  and associated content files that his describing.  *Supra* Bedser Obj. 2.

10      Objections 4, 6.  Defendants object to Paragraph 4 on the grounds of hearsay,

11  personal knowledge, and Fed. R. Evid. 702 and 703. As explained above, Mr.

12  Bedser is permitted to rely on personal knowledge gained by supervision to

13  summarize what those under his supervision have done.  *Supra* Bedser Obj. 2.  His

14  identification of dot-torrent files that correspond to content files by their publicly

15  accessible infohash value, based on actual download and review of those files, is

16  admissible lay testimony.  *See Hairston*, 64 F.3d at 493; *Dorn,* 397 F.3d at 1192.

17  Mr. Bedser also summarizes Mr. Emerson's previous verification of the content

18  files; defendants' "objection" that Mr. Emerson provided more details about what he

19  did than Mr. Bedser here is misguided, as Mr. Bedser is not purporting to restate or

20  modify Mr. Emerson's testimony.

21      Objection 5.  Defendants object to Mr. Bedser testifying about his

22  "understanding" that the dot-torrent files were downloaded by U.S. users.  However,

23  Mr. Bedser is not purporting to testify himself about such downloads by U.S. users;

24  that analysis was done by Dr. Horowitz.

25      Objection 7.  Defendants object to the "lack of specificity" in Mr. Bedser's

26  description of Isohunt and Torrentbox.  This is mere argument, not an evidentiary

27  objection.  *See Newman,* 457 F.3d at 995; *British Airways*, 585 F.2d at 952.

28

1    Objection 8.  Defendants object that Mr. Bedser is testifying as an expert

2    witness not previously disclosed and that they are prejudiced by lack of discovery.

3    As explained above, Mr. Bedser's limited testimony here does not require any

4    specialized knowledge or expertise.  Defendants are also wrong that they had no

5    opportunity for discovery related to his testimony.  Plaintiffs produced the dot-

6    torrent files downloaded by ICG as part of Mr. Emerson's disclosures.  Defendants

7    could analyze those dot-torrent files and controvert his testimony if it was wrong,

8    but have not done so.  *See also supra* Part I-B.

9    **VII.  Remaining Objections to Studio Declarations (Whitehead, Sunderland,**

10          **Kaplan, Perry, and Cheerkori)**

11    Objection 2.  Defendants argue that each studio declaration is "devoid of

12    merit."  That is an argument about the weight of the evidence, not a basis for

13    exclusion.  *See United States v. Tank*, 200 F.3d 627, 631 n.5 (9th Cir. 2000)

14    (arguments with accuracy of evidence go to weight not admissibility).  But in any

15    event, defendants' argument here is fundamentally misguided.  Defendants argue

16    that the studio declarants have not ruled out the possibility that the plaintiffs have

17    released free trailers or restricted versions of those copyrighted works, or that they

18    released "spoof" (or fake) dot-torrent files for those works.  These points are

19    irrelevant.  Plaintiffs' evidence establishes that defendants' U.S. users infringed one

20    or more content files that have been verified as corresponding to one of plaintiffs'

21    copyrighted works.  The source of the verification of the content file(s) for each

22    copyrighted work is listed on the summary Pozza Exhibit 5.  Those content files

23    were thus verified not to be trailers or spoofs.  For these reasons, defendants'

24    objections should all be overruled, and the motions to strike should be denied.

25

26

27

28

1   Dated:  September 29, 2009        Respectfully submitted,

2

3                              JENNER & BLOCK LLP

4                              By: _____

5                                  Gianni P. Servodidio

6

7                              STEVEN B. FABRIZIO
                                 GIANNI P. SERVODIDIO

8                                  JENNER & BLOCK LLP

9                              KAREN R. THORLAND

10                             W. ALLAN EDMISTON
                                 LOEB & LOEB LLP

11

12                              LISA E. STONE
                                 MOTION PICTURE ASSOCIATION

13                                  OF AMERICA

14

15                              *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28