UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et al.*, | ) ) ) | CV 06-5578 SVW (JCx) |
| Plaintiffs, | ) ) | ORDER RE: PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION [395] |
| v. | ) ) | |
| GARY FUNG, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

As stated at the March 22, 2010 hearing, the Court's proposed deletions and additions are contained herein.  The parties' responses

to the Court's alterations — and **only** the Court's alterations — shall be filed according to the following schedule:

-Defendants' response of no more than eight pages: March 29, 2010;

-Plaintiffs' reply of no more than eight pages: April 5, 2010;

-Defendants' sur-reply of no more than five pages: April 12, 2010. Upon receiving the parties' briefing, the Court will issue such further orders as are necessary.

The Court's proposed additions are highlighted in **UNDERLINED BOLD** and deletions in ~~strike-through text~~.

///

///

///

On December 21, 2009, the Court granted Plaintiffs' Motion for Summary Judgment on Liability, Docket # 391 (the "Order"), finding that Defendants Gary Fung and Isohunt Web Technologies, Inc. (collectively, "Defendants") induced infringement of Plaintiffs' copyrights in violation of United States copyright law.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).  The Court found that "evidence of Defendants' intent to induce infringement is overwhelming and beyond reasonable dispute," Order at 25, and therefore that "Defendants' inducement liability is overwhelmingly clear," id. at 15.  On the issue of a permanent injunction, the Court has considered the briefs filed by the parties and the argument presented at the hearing on this matter.  Based on the foregoing and all matters of record in this action, pursuant to Federal Rule of Civil Procedure 65 and 17 U.S.C. § 502, the Court enters a

Permanent Injunction in favor of Plaintiffs and against Defendants in accordance with the terms contained herein.

The Court concludes that a permanent injunction should issue to restrain further infringement of Plaintiffs' copyrights. Plaintiffs have satisfied their burden under eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Id. at 391.

Plaintiffs have demonstrated that they have suffered irreparable harm, and would suffer further irreparable harm from Defendants' continued infringement, in three independent ways. First, given the staggering volume of infringement of Plaintiffs' copyrights, it is extremely unlikely that Defendants will be able fully to compensate Plaintiffs monetarily for the infringements Defendants have induced in the past, or the infringements they could induce in the future. Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) ("Grokster V"). Second, given the way in which Defendants' system works, when Defendants' end-users download one of Plaintiffs' works, the end-users automatically and simultaneously further distribute the work to innumerable others as a required part of the download process; additionally, at the conclusion of the download, Defendants' end-users obtain an unprotected digital copy of Plaintiffs'

1  work that those end-users can further distribute indefinitely at will.[1]

2  Thus, when Defendants induce infringement, "Plaintiffs' copyrighted

3  works can be unstoppably and near-instantaneously infringed throughout

4  the computer-literate world with the files obtained by [Defendants']

5  end-users.  Plaintiffs' power to control their rights has been so

6  compromised by the means through which [Defendants] encouraged end-

7  users to infringe (digital files plus the internet) that the inducement

8  amounts to irreparable harm."  Id. at 1218-19.  Third, it is axiomatic

9  that the availability of free infringing copies of Plaintiffs' works

10  through Defendants' websites irreparably undermines the growing

11  legitimate market for consumers to purchase access to the same works.

12  E.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913,

13  928-29, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ("digital

14  distribution of copyrighted material threatens copyright holders as

15  never before, because every copy is identical to the original, copying

16  is easy, and many people (especially the young) use file-sharing

17  software to download copyrighted works"); A&M Records, Inc. v. Napster,

18  Inc., 239 F.3d 1004, 1017 (9th Cir. 2001) (citing "Napster's

19  deleterious effect on the present and future digital download market").

20

21  [1] The Court notes that Defendants argue that the Supreme Court's
    holding in Grokster was limited solely to "devices" that induce

22  infringement.  Defendants further argue that they are immune from an
    injunction against their "activities."  (Opp. at 6-7, 19.)

