1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10

11

COLUMBIA PICTURES
INDUSTRIES, INC., *et al.*

12

13

Plaintiffs,

14

15

v.

16

GARY FUNG, *et al.*

17

18

Defendants.

19

Case No. 2:06-cv-05578-SVW (JCx)

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR
PERMANENT INJUNCTION**

20

*///*

21

*///*

22

*///*

23

24

25

26

27

28

# I.   BACKGROUND

On December 21, 2009, the Court granted Plaintiffs' Motion for Summary Judgment on Liability (the "Order," docket no. 391), finding that Defendants Gary Fung and Isohunt Web Technologies, Inc. (collectively, "Defendants") induced infringement of Plaintiffs' copyrights in violation of United States copyright law. See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005). The Court found that "evidence of Defendants' intent to induce infringement is overwhelming and beyond reasonable dispute," Order at 25, and therefore that "Defendants' inducement liability is overwhelmingly clear," id. at 15.

On the issue of a permanent injunction, the Court has considered the briefs filed by the parties, the arguments presented at the March 22, 2010 hearing on this matter, and the proposed language and arguments presented by the parties in response to the Court's proposed order. The Court has also considered the instructions of the Ninth Circuit regarding the permanent injunction in its opinion dated March 21, 2013. Columbia Pictures Indus. v. Fung, 710 F.3d 1020, 1047-1049 (9th Cir. 2013). Based on the foregoing and all matters of record in this action, pursuant to Federal Rule of Civil Procedure 65 and 17 U.S.C. § 502, the Court enters a Permanent Injunction in favor of Plaintiffs and against Defendants in accordance with the terms contained herein.

# II.   DISCUSSION

The Court concludes that a permanent injunction should issue to restrain further infringement of Plaintiffs' copyrights. Plaintiffs have satisfied their burden under eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s]

**MODIFIED ORDER GRANTING**
**PLAINTIFFS' MOTION FOR PERMANENT**
**INJUNCTION**

1  and defendant[s], a remedy in equity is warranted; and (4) that the public interest

2  would not be disserved by a permanent injunction." Id. at 391.

3         **A.    Irreparable Harm**

4         Plaintiffs have demonstrated that they have suffered irreparable harm, and

5  would suffer further irreparable harm from Defendants' continued infringement, in

6  three independent ways.  First, given the staggering volume of infringement of

7  Plaintiffs' copyrights, it is extremely unlikely that Defendants will be able fully to

8  compensate Plaintiffs monetarily for the infringements Defendants have induced in

9  the past, or the infringements they could induce in the future.  Metro-Goldwyn-

10  Mayer Studios, Inc. v. Grokster, 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007)

11  ("Grokster V").  Second, given the way in which Defendants' system works, when

12  Defendants' end-users download one of Plaintiffs' works, the end-users

13  automatically and simultaneously further distribute the work to innumerable others

14  as a required part of the download process; additionally, at the conclusion of the

15  download, Defendants' end-users obtain an unprotected digital copy of Plaintiffs'

16  work that those end-users can further distribute indefinitely at will.[1]  Thus, when

17  Defendants induce infringement, "Plaintiffs' copyrighted works can be unstoppably

18  and near-instantaneously infringed throughout the computer-literate world with the

19

---

20  [1] Defendants argue that the Supreme Court's holding in Grokster was limited solely
   to "devices" that induce infringement.  Defendants further argue that they are
21  immune from an injunction against their "activities."   (Opp. at 6-7, 19.)
   Defendants' argument lacks merit.  Nothing in Grokster requires that there be a
22  "device"; the central inquiry is based on the defendants' "purposeful, culpable
   expression and conduct."  Grokster, 545 U.S. at 937.  The Supreme Court's holding
23  in Grokster was not limited solely to "devices."  The Supreme Court used terms
   such as "device," "product," and "tool" interchangeably. Id. at 940 n.13.
24
25         In addition, the clear import of the Supreme Court's opinion was that a
   defendant may be secondarily liable for his conduct and activities, separate and
26  apart from any products, devices, or tools he distributes.

