JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
1099 New York Avenue, N.W.
Suite 900
Washington, D.C.  20001
Telephone:  (202) 639-6000
Facsimile:  (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>           *Plaintiffs*,<br><br>     v.<br><br>GARY FUNG, *et. al.*<br><br>           *Defendants*. | Case No. CV-06-05578 SVW (JCx)<br><br>***EX PARTE* APPLICATION FOR EVIDENTIARY SANCTIONS FOR VIOLATION OF THE COURT'S JUNE 8, 2007 ORDER – FEES REQUESTED** |

# NOTICE OF APPLICATION

**PLEASE TAKE NOTICE** that the above-named Plaintiffs hereby move *ex parte* for an order awarding evidentiary sanctions for Defendants' willful disobedience of a Court Order, dated June 8, 2007, which directed Defendants to preserve and produce data from their website servers.  Plaintiffs further seek an order awarding them their attorneys' fees and costs related to this Application.

Plaintiffs advised the District Judge of their intention to seek evidentiary sanctions for Defendants' violation of the June 8, 2007 Order; the Court directed Plaintiffs to file this motion with the Magistrate Judge.  *See* August 7, 2013 Order (ECF No. 554) at 3 n.3.  In the same August 7, 2013 Order, the Court set a damages trial to begin on November 5, 2013.  Accordingly, as the resolution of this issue materially affects discovery, trial preparation and trial, there is not time for this request to be heard on the normal calendar.  Counsel for the Defendants have received notice of this *Ex Parte* Application pursuant to Local Rule 7-19.1, and have indicated they intend to oppose it.

This *Ex Parte* Application is based on this Notice, the accompanying Application; the accompanying Declaration of Steven B. Fabrizio and exhibit (the "Fabrizio Decl."); all pleadings on file with the Court; all matters of which the Court may take judicial notice; and all such additional evidence and argument as may be presented to the Court during any hearing.

Dated:  August 20, 2013

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Steven B. Fabrizio
　　Steven B. Fabrizio

STEVEN B. FABRIZIO
GIANNI P. SERVODIDIO
　JENNER & BLOCK LLP

*Attorneys for Plaintiffs*

**EX PARTE APPLICATION FOR**
**EVIDENTIARY SANCTIONS**

### *EX PARTE* APPLICATION

This Application seeks evidentiary sanctions against Defendants for their willful disobedience of a Court Order to preserve and produce server data from Defendants' websites.  The missing website data, which Defendants have not produced (and, in material respects, have irreversibly despoiled), would have conclusively proven direct infringement by Defendants' users and would have been important evidence on the issue of damages.  Direct infringement and damages are the final issues remaining in the case and will be determined in a jury trial beginning on November 5, 2013.

### **BACKGROUND**

As the Court is aware, this action concerns the infringement of Plaintiffs' copyrighted movies and television programs through three "BitTorrent" websites operated by Defendants:  Isohunt.com, Torrentbox.com and Podtropolis.com (collectively, the "Fung Websites").[1]  Since the parties last appeared before Your Honor, the District Court granted summary judgment to Plaintiffs, finding Defendants liable for "inducing" their users' widespread copyright infringement. *Columbia Pictures Indus., Inc. v. Fung*, No. CV-06-05578 SVW (JCx), 2009 WL 6355911, at *11 (C.D. Cal. Dec. 21, 2009) ("*Fung I*") ("evidence of Defendants' intent to induce infringement is overwhelming and beyond reasonable dispute"). The Ninth Circuit affirmed Defendants' liability in all respects, finding "overwhelming evidence that Fung engaged in culpable, inducing activity." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1046 (9th Cir. 2013) ("*Fung II*").

---

[1] Defendants also operate two "trackers," known as the Torrentbox and Podtropolis trackers, that manage the content downloading process (collectively, the "Fung Trackers").

By Order dated August 7, 2013, the District Court has ordered that a jury trial shall commence on November 5, 2013 to determine the two remaining issues in the case:  the extent of infringement of Plaintiffs' works (*i.e.*, which specific works were infringed), and the amount of statutory damages owed by Defendants under the Copyright Act, 17 U.S.C. § 504(c), for each work infringed.  August 7, 2013 Order (ECF No. 554) ("August 7 Order") at 4.

