Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
Thomas Patrick Lane (admitted *pro hac vice*)
tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

Ira P. Rothken (SBN: 160029)
ira@techfirm.net
Jared R. Smith (SBN: 130343)
jared@techfirm.net
**ROTHKEN LAW FIRM**
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:   (415) 924-4250
Facsimile:   (415) 924-2905

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111-5802
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>             Plaintiffs,<br><br>     v.<br><br>GARY FUNG, et al.,<br><br>             Defendants. | **Case No. CV 06-5578-SVW (JCx)**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR EVIDENTIARY SANCTIONS FOR VIOLATION OF THE COURT'S JUNE 8, 2007 ORDER—FEES REQUESTED** |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................... 4

    A. The Court Phased The Case With Respect To Liability And Damages ............................................................................................. 4

        1. Plaintiffs Objected To Any Discovery Not Directly Bearing on Liability During The Liability Phase ...................... 4

        2. Discovery Regarding Defendants' Server Log Data In Liability Phase ......................................................................... 6

    B. Despite Affirming Liability Based On Inducement, The Ninth Circuit Makes Clear Causation Must Be Carefully Assessed In Damages Phase ............................................................................... 8

    C. The District Court Recently Commences Damages Phase And Sets Damages Trial ........................................................................... 9

    D. The District Court Rejects The R & R, Finding The Recommended Evidentiary Sanctions Unnecessary Because it Was Directed at Tracker Data That Plaintiffs Have Now Conceded Is Not Relevant to Damages ............................................... 10

    E. In Light of the District Court's August 7, 2013 Order, Plaintiffs Contact Defendants Seeking Unredacted IP Addresses For The First Time on August 9, 2013. ............................................... 11

    F. With Their *Ex Parte* Application, Despite Being Provided Necessary Server Log Data, Plaintiffs Continue Their Refusal To Identify The Works At Issue to Avoid Their Own Discovery Obligations And Burden of Proving Their Case ..................................... 14

III. PLAINTIFFS' *EX PARTE* APPLICATION SHOULD BE DENIED .............. 14

    A. Plaintiffs' *Ex Parte* Application Is Procedurally Improper ..................... 14

    B. Plaintiffs Must Prove Statutory Damages To Jury .................................. 16

    C. Evidentiary Sanctions Are Not Warranted Here ...................................... 16

        1. Plaintiffs Cannot Meet The Standard For Evidentiary Sanctions ......................................................................... 17

        2. There is No "Incurable Prejudice" To Plaintiffs As Defendants Have Complied With The Court's Orders And The Parties' Agreements ................................................. 22

        3. Prior Orders In This Case Cannot Serve To Justify The Unwarranted Sanctions Sought Here ....................................... 23

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

4.   It Is Defendants That Are Being Prejudiced By Plaintiffs'
Attempts To Run The Clock And Proceed To Damages Trial
Before Identifying The Works At Issue And Preventing
Defendants From Meaningfully Preparing Their Defense ............23

5.   No Further Attorneys' Fees Should Be Awarded Here.................25

IV.   CONCLUSION ................................................25

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

Apple Inc. v. Samsung Elecs. Co., Ltd.
888 F. Supp. 2d 976 (N.D. Cal. 2012)...............................................21

Connecticut General Life Insurance Co. v. New Images Beverly Hills
482 F.3d 1091 (9th Cir. 2007) ............................................................17

E.E.O.C. v. Fry's Elecs., Inc.
874 F. Supp. 2d 1042 (W.D. Wash. 2012) .........................................23

Fair Housingof Main v. Combs
285 F.3d 899 (9th Cir. 2002) ..............................................................16

Feltner v. Columbia Pictures Television, Inc.
523 U.S. 340 (1998)............................................................................16

In re Hitachi Television Optical Block Cases
2011 WL 3563781 (S.D. Cal. Aug. 12, 2011)....................................20

Keithley v. Homestore.com, Inc.
2008 WL 4830752 (N.D. Cal. Nov. 6, 2008) .....................................21

M2 Software, Inc. v. M2 Commc'ns, L.L.C.
217 F.R.D. 499 (C.D. Cal. 2003)........................................................18

Mission Power Eng'g Co. v. Cont'l Cas. Co.
883 F.Supp. 488 (C.D.Cal. 1995) ................................................14, 15

Navaellier v. Sletten
262 F.3d 923 (9th Cir. 2001) ..............................................................17

Nursing Home Pension Fund v. Oracle Corp.
254 F.R.D. 559 (N.D. Cal. 2008) .......................................................21

*Realnetworks, Inc. DVD Copy Control Ass'n. Inc.*
264 F.R.D. 517 (N.D. Cal. 2009) .......................................................11

*Reinsdorf v. Skechers U.S.A.*, Inc.,
2013 WL 3878685, at *24-26 (C.D. Cal. July 19, 2013) ...................19

United States v, Kahaluu Constr. Co., Inc.
857 F.2d 600 (9th Cir. 1988) ..............................................................16

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**STATUTES**

17 U.S.C. § 504(c) ..................................................................................16

**OTHER AUTHORITIES**

U.S. Const. Amend. 7 ...........................................................................16

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

Pursuant to the Court's August 22, 2013 Order (Dkt. Nos. 560), Defendants hereby oppose Plaintiffs' *Ex Parte* Application For Evidentiary Sanctions (Dkt. No. 558) ("Plaintiffs' *Ex Parte* Application").

## I.   **INTRODUCTION**

Plaintiffs' *Ex Parte* Application is unnecessary and unjustified, and relies upon a surprising distortion of the record regarding Defendants' production of web server log data and the parties' communications and agreements about such production. This action has been phased between liability and damages, and the damages phase has recently begun.   After specifically telling Defendants' counsel that Plaintiffs had sufficient web server log data for the liability phase back in 2007—after Defendants produced 27 days' of data with redacted IP addresses pursuant to this Court's order— and *having **not once** in the last six plus years since requested an unredacted version of that data or any further production,* Plaintiffs now run to Court on an emergency basis and claim that Plaintiffs are entitled to in effect case terminating sanctions. Moreover, Plaintiffs seek this extreme remedy despite the fact that the Court has *never* ordered Defendants to produced unredacted versions of IP addresses, and despite the fact that the parties have reached agreement on what portion of the IP addresses should be redacted and Plaintiffs will have in hand the web server log data for the two year range they have requested by Wednesday, eleven days from first requesting it.

In his August 7, 2013 Order, Judge Wilson held that in order to be entitled to statutory damages for works-in-suit, Plaintiffs must establish that (1) they own the copyright in such work; and (2) that an *American* user downloaded a Dot-Torrent file of that work from one of Defendants' Websites.  [8/7/13 Order at 5 (Dkt. No. 554) (emphasis in original).]  Plaintiffs now seek to short circuit the second element of proof by asking this Court to recommend an evidentiary sanction establishing that *every one of* Plaintiffs' works which appeared as a Dot-Torrent file on any of Defendants' websites has been infringed by an American user, among various other relief.  Plaintiffs seek this relief despite the fact that pursuant to agreements reached

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

between the parties, Plaintiffs will have the web server data for the full two year period they have requested this week, shortly after they first requested it, and several days before their reply to this *Ex Parte* Application is even filed.

