JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
1099 New York Avenue, N.W.
Suite 900
Washington, D.C.  20001
Telephone:  (202) 639-6000
Facsimile:  (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>GARY FUNG, *et. al.*<br><br>*Defendants*. | Case No. CV-06-05578 SVW (JCx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION FOR AN ORDER REQUIRING PLAINTIFFS TO IDENTIFY WORKS FOR WHICH THEY ARE SEEKING STATUTORY DAMAGES SUFFICIENTLY IN ADVANCE OF TRIAL SO THAT DEFENDANTS CAN PREPARE THEIR CASE AND MODIFYING PRE TRIAL AND TRIAL DATES** |

Defendants' *Ex Parte* Application both distorts the true facts and fails to comply with Your Honor's Individual Practices for requesting adjournment of a trial or for dealing with calendar conflicts.

As explained below, although Defendants ostensibly complain that Plaintiffs have not yet identified the copyrighted works in suit (the "WIS"), Defendants are fully responsible for delaying Plaintiffs' WIS identification process. Moreover, as Plaintiffs have informed Defendants, Plaintiffs will be providing Defendants with the list of WIS shortly. Defendants' true purpose in filing their *Ex Parte* is to delay the November 5, 2013 trial, which was ordered by the Court just three weeks ago, on August 7, 2013. In fact, despite agreeing to a November trial during the August 5 hearing before Your Honor, Defendants have been maneuvering to delay the trial – including by serving unreasonable discovery requests – from the moment the Court ordered it. Defendants' offensive against Plaintiffs is no more than a ruse to hide the fact that Defendants have no reasonable basis for their current request to put the trial off until sometime in 2014.[1]

## I. Defendants Are Responsible for Delaying Plaintiffs' WIS Identification Process.

In its Order dated August 7, 2013, the Court directed Plaintiffs "to file a statement with the Court, and to serve this statement upon Defendants, that lists all works for which they intend to seek monetary damages." Order, Aug. 7, 2013, Dkt. # 554 ("August 7 Order"), at 4. The parties and the Court plainly understood that, given the massive scale of Defendants' infringement, compiling a list of works that

---

[1] Defendants' 23-page *Ex Parte* Application, which was not filed until 10:20pm (Pacific Time) last night, and thus effectively not available to Plaintiffs until just this morning, is inconsistent with the highly expedited response time required under Rule 5 of Your Honor's Rules of Practice. Accordingly, Plaintiffs herein only summarize the reasons that Defendants' *Ex Parte* is without merit. Should the Court want fuller briefing on any issue, Plaintiffs would be happy to provide it.

had been infringed by Defendants would require a reasonable amount of time, even if Plaintiffs were, for practical purposes, limiting the number of separate works in suit to a number in the 3,000 to 5,000 range. For that reason, the Court did not order the WIS list produced on a fixed date. *Id.* Unlike Defendants, Plaintiffs have proceeded with all diligence and reasonably.

Defendants' gamesmanship with regard to critical website server data has delayed Plaintiffs' efforts in preparing the WIS list. This Court has recognized that the website server data is critical to proving causation and direct infringement – and thus to preparing Plaintiffs' WIS list. *Id.* at 2 ("Plaintiffs will be able to prove that a particular user downloaded a Dot-Torrent file from one of [Defendants'] websites with the server data from the websites themselves").[2] However, having refused to produce website server data for more than six years – and, in fact, having led Plaintiffs and the Court to believe that they were not even preserving the data – Defendants just recently, on August 19, revealed that they had preserved, and were now prepared to produce, website server data for two of the three years that are most relevant for damages. Fabrizio Decl., ¶ 2.

That abrupt revelation – a reversal of six years of litigation posture – dramatically altered the means by which Plaintiffs had to proceed in preparing the list of WIS. Plaintiffs still promptly filed their application for evidentiary sanctions with the Magistrate Judge as this Court directed, *id.* at 3 n.3, because Defendants'

---

[2] As the Court will recall, Defendants' theory of direct infringement would have required tracker data (not website data) and Plaintiffs had sought and obtained from the Magistrate Judge a recommendation that direct infringement be deemed established because of Defendants' violation of the June 8, 2007 Order regarding tracker data. Promptly after the Court's August 7 Order, which made website data (and not tracker data) an imperative, Plaintiffs filed an application with Magistrate Judge Chooljian seeking evidentiary sanctions for Defendants' violation of the June 8, 2007 Order regarding website data. Dkt. # 558.

1 belated offer to produce data could not begin to cure the prejudice to Plaintiffs.
2 However, Plaintiffs also began immediate plans to receive and use the website data
3 to identify the WIS as best as is humanly possible.  In other words, notwithstanding
4 Defendants' willful violation of the Court's June 8, 2007 Order, Plaintiffs are trying
5 to do everything in their power to minimize the need to rely on evidentiary sanctions
6 to prove damages.

