JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6000
Facsimile: (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>GARY FUNG, *et. al.*<br><br>*Defendants*. | DISCOVERY MATTER<br><br>The Honorable Jacqueline Chooljian<br><br>Case No. CV-06-05578 SVW (JCx)<br><br>**REPLY BRIEF IN SUPPORT OF *EX PARTE* APPLICATION FOR EVIDENTIARY SANCTIONS FOR VIOLATION OF THE COURT'S JUNE 8, 2007 ORDER – FEES REQUESTED** |

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................2

I.   Plaintiffs and Defendants Never Reached Any Purported "Understanding" That Defendants Could Stop Producing The Website Data. ..............................................2

II.  Defendants Violated the Server Log Order ........................................................6

III. Plaintiffs Were Prejudiced By Defendants' Violation of the Court's Order .......7

IV.  Plaintiffs' Requested Sanctions Are Appropriate ...............................................8

V.   Defendants' Procedural Objection to Plaintiffs' *Ex Parte* Application Fails ....10

CONCLUSION ..............................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**

*Connecticut General Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) .................................................................................. 8

*Manriquez v. Huchins*,
  No. 1:09–cv–00456–LJO–BAM, 2012 WL 5880431 (E.D. Cal. Nov. 21, 2012) ..................... 6

*Medical Lab. Management Consultants v. ABC, Inc.*,
  306 F.3d 806 (9th Cir. 2002) .................................................................................... 9

*Transue v. Aesthetech Corp.*,
  341 F.3d 911 (9th Cir. 2003) .................................................................................... 9

**OTHER AUTHORITIES**

Local Rule 7-1 ............................................................................................................ 4

Local Rule 16 ........................................................................................................... 11

On June 8, 2007, this Court ordered Defendants to produce website server data, no less frequently than every two weeks, for the duration of the litigation. ECF # 137 ("Server Log Order"), at 25. Defendants made just two productions of this data, covering only the period from June 15 to July 11, 2007, and then stopped producing data – without explanation, and in direct violation of the Court's order. On August 10, 2007, this Court issued another order expressly warning Defendants that further noncompliance might result "in a recommendation to the assigned District Judge to impose … evidentiary sanctions." ECF # 211 ("August 10 Order"), at 4. Defendants nevertheless continued to violate the Court's order.

Defendants now assert that a year's worth of data, from 2007 to 2008, has been irretrievably lost. Had Defendants produced this data every two weeks as the Court ordered, this loss would of course have been averted. And although Defendants only just yesterday – less than 10 weeks before trial – produced server logs from May 2008 to April 2010, their eleventh-hour production comes several years too late and cannot remotely cure the substantial prejudice that Plaintiffs have suffered as a result of Defendants' failure to comply with the Court's order. The case for sanctions here is abundantly clear.

Recognizing as much, Defendants have now fabricated a justification for their noncompliance, asserting that Plaintiffs told Defendants in 2007 that further production of website data was unnecessary. Defendants' current claim is absolutely untrue, as demonstrated by contemporaneous pleadings. Indeed, in September 2007 – *after* this exchange supposedly happened – *Plaintiffs sought to have Defendants sanctioned for failing to produce the website data*. In the end, Defendants' Opposition is based on falsehoods, consistent with Defendants' long history of contemptuous practices throughout this litigation. Defendants' response serves only to underscore the need for the sanctions requested here.

# ARGUMENT

## I. Plaintiffs and Defendants Never Reached Any Purported "Understanding" That Defendants Could Stop Producing The Website Data.

Defendants contend that they did not comply with the Server Log Order because Plaintiffs told them not to. *See* Dkt. 567 ("Defs' Br."), at 1, 7, 8, 12, 18. Defendants rely for this absurd contention on the declaration of Jared Smith, which states: "During the course of the discussions regarding production, Mr. Servodidio on behalf of Plaintiffs conveyed that they had sufficient website server log data at that time for the purposes of filing their Motion for Summary Judgment, so that no additional website server log data needed to be produced." *See* Dkt. 567-1, ¶ 10. Mr. Smith offers no documentary evidence to support this assertion – no court filing, letter, or email. That is because it is utterly false. Servodidio Decl. ¶¶ 2-10.