23  Defendants' argument lacks merit.  Nothing in Grokster requires that
    there be a "device"; the central inquiry is based on the defendants'

24  "purposeful, culpable expression and conduct."  Grokster, 545 U.S. at
    937.  The Supreme Court's holding in Grokster was not limited solely

25  to "devices."  The Supreme Court used terms such as "device,"
    "product," and "tool" interchangeably.  Id. at 940 n.13.  In

26  addition, the clear import of the Supreme Court's opinion was that a
    defendant may be secondarily liable for his conduct and activities

27

28  wholly separate and apart from any products, devices, or tools.

4

For many of the same reasons, Plaintiffs have demonstrated that they do not have an adequate remedy at law for the harm that has been or could be caused by Defendants' infringement.  "'Damages are no remedy at all if they cannot be collected.'"  <u>Grokster V</u>, 518 F. Supp. 2d at 1219 (quoting Douglas Laycock, The Death of the Irreparable Injury Rule, 103 <u>Harv. L. Rev.</u> 687, 716 (1990)).  Likewise, "[a] legal remedy is inadequate if it would require a multiplicity of suits."  Id. at 1220 (quoting Laycock, 103 <u>Harv. L. Rev.</u> at 714) (alteration in original).  Here, especially given the multiplicity of infringements of Plaintiffs' works caused by a single user downloading a single dot-torrent file from Defendants' sites, <u>see</u> Order at 6-7, it would be untenable for Plaintiffs to track and proceed against each infringing end-user.  Additionally, Plaintiffs would not be able to recover damages from Defendants for the inevitable derivative infringements that would occur outside Defendants' websites when copyrighted content acquired as a result of Defendants' inducement is further distributed by Defendants' users.  These further infringements are a continuing threat, making remedies at law insufficient to compensate for Plaintiffs' injuries.  The only realistic method for remedying such future harm from Defendants' inducement is by way of a permanent injunction.  <u>Grokster V</u>, 518 F. Supp. 2d at 1220.

The balance of hardships between Defendants and Plaintiffs also warrants the issuance of a permanent injunction.  As described, absent an injunction, Plaintiffs would suffer a severe hardship as a result of Defendants' inducement of infringement.  The injunction being ordered by the Court would not pose a corresponding hardship on Defendants.  The Court has already found that Defendants' websites are used

overwhelmingly for copyright infringement, with upwards of 95% of all dot-torrent files downloaded from Defendants' websites corresponding to works that are infringing or at least highly likely to be infringing. Liability Order at 10-11. Obviously, the harm to Defendants from no longer being able to exploit and profit from that infringement is not a hardship the Court need consider. See Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997) (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities" (citation and internal quotation marks omitted)). Beyond that, the Court's injunction is limited to Plaintiffs' copyrights and will not substantially interfere with any claimed non-infringing aspects of Defendants' system.

The Court is further persuaded that Defendants would likely continue to induce infringement in the absence of a permanent injunction. As this Court observed in Grokster:

> [A] successful inducer will sometimes have no need to repeat the infringing message ad infinitum. This is especially likely to be the case where the product in question is overwhelmingly used for infringing purposes, and requires little or no specialized training to operate. At a certain point, the inducer can simply continue to distribute the product without any additional active encouragement, recognizing that the marketplace will respond in turn. Thus, once the market has internalized the inducer's promotion of infringement, the resulting infringements should be attributable to that defendant even though he/she no longer chooses to actively promote that message.

Grokster V, 518 F. Supp. 2d at 1233-34.

The Court finds those observations fully applicable to this case. For years, Defendants operated their websites as popular destinations for copyright infringement and etched their niche in the market for infringement.  Defendants were enormously successful in building a user-base of infringers that, by Defendants' own account, number in the millions.  <u>See</u> Order at 42.  As stated, the evidence of Defendants' illegal objective was "overwhelming" and the resulting amount of infringement of Plaintiffs' copyrights has been staggering. Defendants' websites "remain[] inexorably linked to [Defendants'] historical efforts to promote infringement."  <u>Grokster V</u>, 518 F. Supp. 2d at 1235.  Absent an injunction directing Defendants to prevent infringement of Plaintiffs' works, it is highly likely that Defendants' existing users and new users would continue to use Defendants' system to infringe Plaintiffs' copyrights.