27

28

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION**

1    files obtained by [Defendants'] end-users.  Plaintiffs' power to control their rights

2    has been so compromised by the means through which [Defendants] encouraged

3    endusers to infringe (digital files plus the internet) that the inducement amounts to

4    irreparable harm." Id. at 1218-19.  Third, it is axiomatic that the availability of free

5    infringing copies of Plaintiffs' works through Defendants' websites irreparably

6    undermines the growing legitimate market for consumers to purchase access to the

7    same works.  E.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S.

8    913, 928-29, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ("digital distribution of

9    copyrighted material threatens copyright holders as never before, because every

10   copy is identical to the original, copying is easy, and many people (especially the

11   young) use file-sharing software to download copyrighted works"); A&M Records,

12   Inc. v. Napster, Inc., 239 F.3d 1004, 1017 (9th Cir. 2001) (citing "Napster's

13   deleterious effect on the present and future digital download market").

14          **B.     Inadequate Remedy at Law**

15          For many of the same reasons,[2] Plaintiffs have demonstrated that they do not

16   have an adequate remedy at law for the harm that has been or could be caused by

17   Defendants' infringement.  "'Damages are no remedy at all if they cannot be

18   collected.'"  Grokster V, 518 F. Supp. 2d at 1219 (quoting Douglas Laycock, *The*

19   *Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687, 716 (1990)).

20   Likewise, "[a] legal remedy is inadequate if it would require a multiplicity of suits."

21   Id. at 1220 (quoting Laycock, 103 Harv. L. Rev. at 714) (alteration in original).

22          Here, as in Grokster V, "[t]he irreparable harm analysis centers on two basic

23   themes: (1) [Defendant] has and will continue to induce far more infringement than

24

25   _____

26   [2] The "irreparable harm" and "inadequate remedies at law" inquiries are essentially
     identical. Grokster V, 518 F. Supp. 2d at 1219

27

28

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION**

1  it could ever possibly redress with damages; and (2) Plaintiffs' copyrights

2  (especially those of popular works) have and will be rendered particularly

3  vulnerable to continuing infringement on an enormous scale due to [Defendant's]

4  inducement." Grokster V, 518 F. Supp. 2d at 1217.  Both of these elements are

5  present in this case as well.

6          In the Summary Judgment Order, the Court concluded that the evidence

7  "strongly suggests that some 2.5 million United States citizens visited Defendants'

8  websites each month" and that "at one point, Defendants' websites were accessed

9  over 50 million times from the United States in a single month."  Order at 41.  The

10  Court also concluded that Plaintiffs' statistical evidence showed that over 90% of

11  the downloads using Defendants' websites were associated with copyright-

12  infringing materials.  Accord A& M Records, Inc. v. Napster, Inc., 239 F.3d 1004,

13  1013 (9th Cir. 2001) (relying on statistical evidence to show extent of infringement);

14  Grokster V, 518 F. Supp. 2d at 1217-19 (same).  Defendants have introduced no

15  evidence to rebut these showings.

16          In addition, given the multiplicity of infringements of Plaintiffs' works caused

17  by a single user downloading a single dot-torrent file from Defendants' sites, see

18  Order at 6-7, it would be untenable for Plaintiffs to track and proceed against each

19  infringing end-user.  Additionally, Plaintiffs would not be able to recover damages

20  from Defendants for the inevitable derivative infringements that would occur

21  outside Defendants' websites when copyrighted content acquired as a result of

22  Defendants' inducement is further distributed by Defendants' users.  These further

23  infringements are a continuing threat, making remedies at law insufficient to

24  compensate for Plaintiffs' injuries.  The only realistic method for remedying such

25  future harm from Defendants' inducement is by way of a permanent injunction.