As the Court may recall, Your Honor had recommended that the District Judge enter evidentiary findings establishing direct infringement as a sanction for Defendants' violation of the Court's June 8, 2007 Order (ECF No. 137) to preserve and produce server log data from the Fung Websites and Trackers (the "Server Log Order").  *See* September 19, 2007 Report & Recommendation (ECF No. 271) ("R&R"); *see also* August 10, 2007 Order (ECF No. 211) ("August 10 Order") at 4 (expressly warning Defendants that further noncompliance with the Server Log Order might result "in a recommendation to the assigned District Judge to impose … evidentiary sanctions, an adverse jury instruction, and/or terminating sanctions").[2]

At the time of the R&R, Defendants had insisted that, to prove infringement by their users, Plaintiffs were required to show completed downloads of actual content files – a standard which required data from the Fung *Trackers*.  The R&R thus specifically addressed Defendants' refusal to produce Tracker data.  The District Court, however, rejected Defendants' position, holding that Plaintiffs are only required to show downloads of dot-torrent files from one of the Fung *Websites*. *See Fung I*, 2009 WL 6355911 at *11 n.18 ("Because dot-torrent files *automatically* trigger this content-downloading process, it is clear that dot-torrent files and content

---

[2] Defendants sought District Court review of the portion of the Server Log Order awarding attorneys' fees and costs to Plaintiffs; the District Judge affirmed the award.  July 25, 2007 Order (ECF No. 192) at 4-14.

files are, for all practical purposes, synonymous") (emphasis in original); August 7 Order at 2 ("as this Court held – and the Ninth Circuit affirmed – Plaintiffs can establish liability as to any particular copyright solely by demonstrating that one of Defendants' users downloaded a Dot-Torrent file from one of [Defendants'] *websites*") (emphasis in original).  In doing so, the District Court adopted an evidentiary standard for direct infringement that rendered the Tracker data unnecessary.  *See* August 7 Order at 3 ("Had this Court, or the Ninth Circuit, adopted [Defendants'] theory of liability, the tracker server data would have been necessary to Plaintiffs' claims").  Because the Tracker data was no longer necessary, the District Court did not adopt the sanction recommended in the R&R.  *See id.* Nevertheless, the Court expressly found that Defendants' violation of the Server Log Order was "sanctionable," and remanded the matter to Your Honor for the "imposition of an appropriate sanction."  *Id.*

In adopting a standard that rendered the *Tracker* data unnecessary, the District Court put Defendants' failure to produce *Website* data squarely at issue.  Server data from the Fung Websites – which the Server Log Order required Defendants to preserve and produce – would have provided irrefutable proof of direct infringement under the standard adopted by the District Court.  *See* August 7 Order at 2 ("Plaintiffs will be able to prove that a particular user downloaded a Dot-Torrent file from one of [Defendants'] websites with server data from the websites themselves").  The Website data also would have demonstrated the scale of Defendants' infringement, which should be an important consideration for a jury in arriving at an appropriate level of statutory damages.  However, in the same way Defendants violated the Server Log Order as to Tracker data, they also violated the Server Log Order by failing to produce data from the Fung Websites.  Defendants' contemptuous conduct regarding the Fung Website data has materially prejudiced Plaintiffs' ability to present its damages case.

Because the R&R itself only addressed sanctions for Defendants' violation as to the Tracker data, Defendants' violation of the Server Log Order as to the Website data was not before the District Court when it considered the R&R.  *See* August 7 Order at 3 n.3 (the Website data "issue is not presently before this Court").  The District Court directed Plaintiffs to file any request for evidentiary sanctions related to the Website data to Your Honor.  *Id.*

Accordingly, Plaintiffs herein seek appropriate evidentiary sanctions to redress Defendants' failure to preserve and produce data from the Fung Websites, as ordered by this Court.

## <u>ARGUMENT</u>

**A.     Standard for Evidentiary Sanctions.**

Rule 37 of the Federal Rules of Civil Procedure gives courts broad discretion to impose sanctions where a party refuses to comply with discovery orders.  Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery. . . , the court in which the action is pending may issue further just orders").  Courts are free to issue sanctions "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses."  Fed. R. Civ. P. 37(b)(2)(A)(i) & (ii).

In assessing sanctions, the Court also may "consider all of a party's discovery misconduct . . . including conduct which has been the subject of earlier sanctions." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997); *see also Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004) (party's "abiding contempt and continuing disregard for the magistrate's orders justified the sanction of dismissal and default" (quotation marks and alterations omitted)); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990) ("A court may consider prior misconduct when weighing a subsequent sanction motion"); *F.T.C. v. U.S.*

*Homeowners Relief, Inc.*, No. SA CV 10–1452–JST (PJWx), 2011 WL 6139676, at *4 (C.D. Cal. Oct. 21, 2011) (lesser sanctions insufficient where court already had imposed monetary sanctions and additional monetary sanctions would not "solve the problem" of the prejudice from disobedient party's misconduct).