Plaintiffs recently asked the District Court to adopt this Court's 2007 Report and Recommendation of evidentiary sanctions ("R & R"), which they claimed would have relieved their burden of demonstrating the infringements actually occurred. Plaintiffs made this request even though that R & R related to discovery regarding *tracker* server log data sought by Plaintiffs in the liability phase, and specifically related to information Plaintiffs claimed they needed to support their 2007 motion for summary judgment.  On August 7, 2013 the District Court denied Plaintiffs' request to apply the R & R from the liability phase to the damages phase, finding evidentiary sanctions unnecessary, because the order related to tracker data not relevant to the damages phase.   [Order Dkt. 554.]

In light of the Court's August 7 Order, Plaintiffs have to prove that an American user downloaded each work for which Plaintiffs' are claiming statutory damages from one of Defendants' websites.  [*Id.* at 4.]   Accordingly, two days later on August 9, 2013 Plaintiffs emailed Defendants' counsel asking whether Defendants still had the unredacted version of the 27 days' worth of web server log data Defendants had produced back in June of 2007.  [Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), ¶ 2 and Exh. 1.]  Plaintiffs' August 9, 2013 email only inquired about the 27 days' worth of data from 2007 and did not request any additional web server log data.  This was Plaintiffs' very first request regarding web server log data in more than six years.  [Declaration of Jared Smith ("Smith Decl.") ¶¶ 10-13.]  Defendants immediately investigated and determined that the unredacted version of the 27 days of data had been lost due to a server crash, but that Defendants had preserved more than five years' worth of unredacted web server log data from mid-2008 to present.  Defendants' counsel promptly explained this to Plaintiffs in an August 16 email.  [Golinveaux Decl., ¶ 3 and Exh. 2].

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

2

In response, on Saturday morning, August 17, 2013, Plaintiffs asked additional questions about the web server log data, including whether Defendants would be willing to produce it.  Defendants' counsel responded on Monday morning, August 19,  explaining that they were available to meet and confer about an appropriate form of the production to address the privacy concerns of providing unredacted IP addresses.  Within less than an hour, the parties had a phone conference during which Defendants agreed to produce the two year range of web server log data requested by Plaintiffs, and discussed appropriate redactions to the IP addresses that would allow Plaintiffs to identify the country of origin of each IP address, but would protect the identity of individual users.  [*Id.*, ¶ 5].  Defendants explained that they could complete the production to Plaintiffs within ten days or less.  Plaintiffs responded by requesting that Defendants immediately provide a sample of the data to prove that Defendants had in fact maintained it, and threatened to file an *ex parte* application with the Court if Defendants did not.  Defendants produced the requested sample the very next day and agreed to expedite the production of the remaining data.  Despite already having the requested sample data in hand Tuesday afternoon, several hours later Plaintiffs proceeded to file this *Ex Parte* Application and sent Defendants an email acknowledging that they had received the requested sample data prior to filing their *ex parte* and would continue to work with Defendants regarding production of the data.

Despite promptly having in hand the data they had requested, complete with IP addresses that they agree are sufficient to identify whether a given user was in the U.S., Plaintiffs thought it was worth filing this *Ex Parte* Application anyway to take a stab at muddying the waters and attempting to achieve case dispositive evidentiary sanctions.  Copyright infringement carries statutory damages of up to $150,000 per work infringed.  Plaintiffs should not be allowed to short cut proving the most basic elements of their damages case based upon nothing more than bald distortions of the record.  Defendants respectfully request that the Court deny Plaintiffs' *Ex Parte* Application in its entirety.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## II. FACTUAL BACKGROUND

### A. The Court Phased The Case With Respect To Liability And Damages

On November 6, 2006, Judge Wilson bifurcated this case into liability and damages for the purposes of discovery, summary judgment and trial, whereby Defendants were to "provide all evidence as to" their "state of mind" and "how site works." [Smith Decl. ¶ 3 (11/6/06 Status Conference Minute Order (Dkt. 33).]  On February 20, 2007, the District Court further clarified the scheduling order, noting that "Plaintiffs are hereby entitled to seek discovery necessary for filing a motion for summary judgment as to inducement, contributory infringement AND vicarious infringement." [Smith Decl. ¶ 3 (2/20/07 Orders Modifying Summary Judgment Schedule (Dkt. No. 49-50); Trans. 2/20/09 (Dkt. No. 55)).]  The District Court has continually clarified that liability discovery was to be completed prior to the filing of motions for summary judgment, including stating in an August 25, 2009 Order that it "**should not be construed as an invitation to the parties to engage in additional discovery**." [Smith Decl. ¶ 16, 8/25/09 Order (Dkt. 358), p. 4, n.2.]  Thus, Plaintiffs and Defendants reasonably believed and proceeded on the basis that, once Plaintiffs filed their summary judgment motion on September 6, 2007, the liability discovery phase had closed and discovery would reopen pursuant to a future Court order at the appropriate time, if ever, for the damages phase.

#### 1. Plaintiffs Objected To Any Discovery Not Directly Bearing on Liability During The Liability Phase

During the liability phase, Plaintiffs objected and refused to respond to discovery they claimed related to damages, including in response to Defendants' Interrogatories and Document Requests.  [Smith Decl. ¶¶ 3-4, Exs. A-C.]  In response to Defendants' interrogatories, Plaintiffs resisted requests that they claimed were "beyond the scope" of the "core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint."  [*Id.* at ¶ 4 and Ex. A.]  Plaintiffs also objected to Defendants' discovery "to the extent that

4

they seek discovery concerning the total number of infringing works claimed by the plaintiffs in this case and/or damages" and that "remedial issues such as these will be deferred until after summary judgment proceedings on the core issue of defendants' secondary liability."  [*Id.* at ¶ 4 and Ex. B.]

Plaintiffs also objected to the following five topics in connection with an *ex parte* application regarding Defendants' 30(b)(6) notice.  [*Id.* at ¶ 4 and Ex. C (*Ex Parte* App. by Plaintiffs For Protective Order Re Rule 30(b)(6) Depositions], successfully resisting discovery that Plaintiffs claimed would not to be appropriate until the damages phase:

- *Topic 10*: Any and all information related to primary infringement that occurred in relation to use of or arising out of Defendants' Websites.
- *Topic 12*: Any and all information related to copyrighted works that were downloaded in an unauthorized manner using any torrent file found via Defendants' Websites.
- *Topic 13*: Any and all information related to Internet Files referenced by torrent files obtained using the Defendants' Websites that MPAA and/or Plaintiffs or their representatives actually listened to or viewed or analyzed.
- *Topic 28*: Any and all information related to communications, documents, information, and data related to the number of downloads of plaintiffs' copyrighted works arising out of torrent files downloaded using Defendants' Websites.
- *Topic 29:* Any and all information related to plaintiffs['] copyright registrations for the copyrights mentioned in the complaint or at issue in this case.