7      The website data will establish beyond question that Plaintiffs' copyrighted
8 works were directly infringed under the standard set by the Court.  However, the
9 process is extremely time-consuming.  The process is not simply an automated
10 computer analysis; to the contrary, it involves substantial (many hundreds of hours
11 of) human review.  Fabrizio Decl., ¶ 5.  To explain, once Defendants produce the
12 website data – which, despite their representations to the Court, Defendants did not
13 produce yesterday – the process is as follows:

- Plaintiffs must load a substantial amount of data onto a computer and into a database and ensure that the data is usable and not otherwise corrupt.
- A list of Plaintiffs' copyrighted works (measured in the tens of thousands) needs to be compared to the dot-torrent file names in the website data.  There are likely to be tens or hundreds of millions of separate dot-torrent download "events" that need to be subject to this analysis.  This is an automated process.
- Those dot-torrent files identified in the website server data represent dot-torrent files that were actually downloaded from Defendants' website.  For each such dot-torrent file that, by file name, appears to correspond to one of Plaintiffs' copyrighted works, Plaintiffs must undertake a human review process to confirm that the dot-torrent file in fact corresponds to one of Plaintiffs' copyrighted works.
- There will be many tens of thousands of dot-torrent files that require human review.  That process is two-fold.  Initially, it requires teams of paralegals

(with lawyer oversight) to manually review the dot-torrent file names, and often other information, to make a preliminary assessment of whether the dot-torrent file corresponds to one of Plaintiffs' works.  Then, if that assessment indicates it does, Plaintiffs will attempt to download the dot-torrent file and associated content, after which additional teams of paralegals will manually review the content to confirm that it is an infringing copy of one of Plaintiffs' copyrighted works.

- o  In parallel, for each of the tens of thousands of dot-torrent files downloaded from Defendants' websites that appear to correspond to Plaintiffs' works, Plaintiffs will need to conduct "geolocation" analyses using the IP address of the downloading user – to identify users who downloaded from the United States.

- o  This process will produce an extensive list of Plaintiffs' copyrighted works that satisfy the Court's standard for direct infringement and causation: *i.e.*, dot-torrent files for each work will have been downloaded from Defendants' websites by Defendants' users in the United States.  From this list, based on a host of other factors, Plaintiffs will the select 3,000 to 5,000 for which they are seeking damages, and will prepare the list of WIS for the Court and Defendants.

Fabrizio Decl. ¶ 5 (describing WIS identification process).

The process described above requires hundreds of hours – and, when all is said and done, likely a couple of thousand lawyer and paralegal hours.  Plaintiffs in fact had (and still have) a team of more than 20 lawyers and paralegals prepared to work around the clock over Labor Day weekend to review the website data – so Plaintiffs will be in a position to provide the Court and Defendants with their list of WIS as quickly as humanly possible.  Fabrizio Decl. ¶ 6.

Plaintiffs' entire process, however, has been held up while Plaintiffs await Defendants' production of website server data – data that should have been produced six years ago.

Even after acknowledging they have the website data, Defendants have delayed producing it. Defendants knew they had possession of this website data for years. Neither Plaintiffs nor the Court were aware of that fact until just recently. Yet, Defendants claimed the data would take weeks simply to copy and produce. Fabrizio Decl., ¶ 2; Ex. 1, at 1. Plaintiffs fought for a commitment from Defendants that they would produce the data by Tuesday, August 28th, so it would be in Plaintiffs' hands by yesterday. Fabrizio Decl., ¶ 3; Ex. 2.

Yesterday, Plaintiffs received from Defendants what appeared to be a six year old, worn-out hard drive. The hard drive was broken, such that Plaintiffs could not retrieve any data from it. Fabrizio Decl., ¶ 4; Ex. 3. Defendants claim this drive contained the website data and that it must have been damaged in transit. Fabrizio Decl., Ex. 3, at 1. Why Defendants were using an old and worn hard drive to produce such crucial and time-sensitive data is inexplicable. Plaintiffs brought the problem to Defendants' attention immediately and, as of the filing of this Opposition, have received what Defendants claim is a replacement hard drive with the website data. However, Plaintiffs have not yet been able to ascertain whether the data is usable.