On September 28, 2007 – *after* Plaintiffs had supposedly "conveyed that [Plaintiffs] had sufficient website server log data," and *after* the parties had supposedly reached an "understanding that liability phase discovery ended" – Plaintiffs filed their objections to Your Honor's Report and Recommendations, contending, among other things, that Defendants should be subject to sanctions for failing to produce the website server log data:

> [A]s raised during oral argument (and not refuted by defendants) defendants have willfully violated the June 8 Order by failing to produce server log data for the Isohunt website. The June 8 Order directs defendants to produce the server log data no less than every two weeks. June 8 Order 25:6-7. Defendants made two productions, the last one on July 16, 2007, but in violation of the June 8 Order have not produced any server log data since. Thus, plaintiffs have been *(and continue to be)* deprived of the most current evidence showing Isohunt user downloads of dot-torrent files corresponding to the newest of plaintiffs' copyrighted motion pictures and television programs. For this reason alone, which was

>       not disputed and is not disputable by defendants, the
>       Court should not limit the evidentiary sanction to exclude
>       the Isohunt website.

Dkt. 286, at 7 (emphasis added).  The Court invited Defendants to respond to Plaintiffs' objections, Dkt. 290, and Defendants did so, Dkt. 307.  Yet, Defendants' response said nothing about any alleged statement by Mr. Servodidio "convey[ing] that [Plaintiffs] had sufficient website server log data."  That is because no such statement was ever made.  Instead, Defendants have simply invented this scenario, six years later, in an attempt to avoid sanctions.

Any claim that Plaintiffs told Defendants it was acceptable to stop producing website data is similarly disproved by a draft stipulation that Plaintiffs proposed to Defendants to address Defendants' complaints about the volume of the server log data.  The stipulation would have permitted Defendants, subject to Court approval, to produce *all* website server log data for a period of several weeks *and thereafter to produce one hour of website server log data to Plaintiffs every day throughout the duration of the litigation.  See* Servodidio Decl., at Ex. 1, Proposed Stipulation at p. 4.  Although the stipulation was never agreed among the parties or presented to the Court (because Defendants never provided comments), Plaintiffs continued to press Defendants to discuss the proposed stipulation as late as August 22, 2007 – well *after* the alleged "understanding" had been reached with counsel.  *Id.* at Ex. 2.[1]  Plaintiffs' efforts to secure the stipulation – demonstrated by contemporaneous documents – further shows Defendants' current claim to be a fabrication.

---

[1] In transmitting this draft stipulation, Plaintiffs expressly noted that "absent Defendants' agreement to this stipulation and approval by the Court, the terms of the June 8th Order remain in full effect and defendants are required to produce all Server Log Data to plaintiffs commencing tomorrow and continuing thereafter." Servodidio Decl. ¶ 6.

Indeed, Defendants' far-fetched claim of an "understanding" between counsel cannot be reconciled with the contentious procedural history of the case. Plaintiffs devoted hundreds of hours to obtaining and enforcing the Server Log Order. Servodidio Decl. ¶ 3. Plaintiffs also sought and obtained sanctions against Defendants *five times* due to ongoing discovery abuses, failure to comply with the Court's orders, and material misrepresentations to the Court. Feb. 22, 2007 Order (ECF # 56) at 3-4; May 31, 2007 (ECF # 121) at 6; Server Log Order at 23-24; Aug. 6. 2007 Order (ECF # 207) at 2-3; August 10 Order at 3-4. Against this backdrop, it is simply not credible that the parties never bothered to confirm via email or other writing that they supposedly had arrived at agreement wherein Defendants could stop producing data pursuant to the Server Log Order.[2]

Defendants try to prop up their fabricated story by pointing to the fact that Plaintiffs, in an earlier *ex parte* application for sanctions, did not complain of Defendants' failure to produce website data. Defs' Br., at 8. However, as of the date of that application – July 20, 2007 – Defendants had not yet violated the Court's order as to *website* server log data; and, in fact, had just made their second production of website data. Plaintiffs could not have known that Defendants were about to defy the Court's order and refuse any further productions of website data. That is why Plaintiffs' application did not address website data at that time. When Defendants later failed to make their next required production of website data, Plaintiffs informed the Court and, as noted above, sought evidentiary sanctions.

---

[2] The existence of any "agreement" is a complete fabrication. But, regardless, absent modification of the Order by the Court, Defendants were not free to disregard their obligations pursuant to an alleged private agreement between the parties. This is precisely why the Local Rules of this Court provide that "[s]tipulations will be recognized as binding only when made in open court, on the record at a deposition, or when filed in the proceeding." L.R. 7-1.