Moreover, the Court's conclusion that Defendants are likely to continue to induce copyright infringement is warranted by (1) the great extent to which Defendants have actively encouraged copyright infringement in the past; (2) the fact that Defendants' very business model, at its core, depends upon copyright infringement, and Defendants would financially benefit from further infringement; and (3) the fact that, even since the Court's Order finding Defendants liable for inducing copyright infringement, Defendants have not taken steps to mitigate the infringement of Plaintiffs' works.  **Defendants' proposed "primal" or "lite" website contains all of the same indexing and searching functions as the original websites, only with a different interface for the users to operate.  (See Servodido Reply Decl., Ex. G, at 15-21.)**  In fact, Defendants have not even ceased the actively

inducing conduct that the Court expressly indicated in its Order plainly encourages and promotes copyright infringement.  **Defendant Fung has affirmatively stated that he will not take steps to prevent infringement on his websites unless he is ordered to do so by this Court.  (Fung interview, quoted in Defs. Opp. at 3.)  In short, Defendants' past and present statements and conduct establish that Defendants "fully intend[] to continue [their] distribution of the" tools that are central to their inducement of copyright infringement.  *See Grokster V*, 518 F. Supp. 2d at 1229-30.**

Finally, the Court agrees that the public interest will be served with a permanent injunction, since it will protect Plaintiffs' copyrights against increased and unrestrained infringement.  Id. at 1222.  **Although Defendants argue that the BitTorrent "ecosystem" would be harmed by the present injunction (Opp. at 15-17), this injunction is aimed solely at *Defendants'* unlawful use of BitTorrent and similar technology, not at *third parties'* lawful use of BitTorrent and similar technology.**

The Court thus finds that the four part eBay test favors the imposition of a permanent injunction to restrain Defendants' infringement.  In its discretion, the Court deems it appropriate for a permanent injunction to issue.

[It will therefore be ordered, adjudged, and decreed that:]

1.   For the purposes of this Permanent Injunction, the following definitions shall apply:

   (a)   "Defendants" shall mean Gary Fung and Isohunt Web Technologies, Inc., whether acting jointly or individually.

   (b)   "Isohunt System" shall mean the websites www.isohunt.com,

www.podtropolis.com, www.torrentbox.com, and www.ed2k-it.com, and shall further include any servers, trackers, software, and electronic data that make up or support such websites.

(c)   "Comparable System" shall mean any website, system or software that provides users access to Plaintiffs' Copyrighted Works, using BitTorrent or any peer-to-peer or other file-sharing or content delivery technology.

(d)   "Copyrighted Works" shall mean each of those works, or portions thereof, whether now in existence or later created, in which any Plaintiff (or parent, subsidiary or affiliate of any Plaintiff), at the time of Defendants' conduct in question, owns or controls a valid and subsisting exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq., and which Plaintiffs have identified to Defendants by the title of the work.

(e)   "Dot-torrent or similar files" shall mean dot-torrent files, magnet links, hash links, or other functionally similar files, links or identifiers.

(f)   "Infringement-Related Terms" shall mean:

　　(i)   terms that refer to the titles or commonly understood names of Plaintiffs' Copyrighted Works (for example, the title or common name of a television series);

　　~~(ii) terms that signal the availability of Plaintiffs'~~ ~~Copyrighted Works (for example, "Television," "Box Office~~ ~~Movies," "DVD Rips," "Cam," "Telesync," "Telecine,"~~ ~~"Screener" or "PPV");~~ or

　　(iii)   terms that are widely associated with copyright infringement (for example "warez," "Axxo," or "Jaybob").