26  Grokster V, 518 F. Supp. 2d at 1220.

27

28

MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION

## C.     Balance of Hardships

The balance of hardships between Defendants and Plaintiffs also warrants the issuance of a permanent injunction.  As described, absent an injunction, Plaintiffs would suffer a severe hardship as a result of Defendants' inducement of infringement.  The injunction being ordered by the Court would not pose a corresponding hardship on Defendants.  The Court has already found that Defendants' websites are used overwhelmingly for copyright infringement, with upwards of 95% of all dot-torrent files downloaded from Defendants' websites corresponding to works that are infringing or at least highly likely to be infringing. Summary Judgment Order at 10-11.  Obviously, the harm to Defendants from no longer being able to exploit and profit from that infringement is not a hardship the Court need consider.  See Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997) (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities") (citation and internal quotation marks omitted).  Beyond that, the Court's injunction is limited to Plaintiffs' copyrights and will not substantially interfere with any claimed non-infringing aspects of Defendants' system.

The Court is further persuaded that Defendants would likely continue to induce infringement in the absence of a permanent injunction.  As this Court observed in Grokster:

> [A] successful inducer will sometimes have no need to repeat the infringing message ad infinitum.  This is especially likely to be the case where the product in question is overwhelmingly used for infringing purposes, and requires little or no specialized training to operate.  At a certain point, the inducer can simply continue to distribute the product without any additional active encouragement, recognizing that the marketplace will respond in turn.  Thus, once the market has internalized the inducer's promotion of infringement, the resulting infringements should be attributable to that defendant even

**MODIFIED ORDER GRANTING PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

1

though he/she no longer chooses to actively promote that
message.

2

Grokster V, 518 F. Supp. 2d at 1233-34.

3
4
5
6
7
8
9
10
11
12
13
14

The Court finds those observations fully applicable to this case.  For years,
Defendants operated their websites as popular destinations for copyright
infringement and etched their niche in the market for infringement.  Defendants
were enormously successful in building a user-base of infringers that, by
Defendants' own account, number in the millions.  See Order at 42.  As stated, the
evidence of Defendants' illegal objective was "overwhelming" and the resulting
amount of infringement of Plaintiffs' copyrights has been staggering.  Defendants'
websites "remain[] inexorably linked to [Defendants'] historical efforts to promote
infringement."  Grokster V, 518 F. Supp. 2d at 1235.  Absent an injunction directing
Defendants to prevent infringement of Plaintiffs' works, it is highly likely that
Defendants' existing users and new users would continue to use Defendants' system
to infringe Plaintiffs' copyrights.

15
16
17
18
19
20
21
22
23
24
25
26
27

Moreover, the Court's conclusion that Defendants are likely to continue to
induce copyright infringement is warranted by (1) the great extent to which
Defendants have actively encouraged copyright infringement in the past; (2) the fact
that Defendants' very business model, at its core, depends upon copyright
infringement, and Defendants would financially benefit from further infringement;
and (3) the fact that, even since the Court's Order finding Defendants liable for
inducing copyright infringement, Defendants have not taken meaningful steps to
mitigate the infringement of Plaintiffs' works.  Defendants' proposed "primal" or
"lite" website contains all of the same indexing and searching functions as the
original websites, only with a different interface for the users to operate.  (See
Servodidio Reply Decl., Ex. G, at 15-21.)  In fact, Defendants have not even ceased
all of the active conduct of encouraging and promoting infringement which the
Court specifically identified in its Summary Judgment Order.  A number of features

28

7

mentioned in this Court's Summary Judgment Order remain active: a "top 20" TV shows and movies feature; a "top searches" feature (which invariably includes all, or almost all, copyrighted works); and access to Plaintiffs' works that are specifically identified as the subject of this action. (Pls. Reply at 10.) Defendant Fung has affirmatively stated that he will not take steps to prevent infringement on his websites unless he is ordered to do so by this Court. (Fung interview, quoted in Defs. Opp. at 3.) In short, Defendants' past and present statements and conduct establish that Defendants "fully intend[] to continue [their] distribution of the" tools that are central to their inducement of copyright infringement. See <u>Grokster V</u>, 518 F. Supp. 2d at 1229-30.