Here, each of the relevant considerations strongly favors the imposition of the requested evidentiary sanctions.  Indeed, in almost every respect, the Court's findings in the R&R related to Tracker data apply equally, or with more force, to Defendants' violation of the Server Log Order as to Website data.

**B.**   **Defendants' Failure to Produce Website Data Was Willful And Mandates An Award Of Evidentiary Sanctions.**

Although a sanctionable violation must be "due to willfulness, bad faith, or fault of the party," *In re Heritage Bond Litigation*, 223 F.R.D. 527, 530 (C.D. Cal. 2004) (quotation marks omitted), "[d]isobedient conduct not shown to be outside the litigant's control meets this standard."  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).  Here, Defendants' refusal to obey the Server Log Order was squarely within their control – their failure to preserve and produce the Website data was a deliberate tactical decision to avoid producing highly incriminating evidence.

This Court ordered the rolling production of Website server data, no less frequently than every two weeks, for the duration of this litigation.  Server Log Order at 24-26.  Defendants unquestionably had the ability to comply with the Order.  Indeed, Defendants made two productions of Website server data, covering a 27-day period, from June 15, 2007 to July 11, 2007.  Fabrizio Decl. ¶ 5.  However, thereafter – from July 11, 2007 to the present – Defendants simply have failed to produce any additional Website data.  *Id.*  Thus, Defendants' decision to defy the Server Log Order as to Website data was deliberate.  Defendants *chose not to comply* in order to stem their potential liability, frustrate Plaintiffs' ability to collect full damages, and needlessly complicate the damages phase of this litigation.

For all the reasons this Court found Defendants' violation regarding Tracker data to be willful, *see* R&R at 7-10, Defendants' violation of the Server Log Order as to Website data was plainly willful as well.

**C.    Defendants' Misconduct Throughout this Litigation Confirms the Need for the Requested Sanctions.**

A party's prior misconduct bears on a court's determination of the willfulness of the party's violation and also on the futility of lesser sanctions.  *E.g.*, *Computer Task Group*, 364 F.3d at 1117; *Adriana Int'l Corp.*, 913 F.2d at 1411; *supra* at 4-5. Here, Defendants' consistent pattern of egregious misconduct throughout the course of this litigation counsels strongly in favor of the requested sanctions.  The abuse and misconduct by these Defendants is well documented.  As the Court previously has observed:

> [T]he court has considered and has already imposed less drastic sanctions.  The court granted plaintiffs' requests for reasonable attorneys' fees and costs five times due to defendants' discovery abuses and/or failure to comply with the court's orders, without any apparent effect. Moreover, the court expressly warned defendants that their failure to comply with their discovery obligations or discovery orders may result in evidentiary sanctions, including terminating sanctions.  In light of defendants' ongoing discovery abuses, this court concludes that any sanction less than evidentiary sanctions at this juncture would be pointless.

R&R at 12 (footnote omitted).

In this action, Defendants have violated multiple court orders, made material misrepresentations to the Court, destroyed evidence, taken indefensible discovery positions, and generally engaged in a consistent pattern of abusive discovery.  *E.g.*, Feb. 22, 2007 Order (ECF No. 56) at 3-4; May 31, 2007 (ECF No. 121) at 6; Server Log Order at 23-24; Aug. 6. 2007 Order (ECF No. 207) at 2-3; August 10 Order at 3-4.  This of course represents only the contemptuous conduct expressly found by

the Court. This Court also has explicitly warned Defendants that further noncompliance might result in evidentiary sanctions, *see* August 10 Order at 4, and has even admonished that the Court is contemplating referring Defendants' counsel to this District's Standing Committee on Discipline at the conclusion of the case, *see* Transcript, Feb. 20, 2007 Hearing (ECF No. 57) at 37. The "court is not required to tolerate noncompliance with its explicit instructions forever." *Payne*, 121 F.3d at 508; *see also Estrada v. Speno & Cohen*, 244 F.3d 1050, 1060 (9th Cir. 2001) (a party "may not willfully, repeatedly, and persistently disobey court orders even after receiving graduating sanctions").