As Plaintiffs argued in resisting discovery regarding these topics earlier, Plaintiffs argued that they "all get at one thing: plaintiffs' knowledge and evidence of direct infringement of their copyrighted works through defendants' sites."  [*Id.* at p. 10.]  Plaintiffs recognized that such "issue has obvious relevance to the case as a whole," and noted that Plaintiffs "do not dispute that, at the appropriate time,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   defendants will have the opportunity to take appropriate discovery as to all works

2   directly infringed by defendants' users for which plaintiffs are seeking to hold

3   defendants liable as secondary copyright infringers."  [*Id* at p. 10.]  To date Plaintiffs

4   have not provided any such discovery, clearly believing it was properly deferred to the

5   damages phase that began just last month.

6

7   **2.    Discovery Regarding Defendants' Server Log Data In Liability Phase**

8       Plaintiffs sought production in the liability phase of "server log data," and filed

9   a motion to compel Defendants to capture, preserve and produce transient data from

10  Defendants' website servers and from Defendants' tracker servers.  The novelty of

11  this request and the confusion created due to the "server log data" request being

12  directed at two entirely different types of servers (website servers and tracker servers)

13  led to several months of negotiations, productions, motions and discovery orders

14  compelling preservation and production.  [Smith Decl. ¶ 5.]

15      On June 8, 2007, the Court provided direction on data preservation, stating that:

16      Defendants are directed to commence preservation of the Server Log

17      Data to the extent not already being preserved…for the duration of this

18      litigation or until further order of this court or the assigned District Judge.

19      As there may well be multiple methods by which defendants can preserve

20      such data, the court does not by this order mandate the particular method

21      by which defendants are to preserve the Server Log Data.

22      [6/8/07 Order, Dkt. No. 146.]

23      The Court further ordered that "Defendants shall initially produce in native

24  format" within two weeks and that Defendants had a continuing obligation to "update

25  such production."  [*Id.*]  The Court allowed flexibility as to what data Defendants

26  were to preserve, stating that if Defendants "are able to preserve and produce all

27  Server Log Data through Google Analytics, nothing in this order precludes"

28  Defendants from "satisfying their obligations under this order in that fashion."  [*Id.*at

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   n. 21.]  The Court further provided some leeway as to how much and how often the

2   parties needed to produce data for purposes of the liability phase of discovery, stating

3   that "the court encourages the parties to meet and confer regarding sampling" and if

4   appropriate the parties could cooperate in agreeing to "modify[] the scope of

5   preservation and production" and noted that the order is "without prejudice" to

6   Defendants seeking to shift the costs of preservation and production." [*Id.* at n. 22.]

7        The Court also ruled that in order to preserve the privacy of isoHunt's users,

8   Defendants could "mask" the IP addresses of server log data that it produced to

9   Plaintiffs. The Court instructed that the masked IP addresses must be consistent, such

10  that every time a distinct IP address appeared in a server log file, it would have the

11  same "mask" in the produced server log.  In order to provide consistent masking,

12  isoHunt applied a one-way hashing function to the IP addresses before isoHunt

13  produced the server logs to Plaintiffs.  [Declaration of Gary Fung ("Fung Decl.") at ¶

14  5.]  Because the hashing algorithm he used was common and publicly known, in order

15  to ensure that the information was secure, isoHunt performed the hashing using a

16  "salt"—an extra variable, not publicly known, that provides a heightened level of

17  security.  [*Id.*]  The Court has never ordered Defendants to produce the unmasked IP

18  addresses.

19       Counsel for the parties continued to negotiate production issues through July

20  11, 2007.  During this time, Defendants produced 27 days' worth of website server log

21  data pursuant to the Court's Order—dating from June 15 through June 27, 2007, and

22  then from June 27 to July 11, 2007—with IP addresses redacted.  [*Id.* at ¶ 14.]

23       During the course of their discussions regarding Defendants' server log

24  production, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs had

25  obtained sufficient website server log data for purposes of Plaintiffs filing their motion

26  for summary judgment with the 27 days of web server logs, and thus had sufficient

27  website server log data to complete the liability phase of litigation, so that no

28  additional website server log data need be produced at that time.  [Smith Decl. ¶ 10.]

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

From that point on, the subsequent dispute, as reflected in Plaintiffs' two *ex parte* applications for sanctions, were not directed towards website server log data at all, but rather towards compelling production of Defendants' *tracker* server log data. [*Id.* at ¶¶ 11-12, 14 (8/21/07 (Dkt. No. 234)); 7/20/07 (Dkt. No. 196).]  In fact, in Plaintiffs' July 20, 2007 *ex parte* application, Plaintiffs acknowledged that Defendants had produced *website* server log data and thus Plaintiffs' application was only related to seeking *tracker* server log data.  [Smith Decl. at ¶¶ 10, 13-15 (*Ex Parte* at 3:17-19 (Dkt. No. 196), Fabrizio Decl., ¶ 3).]  In other words, Plaintiffs have never made any motion to this Court complaining about Defendants' production of *website* server log data until now, more than six years later, at the commencement of the damages phase. And Plaintiffs do so after telling Defendants that Plaintiffs did not require any additional website server log data for liability; and never once since these discussions have Plaintiffs requested that Defendants produce any further website server log data.

Consistent with the parties' understanding that liability phase discovery ended with the filing of Plaintiffs' motion for summary judgment on September 6, 2007, neither party has produced *any* discovery in this case since that date.  [Smith Decl. ¶¶ 11-13.]  Since at least mid-July 2007, Defendants have understood that they were to continue to preserve website server log data pursuant to the ongoing litigation hold, to be produced further during the discovery phase regarding damages, to the extent necessary, relevant and requested by Plaintiffs.  [*Id.* at ¶ 13.]  Defendants preserved website server log files initially on isoHunt servers, and beginning in 2008, on back-up tapes.  [Fung Decl. ¶¶ 11-12.]  Unredacted website server log data from May 25, 2008 to the present was preserved on a computer tape backup system.  [Fung ¶¶ 11-13.]  The website server logs in question contain, among other things, information about user downloads, including the date and time of each download; the name of the downloaded file; and the IP address of the downloading user.  [Fung at ¶ 3.]