Defendants distort the truth when they argue to this Court that Plaintiffs have refused to commit to a date certain by which they will produce the list of WIS. Defs' Ex Parte at 1, 8-9. What Plaintiffs told Defendants is that Plaintiffs would not be in a position to commit to a date certain until Plaintiffs had possession of the website data and could assess its condition and what would be required to make the raw data functional. Fabrizio Decl., ¶ 7; Ex. 4, at 2 ("Your comment that we have 'refused to commit to a date' is not correct. What we have told you and your colleagues – from the minute defendants revealed that they had allegedly preserved

some website data – is that we cannot commit to a date until we see the nature and condition of the data, including whether defendants purposefully produce the data in a way that makes it more difficult for plaintiffs to work with it (as defendants have done multiple times in the past)"). Plaintiffs further advised Defendants – well before Defendants filed their *Ex Parte* – that within a couple of days of Plaintiffs' receipt of the website data, Plaintiffs would confer with Defendants and commit to a date certain. *Id.* ("Defendants have committed to produce the website data tomorrow, which means we should have it in hand first thing Wednesday morning … Let's see if that happens. If it does, once we have the data loaded into a database and working, we will very quickly make an assessment of the usability of the data. Thus, by the end of this week, assuming defendants have met their obligations as to the website data, plaintiffs should be in a position to talk to you about a 'date certain' by which we will identify the works in suit").

Defendants also distort the facts in claiming that "Plaintiffs have indicated … that the earliest they intend to identify the new works is at the end of September." Defs' Ex Parte at 8. In fact, Plaintiffs informed Defendants that, if Defendants honored their commitments as to the website data, Plaintiffs believed they would be in a position to produce the list of WIS by mid-September. Fabrizio Decl., ¶ 7; Ex. 4, at 2 ("While we cannot commit without seeing the data, our expectation is that we would produce the list before mid-September").

Plaintiffs have done everything they possibly can to be in a position to produce the list of WIS as quickly as possible. Defendants have delayed the process. Having done so, they cannot use their own misconduct as a justification to seek an order compelling the production of the WIS list or to delay the trial.

Additionally, as discussed below, Defendants waited a full two weeks after the August 5 hearing to even serve discovery requests. Fabrizio Decl. ¶ 8. As a result, Plaintiffs' discovery responses are not due to Defendants until September 19th. Thus, assuming the website data Plaintiffs received this afternoon is usable,

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' *EX PARTE* APPLICATION

Plaintiffs will have produced the WIS list even before discovery to Defendants is due.

## II. Defendants' Efforts to Delay the November 5 Trial Should Be Rejected.

Having observed correctly that this case has been ongoing for some time, at the August 5, 2013 hearing, the Court indicated that it was ready to proceed to the damages trial immediately and asked the parties for their views. One of the express purposes of the August 5 hearing was to discuss a schedule for the damages trial. Thus, counsel were required to come to the hearing prepared to raise any potential calendar conflicts. Defendants did not mention any potential calendar conflicts with regard to a November trial. To the contrary, when the Court specifically asked Defendants about a November trial, Defendants' counsel told the Court: "Your Honor, we don't have any contrary views in terms of how fast the case can be set for trial." Transcript, August 5, 2013 Hearing, Dkt. 556, at 9:3-4.

That was just three weeks ago. No circumstances have changed to warrant a delay in the trial.

This Court has set forth rules that parties are required to follow when requesting an adjournment or to address calendar conflicts. These rules are unequivocal. Defendants have not even attempted to comply. Specifically, as to adjournments of trial dates, Rule 6 of Your Honor's Individual Practices provides:

> Continuances are granted only upon a showing of good cause, particularly focusing upon evidence of diligent work by the party seeking delay and of prejudice that may result from the denial of a continuance. Counsel requesting a continuance MUST submit a **DETAILED** declaration as to the reason. Any continuances requested not accompanied by said declaration will be rejected without notice to the parties. The Court sets FIRM trial dates and will not change them without good cause having been shown.

Individual Practices, Rule 6 (emphases in original). Additionally, in the event of a calendar conflict, this Court's rules provide that:

> Counsel shall notify both of the judge's court clerks. Counsel should go to the most senior of the judges. A priority before that judge should be requested.

Individual Practices, Rule 9.

First, Defendants have not filed a declaration of counsel that complies with Your Honor's Rule 6. The perfunctory declaration filed by Counsel Lane does not begin to contain the detailed justification required by the Court. As relevant, it contains a single paragraph stating that two members of the defense counsel team have hearing dates in an arbitration throughout September, October, November, and December. Lane Decl. ¶ 2. That is it.

- o The declaration does not offer any explanation as to why counsel did not inform the Court of the calendar conflicts during the August 5 hearing, even though the declaration acknowledges that counsel has known about the arbitration schedule since November 2012. *Id.*
- o It does not contain any explanation (much less a detailed one) as to any prejudice Defendants claim they will suffer in the absence of the requested adjournment. *Id.* As discussed below, there is none.
- o It does not contain any explanation proving "evidence of diligent work" by Defendants. As explained both above and below, Defendants cannot lay claim to having been diligent.
- o And, it does not demonstrate that Defendants have even attempted to comply with Your Honor's Rule 9 regarding the priority of calendar conflicts. It seems clear that Defendants' counsel did not even inquire of the arbitration panel as to whether the arbitration hearing on November 5-6 could be pushed forward or backward a few days. Regardless, a jury trial ordered by a United

States District Court takes precedence over a private party arbitration schedule.