Defendants' characterizations of the parties' more recent dealings, which Defendants suggest show that Plaintiffs have somehow acquiesced in Defendants' failure to comply with the Court's order, are similarly riddled with inaccuracies. For example, Defendants assert that, in proceedings before Judge Wilson earlier this month, Plaintiffs "made no mention that they required additional web server log data," or that analysis of this data was necessary to identify the works in suit. Defs' Br., at 10. This is simply false. In their briefing to the Court filed on July 18, 2013 (before Defendants revealed that preserved website data existed), Plaintiffs expressly noted that "Defendants are also in violation of the Magistrate Judge's Order to produce data showing downloads of dot torrent files *from the Fung Websites*." ECF # 543, at 4. And the Court's August 7, 2013 Order makes explicit reference to the fact that Plaintiffs had complained specifically of Defendants' failure to produce website server log data and directed Plaintiffs to pursue this issue before Your Honor. Dkt. # 554, at 3 n.3. Defendants' failure to be upfront with the Court on simple matters that are of record in this case is inexcusable.

Similarly, Defendants draw false conclusions from Plaintiffs' August 9, 2013 email requesting IP address information for the 27 days of website data produced in June/July 2007. Defs' Br., at 2. Plaintiffs did not request additional website data in their August 9 email because, up to that point, Defendant had led Plaintiffs to believe that no relevant website data existed. In fact, in recent briefing to the Court, Defendants had represented that the only data they had preserved was from the time period *after* the Court's injunction and was therefore "largely irrelevant to the damages phase of the case." ECF # 546, at 1. For this reason, Plaintiffs noted in recent filings that "Defendants have not . . . preserved or produced website server data from the Fung Websites as required by the Magistrate Judge's Order of June 2007." ECF # 550, at 1. Defendants never advised the Court at the August 5 hearing, or before, that they had preserved additional, highly relevant website data pre-dating the injunction. It was not until August 16 that Defendants first alluded

vaguely to the existence of potentially relevant data. Surprised by the revelation, Plaintiffs immediately asked for clarification as to the time period covered by such data. For the first time on August 19, Defendants confirmed that the website data covering periods prior to the injunction existed, and Plaintiffs immediately demanded that it be produced. Fabrizio Decl. ¶¶ 9-11[Dkt. # 558].

At bottom, Plaintiffs were under no duty to ask Defendants to comply with a Court-ordered obligation that they had already breached. *See, e.g.*, *Manriquez v. Huchins*, No. 1:09–cv–00456–LJO–BAM, 2012 WL 5880431, at *9 (E.D. Cal. Nov. 21, 2012) (noting that when "Defendants will not comply with the orders of the Court," "further attempts to obtain . . . requested discovery would be futile"). Yet, as the record makes clear, the minute Plaintiffs learned that relevant website data might exist, they demanded its production.

## II. Defendants Violated the Server Log Order

Defendants contend that "there was no violation of any court order here to support" an award of sanctions. Defs' Br. at 17. This is frivolous.

Defendants rely almost entirely on a single footnote from an August 2009 order of the Court, in which the Court ordered supplemental briefing as to the evidence in the record concerning infringement, but noted the order "should not be construed as an invitation to the parties to engage in additional discovery." *Id*. at 18 (citing Dkt. # 358). This footnote can hardly excuse Defendants' violations of the Server Log Order, which had been ongoing for over two years by that point. Moreover, the footnote was clearly not directed to Defendants' ongoing obligation to produce website server log data – the discussion had nothing to do with this issue. The Court was responding to *Defendants'* request for additional discovery on an entirely different matter. *See* Dkt. # 358, at 4-5 n.2. Defendants' effort now to find

ambiguity in this Court's order, where there is none, is transparently a last-minute contrivance to avoid the imposition of sanctions.[3]

### III. Plaintiffs Were Prejudiced By Defendants' Violation of the Court's Order

Defendants contend that "there is no genuine prejudice as a result of any delay" in their production of the website server log data. Defs' Br., at 19. Of course, this contention ignores Defendants' irretrievable spoliation of nearly a full years' data, representing a third of the most relevant time period in this case. As Plaintiffs have already explained, the prejudice from the loss of this evidence, which would have conclusively shown staggering amounts of copyright infringement, is obvious. Dkt. # 558, at 7-14.