2.   Subject to the terms of Paragraph 5 below, Defendants shall be permanently enjoined from **knowingly** engaging in any of the following activities in connection with the Isohunt System or any Comparable System:

(a)  hosting, indexing, linking to, or otherwise providing access to any Dot-torrent or similar files that correspond, point or lead to any of the Copyrighted Works;

(b)  assisting with end-user reproductions or transmissions of any of the Copyrighted Works through a tracker server, or any other server or software that assists users in locating, identifying or obtaining files from other users offering any of the Copyrighted Works for transmission; or

(c)  hosting or providing access to any of the Copyrighted Works.

3.   Defendants shall immediately and permanently be enjoined from **knowingly** engaging in any activities having the object or effect of fostering infringement of Plaintiffs' Copyrighted Works, including without limitation, by engaging in any of the following activities:

(a)  advertising or promoting access to or the availability of Plaintiffs' Copyrighted Works;

(b)  encouraging or soliciting users to reproduce or distribute Plaintiffs' Copyrighted Works;

(c)  encouraging or soliciting users to upload, post or index any Dot-torrent or similar files that correspond, point or lead to any of the Copyrighted Works;

(d)  encouraging or soliciting users to link to copies of Plaintiffs' Copyrighted Works;

(e)  providing technical assistance or support services to users

engaged in infringement of, or seeking to infringe, Plaintiffs'
Copyrighted Works;

(f)   creating, maintaining, highlighting or otherwise providing
access to lists of "top" downloads of, or search terms for, Dot-
torrent or similar files that include, refer to or signal the
availability of Plaintiffs' Copyrighted Works;

(g)   including Infringement-Related Terms in metadata for any
webpages;

(h)   creating, maintaining or providing access to browsable
website categories of Dot-torrent or similar files using or based
on Infringement-Related Terms;

(i)   organizing, harvesting or categorizing Dot-torrent or similar
files using or based on Infringement-Related Terms;

(j)   soliciting or targeting a user base generally understood, in
substantial part, to be engaging in infringement of, or seeking to
infringe, Plaintiffs' Copyrighted Works;

(k)   transferring or redirecting users of the Isohunt System to
any other service that, directly or indirectly, provides access to
unauthorized copies of Plaintiffs' Copyrighted Works;

(l)   indexing or providing access to Dot-torrent or similar files
harvested or collected from well-known infringing source sites,
such as "The Pirate Bay";

(m)   soliciting revenue from third party advertisers or
advertising brokers based on (or by referring to or highlighting)
the availability of Plaintiff's Copyrighted Works.

4.   The terms of Paragraphs 2 and 3 of this Permanent Injunction shall
not apply to any Copyrighted Work for which Defendants have obtained

express written authorization or license for the use being made of such Copyrighted Work from each Plaintiff that owns or controls the rights to such Copyrighted Work, provided such authorization or license is in force and valid at the time of Defendants' use of the Copyrighted Work.

5.   Defendants shall not be in violation of this Permanent Injunction as to Copyrighted Works that Plaintiffs, or representatives of Plaintiffs, have not (a) identified to Defendants by title of the work, and (b) represented to Defendants that, based on a reasonable review and good faith belief, a Plaintiff (or a parent, subsidiary or affiliate of a Plaintiff) owns or controls a valid and subsisting exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq. in the work (a "list of titles").

(a)  Plaintiffs shall be permitted to supplement and update their list of titles without restriction, including without limitation with works soon-to-be but not yet released to the public.

(b)  Plaintiffs shall provide Defendants with the list of titles in electronic form.

(c)  Defendants shall promptly provide Plaintiffs with a valid email address to use for the lists of titles, and Defendants shall immediately notify Plaintiffs in writing of any change in such email address.  A list of titles shall be deemed delivered when sent to the most current email provided by Defendants.