As this Court explained at length in <u>Grokster V</u>, a defendant who is liable for inducing infringement may be enjoined from **distributing** his products in the future, **even if** he no longer promotes an inducing message. Although the quote is lengthy, it is worth setting forth in full:

> The Court is mindful of the following critical passage from the Supreme Court's opinion in this case:
>> It is not only that encouraging a particular consumer to infringe a copyright can give rise to secondary liability for the infringement that results. Inducement liability goes beyond that, and the distribution of a product can itself give rise to liability where evidence shows that the distributor intended and encouraged the product to be used to infringe. In such a case, the culpable act is not merely the encouragement of infringement but also the distribution of the tool intended for infringing use.
>
> <u>Grokster</u>, 545 U.S. at 940 n. 13, 125 S.Ct. 2764.
> In effect, the "culpable act," which induces third parties to infringement, certainly manifests itself once two components are present-- distribution and promotion/ encouragement. See <u>Amazon.com</u>, 487 F.3d at 727 n. 11; <u>Visa</u>, 494 F.3d at 800-01. It is important to recognize that the Supreme Court did not impose any strict timing relationship between specific acts promoting infringements, distribution, and the direct infringements themselves. For a party to be liable for inducement, distribution may begin prior to any promotion of infringement, distribution and promotion can occur at the same time, and most critically, **distribution can follow past**

MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION

**promotion**.  This highlighted portion of the above sentence is crucial.  As a matter of common sense, a successful inducer will sometimes have no need to repeat the infringing message ad infinitum.  This is especially likely to be the case where the product in question is overwhelmingly used for infringing purposes, and requires little or no specialized training to operate.  At a certain point, the inducer can simply continue to distribute the product without any additional active encouragement, recognizing that the marketplace will respond in turn.

Thus, once the market has internalized the inducer's promotion of infringement, the resulting infringements should be attributable to that defendant even though he/she no longer chooses to actively promote that message.  There is no difference between these infringements and those that are consummated while the defendant is still engaging in the active promotion of infringement.

Critically, Justice Souter recognized the importance of this relationship between past promotion and future distribution during the Supreme Court's oral argument in this case:

> But I don't ... understand how you can separate the past from the present in that fashion.  One, I suppose, could say, "Well, I'm going to make inducing remarks Monday through Thursday, and I'm going to stop, Thursday night."  The sales of the product on Friday are still going to be sales which are the result of the inducing remarks Monday through Wednesday.  And you're asking, in effect--you're asking us--to ignore Monday through Thursday.

Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd., No. 04-480, Mar. 29, 2005 ("Oral Argument Transcript"), at 30.  Thus, distribution of a product capable of substantial noninfringing uses, even after the promotion/ encouragement of infringement ceases, can by itself constitute inducement. StreamCast's future distribution is undoubtedly connected to past promotional efforts.  In its September 27, 2006 Order, this Court recounted in detail, among other undisputed facts, StreamCast's efforts to promote its software to the Napster market as a mechanism for infringing Plaintiffs' copyrighted works.  Grokster, 454 F.Supp.2d at 985-86.  These promotional efforts proved to be wildly successful, especially because StreamCast marketed itself to Napster users at a particularly important juncture--while Napster was in imminent legal jeopardy.  End-user infringement exponentially increased, evidencing that StreamCast's express and implied messages of promotion were received, absorbed, and responded to by the market.  Or as more recently stated by the Ninth Circuit:

> The software systems in ... Grokster were engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy of copyrighted music and reducing legitimate sales of such music to that extent.  Most ... users understood this and primarily used those systems to purloin copyrighted music.  Further, the ... operators explicitly

MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION

1

targeted then-current users of the Napster program by sending them ads for its OpenNap program.