With a damages trial fast approaching, the requested evidentiary sanctions are necessary to prevent Defendants from using their own misconduct to prejudice Plaintiffs. Beyond ameliorating the prejudice to Plaintiffs, the requested sanctions are needed here to further the core purpose of Rule 37: "to ensure that [Defendants do] not . . . profit from [their] failure to comply with discovery requirements." *Monaghan v. SZS 33 Assoc., L.P.*, 154 F.R.D. 87, 90 (S.D.N.Y. 1994); *see also Manriquez v. Huchins*, No. 1:09-cv-00456-LJO-BAM PC, 2012 WL 5880431, at *10 (E.D. Cal. Nov. 21, 2012).

**D.     The Requested Sanctions Will Remedy Otherwise Incurable Prejudice and are Reasonably Related to Defendants' Misconduct.**

The requested sanctions plainly "bear a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

1.     <u>Direct Infringement Should Be Established Based on the Appearance of Dot-Torrent Files on the Fung Websites.</u>

As noted above, the Court's Server Log Order required Defendants to preserve data from each of the Fung Websites and produce the data to Plaintiffs "no less frequently than every two weeks" "for the duration of the litigation." Server

Log Order at 24-25.  Specifically, as relevant here, the Court ordered the preservation and production of:  (i) IP addresses of the users of Defendants' websites who requested dot-torrent files; (ii) the specific dot-torrent files requested by users; and (iii) the dates and times of such requests.  *Id.* at 2.[3]

Defendants' willful violation of this Order plainly has prejudiced plaintiffs' ability to prepare its damages case for trial.  As the District Court held, for each copyrighted work on which they seek a statutory damages award, Plaintiffs are required to demonstrate the downloading of a dot-torrent file from one of the Fung Websites by a user in the United States.  August 7 Order at 2-4.  Under this standard, the Website data would have provided irrefutable proof of direct infringement of Plaintiffs' copyrighted works by Defendants' users in two respects. First, the Website server data would have contained the names of the dot-torrent files and each instance of a user downloading a dot-torrent file from one of the Fung Websites.  Thus, the data would have shown downloads of dot-torrent files for Plaintiffs' works.  Second, the Website data would have included the IP address of the downloading user.  With the IP address, Plaintiffs would have been able to determine which of the downloading users was located in the United States.  *E.g.*, *Fung I*, 2009 WL 6355911, at *9 (accepting IP address analysis as establishing infringement by users in the United States).

As this Court found in the R&R, "direct infringement is a core and threshold issue in this case, and . . . the server log data at issue is likely to be extremely probative of, if not dispositive" of this issue.  R&R at 11-12.  This ruling applies

---

[3] The Server Log Order permitted Defendants initially to produce Website data with IP address information masked, but further ordered Defendants to preserve the IP address information, in the event such information was later needed to determine the geographic location of downloading users (an issue Defendants have now put at issue).  *See* Server Log Order at 25.

with equal force here.  The extent of Defendants' monetary liability for inducing acts of direct infringement by Fung Website users is the central issue to be determined at trial.  The Website data would have shown millions (and likely tens of millions) of infringing downloads of Plaintiffs' copyrighted works; it would have allowed Plaintiffs to establish direct infringement beyond credible dispute.  The District Court in fact relied on Website data (from the 27 days of data produced) in granting summary judgment in favor of Plaintiffs on the issue of direct infringement by Defendants' U.S. users. *Fung I*, 2009 WL 6355911 at *9.  The Website data would be equally dispositive at trial, and likely would allow the issue of direct infringement to be established as a matter of law through a pre-trial summary judgment motion.

Of course, the 27 days of Website data Defendants initially produced does not begin to mitigate the prejudice to Plaintiffs.  The Court ordered Defendants to produce the Website data to Plaintiffs "no less frequently than every two weeks" "for the duration of the litigation."  Server Log Order at 24-25.  Defendants have failed to produce *years* of Website data.  Moreover, the 27-days of data represents only a tiny fraction of the infringement for which Defendants are liable.  It cannot, by definition, include the many thousands of Plaintiffs' copyrighted works that came into existence – and were infringed by Defendants – after July 11, 2007.  Finally, as Defendants have recently confirmed, they violated the Server Log Order even as to the 27 days of data by failing to preserve the IP addresses needed to identify U.S. users. *Infra* at 14.

Accordingly, the Court should enter an evidentiary sanction that: *Each of Plaintiffs' works which appeared as a dot torrent file on any of the Fung Websites during the infringement period has been directly infringed by Fung Website users in the United States in violation of United States copyright law."*  This sanction is

1  directly proportional to Defendants' violations and will not prevent them from

2  asserting any other appropriate arguments or defenses at trial.

3      2.    The Volume of Infringement of Each of Plaintiffs' Works Appearing on
            the Fung Sites Should be Deemed Established.