**B.   Despite Affirming Liability Based On Inducement, The Ninth Circuit Makes Clear Causation Must Be Carefully Assessed In Damages Phase**

In its decision the Ninth Circuit explained that even though it was adopting a "loose causation" theory, it expected the District Court would deal with those issues specifically when assessing damages, stating:

> We do not decide the degree to which Fung can be held liable for having caused infringements by users of his sites or trackers. The only issue presently before us is the permanent injunction, which, as in *Grokster III*, does not in this case depend on the "exact calculation of infringing use[ ] as a basis for a claim of damages." 545 U.S. at 941, 125 S.Ct. 2764. We therefore need not further entertain Fung's causation arguments at this time, but leave it to the district court to consider them, in light of the observations we have made, when it calculates damages.

Thus, the Ninth Circuit made clear that "causation… cannot be assumed" and that Plaintiffs must plausibly link direct infringements of the works to Defendants' inducements. *Fung II* at 1038-39. As the Ninth Circuit explicitly cautioned, "proving that an entity had an unlawful purpose at a particular time in providing a product or service does not infinitely expand its liability in either temporal direction…an individual or entity's unlawful objective at time B is not a virus that infects all future actions. People, companies and technologies must be allowed to rehabilitate… lest the public be deprived of a useful good or service they are still capable of producing." *Id.* at 1038.

## C.   The District Court Recently Commences Damages Phase And Sets Damages Trial

The first Status Conference in this case since the liability phase concluded was in July 2013, where Defendants explained they would need time to conduct discovery into the works in suit, which Plaintiffs have yet to identify. [Defendants' Response Plaintiffs' Request for Scheduling Conference (Dkt. No. 532) 3 of 6:3-19; Golinveaux Decl., ¶ 10 and Exh. 6, 7/1/13 Trans. 16:2-17:3.]

The District Court's determination on the injunction and inducement liability thus far assessed liability based only upon a list of "44 Exemplar" works, and not any

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

identified infringements of the clips in suit.  For the first time on July 1, 2013, Plaintiffs' counsel represented that Plaintiffs will be seeking statutory damages for 3,000-5,000 as yet unidentified works.  [*Id.* at 18:11-18.]

When asked by the District Court at a subsequent hearing, on August 5, 2013, when Plaintiffs would be prepared to go to trial, Plaintiffs proposed November 2013. [Golinveaux Decl. ¶ 11 and Exh. 7 (8/5/13 Trans. 8:15-9:1).]  Plaintiffs did not indicate or request any particular amount of time to conduct discovery in the damages phase to the District Court, and made no mention that they required additional web server log data, or would be unable to identify the works before trial because their expert needed a certain amount of time to review the data (apparently on the mistaken impression that they would be able to rely on this Court's 2007 R & R regarding sanctions to prove their damages case, as further discussed in Section D below). Instead, Plaintiffs informed the Court on August 5, 2013 that they would be prepared to go to trial in November 2013, without any reservation.  *Id.*

On August 7, 2013, the Court set jury trial for the damages phase for November 5, 2013.  [Dkt. 554].  The District Court also ordered that Plaintiffs identify the works for which they are actually seeking damages, though to date, Plaintiffs have refused to commit to a timeframe for doing so.

### D. The District Court Rejects The R & R, Finding The Recommended Evidentiary Sanctions Unnecessary Because it Was Directed at Tracker Data That Plaintiffs Have Now Conceded Is Not Relevant to Damages

At the July 1, 2013 Status Conference before the District Court, Plaintiffs also indicated that they would not be required to actually demonstrate through evidence that direct infringement occurred to prove their case if the District Court would adopt this Court's R & R that had been pending with the District Court since 2007. [Golinveax Decl. ¶ 10 and Exh. 6, at 6:8-7:24.]  Plaintiffs did not draw any distinction or mention that the R & R at issue was related only to *tracker* data.  Plaintiffs were not focused on obtaining any additional server log data from Defendants at this time (and

indeed had not made any such request before this month over the past six years) but were instead hoping to relieve their burdens of proof altogether if the District Court adopted the R & R.

The District Court, however, found that because the R & R was related to *tracker* data, which was not relevant to damages, it had no bearing on Plaintiffs' obligation to demonstrate that the underlying direct infringements occurred by United States users downloading dot torrent files through Defendants' websites.  [8/7/13 Order, Dkt. 554 at 2.]   As the District Court noted in its August 7, 2013 Order denying evidentiary sanctions and the R & R, evidentiary sanctions should not be awarded where they are "unnecessary."  (*Id.*) (citing *Realnetworks, Inc. DVD Copy Control Ass'n. Inc*., 264 F.R.D. 517, 529 (N.D. Cal. 2009) (where there are other sources of discovering the evidence at issue, evidentiary sanctions not warranted).

Significantly, and contrary to Plaintiffs' assertion that Defendants had not previously disclosed this fact (Fabrizio Decl., ¶ 11), Defendants made clear in their brief in response to the renewal of the request for R & R over six weeks ago that Defendants had preserved the website server log data at issue in Plaintiffs' *Ex Parte* Application (Dkt. No. 546, 4:1-3) ("Defendants have preserved the website server data and will produce it…").[1]   But it was not until after the R & R was denied by the District Court that Plaintiffs showed any interest in obtaining the preserved data at issue in this *Ex Parte* Application.

**E.    In Light of the District Court's August 7, 2013 Order, Plaintiffs Contact Defendants Seeking Unredacted IP Addresses For The First Time on August 9, 2013.**

In its August 7, 2013 Order, the District Court held that for Plaintiffs to prove statutory damages for works-in-suit, Plaintiffs must establish (1) ownership over the work; and (2) that an *American* user downloaded a Dot-Torrrent file of that work from

---

[1] While Defendants continue to believe such data is not relevant to a determination of damages based upon a finding of liability as to the 44 sample works at issue in Plaintiffs' motion for summary judgment, Defendants made clear that such data had been preserved.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Defendants' websites, and denied Plaintiffs' request for evidentiary sanctions based upon the R & R.  [8/7/13 Order at 5 (Dkt. No. 554) (emphasis in original).]  In light of the District Court's August 7, 2013 Order, Plaintiffs realized they needed to seek additional information from Defendants to prove their case.

In the more than six years since Defendants completed production of the 27 days of website server log data on July 11, 2007, Plaintiffs' counsel did not make a single request (formal or informal) for Defendants to either provide an unredacted version of the 27 days of data ending July 11, 2007 or any further web server log production.  [Smith at ¶ 14].  During a telephone conversation last week, Plaintiffs' counsel acknowledged as much, but said simply "What difference does it make whether we asked for it?"  [Golinveaux Decl., ¶ 6.]  This despite the fact that Plaintiffs counsel had specifically stated that no further web server log production was required back in 2007.  [Smith Decl., ¶ 10.].  Plaintiffs' very first request for website serve log data in the past six years was in their recent email of August 9, 2013, where they inquired only about the unredacted 27 days of data—unredacted data that has never been ordered to be produced.  [Golinveaux Decl., ¶ 2 and Exh. 1.]