<u>Second</u>, Defendants cannot demonstrate the "good cause" required under Your Honor's rules because Defendants have not been diligent in readying this case for trial.

- o As stated above, Defendants have known for years that they had possession of website server data. Putting aside the violation of the Court Order to produce that data years ago, if Defendants were suddenly prepared to produce it, they could and should have prepared the data for production weeks ago. Instead, on August 19, Defendants claimed they needed 10 days to prepare the data for production, Fabrizio Decl., ¶ 2; Ex. 1, at 1, meaning that Defendants had not taken any steps to ready the data for production until Plaintiffs demanded it, which Plaintiffs did immediately upon learning that the data existed.[3]
- o Defendants delayed serving discovery requests for more than two weeks after the August 5 hearing. Fabrizio Decl., ¶ 8. (Plaintiffs, in contrast, served their limited discovery requests promptly on August 9.) Thus, Defendants cannot

---

[3] The discussion that led to the revelation that Defendants possessed relevant website data began on August 9, with an email from Plaintiffs' counsel to Defendants' counsel, making a simple request that Defendants confirm whether they had preserved IP addresses (as Ordered by the Court) from the 27 days of website data Defendants produced in June and July of 2007. Fabrizio Decl., ¶ 2. Without the IP addresses, Plaintiffs could not use even that limited website data to identify U.S. downloaders, which Plaintiffs needed to identify the WIS. Despite being reminded daily, Defendants took a full week to respond. In Defendants' August 16 response (in which they acknowledged that they did not preserve the IP addresses as ordered), Defendants vaguely referenced that they may have other relevant website data. *Id.* It was not until August 19 that Defendants confirmed that they had two years of relevant website server data and would consider producing it. *Id.*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION**

be heard to complain when, under the Federal Rules, Plaintiffs' discovery responses are not due until September 19.

<u>Third</u>, Defendants cannot demonstrate the "good cause" required under Your Honor's rules because Defendants cannot credibly claim cognizable prejudice not caused by their own dilatory conduct.

- As a threshold, Defendants' declaration of counsel does not identify any prejudice, as required.
- More fundamentally, Defendants' unsupported allegations of prejudice in the brief are manufactured. Assuming that the data Defendants just produced is usable, Plaintiffs will provide Defendants with the list of WIS by September 15. Fabrizio Decl., ¶ 7. Plaintiffs will shortly thereafter produce to Defendants those documents and materials that demonstrate Plaintiffs' ownership of the WIS and the data demonstrating that dot-torrent files for each of the WIS were downloaded from Defendants' websites by users in the United States. Neither of these facts is fairly in dispute. But, regardless, Defendants will have the documents establishing them.
- Defendants' many other irrelevant discovery demands have no legitimate bearing on the damages phase of this case, and appear to have been interposed to engineer a claim for a delay in the trial.
- Defendants' claim that the two motions for summary judgment recently filed by Plaintiffs are improper or somehow prejudice Defendants is unsupportable. The Federal Rules provide that motions for summary judgment can be filed at "any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Neither this Court nor the Local Rules have directed otherwise. Moreover, it is Defendants' insistence on trying to re-litigate issues already resolved in the liability phase of this case that compelled Plaintiffs to file their motions. In any event, Defendants cannot claim prejudice from the motions; Plaintiffs stipulated to give Defendants more time than required under the

rules to oppose. Plaintiffs' motions for summary judgment are a perfectly appropriate way to narrow the issues for trial.

- Defendants cannot claim prejudice from the absence of a separate schedule for expert discovery. A separate expert schedule is not required. Nor have Defendants identified (in their brief or counsel declaration) an expert they believe they require. Defendants simply fail to explain why expert discovery, if any is necessary at all, cannot be completed in parallel with ongoing damages fact discovery.

## CONCLUSION

Because Defendants are fully responsible for delaying Plaintiffs' efforts to produce the list of WIS, and because Defendants have not complied with (and cannot meet the standards set forth in) this Court's rules for adjourning trials or addressing calendar conflicts, Defendants' *Ex Parte* Application should be denied.

Dated: August 29, 2013               Respectfully submitted,

                                     JENNER & BLOCK LLP

                                     By: /s/ Steven B. Fabrizio
                                           Steven B. Fabrizio

                                     STEVEN B. FABRIZIO
                                     GIANNI P. SERVODIDIO
                                        JENNER & BLOCK LLP

                                     KAREN R. THORLAND
                                     FARNAZ M. ALEMI
                                        MOTION PICTURE ASSOCIATION OF
                                        AMERICA
                                     15301 Ventura Boulevard
                                     Building E
                                     Sherman Oaks, CA 91403

                                     *Attorneys for Plaintiffs*