Defendants characterize the destruction of this evidence as accidental, thereby attempting to analogize themselves to the parties in those cases where courts have declined to impose sanctions where evidence is destroyed innocently. Defs' Br., at 20-21 (citing cases). But by Defendants' own account the alleged server crash that destroyed this crucial evidence occurred sometime in "early 2008." Fung Decl. ¶ 9. Had Defendants been producing data every two weeks as ordered by the Court, it would not have been lost. Regardless of whether the server crash was "innocent," Defendants' violation of the Server Log Order – which was *not* innocent – is the reason why the evidence no longer exists and cannot be excused.

Moreover, Defendants' production of website server log data from May 2008 to April 2010 – made only yesterday, less than 10 weeks before trial – is grossly untimely and cannot cure the substantial prejudice that Plaintiffs have suffered from

---

[3] Defendants also cite a series of inapposite cases in which courts denied motions to compel that were filed outside of court-imposed discovery schedules. Defs' Br., at 18-19. Here, Plaintiffs *did* file a timely motion to compel, prevailed, and obtained an order from Your Honor, which Defendants violated.

Defendants' violation of the Server Log Order. As Plaintiffs have explained, the data that Defendants are now producing is incomplete and dated, and leaves insufficient time for meaningful analysis before trial. Dkt. # 558, at 14-18. Tellingly, Defendants do not challenge the substance of these points and, instead, cling to the same (demonstrably false) argument that Plaintiffs had supposedly failed to request the data until now. *See* Defs' Br., at 24 (failing to address Plaintiffs' arguments as to prejudice). Defendants have thus all but conceded that their violation of this Court's Order has caused substantial prejudice to Plaintiffs.[4]

### IV. Plaintiffs' Requested Sanctions Are Appropriate

Defendants assert that the standard for *terminating sanctions* has not been met in this case. Defs' Br., at 16-17. While that is certainly not true – Defendants' egregious conduct clearly would justify terminating sanctions – it is also irrelevant. Plaintiffs are not seeking terminating sanctions. If Plaintiffs' motion is granted, the case will proceed and Plaintiffs will still have to establish that: (1) dot-torrent files appeared on the Fung websites, (2) Plaintiffs own the copyrights for the works to which the dot-torrent files correspond, and (3) the jury should award a particular amount of statutory damages for each work. *Cf. Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (dismissal or default judgment are terminating sanctions).[5]

---

[4] Defendants appear to suggest that a sanctions order would be inconsistent with the Ninth Circuit's dicta on causation. Defs' Br., at 14. But what Defendants fail to disclose, however, is that Judge Wilson has already addressed causation. Following the Ninth Circuit's opinion, Judge Wilson issued an order stating: "[F]or BitTorrent files downloaded from Defendants' websites, no causation dispute exists: Defendants have caused the infringement." Dkt. # 527, at 3 n.2.

[5] Defendants contend that, because the amount of statutory damages is to be decided by a jury, it would be unconstitutional to impose evidentiary sanctions that limit the jury's ability to hear evidence regarding actual damages. Defs' Br., at 16. This

*(continue…)*

The sanctions that Plaintiffs seek are specifically tailored to the prejudice resulting from Defendants' misconduct and are designed to prevent Defendants from profiting from that misconduct – the very purpose of evidentiary sanctions. It is beyond dispute that the server logs, had they been produced when ordered, would have established conclusively that Plaintiffs' copyrighted works were available through the Fung Websites and were infringed many thousands (perhaps even millions) of times by Defendants' users in the United States. Defendants cannot be permitted to challenge Plaintiffs' proof of this massive infringement by depriving Plaintiffs of the very evidence necessary to prove these facts, and by producing only two of three years' worth of the relevant data less than 10 weeks before trial.

To be clear, Plaintiffs are making a herculean effort to analyze the website data belatedly produced by Defendants in order to establish both direct infringement and the volume of such infringement if possible. This includes having a team of 20 lawyers and paralegals working around the clock over the entire Labor Day weekend. However, this is extremely time-consuming, requiring thousands of hours and substantial human data review during the critical time period when Plaintiffs are otherwise preparing for trial. *See* Servodidio Decl. ¶¶ 12-13 (describing in detail the process required to analyze the website data).

---

*(continued from previous page)*

argument is frivolous and would operate as a bar on evidentiary sanctions in every jury trial. That is clearly not the law. "'A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.'" *Medical Lab. Management Consultants v. ABC, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002). This includes the power to instruct the jury to draw particular inferences. *Transue v. Aesthetech Corp.*, 341 F.3d 911, 920-21 (9th Cir. 2003). The Seventh Amendment is not a license to despoil evidence with impunity.