(d)  With regard to the initial list of titles provided by Plaintiffs pursuant to this Permanent Injunction, Defendants shall be required to comply with the terms of Paragraph 2 above no later than 14 calendar days from the date Plaintiffs deliver the initial list of titles.

(e)  For all subsequent lists of titles, Defendants shall be required to comply with the terms of Paragraph 2 above no later than 24 hours from the time Plaintiffs deliver the list of titles.

(f)  In the event a commercial vendor or other third party becomes able to provide Defendants with a reliable list of Plaintiffs' Copyrighted Works, Plaintiffs may apply to the Court for an order modifying this Permanent Injunction to relieve them of the obligation of providing Defendants with lists of titles, even if there is a cost to Defendants of securing the lists of titles from the commercial vendor or third party.

6.  Prior to Defendants entering into any agreement or transaction whatsoever to sell, lease, license, assign, convey, give away, distribute, loan, barter, hypothecate, encumber, pledge or otherwise transfer, whether or not for consideration or compensation, any part of the software, source code, data files, other technology, domain names, trademarks, brands, or Dot-torrent or similar files used in connection with the Isohunt System or any Comparable System (a "Transfer of Isohunt-Related Assets"), Defendants shall require, as a condition of any such transaction, that the transferee:

(a)  submit to the Court's jurisdiction and venue;

(b)  agree to be bound by the terms herein; and

(c)  apply to the Court for an order adding it as a party to this Permanent Injunction.

Defendants shall not permit any Transfer of Isohunt-Related Assets to close until the Court has entered such an order.  Defendants further shall not engage in a Transfer of Isohunt-Related Assets with or to any person whom Defendants know to be engaged in, or intending to be

engaged in, conduct that would violate the terms of Paragraphs 2 or 3 above.

7.   This Permanent Injunction shall bind Gary Fung, individually, and Isohunt Web Technologies, Inc., and their officers, agents, servants, employees, attorneys, successors, and assigns, and all those in active concert or participation with any of them, who receive actual notice of this Permanent Injunction by personal service or otherwise.   Defendants shall provide a copy of this Permanent Injunction to each of their respective officers, agents, servants, employees, attorneys, principals, shareholders, current and future administrators or moderators for the Isohunt System (or Comparable System) or any online forums associated with the Isohunt System (or Comparable System), and any domain name registries or registrars responsible for any domain names used in connection with the Isohunt System (or Comparable System).

8.   Nothing in this Permanent Injunction shall limit the right of Plaintiffs to seek to recover damages under 17 U.S.C. § 504, or costs, including attorneys' fees, under 17 U.S.C. § 505.

9.   For purposes of clarity, as the Court has personal jurisdiction over Defendants and has concluded that the conduct of Defendants induces infringement of Plaintiffs' Copyrighted Works in the United States under the copyright laws of the United States, this Permanent Injunction enjoins the conduct of Defendants wherever they may be found, including without limitation in Canada.

**10.   The Court further clarifies that this injunction only covers acts of infringement, as defined in 17 U.S.C. § 106, that take place in the United States.   To the extent that an act of reproducing, copying,**

1  **distributing, performing, or displaying takes place in the United**

2  **States, it may violate 17 U.S.C. § 106, subject to the generally**

3  **applicable requirements and defenses of the Copyright Act.  Further, as**

4  **explained in the Court's December 23, 2009 Order, "United States**

5  **copyright law does not require that both parties be located in the**

6  **United States.  Rather, the acts of uploading and downloading are each**

7  **independent grounds of copyright infringement liability."  Summary**

8  **Judgment Order at 19.**

9  **11**.  Violation of this Permanent Injunction shall expose the

10  Defendants, and all others properly bound by it, to all applicable

11  penalties, including for contempt of Court.

12  **12**.  The Court shall maintain jurisdiction over this action for the

13  purposes of enforcing this Permanent Injunction.

14

15

16

17        IT IS SO ORDERED.

18  DATED:___March 23, 2010_____        _____
                                              STEPHEN V. WILSON
19                                       UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28