2

<u>Visa Int'l Serv. Ass'n</u>, 494 F.3d at 801.  StreamCast's revenues skyrocketed as a result.  Furthermore, StreamCast could not reasonably claim ignorance of the infringements perpetrated by Morpheus endusers.  <u>Grokster</u>, 454 F.Supp.2d at 992.

3

4

StreamCast has etched its niche in the market for infringement.  Under the facts of this case, and the doctrinal point raised by Justice Souter, neither the simple passage of time nor the entry of judgment in this case can remedy StreamCast's past promotion as the "next Napster."  The fact that a permanent injunction is imposed also does not leave Morpheus magically reborn as a product safe for unfiltered distribution under Sony.

5

6

7

8

As stated by Justice Scalia to StreamCast's counsel at oral argument, "the point is that those past acts [of encouragement] are what have developed your client's current clientele."  Oral Argument Transcript at 29.

9

10

. . .

11

StreamCast is not being "punished" for its past actions; rather, StreamCast's past activity is relevant to what future actions constitute inducement going forward.

12

13

An unfiltered Morpheus, which StreamCast intends to distribute if provided the opportunity, necessarily capitalizes on and remains inexorably linked to its historical efforts to promote infringement.  The bell simply cannot be unrung.  Accordingly, Morpheus's connection to the past promotion of infringement means that StreamCast's continued distribution of Morpheus alone constitutes inducement.  This Court is empowered to regulate Morpheus under 17 U.S.C. § 502(a) in order to prevent this distribution from causing future harm to Plaintiffs' rights.

14

15

16

17

18

<u>Grokster V</u>, 518 F. Supp. 2d at 1233-35.

19

**D.     Public Interest**

20

Finally, the Court agrees that the public interest will be served with a

21

permanent injunction, since it will protect Plaintiffs' copyrights against increased

22

and unrestrained infringement.  <u>Id.</u> at 1222.  Although Defendants argue that the

23

BitTorrent "ecosystem" would be harmed by the present injunction, Defendants

24

have not introduced any evidence to show the harmful "wider implications" of this

25

injunction, nor have they shown that further discovery is warranted because the

26

relevant evidence is exclusively within Plaintiffs' possession.  (See Opp. at 15-17.)

27

In addition, this injunction is aimed solely at *Defendants'* unlawful use of BitTorrent

28

10

MODIFIED ORDER GRANTING<br>PLAINTIFFS' MOTION FOR PERMANENT<br>INJUNCTION

1  and similar technology, not at *third parties'* lawful use of BitTorrent and similar
2  technology.  The public interest will not be harmed by the injunction.

3       **E.    Summary**

4       The Court thus finds that the four part <u>eBay</u> test favors the imposition of a
5  permanent injunction to restrain Defendants' infringement.  In its discretion, the
6  Court deems it appropriate for a permanent injunction to issue.

7       In issuing the injunction, the Court is cognizant that "[t]he fact that absolutely
8  perfect compliance is unattainable does not of itself preclude an injunction."
9  <u>Withrow v. Concannon</u>, 942 F.2d 1385, 1388 (9th Cir. 1991).  "If a violating party
10  has taken 'all reasonable steps' to comply with the court order, technical or
11  inadvert[e]nt violations of the order will not support a finding of civil contempt."
12  <u>Gen. Signal Corp. v. Donallco, Inc.</u>, 787 F.2d 1376, 1379 (9th Cir. 1986) (citation
13  omitted).  Ultimately, Defendants have the option — and the burden — of deciding
14  how they will comply with the following injunction.  <u>Triad Systems Corp. v.</u>
15  <u>Southeastern Exp. Co.</u>, 64 F.3d 1330, 1337 (9th Cir. 1995) ("Putting this burden on
16  Southeastern is appropriate because Southeastern is the infringer."), *overruled on*
17  *other grounds by* <u>Gonzales v. Texaco Inc.</u>, 344 Fed. Appx. 304, 306 (9th Cir. 2009).