4

5      The Copyright Act permits a jury to award statutory damages as low as $750

6  and as high as $150,000 (for willful infringement) for each work infringed.  17

7  U.S.C. § 504(c).  The volume of infringement of each work is plainly a factor the

8  jury can and should consider in determining, within the broad range allowed, the

9  amount of statutory damages per work.  *See, e.g., Rogers v. Ecolor Studio*, No. 11–

10 CV–4493 (ARR)(RER), 2013 WL 752256, at *7 (E.D.N.Y. Feb. 7, 2013) (awarding

11 enhanced statutory damages award because defendants posted infringing work to the

12 Internet, and therefore "made their infringing work available to a limitless customer

13 base worldwide").

14     Here, the massive scale of Defendants' infringement would have been

15 established conclusively had Defendants produced the Website data as ordered by

16 the Court.  In particular, the data would have shown every time one of Defendants'

17 users downloaded a dot-torrent file for one of Plaintiffs' works.  This evidence

18 would have established millions (and likely tens of millions) of acts of direct

19 infringement of Plaintiffs' copyrighted motion pictures and television programs –

20 thousands (and, in many cases, tens of thousands) of separate infringements of *each

21 copyrighted work* in suit.

22     An analysis of the 27 days of Website data produced by Defendants confirms

23 that the requested sanction is reasonably related to Defendants' misconduct.  During

24 this brief time period alone, users of the Fung Websites downloaded dot-torrent files

25 for Plaintiffs' works hundreds of thousands of times in the aggregate and an average

26 of more than 2,000 times per work for the most popular works.  Fabrizio Decl. ¶ 6.

27 Defendants' willful violation of the Server Log Order has eliminated conclusive

28 evidence of comparable levels of infringement over a several year period.

Accordingly, the Court should enter the following evidentiary sanction relating to the volume of infringement: *For each dot-torrent file corresponding to one of Plaintiffs' copyrighted works that has appeared on a Fung Website, it shall be conclusively established that the associated copyrighted work was downloaded at least 2,000 times per month by users of the Fung Websites in the United States during the relevant statute of limitations period.* Such a sanction flows directly from Defendants' failure to preserve the Website data and is necessary to ameliorate the prejudice to Plaintiffs' ability to present their case to the jury.

### 3. Defendants Should Not be Permitted to Contest Evidence of Plaintiffs' Actual Damages.

For an award of statutory damages, a copyright plaintiff does not need to present any evidence of actual damages, and does not even need to have suffered actual damages. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001); *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). However, the magnitude of a plaintiff's actual harm from the infringement is a factor a jury is permitted to consider in deciding upon an award of statutory damages. *See, e.g.*, *Sennheiser Elec. Corp. v. Eichler*, No. CV 12–10809 MMM (PLAx), 2013 WL 3811775 (C.D. Cal. July 19, 2013) (identifying a copyright owner's lost revenues as a factor). Defendants, moreover, already have made clear that they will seek to argue to the jury that the *absence* of evidence by Plaintiffs of actual damages should dictate a lower statutory damages award. *E.g.*, Defs' Response to Plfs' Request for Status Conf., June 25, 2013 (ECF No. 523) ("Defs' Status Conf. Resp.") at 2.

Here, however, Defendants' violation of the Server Log Order as to Website data has denied Plaintiffs the information necessary to conduct a reasoned analysis of actual damages. As set forth above, the Website data would have provided conclusive evidence of the precise number of infringements of each of Plaintiffs'

copyrighted works.  That information necessarily would have been the foundation for an analysis to give the jury some order of magnitude of the *actual* damages caused by Defendants' infringement.  Without that information, any attempt by Plaintiffs to present an actual damages case would be met by Defendants' argument that actual damages are speculative.  *E.g.*, Defs' Status Conf. Resp. at 2 (raising Affirmative Defense that "any claim of damages is speculative"); Transcript, July 1, 2013 Status Conference (ECF No. 530) at 5:6-9 (noting that defendants had pleaded that damages were speculative).

Thus, Defendants' failure to produce the Website data has materially prejudiced Plaintiffs' ability to present an actual damages case, or even to present evidence of the order of magnitude of their actual damages to rebut arguments by Defendants regarding the absense of actual damages evidence.

Accordingly, Plaintiffs request that the Court enter the following evidentiary sanction:  *Defendants shall be precluded from presenting any argument to the jury to the effect that Plaintiffs have not offered evidence of actual damages caused by copyright infringement through the Fung Websites, or based on the absence of such actual damages evidence.*  Such sanction is directly and reasonably related to the prejudice caused by Defendants' defiance of the Server Log Order.