In the process of investigating Plaintiffs' August 9, 2013 request regarding whether an unredacted version of the 27 days of server log data from 2007 still existed, Defendants discovered that the unredacted version of that data, as well as web server log data from Defendants' 2007 production to May 2008, had been lost due to a server failure.  [Fung at ¶¶ 24-25.]  Defendants' informed Plaintiffs about the lost data on August 16, 2013, and also reiterated what Defendants had explained in recent briefing—that more than five years of data from May 25, 2008 to the present was still available in unredacted form.  [Golinveaux Decl. ¶ 3.]  Defendants' counsel further confirmed that all of the web server log data Plaintiffs sought subsequent to May 25, 2008 had been preserved.  [*Id.* at ¶ 3 and Exh. 2.]

In response to Defendants' August 16 email, on Saturday, August 17, 2013, Plaintiffs sent additional questions about the website server log data that was retained,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

12

and whether Defendants would agree to produce it. Defendants responded on Monday, August 19, 2013 that they were available to meet and confer about a proper form of production to protect privacy concerns implicated by the production of unredacted IP addresses. [*Id.* at ¶ 4 and Exh. 2.] Within less than an hour, the parties had a phone conference during which Defendants agreed to produce the two year range of web server log data requested by Plaintiffs, and discussed appropriate redactions to the IP addresses that would allow Plaintiffs to identify the country of origin of each IP address, but would protect the identity of individual users. [*Id.* at ¶ 5.] Defendants informed Plaintiffs they could produce the documents under this agreement within ten days or less, but likely not sooner due to the processing required. In order to produce these logs to Plaintiffs, Defendants must first obtain the data from the backup tapes, and decrypt and uncompress it. [Fung ¶¶ 16-17 19.]

On August 19, 2013, Plaintiffs for the first time also demanded sample website server log data for four particular days between May 25, 2008 and May 24, 2010. [Smith ¶ 13; Fung ¶ 14; Golinveaux Decl. ¶ 7 and Exh. 4.] Defendants were able to locate, restore, process, and provide the sample data to Plaintiffs within 48 hours. [Golinveaux Decl. ¶¶ 7-9 and Exhs. 4-5; Fung ¶ 14.] Significantly, Plaintiffs' Counsel *had this sample data in hand* at the time they filed Plaintiffs' *Ex Parte* Application on August 20, 2013. Indeed, the parties had been negotiating this production that very same day. [Golinveaux Decl. ¶¶ 7-9 and Exh. 5.] After receiving the data and proceeding with their *Ex Parte* Application in any event, Plaintiffs' counsel emailed Defendants' counsel claiming that they "did not receive the sample data in sufficient time to download and analyze it… it took some time to download and assemble." [*Id.*] Plaintiffs' counsel then confirmed on a conference call the next day that the data consisted of precisely the server log data that they were seeking for their analysis. [Golinveaux Decl. ¶ 9.]

After Plaintiffs' filed their *Ex Parte* Application hours after Defendants provided the sample data Plaintiffs had requested and agreed to the two year' worth of

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  production within ten days, Defendants asked whether Plaintiffs would consider

2  deferring their request made in this *Ex Parte* Application since it appears moot.  [*Id.*]

3  Plaintiffs claimed that despite having received a sample of the data requested and

4  being promised the remainder of the data within eight days, they could not follow

5  normal motion procedures or defer given the inevitable delays this Court and the

6  District Court would take in deciding these issues.  [*Id.* at ¶ 9 and Exh. 5.]

7
8  **F.  With Their *Ex Parte* Application, Despite Being Provided Necessary Server Log Data, Plaintiffs Continue Their Refusal To Identify The Works At Issue to Avoid Their Own Discovery Obligations And Burden of Proving Their Case**

9

10  Plaintiffs—uninterested in going to through the steps of proving the underlying

11  infringements or establishing any of the underlying causation demanded by the Ninth

12  Circuit in the damages phase, seek to short circuit their burden and avoid ever naming

13  the works at issue in time to allow Defendants to undertake any meaningful discovery

14  into ownership or their affirmative defenses.  Indeed, with their *Ex Parte* Application,

15  Plaintiffs essentially seek to prevent Defendants from contesting or defending

16  anything, even though they have not yet even identified the works in suit for which

17  they intend to seek damages.   Even though Defendants are entitled to a jury trial on

18  the amount of damages, Plaintiffs instead ask this Court to rubber stamp a decision

19  that would allow (assuming Plaintiffs are seeking statutory damages for their claimed

20  but unidentified "5000" works) Plaintiffs an enormous windfall of up to $750 million

21  in statutory damages.  Plaintiffs' counsel stated to Defendants' counsel on August 19,

22  2013 that it would not commit to a date to identify the works and would not even hold

23  a discussion regarding any changes to the scheduling Order.

24  **III.  PLAINTIFFS' *EX PARTE* APPLICATION SHOULD BE DENIED**

25  **A.  Plaintiffs' *Ex Parte* Application Is Procedurally Improper**

26  An *ex parte* application is the procedural equivalent of shouting "Fire!" in a

27  crowded theatre. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F.Supp. 488, 493

28  (C.D.Cal. 1995).  To justify *ex parte* relief, Plaintiffs must demonstrate, first, "that

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

14

[its] cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and second, "that the moving party is without fault in creating the crisis . . . or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

The parties were working cooperatively towards production of Plaintiffs' requested website server log data just one month into the damages phase of this case and, two weeks after the Court first set case management deadlines for the damages phase, and a few days after Plaintiffs first requested it.   Plaintiffs knew the data at issue had been preserved, had sample data in hand, and the parties were in the midst of negotiating the specifics of the production, including mutually acceptable redactions to the IP addresses, at the time Plaintiffs filed their *Ex Parte* Application.

Even if Plaintiffs could say there was a potential dispute, Plaintiffs did not even begin to initiate procedures under Local Rule 37 to bring a proper discovery proceeding before this Court, instead forcing Defendants to respond to Plaintiffs' 19-page *Ex Parte* Application on shortened notice smack in the midst of Defendants' production of the requested data, which Plaintiffs' expert will have in hand this Wednesday pursuant to the parties agreement.  Plaintiffs only allowed Defendants an additional three days to oppose the drastic sanctions in exchange for Plaintiffs obtaining the right to file a reply (which would otherwise be inappropriate when bringing an *Ex Parte* Application.)[2]  There is no "fire" here, other than Plaintiffs' urgency to short circuit their burden of proof, and to obtain requested discovery sanctions—including a presumption that *all* Dot-Torrent files on Defendants' sites were downloaded by U.S. users—that they will never be able to prove with the data itself. Because Plaintiffs have improperly raised these issues on an *ex parte* basis, Plaintiffs' *Ex Parte* Application should be denied.