Assuming Plaintiffs can complete this analysis before the applicable pre-trial deadlines, this would allow Plaintiffs to present conclusive proof of direct infringement and the volume of infringement. Thus, for requested sanctions Numbers 1 (direct infringement) and 2 (scale of infringement), Plaintiffs believe they may be able to use the website data belatedly produced by Defendants, and should not have to rely on evidentiary sanctions for dot-torrent files on the Fung sites from May 2008 to May 2010.[6] However, Plaintiffs cannot now download the content files associated with all of their works reflected in the website server log data because time does not permit and because the torrent files have become stale. Dkt. # 558 at 13, 18. Nor is there sufficient time before trial for Plaintiffs to retain expert witnesses to analyze the data and conduct reliable studies quantifying the actual damages to Plaintiffs caused by Defendants' infringement. Accordingly, the Court should impose the requested sanction Numbers 3 and 4 even for the time period covered by Defendants recent production of website server log data.

Finally, it is undisputed that Defendants have not preserved or produced any website server log data from July 11, 2007 through May 2008 – data that would have proven millions of acts of infringement. For this time period, Plaintiffs plainly are entitled to the full range of requested evidentiary sanctions.

### V.  Defendants' Procedural Objection to Plaintiffs' *Ex Parte* Application Fails

Finally, Defendants contend that Plaintiffs' *Ex Parte* Application should be denied because the circumstances leading to the Application are insufficiently urgent to justify the use of the extraordinary *ex parte* procedure here. Defs' Br., at

---

[6] Plaintiffs are doing all they can. Nevertheless, to the extent Plaintiffs cannot complete these analyses sufficiently in advance of trial to be useful, Plaintiffs respectfully reserve their rights to renew their application for sanctions at a later time. *See* August 10 Order, at 4.

1 14-15. However, Defendants themselves filed an *ex parte* application with Judge
2 Wilson just this week, *see* Dkt. 570. Thus, evidently, when it serves their purposes,
3 Defendants too understand that the impending trial and pretrial activities necessitate
4 the *ex parte* process.

5      Plaintiffs' application is properly before this Court. Trial is scheduled for
6 November 5, 2013, and the pretrial conference is scheduled for October 28, 2013.
7 Under Local Rule 16, the parties must conduct their meet-and-confer related to the
8 pretrial conference on September 18, 2013, and must submit their Memorandum of
9 Contentions of Fact and Law, Witness List, and Joint Exhibit List by October 7,
10 2013. The sanctions issues raised in this application affect all of these pretrial
11 events; timely resolution of these issues is critical if Plaintiffs are going to get
12 effective relief. Plaintiffs have been diligent; they filed their sanctions motion less
13 than two weeks after the District Court remanded this matter to Your Honor, *see*
14 August 7 Order, and a mere three days after Defendants first informed them of the
15 existence of the 2008-2010 data. Fabrizio Decl. ¶¶ 9-11[Dkt. # 558]. Use of the *ex*
16 *parte* procedure is thus appropriate here.[7]

## CONCLUSION

18      Plaintiffs' *ex parte* application should be granted.

---

[7] Defendants devote a considerable portion of the brief to their claim that they have been prejudiced by Plaintiffs' supposed failure to indicate that they would be seeking damages on considerably more than the 44 works identified in the Complaint. That is simply another contrived argument. From the outset of this case in 2006, Plaintiffs have made clear that the 44 works were "by way of illustration" and that "the extent of the infringing activity" would be determined in the damages phase of the litigation. Dkt. # 37, at 5 & n.1. There has never been any ambiguity on this point. And this claim is of course wholly irrelevant to the matters at issue in the pending *ex parte* application.

| | |
|---|---|
| Dated:  August 30, 2013 | Respectfully submitted, |
| | JENNER & BLOCK LLP |
| | By: /s/ Steven B. Fabrizio |
| | Steven B. Fabrizio |
| | |
| | STEVEN B. FABRIZIO |
| | GIANNI P. SERVODIDIO |
| | JENNER & BLOCK LLP |
| | |
| | KAREN R. THORLAND |
| | FARNAZ M. ALEMI |
| | MOTION PICTURE ASSOCIATION OF AMERICA |
| | 15301 Ventura Boulevard |
| | Building E |
| | Sherman Oaks, CA 91403 |
| | |
| | *Attorneys for Plaintiffs* |