18  **III.    INJUNCTION**

19       It is therefore ORDERED, ADJUDGED, and DECREED that:

20  1.    For the purposes of this Permanent Injunction, the following definitions shall
21  apply:

22       (a)    "Defendants" shall mean Gary Fung and Isohunt Web Technologies,
23       Inc., whether acting jointly or individually.

24       (b)    "Isohunt System" shall mean the websites www.isohunt.com,
25       www.podtropolis.com, www.torrentbox.com, and www.ed2k-it.com, and
26       shall further include any servers, trackers, software, and electronic data that
27       make up or support such websites.

28

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION**

(c)     "Comparable System" shall mean any website, system or software that provides users access to Plaintiffs' Copyrighted Works, using BitTorrent or any peer-to-peer or other file-sharing or content delivery technology.

(d)     "Copyrighted Works" shall mean each of those works, or portions thereof, whether now in existence or later created, in which any Plaintiff (or parent, subsidiary or affiliate of any Plaintiff), at the time of Defendants' conduct in question, owns or controls a valid and subsisting exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq., and which Plaintiffs have identified to Defendants by the title of the work.

(e)     "Dot-torrent or similar files" shall mean dot-torrent files, magnet links, hash links, or other functionally similar files, links or identifiers.

(f)     "Infringement-Related Terms" shall mean:

> (i)     terms that refer to the titles or commonly understood names of Plaintiffs' Copyrighted Works (for example, the full title or common name of a television series);

> (ii)     the following terms: "warez," "Axxo," "Jaybob," "DVD Rips," "Cam," "Telesync," "Telecine," "Screener," "PPV," or "R5";

> (iii)     Plaintiffs may request that this Court modify (ii) above to include additional terms upon competent proof that such terms should be included in Paragraph 1(f)(ii).

2.     Subject to the terms of Paragraph 5 below, Defendants shall be permanently enjoined from knowingly engaging in any of the following activities in connection with the Isohunt System or any Comparable System:

(a)     hosting, indexing, linking to, or otherwise providing access to any Dot-torrent or similar files that correspond, point or lead to any of the Copyrighted Works;

MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION

(b)     assisting with end-user reproductions or transmissions of any of the Copyrighted Works through a tracker server, or any other server or software that assists users in locating, identifying or obtaining files from other users offering any of the Copyrighted Works for transmission; or

(c)     hosting or providing access to any of the Copyrighted Works. Defendants shall be in knowing violation of this paragraph if they fail to act in response to the list of titles as set forth in Paragraph 5.1.

3.     Defendants shall immediately and permanently be enjoined from knowingly engaging in any activities having the object or effect of fostering infringement of Plaintiffs' Copyrighted Works, including without limitation, by engaging in any of the following activities:

(a)     advertising or promoting access to or the availability of Plaintiffs' Copyrighted Works;

(b)     encouraging or soliciting users to reproduce or distribute Plaintiffs' Copyrighted Works;

(c)     encouraging or soliciting users to upload, post or index any Dot-torrent or similar files that correspond, point or lead to any of the Copyrighted Works;

(d)     encouraging or soliciting users to link to copies of Plaintiffs' Copyrighted Works;

(e)     providing technical assistance or support services to users engaged in infringement of, or seeking to infringe, Plaintiffs' Copyrighted Works;

(f)     creating, maintaining, highlighting or otherwise providing access to lists of "top" downloads of, or search terms for, Dot-torrent or similar files that include, refer to or signal the availability of Plaintiffs' Copyrighted Works;

(g)     including Infringement-Related Terms in metadata for any webpages;

MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION

(h)     creating, maintaining or providing access to browsable website categories of Dot-torrent or similar files using or based on Infringement-Related Terms;

(i)     organizing, harvesting or categorizing Dot-torrent or similar files using or based on Infringement-Related Terms;

(j)     engaging in any of the following activities with regard to the "Sites" defined below:

    (i)     using the names of any of the Sites in meta tags on any web pages;

    (ii)    bidding on, purchasing or using the names of any of the Sites as keywords in any advertising campaigns;

    (iii)   placing advertisements on any of the Sites; and

    (iv)    advertising by referring to any of the Sites by name.