4.    <u>Plaintiffs Are Entitled to a Rebuttable Presumption as to the Infringing Content Associated with Dot-Torrent Files on the Fung Websites.</u>

In order to prove direct infringement, Plaintiffs must establish that a dot-torrent file downloaded from the Fung Websites corresponds to one of Plaintiffs' copyrighted works.  This should not be a contested issue, as the name of the dot-torrent file, or other associated information on the Fung Websites, often makes clear that the content associated with a dot-torrent file is in fact a copy of one of Plaintiffs' copyrighted movies or television programs.  For example, users of the Fung Site often post comments on a "detail page" for a particular dot-torrent file in which they provide information about the quality of the digital file for the

downloaded movie or television show.  Fabrizio Decl. ¶ 8.  However, Defendants have indicated that they intend to challenge such evidence as insufficient.  *See Defs.' Br. Regarding Damages Pursuant to Court Order of July 3, 2013 ("Defs' Br. re Damages") (ECF No. 546) at 7 (arguing that information appearing on the Fung Websites "do[es] not 'conclusively demonstrate[]' anything about the … content … of any of the listed files").*

To avoid having this issue disputed before the jury, Plaintiffs could verify the content associated with a particular dot-torrent file by downloading the actual movie or television show and manually reviewing it to demonstrate that it is an infringing copy of one of Plaintiffs' copyrighted works.

However, Defendants' failure to produce the Website data has materially prejudiced Plaintiffs' ability to download the content associated with dot-torrent files.  As dot-torrent files "age" (*i.e.*, as time passes from the original posting of the dot-torrent file) it gets more difficult to download the associated content file.  Fabrizio Decl. ¶ 7.  After years, it is often impossible or impracticable to download the content file associated with a particular dot-torrent file because there are fewer users online at any point in time acting as a source for the content; at a minimum, downloading a content file from an old dot-torrent file is far more difficult and costly.  *Id.*  This Court ordered Defendants to produce Website data beginning in June of 2007; those dot-torrent files are now over six years old.  Thus, Defendants' failure to produce the Website data has prejudiced Plaintiffs' ability to manually verify the content files associated with individual dot-torrent files.

Accordingly, Plaintiffs request that the Court enter the following evidentiary sanction:  *When a dot-torrent file purports to correspond to one of Plaintiffs' copyrighted works, as evidenced by the dot-torrent file name or related information from the Fung Websites, Plaintiffs shall be entitled to a rebuttable presumption that the content file associated with the dot-torrent file is in fact a copy of one of Plaintiffs' copyrighted works.  Defendants shall be permitted to rebut the*

*presumption by downloading the actual content file and demonstrating that the content is other than a copy of one of Plaintiffs' copyrighted works.* This sanction does not prevent Defendants from challenging the content associated with a dot-torrent file. At the same time, to the extent Defendants' failure to produce the Website data has made it impossible (or more difficult, burdensome or costly) to download the actual content associated with dot-torrent files, the requested sanction appropriately shifts the burden to Defendants.

**E.    Defendants' Eleventh Hour Claim To Have Preserved Website Data For Some Periods Of Time Does Not Excuse Their Contempt Or Ameliorate The Prejudice To Plaintiffs.**

On August 9, 2013, in preparation for this Application, Plaintiffs asked Defendants to confirm whether they had preserved the IP addresses for the 27 days of Website data produced in June/July 2007 as required by the Server Log Order. *See* Fabrizio Decl. ¶ 9 & Ex. 1, at 4; *supra* at 8 n.3 (in ordering production of Website data, the Court initially permitted Defendants to mask the IP addresses but expressly ordered that the unmasked IP addresses be preserved). Defendants responded as they have throughout this litigation: they delayed. Despite multiple "reminders," Defendants delayed a full week before responding, on August 16, that they had <u>not</u> preserved the IP addresses as ordered. Fabrizio Decl. ¶ 9 & Ex. 1, at 3. Thus, even as to the 27 days of Website data from June/July 2007, Defendants stand in contempt of the Server Log Order.