---

[2] Not only is there no basis for seeking *ex parte* relief at this stage given that trial is several months away and Plaintiffs have yet to analyze the data, Plaintiffs 19-page *Ex Parte* Application also violates various rules in that it  contains no tables of contents, no table of authorities and no proposed order.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     Plaintiffs Must Prove Statutory Damages To Jury**

17 U.S.C. § 504(c) provides statutory damages for copyright infringement of up to $150,000.00 per work infringed.   In *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340 (1998), the Supreme Court held that the Seventh Amendment of the United States Constitution requires a jury trial to determine the amount of statutory damages in a copyright case. *Id.* at 353.  As the Supreme Court explained in *Feltner,* "[t]he right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner.  (emphasis in original). *Id.* This is because it has "long been recognized that "the jury are judges of damages." *Id.* Plaintiffs repeated requests for unwarranted evidentiary sanctions seek to deny Defendants the right to their jury trial in determining the "amount of statutory damages." *Id.*

Since 2006 when this case was filed, Plaintiffs have only ever identified 44 works at issue in this lawsuit.  It was not until July 1, 2013 that Plaintiffs first indicated that they intended to expand that scope on a massive scale—expanding the maximum potential liability for statutory damages from $6,600,000 to over one hundred times that—$750 million.  To justify a statutory damages award, Plaintiffs must be required to demonstrate that infringements by United States users actually occurred.  Their *Ex Parte* Application plainly seeks to short circuit this due process without basis.

**C.     Evidentiary Sanctions Are Not Warranted Here**

Sanctions are only appropriate in "extreme circumstances" where a party has engaged in "bad faith," "willfulness" or by the "fault" of the party.   *Fair Housingof Main v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002) (quoting *United States v, Kahaluu Constr. Co., Inc.,* 857 F.2d 600, 603 (9th Cir. 1988)), *cert denied,* 537 U.S. 1018 (2002).  A terminating sanction is justified in "only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives."

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 469-70 (S.D.N.Y. 2010) 469-70. Any sanction imposed by the Court must be "just" and related to the particular claim at issue in the order to provide discovery. *Navaellier v. Sletten,* 262 F.3d 923, 947 (9th Cir. 2001). Any sanction must bear a "reasonable relationship to the discovery that was frustrated by sanctionable conduct." *Id.*

Here, no discovery was actually "frustrated". As Plaintiffs knew before filing this *Ex Parte* application, website server log data from May 28, 2008 was preserved and the requested data is being produced within days of Plaintiffs' request. As further addressed below, Plaintiffs have offered no reason whatsoever that the two years of data they are receiving (far more than the 27 days worth they relied upon in 2007) is not sufficient for their purposes or why the data that was inadvertently lost due to server failure would provide any additional evidence relevant to damages.

### 1.   Plaintiffs Cannot Meet The Standard For Evidentiary Sanctions

The Ninth Circuit has articulated five factors to be analyzed in determining whether to impose the type of terminating sanctions that Plaintiffs seek here: (1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) public policy in favor of resolving cases on the merits; and (5) the availability of less drastic sanctions. *Connecticut General Life Insurance Co. v. New Images Beverly Hills,* 482 F.3d 1091, 1096 (9th Cir. 2007).

First, there was no violation of any court order here to support the first two factors, as Defendants preserved website server log data at issue, the parties agreed and operated as if discovery would begin again in the damages phase, and Defendants promptly prepared and produced the documents, in the manner and within the scope requested by Plaintiffs shortly after it was first requested. Plaintiffs argument now that Defendants should have continued to produce such data over the past six years—

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

despite Plaintiffs telling them no more was needed, despite the liability stage having ended, despite Plaintiffs themselves having provided no discovery at all after the liability phase, and despite Plaintiffs' failure to make a single request for such data in more than six years—is nothing more than an effort to gain an unfair and uncalled for evidentiary advantage to avoid having to prove their case. The notion that production of documents pursuant to discovery requests and successful discovery motions continues indefinitely after the liability discovery phase closes is illogical.  Indeed the Court rejected such an approach when it declared during an interim order on the Motion for Summary Judgment (after the liability discovery phase ended) in an August 25, 2009 Order that **it "should not be construed as an invitation to the parties to engage in additional discovery."**  (Smith Decl. ¶ 17, 8/25/09 Order (Dkt. 358), p. 4, n.2)  *See, e.g.,, Fastek, LLC v. Steco*, 10CV0972-MMA CAB, 2011 WL 4499101, at *2 (S.D. Cal. Sept. 27, 2011) ("The Court, however, disagrees with Fastek's argument that [discovery] obligation[s] continues indefinitely.  At some point fact discovery ends...."); *In re Dixie Farms Mkt*., 28 Fed. App'x 673, 677 (9th Cir. 2002) (where discovery request was made after discovery had closed, responding party "was under no obligation to produce further information" and that trial court, if it wished to do so, could "reopen discovery" on remand).  Courts have been flexible when addressing situations created where representations by opposing counsel were relied on to their detriment.  *See e.g., M2 Software, Inc. v. M2 Commc'ns, L.L.C*., 217 F.R.D. 499, 500 (C.D. Cal. 2003) (allowing flexibility in discovery rules where counsel had "reasonably relied to its detriment upon the representations" of opposing counsel regarding the production of documents).

In *Pickering v. Lorillard Tobacco Co., Inc.*, No. 10-cv-633, 2012 WL 314691 (M.D. Ala. Jan. 30, 2012), the court considered a discovery dispute that arose in the context of phased discovery, and denied a similarly untimely motion.  *Id.* at *9-10.  The plaintiff filed a motion to compel discovery three weeks after the close of the first phase of discovery.  The court held that "[the] requests come too late" and noted that

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

"[the plaintiff] did not suggest during the … first-phase discovery period that [the defendant] was hampering his discovery efforts…." *Id.* at \*9.  Moreover, although the plaintiff had been aware of the issue much earlier, he "did not raise this alleged discovery barricade at that time. Instead, he waited until six weeks later—more than three weeks after the close of discovery on [the first phase]—to bring his discovery problems to the attention of the court…." *Id.* at \*10.  Just as in the instant case, the plaintiff in *Pickering* "[did] not explain why he did not file a motion to compel during the discovery period, why he did not use available discovery tools to compel [discovery], [or] why he waited … to raise the issue…." *Id.* "Absent any explanation from [plaintiff]," the court concluded that he was "dilatory" in waiting until well after the close of the first phase of discovery to raise the issue, and denied his motion to compel.  *Id.*  Plaintiffs here affirmatively represented no further website log files need be produced, never complained about Defendants' production of the web server log in the liability phase, and waited for years after the liability phase closed to now improperly claim prejudice in the damages phase when the damages phase has just began.