For purpose of this provision, "Sites" shall mean:  The Pirate Bay, Torrentspy, Aimster, Kazaa, Grokster, Morpheus, Newzbin, BT Junkie,Torrentreactor.net, kat.ph, torrents.net, SurftheChannel.com, Kino.to, Movie2k.to, and/or Dl4all.com.

    (v)     Plaintiffs may request that this Court modify the injunction to include additional websites upon competent proof that such websites should be added to Paragraph 3(j).

(k)     transferring or redirecting users of the Isohunt System to any other service that, directly or indirectly, provides access to unauthorized copies of Plaintiffs' Copyrighted Works;

(l)     indexing or providing access to Dot-torrent or similar files harvested or collected from the following sites or services:  The Pirate Bay, Torrentspy, BT Junkie, Torrentreactor.net, kat.ph or torrents.net;

**MODIFIED ORDER GRANTING PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

1          (i)      Plaintiffs may request that this Court modify the injunction to

2                  include additional source websites upon competent proof that such

3                  websites should be added to Paragraph 3(l).

4      (m)    soliciting revenue from third party advertisers or advertising brokers

5          based on (or by referring to or highlighting) the availability of Plaintiff's

6          Copyrighted Works.

7   4.     The terms of Paragraphs 2 and 3 of this Permanent Injunction shall not apply

8   to any Copyrighted Work for which Defendants have obtained express written

9   authorization or license for the use being made of such Copyrighted Work from

10  each Plaintiff that owns or controls the rights to such Copyrighted Work, provided

11  such authorization or license is in force and valid at the time of Defendants' use of

12  the Copyrighted Work.

13  5.     Defendants shall not be in violation of this Permanent Injunction as to

14  Copyrighted Works that Plaintiffs, or representatives of Plaintiffs, have not (a)

15  identified to Defendants by title of the work, and (b) represented to Defendants that,

16  based on a reasonable review and good faith belief, a Plaintiff (or a parent,

17  subsidiary or affiliate of a Plaintiff) owns or controls a valid and subsisting

18  exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq. in

19  the work (a "list of titles").

20      (a)     Plaintiffs shall be permitted to supplement and update their list of titles

21          without restriction, including without limitation with works soon-to-be but

22          not yet released to the public.

23      (b)     Plaintiffs shall provide Defendants with the list of titles in electronic

24          form.

25      (c)     Defendants shall promptly provide Plaintiffs with a valid email address

26          to use for the lists of titles, and Defendants shall immediately notify Plaintiffs

27          in writing of any change in such email address.  A list of titles shall be

28

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION**

deemed delivered when sent to the most current email provided by Defendants.

(d)    With regard to the initial list of titles provided by Plaintiffs pursuant to this Permanent Injunction, Defendants shall be required to comply with the terms of Paragraph 2 above no later than 14 calendar days from the date Plaintiffs deliver the initial list of titles.

(e)    For all subsequent lists of titles, Defendants shall be required to comply with the terms of Paragraph 2 above no later than 24 hours from the time Plaintiffs deliver the list of titles.

(f)    In the event a commercial vendor or other third party becomes able to provide Defendants with a reliable list of Plaintiffs' Copyrighted Works, Plaintiffs may apply to the Court for an order modifying this Permanent Injunction to relieve them of the obligation of providing Defendants with lists of titles, even if there is a cost to Defendants of securing the lists of titles from the commercial vendor or third party.