In their same August 16 email response, Defendants also responded vaguely that they "appear to have approximately five years' of server logs with unredacted IP addresses." Fabrizio Decl. ¶ 10 & Ex. 1, at 3. Plaintiffs immediately requested clarification, as Defendants' August 16 email did not give any indication as to whether the alleged five years of data was Website data at all, much less that it included the data fields required by the Server Log Order. Fabrizio Decl. ¶ 10 & Ex. 1, at 2. Defendants' obscure comment also seemed at odds with a representation

Defendants had made to the District Court just a couple of weeks earlier.  In a brief to the District Court, Defendants said that the Website data they had preserved was "largely irrelevant to the damages phase of the case" because it covers time periods after the injunction issued in May 2010 (and thus after Defendants purported to block U.S. users from the Fung Websites).  Defs' Br. re Damages, ECF No. 546, at 1.

On August 19, Defendants – for the first time in six years – *claimed* that they had in fact preserved the Website data ordered by the Court "from May 2008 to the present."  *See* Fabrizio Decl. ¶ 11 & Ex. 1, at 1.  This revelation (if true) only emphasizes the egregiousness of Defendants' contempt of the Server Log Order.  Defendants, in the past, have complained about the burden and difficulty of preserving the server log data.  Such excuses do not justify noncompliance with a valid Court Order, as this Court has rightly noted.  *E.g.,* R&R at 9-10.  But if Defendants have in fact been preserving the Website data (at least since May 2008), then they have had this critical data in their possession for years, and simply have been refusing to produce it.  There can be no excuse for such blatant disregard of a Court Order.

The District Court has ordered that this case proceed to a trial on damages on November 5, 2013 – in approximately 10 weeks.  Even an immediate production of Website data at this late date could not cure the prejudice to Plaintiffs.[4]  After the data is produced, Plaintiffs would need to conduct extensive data analyses to sort through the data and identify the millions (and potentially tens of millions) of dot-

---

[4] Defendants, moreover, are claiming it will take at least 10 days to produce the data.  Mindful of Defendants' long history in this case of missing deadlines and producing data in unusable formats or with key data fields missing, the claimed 10 days must be viewed as the beginning of a long and arduous process of actually receiving a complete production of usable data.

1  torrent files for Plaintiffs' copyrighted works that were downloaded from the Fung

2  sites by users in the United States.  This process requires substantial manual review

3  of dot-torrent files (measured in the many hundreds of hours of lawyer and paralegal

4  time).  Fabrizio Decl. ¶ 12.  Among other analyses, Plaintiffs then would need to

5  gather evidence about each such dot-torrent file and attempt to download the content

6  file to verify it, a process that again requires substantial manual effort.  *Id.*  Once

7  Plaintiffs have identified the thousands of copyrighted works in suit through this

8  process (from a pool of candidates that undoubtedly will be a multiple of that

9  number), Plaintiffs will have to provide the list to Defendants, and then assemble

10  and produce documentation demonstrating their ownership of each of the works in

11  suit.  *Id.*  That process cannot reasonably be completed in the time before trial.  *Id.*

12  Thus, Defendants' "offer" to produce Website data now – after a six year delay and

13  only 10 weeks before trial – can only be viewed as a tactical maneuver either to

14  delay the trial or to materially prejudice Plaintiffs' trial preparation.[5]

15        The Ninth Circuit has made clear that "belated compliance with discovery

16  orders does not preclude the imposition of sanctions . . . .  Last-minute tender of

17  _____

18  [5] A timely production of the Website data would have enabled Plaintiffs to prove
conclusively the facts that are the subject of the requested evidentiary sanctions.
19  With the data, those facts could not have been credibly disputed.  Accordingly,
Plaintiffs would have preferred to be able to present the jury with the actual data,
20  rather than a jury instruction stating that certain facts are established.  Plaintiffs, for
example, believe it would be far more persuasive to a jury to be able to know the
21  actual number of times each of Plaintiffs' copyrighted works were infringed.  For
this reason, Plaintiffs have engaged (and continue to engage) with Defendants in an
22  effort to see if an immediate data production (ultimately combined with some form
23  of sanctions) might present a viable resolution.  Based on discussions to date, and
Plaintiffs' history with these Defendants, such a resolution does not seem likely.
24  Given the limited time remaining before trial – and because the issues in this
Application materially affect ongoing discovery and trial preparation, as well as the
25  trial itself – Plaintiffs could not further delay the filing of this Application, even
26  while discussions with Defendants continue.