With respect to the third factor, because Plaintiffs will have all of the data they need to conduct the analysis to prove their case, there is no genuine prejudice as a result of any delay.  If Plaintiffs wanted to start the analysis earlier—they could have simply requested the data earlier.  *Reinsdorf v. Skechers U.S.A.*, Inc., 2013 WL 3878685, at \*24-26 (C.D. Cal. July 19, 2013) (denying motion for sanctions where plaintiff was not prejudiced because defendant had produced other, and in some instances better, evidence; plaintiff already possessed relevant evidence, so the deleted evidence was cumulative; and plaintiff could not explain how the loss of this evidence materially affected his case). Defendants should not be punished simply because Plaintiffs wrongly assumed that the Court would allow them to rely on earlier determinations in the R & R such that they would not have to prove that their works were actually infringed by U.S. users.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

19

1    The fourth factor favors resolving cases on their merits—and none of Plaintiffs

2    requested sanctions or proposed instructions are appropriate as an evidentiary sanction

3    when the website server log data at issue has been promptly produced and the case is

4    capable of being decided on the merits.  Thus, the Court should decline any of

5    Plaintiffs' proposed rebuttable presumptions and decline to deem any of the facts

6    established when Plaintiffs clearly have the information they need in plenty of time to

7    conduct their analysis, including information to analyze and have their expert testify

8    about the findings—there is no need for any form of an evidentiary sanction here.

9    With respect to the fifth factor, while some data prior to 2008 was irretrievably

10   lost due to a catastrophic server failure, Plaintiffs will be able to rely on the two years

11   worth of data they have requested and are receiving this week from May 28, 2008

12   through May 2010.  Defendants should not be unnecessarily punished for a server and

13   failure beyond their control. Courts have declined to issue terminating sanctions where

14   the majority of data at issue was produced, and the material inadvertently lost would

15   not prevent the plaintiff from presenting the evidence necessary to prove their case.

16   For example, in *In re Hitachi Television Optical Block Cases*, 2011 WL 3563781, at

17   *11-12 (S.D. Cal. Aug. 12, 2011), the court denied evidentiary sanctions where the

18   deleted files identified by the plaintiffs was only a "fraction" of material at issue, and

19   the material was "deleted randomly" and was "not specifically targeted as files that

20   contained critical or unique information pertaining to the disputes in this litigation,"

21   and thousands of other documents had been produced; *see also,* FRCP Rule 37(e)

22   ("Absent exceptional circumstances, a court may not impose sanctions under these

23   rules on a party for failing to provide electronically stored information lost as a result

24   of the routine, good-faith operation of an electronic information system); *Med. Lab.*

25   *Mgmt. Consultants*, 306 F.3d at 824 ("When relevant evidence is lost accidentally or

26   for an innocent reason, an adverse evidentiary inference from the loss may be

27   rejected") *Holiday v. Am. Cas. Co. of Reading*, PA, 2:11-CV-02089-GMN, 2013 WL

28   1955561, at *4-5 (D. Nev. May 10, 2013) (denying evidentiary sanctions where there

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

was "no indication that the Plaintiff destroyed or intentionally lost the x-rays.  Rather, the loss appears to be accidental or for an innocent reason. Thus, an adverse evidentiary inference from the loss may be rejected."); *Crayton v. Hedgpeth*, C 08-00621 WHA PR, 2012 WL 1552624, at *3 (E.D. Cal. May 1, 2012) (denying terminating sanctions because "[a]bsent any evidence showing that the loss of plaintiff's property was the result of something other than an accident or innocent mistake, dismissal as a sanction is unwarranted"); *Strom v. City of Crescent City*, C 08-04708 SI, 2010 WL 2231799, at *4 (N.D. Cal. June 1, 2010) (denying motion for sanctions where "[a]bsent any evidence showing that the loss was the result of something other than an accident or innocent mistake, an adverse inference instruction is unwarranted"); *Pirv v. Glock, Inc*., CV 06-145-PK, 2009 WL 54466, at *7 (D. Or. Jan. 8, 2009) ("Under the totality of the circumstances…no evidentiary sanction is warranted" where no willful spoliation found).  And even if an inference was appropriate for the earlier period, far more appropriate inferences exist, such as an inference that the same percentage of U.S.  users downloaded files during that period as Plaintiffs' expert properly identifies for the two years that Plaintiffs are analyzing. *See e.g., Apple Inc. v. Samsung Elecs. Co., Ltd*., 888 F. Supp. 2d 976, 994-95 (N.D. Cal. 2012) (modifying adverse inference instruction based on spoliation of evidence because, in light of ample document production and depositions, evidence of prejudice was "not particularly strong" and, therefore, a "relatively harsh" adverse inference instruction was not justified); *Keithley v. Homestore.com, Inc*., 2008 WL 4830752 (N.D. Cal. Nov. 6, 2008) (denying all evidentiary sanctions granting monetary sanctions only because "although Defendants have suffered some limited prejudice caused by the loss of some documents, the terminating and evidentiary sanctions that Defendants seek are disproportionate"); *Nursing Home Pension Fund v. Oracle Corp*., 254 F.R.D. 559, 564 (N.D. Cal. 2008) (rejecting request for terminating sanctions and granting, instead, only adverse inference instructions because the degree of prejudice was not appropriately great, "primarily because plaintiffs have received a large

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  quantity of materials through the discovery process.")  This would in no way prejudice

2  Plaintiffs, but would actually serve to benefit Plaintiffs, who have claimed that the

3  older the data, the more difficult it is to ascertain what was actually downloaded

4  (although that is no one's fault but their own for waiting to request the data for more

5  than six years).  [Plaintiffs' *Ex Parte* Application at p. 13 (15 of 21): 11-22) p. 18 (20

6  of 21): 8-12.]

7          With respect to the redacted IP addresses for the website server log data that

8  was produced for the 27 days in 2007 in the manner ordered by the Court, sanctions

9  are also inappropriate as the Court has never to date ordered unredacted IP addresses

10  to be produced.  Plaintiffs' three other requested sanctions are equally unnecessary for

11  these reasons: (1) The "volume" of infringement, to the extent deemed relevant, can

12  be assessed and extended from the *five years* of data available, and this request seeks

13  to improperly conflate United States users with foreign users; (2) Plaintiffs seek to

14  undermine Defendants' constitutional right to challenge the amount of damages with

15  their request that Defendants should not be able to argue that Plaintiffs have not

16  suffered actual damages, and Plaintiffs can present their own evidence of actual

17  damages; and (3) Plaintiffs' proposed rebuttable presumption is simply another end-

18  run around the burden Judge Wilson has articulated Plaintiffs must show to be entitled

19  to any statutory damages.