6.    Prior to Defendants entering into any agreement or transaction whatsoever to sell, lease, license, assign, convey, give away, distribute, loan, barter, hypothecate, encumber, pledge or otherwise transfer, whether or not for consideration or compensation, any part of the software, source code, data files, other technology, domain names, trademarks, brands, or Dot-torrent or similar files used in connection with the Isohunt System or any Comparable System (a "Transfer of Isohunt-Related Assets"), Defendants shall require, as a condition of any such transaction, that the transferee:

(a)    submit to the Court's jurisdiction and venue;

(b)    agree to be bound by the terms herein; and

(c)    apply to the Court for an order adding it as a party to this Permanent Injunction.

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION**

Defendants shall not permit any Transfer of Isohunt-Related Assets to close until the Court has entered such an order.  Defendants further shall not engage in a Transfer of Isohunt-Related Assets with or to any person whom Defendants know to be engaged in, or intending to be engaged in, conduct that would violate the terms of Paragraphs 2 or 3 above.

7.     This Permanent Injunction shall bind Gary Fung, individually, and Isohunt Web Technologies, Inc., and their officers, agents, servants, employees, attorneys, successors, and assigns, and all those in active concert or participation with any of them, who receive actual notice of this Permanent Injunction by personal service or otherwise.  Defendants shall provide a copy of this Permanent Injunction to each of their respective officers, agents, servants, employees, attorneys, principals, shareholders, current and future administrators or moderators for the Isohunt System (or Comparable System) or any online forums associated with the Isohunt System (or Comparable System), and any domain name registries or registrars responsible for any domain names used in connection with the Isohunt System (or Comparable System).

8.     Nothing in this Permanent Injunction shall limit the right of Plaintiffs to seek to recover damages under 17 U.S.C. § 504, or costs, including attorneys' fees, under 17 U.S.C. § 505.

9.     For purposes of clarity, as the Court has personal jurisdiction over Defendants and has concluded that the conduct of Defendants induces infringement of Plaintiffs' Copyrighted Works in the United States under the copyright laws of the United States, this Permanent Injunction enjoins the conduct of Defendants wherever they may be found, including without limitation in Canada.

10.     The Court further clarifies that this injunction covers any acts of direct infringement, as defined in 17 U.S.C. § 106, that take place in the United States.  To the extent that an act of reproducing, copying, distributing, performing, or

17

**MODIFIED ORDER GRANTING**
**PLAINTIFFS' MOTION FOR PERMANENT**
**INJUNCTION**

displaying takes place in the United States, it may violate 17 U.S.C. § 106, subject to the generally applicable requirements and defenses of the Copyright Act. As explained in the Court's December 23, 2009 Order, "United States copyright law does not require that both parties be located in the United States. Rather, the acts of uploading and downloading are each independent grounds of copyright infringement liability." Summary Judgment Order at 19. Each download or upload of Plaintiffs' copyrighted material violates Plaintiffs' copyrights if even a single United States-based user is involved in the "swarm" process of distributing, transmitting, or receiving a portion of a computer file containing Plaintiffs' copyrighted content.

11.     Violation of this Permanent Injunction shall expose the Defendants, and all others properly bound by it, to all applicable penalties, including for contempt of Court.

12.     The Court shall maintain jurisdiction over this action for the purposes of enforcing this Permanent Injunction and for amending the injunction in response to future changes in the law or factual circumstances. See Grokster V, 518 F. Supp. 2d at 1239-40 (collecting cases).

13.     Gary Fung, individually, shall not be deemed to be in violation of this injunction solely as a result of his being a bona fide employee or independent contractor of a third party entity that may be engaged in acts that violate this injunction or whose services might be used by third parties to engage in infringement, provided that Mr. Fung does not personally direct or participate in conduct that violates this injunction.


        IT IS SO ORDERED.


DATED: August 5, 2013

_____
THE HON. STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

**MODIFIED ORDER GRANTING
PLAINTIFFS' MOTION FOR PERMANENT
INJUNCTION**