27

28

documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Fair Housing of Marin*, 285 F.3d at 906 (quotation marks and alteration omitted) (affirming order entering default judgment notwithstanding late production of documents). *See also, e.g., Payne*, 121 F.3d at 508 (affirming order dismissing case because "[t]he issue is not whether Exxon and VECO eventually obtained the information that they needed, or whether plaintiffs are now willing to provide it, but whether plaintiffs' repeated failure to provide documents and information in a timely fashion prejudiced the ability of Exxon and VECO to prepare their case for trial"); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348-55 (9th Cir. 1995) (affirming dismissal of defendant's counterclaim based on late production of documents, which was consistent with defendant's pattern of misconduct in the case); *Brotby*, 364 F.3d at 1116 (affirming terminating sanctions because defendant's productions were "mostly incomplete or fabricated – and dribbled in only after a court order," "unnecessarily delayed the litigation" and prejudiced the plaintiff).

Defendants' excessive delay in revealing the existence of Website data from May 2008 is reason enough to impose the requested sanctions.  Moreover, even if the trial were not set to begin in 10 weeks, Defendants' contempt of the Server Log Order would still have caused irreparable prejudice to Plaintiffs:

o <u>First</u>, this Court ordered Defendants to preserve Website data and to produce it to Plaintiffs no less frequently than every two weeks beginning in June 2007.  Server Log Order at 24-26.  Defendants produced 27 days of data, which ended on July 11, 2007, and produced nothing further after that.  Even in claiming to have data from May 2008 forward, Defendants acknowledge that they did not preserve Website data from July 11, 2007 through May 2008.  Thus, Defendants have despoiled almost a full year of data – approximately one-third of the most relevant time period.  That data would have reflected millions of acts of infringement of thousands of Plaintiffs'

copyrighted works, including infringement of works that were first released or still in theaters during that 2007/2008 timeframe.  For this missing data, all of the prejudice discussed above remains unaffected.  *See supra* at 7-14.

o Second, a production now still equally prejudices Plaintiffs in that there is simply no time for Plaintiffs to engage experts and conduct actual damages analyses.  Thus, the prejudice described above regarding the presentation of actual damages evidence remains unaffected.  *See supra* at 11-12.

o Third, a production now still equally prejudices Plaintiffs in that, even for the May 2008 and later data, the dot-torrent files are going to be several years old.  As discussed above, downloading the content files to manually verify them will be far more difficult or, in many cases, impracticable.  *See supra* at 13.

In ordering a November 5 trial, Judge Wilson noted that "[t]his case has been percolating for a long time."  Transcript, August 5, 2013 Hearing, at 8:17-18.  That of course was an understatement.  Plaintiffs filed this case in 2006.  With a damages trial in 10 weeks, Plaintiffs finally will be able to conclude this case and begin to collect damages for Defendants' massive infringement.  Defendants' eleventh hour claim that they have and will produce Website data is too little, too late, and does not change the need for the requested evidentiary sanctions.

**F.    Defendants Should Be Ordered To Pay Plaintiffs' Attorneys' Fees And Costs For Failing To Produce Tracker And Website Data.**

Finally, although declining to adopt the recommended sanction for Defendants' violation regarding the Tracker data, the District Court held that Defendants' conduct was "sanctionable" and remanded the issue to Your Honor for the imposition of "an appropriate sanction."  *See* August 7 Order at 3.  When denying Plaintiffs' request for attorneys' fees in connection with the R&R, Your Honor expressly stated that a further award of fees was unnecessary in light of the other evidentiary sanctions recommended.  September 19, 2007 Order Granting in

Part and Denying in Part Plaintiffs' Ex Parte Application (ECF No. 273).  In that the District Court did not adopt the evidentiary sanctions recommended, respectfully, this Court should award Plaintiffs their attorneys' fees at this time.

Plaintiffs had no choice but to seek the R&R as a result of Defendants' contemptuous conduct.  As the District Court observed, "[h]ad this Court, or the Ninth Circuit, adopted [Defendants'] theory of liability, the tracker server data would have been *necessary* to Plaintiffs' claims."  *See* August 7 Order at 2 (emphasis added).  There should be meaningful consequences for Defendants' wholesale spoliation of evidence that this Court noted could have been "key" to the outcome of this litigation.  Server Log Order at 24-26.  Accordingly, awarding Plaintiffs the attorneys' fees and costs expended in pursuing the September 19, 2007 Report & Recommendation is amply warranted.  For the same reasons, the Court should award Plaintiffs their attorneys' fees and costs expending in making this Application.

Dated:  August 20, 2013     Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Steven B. Fabrizio
  Steven B. Fabrizio

STEVEN B. FABRIZIO
GIANNI P. SERVODIDIO
 JENNER & BLOCK LLP

KAREN R. THORLAND
FARNAZ M. ALEMI
 MOTION PICTURE ASSOCIATION OF
 AMERICA
15301 Ventura Boulevard
Building E
Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*