20

21          **2.  There is No "Incurable Prejudice" To Plaintiffs  As Defendants Have Complied With The Court's Orders And The Parties' Agreements**

22          Far from Plaintiffs' mischaracterizations, there was no "last-minute" tender of

23  the data at issue that leaves Plaintiffs unable to prepare for trial.  The damages trial

24  was just set this month, on the schedule Plaintiffs requested (without any indication

25  they needed any additional time to complete discovery) and Plaintiffs will have the

26  data from May 2008 through May 2010 that they have requested and  claim to need to

27  perform their analysis within two weeks of having requesting the data, and before

28  their reply brief supporting this application is even due.  Plaintiffs have offered no

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

22

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    evidence that they will have insufficient time to analyze that data, even putting aside

2    the fact that it is they who waited until this month to even request it, and they that

3    requested the Judge schedule trial for November.  Any "delay" in seeking the data

4    they need to prove their case is Plaintiffs' own doing and cannot possibly serve as

5    prejudice sufficient to justify evidentiary sanctions.

6         Plaintiffs' assertion that they would have "preferred" to be able to "present the

7    jury with the actual data rather than a jury instruction" is belied by the facts.  Plaintiffs

8    will have all the data they need to prepare their case this week shortly after requesting

9    it.  They have never explained or offered any evidence as to why it would be

10   impossible to analyze the data in time for trial in November.   Plaintiffs do not explain

11   why not once in the past six years did they request this data.

### 3.    Prior Orders In This Case Cannot Serve To Justify The Unwarranted Sanctions Sought Here

14        While the Court may properly consider incidents of prior misconduct in

15   deciding whether sanctions are appropriate, that cannot mean that the Court should

16   ignore the realities of the present circumstances and impose sanctions based purely on

17   prior conduct, especially conduct from a prior phase of litigation that took place over

18   six years ago.  *See e.g., E.E.O.C. v. Fry's Elecs., Inc*., 874 F. Supp. 2d 1042, 1047

19   (W.D. Wash. 2012) (denying terminating sanctions as "too extreme," and instead

20   awarding adverse inference instructions, even where the defendant repeatedly and

21   intentionally destroyed potentially relevant evidence).  Here, there was no intentional

22   destruction of any of the data at issue, and given the volume of data preserved and

23   produced, it would be far "too extreme" and unwarranted to issue terminating

24   sanctions.

### 4.    It Is Defendants That Are Being Prejudiced By Plaintiffs' Attempts To Run The Clock And Proceed To Damages Trial Before Identifying The Works At Issue And Preventing Defendants From Meaningfully Preparing Their Defense

27        Knowing full well that Defendants will have produced the data they need to

28   conduct their analysis by the time they file their reply on this *Ex Parte* Application,

Plaintiffs claim in their attorneys' (not expert) declaration that:

> [e]ven if Defendants were to produce the Website data immediately, it
> would not be reasonably possible for Plaintiffs to conduct the necessary
> data analyses and otherwise prepare the related evidence for a trial
> beginning on November 5, 2013. For example, Plaintiffs would need to
> conduct extensive data analyses to sort through the data and identify the
> millions (and potentially tens of millions) of dot-torrent files for
> Plaintiffs' copyrighted works that were downloaded from the Fung sites
> by users in the United States.  This process requires substantial manual
> review of dot-torrent files. From past experience with this process, it
> would likely require hundreds of hours of lawyer and paralegal time to
> complete this threshold data analysis. Thereafter, Plaintiffs would need to
> gather evidence about each such dot-torrent file and attempt to download
> the content file to verify it, a process that again requires substantial
> manual effort and might be difficult for torrents which are now several
> years old. See supra ¶ 7. **Once Plaintiffs have identified through this
> process the thousands of copyrighted works they will include in a
> claim for damages (from a pool of candidates that undoubtedly will
> be a multiple of that number), Plaintiffs would have to provide the
> list to Defendants, as the District Court has directed. Plaintiffs then
> would need to assemble and produce documentation demonstrating
> their ownership of each of the works in suit. The above process
> cannot reasonably be completed in the time before tria**l.

(Fabrizio Decl (Dkt. No. 558-1) ¶ 12.) (emphasis added.)

And yet never having requested the data until August 17, 2013, despite being on notice that the information was preserved, it is no fault of Defendants that Plaintiffs claim (without factual support) that they are unable to complete the requisite analysis to present evidence to support their case.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

24

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    Further, while the District Court has ordered Plaintiffs to identify such works,

2    to date Plaintiffs have yet to do so, and have refused to even commit to a date by

3    which they will do so.  [Golinveaux Decl. ¶ 6.]  It is Defendants that are being

4    prejudiced by Plaintiffs' delays and refusal to identify the scope of their case and their

5    basis for the massive damages they are seeking.  Plaintiffs request unwarranted

6    evidentiary sanctions to avoid ever having to identify to Defendants the massive

7    number of works for which they seek damages and their corresponding discovery

8    obligations (the same obligations they promised to comply with in the damages phase

9    when objecting to such discovery as premature in the liability phase).   Plaintiffs are

10   seeking $150,000.00 per work, and Plaintiffs represented for the first time on July 1,

11   2013 that they intend to seek to expand the scope of liability in this case from the 44

12   works named and the ultimately name approximately 3000-5000, expanding liability

13   as high as $750 million in damages.  With such stakes, Defendants must be permitted

14   a meaningful chance to investigate their defenses with respect to the alleged works

15   and test the basics of ownership and validity of the works at issue.  Defendants intend

16   to seek clarification with the District Court in light of Plaintiffs' refusal to cooperate

17   on even the most basic information about their claims, and ask that the District Court

18   impose a deadline so that due process is not violated through Plaintiffs' delays.

19              **5.    No Further Attorneys' Fees Should Be Awarded Here**

20   There is no basis to have raised this issue on an *Ex Parte* basis, no basis for the

21   requested relief, and the Court should deny Plaintiffs' request for fees.  Moreover,

22   Plaintiffs do not even bother to identify the amount in fees they seek, making it

23   impossible for Defendants to assess the reasonableness of awarding such fees in these

24   circumstances.

25   **IV.    CONCLUSION**

26   Plaintiffs have presented no basis here for any evidentiary or other sanctions,

27   and there is no basis for any *Ex Parte* relief.  For the foregoing reasons, Defendants

28   respectfully request that the Court deny Plaintiffs' *Ex Parte* Application.

1

Dated:  August 26, 2013                    WINSTON & STRAWN LLP

2

3                                          By:  */s/ Erin R. Ranahan*

4                                          WINSTON & STRAWN LLP
                                               Michael S. Elkin
5                                              Thomas Patrick Lane
                                               Jennifer A. Golinveaux
6                                              Erin R. Ranahan
                                               Thomas Kearney
7

8                                          ROTHKEN LAW FIRM
                                               Ira P. Rothken
9                                              Jared R. Smith

10                                         *Attorneys for Defendants*
                                           GARY FUNG and ISOHUNT WEB
11                                         TECHNOLOGIES, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION

LA:388775.5