Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
Thomas Patrick Lane (admitted *pro hac vice*)
tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Telephone:   (212) 294-6700
Facsimile:    (212) 294-4700

Ira P. Rothken (SBN: 160029)
ira@techfirm.net
Jared R. Smith (SBN: 130343)
jared@techfirm.net
**ROTHKEN LAW FIRM**
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:   (415) 924-4250
Facsimile:    (415) 924-2905

Robb C. Adkins (SBN: 194576)
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111-5802
Telephone:   (415) 591-1000
Facsimile:    (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Attorneys for Defendants,
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GARY FUNG, et al.,<br><br>Defendants. | Case No. CV 06-5578-SVW (JCx)<br><br>**DECLARATION OF JARED R. SMITH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT** |

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

I, Jared R. Smith, declare:

1.      I am an attorney of law admitted to practice before this Court and make this declaration in support of Defendants' Oppositions to Plaintiffs' Motion for Summary Judgment on Willful and Innocent Infringement and Plaintiffs' Motion for Summary Judgment on Defendants Affirmative Defenses of Fair Use and Failure to Mitigate.  All statements made herein are on personal knowledge unless otherwise stated.  If called as a witness, I could competently testify as to the matters stated herein.

2.      During the first phase of this case, Defendants propounded requests for production of documents seeking information concerning all the works Plaintiffs claimed in this action.  Attached hereto as **Exhibit A** is a true and correct copy of Defendants' Request for Production of Documents, Set 2 (Requests nos. 83-94), which Defendants served on May 18, 2007.

3.      On June 18, 2007, Plaintiffs objected to each of Defendants' Requests nos. 83-89 and 91-94 on the basis that "[p]roof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage." Attached hereto as **Exhibit B** is a true and correct copy of Plaintiffs' Responses to Defendants' Request for Production of Documents, Set 2.

4.      In responding to Defendants' Second Set of Requests for Production of Documents, Plaintiffs refused to produce documents concerning any of their works other than the forty-four listed in Exhibit A to the First Amended Complaint.

5.      During the first phase of this case, Defendants also propounded interrogatories seeking information concerning the works Plaintiffs claimed were illegally copied. Attached hereto as **Exhibit C** is a true and correct copy of Defendants' Interrogatories, Set 1 (Interrogatories nos. 1-9), which Defendants served on May 18, 2007.

6.     On June 18, 2007, Plaintiffs objected to each of Defendants' Interrogatories nos. 1, 4-6, and 9, on the basis that discovery at that time was "limited to … the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint." Attached hereto as **Exhibit D** is a true and correct copy of Plaintiffs' Responses to Defendants' Interrogatories set one.  Those Interrogatories sought information about the works Plaintiffs claimed had been infringed (Interrogatory No. 1); the amount of monetary or statutory damages Plaintiffs alleged, and the basis for their computation (Interrogatory No. 4); identification of dot-torrent files and eDonkey hash links implicated in any alleged infringements (Interrogatories Nos. 5 and 6); and facts supporting any claim that Defendants had knowledge of infringements (Interrogatory No. 9).

7.     The only information Plaintiffs agreed to provide in response to Defendants' Interrogatories during the first phase of this litigation was "copies of documents relating to the copyright ownership of the representative list of works in the First Amended Complaint." Plaintiffs refused to provide information concerning any of their works other than the forty-four listed in Exhibit A to the First Amended Complaint.

8.     Attached hereto as **Exhibit E** is a true and correct copy of the transcript from the July 1, 2013 scheduling conference in this action.

9.     Attached hereto as **Exhibit F** is a true and correct copy of Plaintiffs' *Ex Parte* Application For Protective Order Re Rule 30(b)(6) Depositions, dated August 1, 2007.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing statements are true and correct.

Executed in Londonderry, New Hampshire on September 6, 2013.


/s/ Jared R. Smith
Jared R. Smith

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# EXHIBIT A

1   Ira P. Rothken (SBN #160029)
2   ROTHKEN LAW FIRM
3   3 Hamilton Landing, Suite 280
    Novato, CA  94949
4   Telephone:   (415) 924-4250
    Facsimile:    (415) 924-2905
5
6   Attorney for Defendants
7   Gary Fung and Isohunt Web Technologies, Inc.

8
9                   UNITED STATES DISTRICT COURT
10                 CENTRAL DISTRICT OF CALIFORNIA
11
12   COLUMBIA PICTURES, et. al.,          Case No. CV06-5578-SVW (JCx)
13        Plaintiffs,
                                          REQUEST FOR PRODUCTION
14        vs.                             DOCUMENTS, SET 2
15                                        FRCP 34
     GARY FUNG, et. al.,
16        Defendants.
17
18   PROPOUNDING PARTY:        Defendant GARY FUNG.
19   RESPONDING PARTY:         Plaintiffs Columbia Pictures Industries Inc, Disney
20                             Enterprises Inc, Paramount Pictures Corporation,
                               TriStar Pictures Inc, Twentieth Century Fox Film
21                             Corporation, Universal City Studios LLLP, Universal
22                             City Studios Productions LLLP, Warner Bros
                               Entertainment Inc
23
24   SET NUMBER:               TWO
25        Propounding party requests that responding party, pursuant to Federal Rule of
26   Civil Procedure 34, permit the inspection and copying of the documents listed below
27   and retain during the pendency of this action the tangible materials so listed.
28

**REQUESTS FOR PRODUCTION OF DOCUMENTS, SET TWO**
Columbia Pictures, *et al.* v. Fung, et al.
U.S. Dist. Ct., Central Dist Cal., No. CV **06-5578 SVW (JCx)**
                                        -1-

1  The production of documents shall be made at the Rothken Law Firm LLP, 3

2  Hamilton Landing, Suite 280, Novato, CA 94949, within thirty (30) days of service.

### DEFINITIONS

3

4  1.    The terms "you" "your," AND "RESPONDENT" refer to the respective

5  plaintiff responding to these requests and where applicable in this context, plaintiff's

6  corporate affiliates, predecessors, predecessors of corporate affiliates, representatives,

7  agents, servants, counsel, employees, consultants, and persons authorized to act,

8  acting, or purporting to act on its behalf.

9  2.    The term "defendants" refer to the defendants herein, both collectively

10  and each of them, individually.

11  3.    The term "MPAA" refers to the Motion Picture Association of America.

12  4.    The term "Defendant's Websites" means the websites, web pages, search

13  engines, trackers, and services, alleged to be under the control or supervision of

14  propounding party or Isohunt Web Technologies, Inc. including, but not limited to,

15  isohunt.com, ed2k-it.com, BTHub, and torrentbox.com, including all content,

16  databases, files, web pages, and software that comprise the site and support, enable,

17  and provide its full range of features and functions, including to users and

18  administrators, and all server hardware on which said content, databases, files, web

19  pages, and software reside.

20  5.    The present tense shall be construed to include the past tense and the past

21  tense shall be construed to include the present tense as required by the context to elicit

22  all information discoverable within the broadest scope of these document requests.

23  6.    The singular shall be construed to include the plural and the plural shall

24  be construed to include the singular as required by the context to elicit all information

25  discoverable within the broadest scope of these document requests.

26  7.    "And" and "or" have both conjunctive and disjunctive meanings as

27  required by the context to elicit all information discoverable within the broadest scope

28  of these document request.

**REQUESTS FOR PRODUCTION OF DOCUMENTS, SET TWO**
Columbia Pictures, *et al.* v. Fung, et al.
U.S. Dist. Ct., Central Dist Cal., No. CV **06-5578 SVW (JCx)**

8.     "Any" and "all" shall mean "each and every."

9.     "Communication(s)" means the transmittal of information by any means and includes communication of any kind, whether written, oral, electronic or other.

10.     The terms "concerning" and "related to" mean, without limitation, referring to, describing, evidencing, constituting, summarizing, analyzing, studying, discussing, relating to, and resulting from, and should be construed broadly as required by the context to elicit all information discoverable within the broadest scope of these document requests.

11.     "Documents" includes every writing, recording, or record in any form, whether handwritten, printed, typed, taped, or in any other graphic, digital, magnetic, optical, or mechanical form, however produced, reproduced, or recorded, and should be construed to be synonymous in meaning and scope to the usage of this term in Federal Rule of Civil Procedure 34(a). The term includes, without limitation, all memoranda, reports, data, correspondence, phone messages, diaries, logs, notes, bills, invoices, checks, receipts, and e-mail messages, including those within the personal or private possession, custody, or control of RESPONDENT, including any RESPONDENT'S officer, director, employee, agent, or individual, as specified in the definition of " RESPONDENT" above. The term also includes, without limitation, any data compilations from which information can be obtained, and if necessary, translated into usable form through the use of any machine, device, or equipment, whether or not sent, received, or otherwise transmitted. The term also includes, with limitation, every draft of a document, and any copy that is not identical in each and every respect to the original or another copy.

12.     The term "including" shall be construed to mean "including without limitation."

13.     To the extent documents are maintained in electronic formats, this request calls for production in electronic format. Documents maintained in electronic formats should be produced in their native formats as they currently exist on your

storage media and devices.

14.     Source code should be produced in regular tool readable format and include all ancillary files - such as project files, makefiles, header files, and third party library code (whether in source or compiled form) - necessary to build working versions of the full applications.

15.     If any of the documents requested herein has been lost or destroyed: (a) provide a written statement, in lieu of each such lost or destroyed document, that describes in detail the nature of the document and its contents, identifies the author and recipient(s) of the document, specifies the date on which the document was prepared or transmitted or both, and if possible specifies the date on which the document was lost or destroyed, the reasons for loss or destruction, and the individuals with knowledge of such loss or destruction; and (b) provide any documents existing at the time of such loss or destruction setting forth or reflecting any policy or procedure then in effect for destruction or retention of documents.

16.     Documents sought in this request include documents currently or previously within the knowledge, possession, or control of Defendants, as well as those documents which come into the possession of Defendants subsequent to service hereof. Each of the following document requests is continuing in nature and Plaintiffs hereby request that if you obtain any additional responsive documents at any later date, you promptly so inform Plaintiffs and produce those documents.

17.     If any document is not produced on the basis of a claim of privilege or for any other reason, identify the document with particularity, including without limitation the author(s), any recipient(s), any other individual or entity to whom the document has been shown or transmitted, any other individual or entity with whom the document has been discussed, the number of pages, attachments, and appendices, the date of the document, a description of the subject matter sufficient to form the basis of a claimed privilege and to uniquely identify the document, and a short statement of the nature of the claimed privilege or reason for withholding production.

**REQUESTS FOR PRODUCTION OF DOCUMENTS, SET TWO**
Columbia Pictures, *et al.* v. Fung, et al.
U.S. Dist. Ct., Central Dist Cal., No. CV **06-5578 SVW (JCx)**
-4-

For each individual or entity identified in conjunction with a claim of privilege, provide information relating to the relationship between Defendant(s) and the individual and entity.

18.     If a document is in the possession of a person or entity other than one over whom you have no control, (a) set forth whether and when the document was in your possession or otherwise how you became aware of the document; (b) set forth the reason(s) why the document is no longer in your possession; and (c) identify the individual or entity which is presently in possession of the document.

19.     You are required to provide separate responses to all of the following document requests.

20.     When any request calls for the production of any portion of any document, the entire document containing any such portion must be produced.

21.     Unless otherwise specified, this document request seeks documents prepared, generated, duplicated, communicated, distributed or transmitted on or after January 1, 2000.

DOCUMENT REQUESTS

83.   Produce all documents concerning, evidencing or otherwise relating to actions or omissions taken by you to follow statutory procedures for registration of the copyrights of any of the alleged copyrighted material that is the subject of your complaint.

84.   Produce all documents concerning, evidencing or otherwise relating to any written agreements between plaintiffs and any other party to acquire the subject copyrights.

85.   Produce all documents concerning, evidencing or otherwise relating to any disclosure of previous registrations of some or all of the subject works.

86.   Produce all documents concerning, evidencing or otherwise relating to actions or omissions taken by you to follow statutory procedures for registration of the

1   copyrights of any of the alleged copyrighted material that is the subject of your

2   complaint.

3       87.   Produce all documents concerning, evidencing or otherwise relating to

4   any actions or omissions taken by you to disclaim pre-existing material in the subject

5   works.

6       88.   Produce all documents concerning, evidencing or otherwise relating to

7   the authority and knowledge of the signatory to the copyright registrations of the

8   subject works to perform such acts.

9       89.   Produce all documents concerning, evidencing or otherwise relating to all

10  editions of the subject works that were available to submit to the U.S. Copyright

11  Office including, without limitation, the actual edition submitted.

12      90.   Produce all documents concerning, evidencing or otherwise relating to

13  any actions or omissions taken by you to comply with the copyright notification

14  requirements of the Digital Millennium Copyright Act, 17 U.S.C. § 512.

15      91.   Produce all documents concerning, evidencing or otherwise relating to

16  any actions or omissions taken by you to grant any license to any party to use the

17  subject works.

18      92.   Produce all documents concerning, evidencing or otherwise relating to

19  any actions or omissions taken by you that provide any evidence that you have

20  standing to bring this action.

21      93.   Produce all documents concerning, evidencing or otherwise relating to

22  any damages you have suffered as a result of any of the allegations asserted in your

23  complaint.

24  ///

25  ///

26  ///

27

28

94.   Produce all documents concerning, evidencing or otherwise relating to any evidence to establish the validity of the copyright registrations upon which you rely in bringing this action.

Dated: May 18, 2007          ROTHKEN LAW FIRM LLP

By:   Ira P. Rothken, Esq., (State Bar #160029)
Attorney for Defendants

Ira P. Rothken (SBN #160029)
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:  (415) 924-4250
Facsimile:   (415) 924-2905

PROOF OF SERVICE

I am over the age of 18 years, employed in the county of Marin, and not a party to the within action; my business address is 3 Hamilton Landing, Suite 280, Novato, CA 94949.

On May 18, 2007, I served the within:

**REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO**

By EMAIL and FEDEX by depositing a copy in an envelope, postage prepaid in a FEDEX BOX addressed as follows:

| | |
|---|---|
| **VIA EMAIL AND FEDEX**<br>**Karen B. Thorland**<br>**Walter A Edmiston**<br>Loeb and Loeb<br>10100 Santa Monica Blvd, Ste 2200<br>Los Angeles, CA 90067-4164<br>310-282-2000<br>Email: kthorland@loeb.com | **VIA EMAIL AND FEDEX**<br>**Steven B Fabrizio**<br>**Katherine A Fallow**<br>**Duane Charles Pozza**<br>Jenner and Block<br>601 Thirteenth Street NW, Suite 1200 South<br>Washington, DC 20005<br>202-639-6000<br>Email: sfabrizio@jenner.com<br>Email: kfallow@jenner.com<br>Email: dpozza@jenner.com |
| **VIA FEDEX**<br>**Gregory Paul Goeckner**<br>**Lauren T Nguyen**<br>Motion Picture Association of America<br>15503 Ventura Blvd<br>Encino, CA 91436<br>818-995-6600 | **VIA EMAIL AND FEDEX**<br>Gianni P Servodidio<br>Sami J Valkonen<br>Ronald M Daignault<br>Jenner and Block<br>919 Third Avenue, 37th Floor<br>New York, NY 10022<br>212-891-1600<br>Email: gservodidio@jenner.com<br>Email: svalkonen@jenner.com<br>Email: rdaignault@jenner.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 18, 2007.

*Jason R Smith*

**REQUESTS FOR PRODUCTION OF DOCUMENTS, SET TWO**
Columbia Pictures, *et al.* v. Fung, et al.
U.S. Dist. Ct., Central Dist Cal., No. CV **06-5578 SVW (JCx)**
-8-

# EXHIBIT B

JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
601 Thirteenth Street, N.W.,
Suite 1200 South
Washington, D.C. 20005
Telephone: (202) 639-6000
Facsimile: (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
SAMI J. VALKONEN (*pro hac vice*)
  svalkonen@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>Plaintiffs,<br><br>v.<br><br>GARY FUNG, *et. al.*<br><br>Defendants. | Case No. CV-06-05578 SVW (JCx)<br><br>**PLAINTIFFS' RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET 2**<br><br>**[Fed. R. Civ. P. 34]** |

Pursuant to Federal Rule of Civil Procedure 34, plaintiffs Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation, TriStar Pictures, Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLLP, Universal City Studios Productions LLLP, and Warner Bros. Entertainment Inc. ("plaintiffs") hereby respond to defendants' Request for Production of Documents, Set 2 (the "Second Requests"):

## SPECIFIC OBJECTIONS TO DEFINITIONS

1.       Plaintiffs object to the definitions of "you," "your," "responding party," and "RESPONDENT" as overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and unduly burdensome.  For the purposes of this Second Request, plaintiffs will produce documents, to the extent applicable, in the possession of each plaintiff in suit and/or, as appropriate, in the possession of related persons or entities that reasonably may possess responsive information.

2.       Plaintiffs object to the Second Requests to the extent that they are not limited to time periods reasonably related to the matters at issue in this litigation. Specifically, plaintiffs object to the Second Requests to the extent that they seek the production by the plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome.  Plaintiffs will produce all non-privileged responsive documents created on or after January 1, 2002, through the commencement of this litigation.

3.       Plaintiffs object to the Second Requests to the extent that they call for every identical copy of each document, on the grounds that the request is overly broad and unduly burdensome.

PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

4.     Plaintiffs object to the terms "any" and "all" with respect to certain of the document requests.  Plaintiffs undertake to provide such information as they are able to locate after reasonable and diligent investigation.  By answering, plaintiffs do not certify that "any" or "all" items of responsive information have been obtained and reserve the right to supplement their answers as more information becomes available.

Plaintiffs incorporate these Specific Objections to Definitions into each specific response as if fully set forth in each response.

## GENERAL OBJECTIONS

1.     Plaintiffs object to the Second Requests on the grounds that they are harassing, oppressive, overbroad, and unduly burdensome.  Plaintiffs further object to the Second Requests because the burdens imposed by responding to the Second Requests far outweigh any potential value of responding to the Second Requests.

2.     Plaintiffs object to the Second Requests to the extent that they call for the disclosure of information subject to the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine.  Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, the joint defense or common interest privilege, the attorney work product immunity doctrine, or any other applicable privilege or doctrine.

3.     Plaintiffs object to the Second Requests to the extent that they call for the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B).  Any inadvertent disclosure of such information shall not be deemed a waiver of the protection against the Second Requests afforded by Rule 26(b)(4)(B) or any other applicable privilege or doctrine.

**PLS.' RESPONSES TO DEFS.' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

4.    Plaintiffs object to the Second Requests to the extent that they call for the disclosure of information beyond that required by the Federal Rules of Civil Procedure or the Local Rules of the Court.

5.    Plaintiffs object to the Second Requests to the extent that they call for documents created or maintained by defendants, for documents already in defendants' possession, or for information readily accessible to defendants in the public record, on the grounds that it is unduly burdensome, oppressive, and harassing, and would needlessly increase the cost of litigation.

6.    Plaintiffs object to the Second Requests to the extent they seek unavailable information or information not currently in plaintiffs' possession, custody or control.

7.    Plaintiffs object to the Second Requests to the extent that they seek information constituting trade secrets or other financial, technical, research, development, strategic, or commercial information.

8.    Plaintiffs object to the Second Requests to the extent that they seek discovery concerning the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that proceedings on remedial issues such as these will be deferred until after summary judgment proceedings on the core issue of defendants' secondary liability.

9.    Plaintiffs object to the Second Requests to the extent that they seek discovery concerning Affirmative Defenses numbered 5, 10-15, 17, 23-27, 30-36, 38 and 39 in Defendants' Answer to Plaintiffs' First Amended Complaint ("Answer") which are frivolous and lacking in evidentiary support or contrary to the law.  On June 13, 2007, Plaintiffs served Defendants with a Motion For Sanctions Under Rule 11 Fed.R.Civ.P. for Filing of Frivolous Affirmative Defenses ("Rule 11 Motion") asking

PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

the Court to strike Affirmative Defenses numbered 5, 10-15, 17, 23-27, 30-36, 38 and 39 from defendants' Answer.

10.     Plaintiffs object to the Second Requests to the extent that they are not consecutively numbered, in violation of the Local Rules of the Central District of California.

11.     By agreeing to search for or produce documents responsive to any particular request, plaintiffs do not represent that such documents exist.

Plaintiffs incorporate these General Objections into each specific response as if fully set forth in each response.


## RESPONSES

83.     Produce all documents concerning, evidencing or otherwise relating to actions or omissions taken by you to follow statutory procedures for registration of the copyrights of any of the alleged copyrighted material that is the subject of your complaint.

RESPONSE:  Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint.  Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each

work is inappropriate at this stage.  Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defense No. 30 in defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 30, from defendants' Answer as frivolous, and either having no evidentiary support or as not warranted by law, or both.  Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case.  Plaintiffs further object to this Request as vague and ambiguous in that it seeks documents about unspecified "omissions."  Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation.  Specifically, plaintiffs object to this Request to the extent that it seeks the production of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking

**PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS**

information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome. Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

84.   Produce all documents concerning, evidencing or otherwise relating to any written agreements between plaintiffs and any other party to acquire the subject copyrights.

RESPONSE: Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages. In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint. Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage. Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

1    Plaintiffs specifically object to this Request as overbroad and unduly

2    burdensome to the extent that it seeks discovery concerning Affirmative Defense No.

3    31 in defendants' Answer. On June 13, 2007, plaintiffs served defendants with the

4    Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 31,

5    from defendants' Answer as frivolous, and either having no evidentiary support or as

6    not warranted by law, or both. Plaintiffs decline to produce documents on the basis of

7    the foregoing objection.

8        Plaintiffs further object to this Request as overbroad, unduly burdensome,

9    harassing, and seeking information not relevant to the claims and defenses at issue in

10   this case. Plaintiffs decline to produce documents on the basis of the foregoing

11   objections.

12

13       Plaintiffs further specifically object to this Request to the extent that it calls for

14   materials protected by the attorney-client privilege, the joint defense or common

15   interest privilege, the work product doctrine or any other applicable privilege or

16   doctrine, or that it seeks the disclosure of communications with, facts known by, or

17   opinions held by non-testifying experts retained pursuant or specially employed in

18   anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P.

19   26(b)(4)(B), and plaintiffs decline to produce such documents.

20       Plaintiffs further object to this Request to the extent that it is not limited to time

21   periods reasonably related to the matters at issue in this litigation. Specifically,

22   plaintiffs object to this Request to the extent that it seeks the production by plaintiffs

23   of documents or materials prepared, generated, duplicated, communicated, distributed

24   or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and

25   seeking information neither relevant to this action nor likely to lead to the discovery of

26   admissible evidence, or after the commencement of litigation, as overbroad and

27

28

**PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS**

1  unduly burdensome.  Plaintiffs decline to produce documents created before January

2  1, 2002, or after the commencement of this litigation.

3      Without waiver of and subject to and incorporating the general and specific

4  objections and express limitations on production as set forth above, plaintiffs will

5  produce copies of responsive documents relating to the copyright ownership of the

6  illustrative set of infringing works attached as Exhibit A to the First Amended

7  Complaint.

8

9  85.   Produce all documents concerning, evidencing or otherwise relating to any

10       disclosure of previous registrations of some or all of the subject works.

11       RESPONSE:  Plaintiffs incorporate each General Objection and Specific

12  Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this

13  Request as overbroad and unduly burdensome to the extent that it seeks discovery

14  relating to the total number of infringing works claimed by the plaintiffs in this case

15  and/or damages.  In the case management conference held on November 6, 2006, the

16  Court directed that the parties' initial discovery should be limited to the core liability

17  issues as reflected by the representative list of copyrighted works annexed as Exhibit

18  A to the First Amended Complaint.  Proof of ownership and direct infringement of the

19  thousands of works infringed by defendants therefore will not be at issue until after a

20  finding of liability, and thus individualized discovery to challenge ownership of each

21  work is inappropriate at this stage.  Plaintiffs decline to produce documents on the

22  basis of the foregoing general and specific objections.

23

24      Plaintiffs specifically object to this Request as overbroad and unduly

25  burdensome to the extent that it seeks discovery concerning Affirmative Defense No.

26  33 in Defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the

27  Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 33,

28

9

1  from defendants' Answer as frivolous, and either having no evidentiary support or as

2  not warranted by law, or both.  Plaintiffs decline to produce documents on the basis of

3  the foregoing objection.

4  Plaintiffs further object to this Request as overbroad, unduly burdensome,

5  harassing, and seeking information not relevant to the claims and defenses at issue in

6  this case.  Plaintiffs decline to produce documents on the basis of the foregoing

7  objections.

8  Plaintiffs further specifically object to this Request to the extent that it calls for

9  materials protected by the attorney-client privilege, the joint defense or common

10  interest privilege, the work product doctrine or any other applicable privilege or

11  doctrine, or that it seeks the disclosure of communications with, facts known by, or

12  opinions held by non-testifying experts retained pursuant or specially employed in

13  anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P.

14  26(b)(4)(B), and plaintiffs decline to produce such documents.

15

16  Plaintiffs further object to this Request to the extent that it is not limited to time

17  periods reasonably related to the matters at issue in this litigation.  Specifically,

18  plaintiffs object to this Request to the extent that it seeks the production by plaintiffs

19  of documents or materials prepared, generated, duplicated, communicated, distributed

20  or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and

21  seeking information neither relevant to this action nor likely to lead to the discovery of

22  admissible evidence, or after the commencement of litigation, as overbroad and

23  unduly burdensome.  Plaintiffs decline to produce documents created before January

24  1, 2002, or after the commencement of this litigation.

25  Without waiver of and subject to and incorporating the general and specific

26  objections and express limitations on production as set forth above, plaintiffs will

27  produce copies of responsive documents relating to the copyright ownership of the

28

10

PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

1  illustrative set of infringing works attached as Exhibit A to the First Amended
2  Complaint.

3

4  86.   Produce all documents concerning, evidencing or otherwise relating to actions
5       or omissions taken by you to follow statutory procedures for registration of the
6       copyrights of any of the alleged copyrighted material that is the subject of your
7       complaint.

8       RESPONSE:  Plaintiffs incorporate each General Objection and Specific
9  Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this
10 Request because it duplicates Request No. 83.  Plaintiffs reiterate their objections to
11 this Request as follows:

12      Plaintiffs incorporate each General Objection and Specific Objection to
13 Definitions as if set forth herein.  Plaintiffs specifically object to this Request as
14 overbroad and unduly burdensome to the extent that it seeks discovery relating to the
15 total number of infringing works claimed by the plaintiffs in this case and/or damages.
16 In the case management conference held on November 6, 2006, the Court directed that
17 the parties' initial discovery should be limited to the core liability issues as reflected
18 by the representative list of copyrighted works annexed as Exhibit A to the First
19 Amended Complaint.  Proof of ownership and direct infringement of the thousands of
20 works infringed by defendants therefore will not be at issue until after a finding of
21 liability, and thus individualized discovery to challenge ownership of each work is
22 inappropriate at this stage.  Plaintiffs decline to produce documents on the basis of the
23 foregoing general and specific objections.

24

25      Plaintiffs specifically object to this Request as overbroad and unduly
26 burdensome to the extent that it seeks discovery concerning Affirmative Defense No.
27 30 in defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the

28

11                           PLS.' RESPONSES TO DEFS.' SECOND
                             SET OF REQUESTS FOR PRODUCTION
                             OF DOCUMENTS

Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 30, from defendants' Answer as frivolous, and either having no evidentiary support or as not warranted by law, or both. Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case. Plaintiffs further object to this Request as vague and ambiguous in that it seeks documents about unspecified "omissions." Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation. Specifically, plaintiffs object to this Request to the extent that it seeks the production of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome. Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

87.     Produce all documents concerning, evidencing or otherwise relating to any actions or omissions taken by you to disclaim pre-existing material in the subject works.

RESPONSE:  Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint.  Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage.  Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defense No. 34 in Defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 34, from defendants' Answer as frivolous, and either having no evidentiary support or as

not warranted by law, or both. Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case. Plaintiffs further object to this Request as vague and ambiguous in that it seeks documents about unspecified "omissions." Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation. Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome. Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the

1  illustrative set of infringing works attached as Exhibit A to the First Amended
2  Complaint.

3

4  88.    Produce all documents concerning, evidencing or otherwise relating to the
5          authority and knowledge of the signatory to the copyright registrations of the
6          subject works to perform such acts.

7          RESPONSE:  Plaintiffs incorporate each General Objection and Specific
8  Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this
9  Request as overbroad and unduly burdensome to the extent that it seeks discovery
10 relating to the total number of infringing works claimed by the plaintiffs in this case
11 and/or damages.  In the case management conference held on November 6, 2006, the
12 Court directed that the parties' initial discovery should be limited to the core liability
13 issues as reflected by the representative list of copyrighted works annexed as Exhibit
14 A to the First Amended Complaint.  Proof of ownership and direct infringement of the
15 thousands of works infringed by defendants therefore will not be at issue until after a
16 finding of liability, and thus individualized discovery to challenge ownership of each
17 work is inappropriate at this stage.  Plaintiffs decline to produce documents on the
18 basis of the foregoing general and specific objections.

19

20         Plaintiffs specifically object to this Request as overbroad and unduly
21 burdensome to the extent that it seeks discovery concerning Affirmative Defense No.
22 35 in Defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the
23 Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 35,
24 from defendants' Answer as frivolous, and either having no evidentiary support or as
25 not warranted by law, or both.  Plaintiffs decline to produce documents on the basis of
26 the foregoing objection.

27

28

15

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this. Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation. Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome. Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

89.    Produce all documents concerning, evidencing or otherwise relating to all editions of the subject works that were available to submit to the U.S. Copyright Office including, without limitation, the actual edition submitted.

RESPONSE: Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages. In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint. Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage. Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defense No. 32 in Defendants' Answer. On June 13, 2007, plaintiffs served defendants with the Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 32, from defendants' Answer as frivolous, and either having no evidentiary support or as not warranted by law, or both. Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case. Plaintiffs decline to produce documents on the basis of the foregoing objections.

17

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation.  Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome.  Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

90.     Produce all documents concerning, evidencing or otherwise relating to any actions or omissions taken by you to comply with the copyright notification requirements of the Digital Millennium Copyright Act, 17 U.S.C. § 512.

1  RESPONSE:  Plaintiffs incorporate each General Objection and Specific

2  Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this

3  Request on the grounds that it lacks foundation, is vague and ambiguous in failing to

4  define the terms "requirements" and "comply", and as vague and ambiguous in that it

5  seeks documents about unspecified "omissions".  Plaintiffs further object to this

6  Request to the extent that it seeks documents between plaintiffs and third parties on

7  the grounds that it is overbroad, unduly burdensome, harassing and does not seek

8  evidence relevant to the claims and defenses in this case.  Plaintiffs decline to produce

9  documents on the basis of the foregoing general and specific objections.

10  Plaintiffs further specifically object to this Request to the extent responsive

11  documents are already in defendants' possession on the grounds that it is unduly

12  burdensome, oppressive, and harassing, and would needlessly increase the cost of

13  litigation. Plaintiffs decline to produce documents on the basis of the foregoing

14  specific objection.

15  Plaintiffs further specifically object to this Request to the extent that it calls for

16  materials protected by the attorney-client privilege, the joint defense or common

17  interest privilege, the work product doctrine or any other applicable privilege or

18  doctrine, or that it seeks the disclosure of communications with, facts known by, or

19  opinions held by non-testifying experts retained pursuant or specially employed in

20  anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P.

21  26(b)(4)(B), and plaintiffs decline to produce such documents.

22  Plaintiffs further object to this Request to the extent that it is not limited to time

23  periods reasonably related to the matters at issue in this litigation.  Specifically,

24  plaintiffs object to this Request to the extent that it seeks the production by plaintiffs

25  of documents or materials prepared, generated, duplicated, communicated, distributed

26  or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and

19

seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome. Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs respond that they have produced responsive, non-privileged documents on February 23, 2007 and will produce any additional responsive, non-privileged documents not subject to the foregoing objections that have been located after a reasonable search, and that are not already in defendants' possession.

91.    Produce all documents concerning, evidencing or otherwise relating to any actions or omissions taken by you to grant any license to any party to use the subject works.

RESPONSE: Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein. Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages. In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint. Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage. Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defense No. 11 in Defendants' Answer. On June 13, 2007, plaintiffs served defendants with the Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 11, from defendants' Answer as frivolous, and either having no evidentiary support or as not warranted by law, or both. Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case. Plaintiffs further object to this Request as vague and ambiguous in that it seeks documents about unspecified "omissions." Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation. Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and

21

**PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS**

unduly burdensome.  Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

92.    Produce all documents concerning, evidencing or otherwise relating to any actions or omissions taken by you that provide any evidence that you have standing to bring this action.

RESPONSE:  Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint.  Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage.  Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defense No. 13 in Defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the

Rule 11 Motion, which, among others, seeks to strike Affirmative Defense No. 11, from defendants' Answer as frivolous, and either having no evidentiary support or as not warranted by law, or both. Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case. Plaintiffs further object to this Request as vague and ambiguous in that it seeks documents about unspecified "omissions." Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation. Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome. Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

**PLS.' RESPONSES TO DEFS.' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

93.     Produce all documents concerning, evidencing or otherwise relating to any damages you have suffered as a result of any of the allegations asserted in your complaint.

RESPONSE:  Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint.  Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defenses numbered 5, 10-15, 17, 23-27, 30-36, 38 and 39 in defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the Rule 11 Motion, which, among others, seeks to strike Affirmative Defenses numbered 5, 10-15, 17, 23-27, 30-36, 38 and 39, from defendants' Answer as frivolous, and either having no evidentiary support or as not warranted by law, or both.  Plaintiffs decline to produce documents on the basis of the foregoing objection.

PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

Plaintiffs further specifically object to this Request to the extent that it calls for documents created or maintained by defendants, for documents already in defendants' possession, or for information readily accessible to defendants in the public record, on the grounds that it is unduly burdensome, oppressive, and harassing, and would needlessly increase the cost of litigation. Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further specifically object to this Request on the grounds that it is overbroad and unduly burdensome in that it requests documents not relevant to any claim or defense in this litigation and not calculated to lead to the discovery of admissible evidence.  Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation.  Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome.  Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

**PLS.' RESPONSES TO DEFS.' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

94.     Produce all documents concerning, evidencing or otherwise relating to any evidence to establish the validity of the copyright registrations upon which you rely in bringing this action.

RESPONSE:  Plaintiffs incorporate each General Objection and Specific Objection to Definitions as if set forth herein.  Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery relating to the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that the parties' initial discovery should be limited to the core liability issues as reflected by the representative list of copyrighted works annexed as Exhibit A to the First Amended Complaint.  Proof of ownership and direct infringement of the thousands of works infringed by defendants therefore will not be at issue until after a finding of liability, and thus individualized discovery to challenge ownership of each work is inappropriate at this stage.   Plaintiffs decline to produce documents on the basis of the foregoing general and specific objections.

Plaintiffs specifically object to this Request as overbroad and unduly burdensome to the extent that it seeks discovery concerning Affirmative Defenses numbered 30-36 in Defendants' Answer.  On June 13, 2007, plaintiffs served defendants with the Rule 11 Motion, which, among others, seeks to strike Affirmative Defenses numbered 30-36 from defendants' Answer as frivolous, and either having no

evidentiary support or as not warranted by law, or both.  Plaintiffs decline to produce documents on the basis of the foregoing objection.

Plaintiffs further object to this Request as overbroad, unduly burdensome, harassing, and seeking information not relevant to the claims and defenses at issue in this case.  Plaintiffs further object to this Request as vague and ambiguous in that it seeks documents about unspecified "omissions." Plaintiffs decline to produce documents on the basis of the foregoing objections.

Plaintiffs further specifically object to this Request to the extent that it calls for materials protected by the attorney-client privilege, the joint defense or common interest privilege, the work product doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure of communications with, facts known by, or opinions held by non-testifying experts retained pursuant or specially employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B), and plaintiffs decline to produce such documents.

Plaintiffs further object to this Request to the extent that it is not limited to time periods reasonably related to the matters at issue in this litigation.  Specifically, plaintiffs object to this Request to the extent that it seeks the production by plaintiffs of documents or materials prepared, generated, duplicated, communicated, distributed or transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and seeking information neither relevant to this action nor likely to lead to the discovery of admissible evidence, or after the commencement of litigation, as overbroad and unduly burdensome.  Plaintiffs decline to produce documents created before January 1, 2002, or after the commencement of this litigation.

Without waiver of and subject to and incorporating the general and specific objections and express limitations on production as set forth above, plaintiffs will produce copies of responsive documents relating to the copyright ownership of the

**PLS.' RESPONSES TO DEFS.' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

illustrative set of infringing works attached as Exhibit A to the First Amended Complaint.

Dated:  June 18, 2007

JENNER & BLOCK LLP

By: _____
      Gianni P. Servodidio

STEVEN B. FABRIZIO
GIANNI P. SERVODIDIO
SAMI J. VALKONEN
  JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
  LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
  15503 Ventura Boulevard
  Encino, CA 91436

*Attorneys for Plaintiffs*

**PLS.' RESPONSES TO DEFS.' SECOND
SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS**

**EXHIBIT C**

1   Ira P. Rothken (SBN #160029)
2   ROTHKEN LAW FIRM LLP
3   3 Hamilton Landing, Suite 280
    Novato, CA  94949
4   Telephone:   (415) 924-4250
    Facsimile:    (415) 924-2905
5
6   Attorney for Defendants
7   Gary Fung and Isohunt Web Technologies, Inc.

8

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12   COLUMBIA PICTURES, et. al.,          Case No. CV06-5578-SVW (JCx)
13          Plaintiffs,
                                          INTERROGATORIES
14          vs.
                                          FRCP 33
15
16   GARY FUNG, et. al.,
            Defendants.
17

18   PROPOUNDING PARTY:          Defendant GARY FUNG.

19   RESPONDING PARTY:           Plaintiffs Columbia Pictures Industries Inc, Disney
20                               Enterprises Inc, Paramount Pictures Corporation,
                                 TriStar Pictures Inc, Twentieth Century Fox Film
21                               Corporation, Universal City Studios LLLP, Universal
22                               City Studios Productions LLLP, Warner Bros
                                 Entertainment Inc
23

24   SET NUMBER:                 ONE

25         Propounding party requests that responding party, pursuant to Federal Rule of
26   Civil Procedure 33, respond to the following special interrogatories, under oath.
27         The interrogatory responses shall be returned to the Rothken Law Firm LLP, 3
28   Hamilton Landing, Suite 280, Novato, CA 94949, within thirty (30) days of service.

**DEFINITIONS**

1.      The terms "you" "your," AND "RESPONDENT" refer to the respective plaintiff responding to these requests and where applicable in this context, plaintiff's corporate affiliates, predecessors, predecessors of corporate affiliates, representatives, agents, servants, counsel, employees, consultants, and persons authorized to act, acting, or purporting to act on its behalf.

2.      The term "defendants" refer to the defendants herein, both collectively and each of them, individually.

3.      The term "MPAA" refers to the Motion Picture Association of America.

4.      The term "Defendant's Websites" means the websites, web pages, search engines, trackers, and services, alleged to be under the control or supervision of propounding party or Isohunt Web Technologies, Inc. including, but not limited to, isohunt.com, ed2k-it.com, BTHub, and torrentbox.com, including all content, databases, files, web pages, and software that comprise the site and support, enable, and provide its full range of features and functions, including to users and administrators, and all server hardware on which said content, databases, files, web pages, and software reside.

5.      The present tense shall be construed to include the past tense and the past tense shall be construed to include the present tense as required by the context to elicit all information discoverable within the broadest scope of these document requests.

6.      The singular shall be construed to include the plural and the plural shall be construed to include the singular as required by the context to elicit all information discoverable within the broadest scope of these interrogatories.

7.      "And" and "or" have both conjunctive and disjunctive meanings as required by the context to elicit all information discoverable within the broadest scope of these interrogatories.

8.      "Any" and "all" shall mean "each and every."

9.      "Communication(s)" means the transmittal of information by any means

1  and includes communication of any kind, whether written, oral, electronic or other.

2      10.    The terms "concerning" and "related to" mean, without limitation,

3  referring to, describing, evidencing, constituting, summarizing, analyzing, studying,

4  discussing, relating to, and resulting from, and should be construed broadly as

5  required by the context to elicit all information discoverable within the broadest scope

6  of these interrogatories.

7      11.    "Documents" includes every writing, recording, or record in any form,

8  whether handwritten, printed, typed, taped, or in any other graphic, digital, magnetic,

9  optical, or mechanical form, however produced, reproduced, or recorded, and should

10  be construed to be synonymous in meaning and scope to the usage of this term in

11  Federal Rule of Civil Procedure 34(a). The term includes, without limitation, all

12  memoranda, reports, data, correspondence, phone messages, diaries, logs, notes, bills,

13  invoices, checks, receipts, and e-mail messages, including those within the personal or

14  private possession, custody, or control of RESPONDENT, including any

15  RESPONDENT'S officer, director, employee, agent, or individual, as specified in the

16  definition of " RESPONDENT" above. The term also includes, without limitation, any

17  data compilations from which information can be obtained, and if necessary,

18  translated into usable form through the use of any machine, device, or equipment,

19  whether or not sent, received, or otherwise transmitted. The term also includes, with

20  limitation, every draft of a document, and any copy that is not identical in each and

21  every respect to the original or another copy.

22      12.    The term "including" shall be construed to mean "including without

23  limitation."

24      13.    Each of the following interrogatories is continuing in nature and

25  Propounding Party hereby request that if you obtain any additional responsive

26  information or documents at any later date, you promptly so inform Propounding

27  Party and submit supplemental or amended answers and documents.

28      14.    Any interrogatory relating to any communications or meetings with a

corporation, partnership, or other business or governmental entity shall include any communications or meetings with its officers, directors, controlling shareholders, employees, representatives, agents, and attorneys acting on the entity's behalf.

15.     If you believe that any of the following interrogatories calls for assertions of a claim of privilege, answer so much of the interrogatory as is not objected to, and set forth with respect to each specific item of information as to which a claim of privilege is asserted the nature of the privilege asserted (e.g. attorney-client, work product, etc.) and the basis for your claim. For each item of information as to which you claim privilege, provide a privilege log.

16.     If for reasons other than a claim of privilege, you refuse to answer any interrogatory, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

17.     If you are unable to answer in interrogatory in full or in part, you should answer it to the extent possible, and state an explanation as to why the remainder cannot be answered and a statement as to the nature of the information or knowledge that cannot be furnished. If you know the name of an individual or entity possessing any or all of the information sought by the interrogatory that you cannot furnish, disclose the name and address of such individual or entity and the nature of the information possessed by such individual or entity.

18.     Whenever you are instructed to state a date, a dollar amount, number, or quantification, if such date, dollar amount, number, or quantification is unknown to you, state your best estimate, indicate that the response is an estimate, and explain why you are unable to provide a more precise response.

19.     Whenever you are instructed to "identify" a specific individual, please indicate: (a) the full name of the individual; (b) the current address and phone number of the individual, or, if that is not known, the most recent address and phone number of which you are aware and any other address and phone number at which you are aware that the individual may be contacted; and (c) a short description of the

INTERROGATORIES, SET ONE
Columbia Pictures, *et al.* v. Fung, et al.
U.S. Dist. Ct., Central Dist Cal., No. CV **06-5578 SVW (JCx)**

-4-

1  individual's relationship to you, including the individual's employment position or title

2  if that individual is or has been employed by you.

3      20.    When the identity or description of an oral communication is requested,

4  please indicate: (a) the means of communication (i.e., telephonic, in-person); (b) the

5  date or dates of the conversation; (c) the location(s) at which the conversation took

6  place; (d) the identity of each person participating in the conversation or witnessing

7  the conversation; (e) the substance of the conversation.

8      21.    When the identity or description of a document is requested, please

9  indicate: (a) the type of document, such as a letter, memorandum, e-mail message,

10  etc.; (b) the title, if any, of the document; (c) the date of the document; (d) the identity

11  of the individual who authored the document; (e) the identity of individuals to whom

12  the document is addressed; (f) the identities of all recipients of copies of the

13  documents; and (g) whether you are in possession of the original or a copy of the

14  document.

15      22.    If any of the documents requested has been lost or destroyed: (a) provide

16  a written statement, in lieu of each such lost or destroyed document, identifying each

17  document as described above, and in addition specify the date on which the document

18  was lost or destroyed, the reasons for loss or destruction, and the individuals with

19  knowledge of such loss or destruction; and (b) provide any documents existing at the

20  time of such loss or destruction setting forth or reflecting any policy or procedure then

21  in effect for destruction or retention of documents.

22      23.    You are required to provide separate responses to all of the following

23  interrogatories.

24

25                          **INTERROGATORIES**

26  1.    List any and all copyrighted works that you are claiming were illegally copied

27        in any manner with the assistance of Defendant's Websites, including, the title

28        of the work/song, the registration number, the number of such copies made, the

hash value, the dates and times that such copies were made and by whom with their contact information, where the copies were made, the web sites or URL that provided such copies, and the copyright owner(s) of the work/song.

2. State all the reasons the responding party has not used the DMCA take down services located on Defendant's Websites to remove torrent files that the responding party believes were/are infringing RESPONDENT's copyrights.

3. Identify all facts that support your contention that defendants are liable for secondary copyright infringement.

4. State the amount of monetary damages, statutory or otherwise, you believe you are entitled to and describe with specificity how such amounts are calculated.

5. Identify each torrent file ever located on Defendant's Websites or linked to by Defendant's Websites that RESPONDENT believes is secondarily infringing its Copyrights by complete torrent file name, the identity of RESPONDENT'S copyrighted work including name of the work and hash value of the file containing the copyrighted work, and date(s) of appearance on Defendant's Websites.

6. Identify each eDonkey hash link ever located on Defendant's Websites or linked to by Defendant's Websites that RESPONDENT believes is secondarily infringing its Copyrights by complete eDonkey hash link name, hash value, the identity of RESPONDENT'S copyrighted work, and date(s) of appearance on Defendant's Websites.

7. State the name, address, telephone number, email address, and relationship to you of each person who has knowledge of the facts supporting your response to each interrogatory.

8. Describe any and all documents, including, but not limited to, Bates Stamp number if produced in discovery in this action, that refer or relate to your responses to each interrogatory or upon which you relied in responding to such interrogatories.

9.     Provide any and all facts (and the source of such facts) that support any claim that you may have that Defendants had specific knowledge that specific torrent files or edonkey hash link files on Defendants' Websites infringed or lead to infringement of specific copyrighted works alleged in the Complaint or for which you are claiming damages in this case.


Dated: May 18, 2007                      ROTHKEN LAW FIRM LLP


                                         By:    Ira P. Rothken, Esq., (State Bar #160029)
                                                Attorney for Defendants

                                                Ira P. Rothken (SBN #160029)
                                                ROTHKEN LAW FIRM LLP
                                                3 Hamilton Landing, Suite 280
                                                Novato, CA 94949
                                                Telephone:   (415) 924-4250
                                                Facsimile:   (415) 924-2905

PROOF OF SERVICE

I am over the age of 18 years, employed in the county of Marin, and not a party to the within action; my business address is 3 Hamilton Landing, Suite 280, Novato, CA 94949.

On May 18, 2007, I served the within:

**INTERROGATORIES, SET ONE**

By EMAIL, HAND DELIVERY and FEDEX as follows:

| **VIA EMAIL AND HAND DELIVERY** | **VIA EMAIL AND HAND DELIVERY** |
|---|---|
| **Karen B. Thorland** | **Steven B Fabrizio** |
| **Walter A Edmiston** | **Katherine A Fallow** |
| Loeb and Loeb | **Duane Charles Pozza** |
| 10100 Santa Monica Blvd, Ste 2200 | Jenner and Block |
| Los Angeles, CA 90067-4164 | 601 Thirteenth Street NW, Suite 1200 South |
| 310-282-2000 | Washington, DC 20005 |
| Email: kthorland@loeb.com | 202-639-6000 |
|  | Email: sfabrizio@jenner.com |
|  | Email: kfallow@jenner.com |
|  | Email: dpozza@jenner.com |
| **VIA FEDEX** | **VIA EMAIL AND FEDEX** |
| **Gregory Paul Goeckner** | Gianni P Servodidio |
| **Lauren T Nguyen** | Sami J Valkonen |
| Motion Picture Association of America | Ronald M Daignault |
| 15503 Ventura Blvd | Jenner and Block |
| Encino, CA 91436 | 919 Third Avenue, 37th Floor |
| 818-995-6600 | New York, NY 10022 |
|  | 212-891-1600 |
|  | Email: gservodidio@jenner.com |
|  | Email: svalkonen@jenner.com |
|  | Email: rdaignault@jenner.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 18, 2007.

_Jared R Smith_

INTERROGATORIES, SET ONE
Columbia Pictures, *et al.* v. Fung, et al.
U.S. Dist. Ct., Central Dist Cal., No. CV **06-5578 SVW (JCx)**
-8-

# EXHIBIT D

JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
601 Thirteenth Street, N.W.,
Suite 1200 South
Washington, D.C.  20005
Telephone:  (202) 639-6000
Facsimile:  (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
SAMI J. VALKONEN (*pro hac vice*)
  svalkonen@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>Plaintiffs,<br><br>v.<br><br>GARY FUNG, *et. al.*<br><br>Defendants. | Case No. CV-06-05578 SVW (JCx)<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES**<br><br>**[Fed. R. Civ. P. 33]** |

1    Pursuant to Federal Rule of Civil Procedure 33, Plaintiffs Columbia Pictures

2 Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation, TriStar

3 Pictures, Inc., Twentieth Century Fox Film Corporation, Universal City Studios

4 LLLP, Universal City Studios Productions LLLP, and Warner Bros Entertainment

5 Inc. ("Plaintiffs") hereby respond to Defendants' First Set of Interrogatories (the

6 "Discovery"):

7                              **OBJECTIONS**

8    1.    Plaintiffs object to the Discovery to the extent that it calls for the

9 disclosure of information subject to the attorney-client privilege, the joint defense or

10 common interest privilege, the work product doctrine or any other applicable

11 privilege or doctrine.  Any inadvertent disclosure of such information shall not be

12 deemed a waiver of the attorney-client privilege, the joint defense or common

13 interest privilege, the attorney work product immunity doctrine, or any other

14 applicable privilege or doctrine.

15    2.    Plaintiffs object to the Discovery to the extent that it calls for the

16 disclosure of communications with, facts known by, or opinions held by non-

17 testifying experts retained pursuant or specially employed in anticipation of

18 litigation or preparation of trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B).  Any

19 inadvertent disclosure of such information shall not be deemed a waiver of the

20 protection against discovery afforded by Rule 26(b)(4)(B) or any other applicable

21 privilege or doctrine.

22    3.    Plaintiffs object to the Discovery to the extent that it calls for the

23 disclosure of information beyond that required by the Federal Rules of Civil

24 Procedure or the Local Rules of the Court.

25    4.    Plaintiffs object to the Discovery to the extent that it is not reasonably

26 calculated to lead to the discovery of admissible evidence, and is ambiguous,

27 duplicative, vague, oppressive, harassing, overbroad or unduly burdensome.

28

**PROOF OF SERVICE**

10064

1   Plaintiffs further object to the Discovery because the burdens imposed by
2   responding to the Discovery far outweigh any potential value of responding to the
3   Discovery.

4        5.    Plaintiffs object to the Discovery to the extent that it calls for
5   information in documents created or maintained by Defendants, for information
6   already in Defendants' possession, or for information readily accessible to
7   Defendants in the public record, on the grounds that it is unduly burdensome,
8   oppressive, and harassing, and would needlessly increase the cost of litigation.

9        6.    Plaintiffs object to the Discovery to the extent that it is not limited to
10  time periods reasonably related to the matters at issue in this litigation.  Specifically,
11  plaintiffs object to the Discovery to the extent that it seeks information in documents
12  or materials prepared, generated, duplicated, communicated, distributed or
13  transmitted either prior to January 1, 2002, as overbroad, unduly burdensome, and
14  seeking information neither relevant to this action nor likely to lead to the discovery
15  of admissible evidence, or after the commencement of litigation, as overbroad and
16  unduly burdensome.

17       7.    Plaintiffs object to the terms "any" and "all" with respect to certain of
18  the Interrogatories.  Plaintiffs undertake to provide such information as they are able
19  to locate after reasonable and diligent investigation.  By answering, Plaintiffs do not
20  certify that "any" or "all" items of responsive information have been obtained and
21  reserve the right to supplement their answers as more information becomes
22  available.

23       8.    Plaintiffs object to the definition of the terms "you," "your,"
24  "responding party" and "RESPONDENT" as overbroad, not reasonably calculated
25  to lead to the discovery of admissible evidence, and unduly burdensome.  For the
26  purposes of this Discovery, Plaintiffs will respond, to the extent applicable, on
27
28

**PROOF OF SERVICE**

10064

behalf of each Plaintiff in suit and/or, as appropriate, on behalf of related persons or entities that reasonably may possess responsive information.

9.      Plaintiffs object to the Discovery to the extent it seeks unavailable information or information not currently in their possession, custody or control.

10.     Plaintiffs object to the Discovery to the extent that it seeks information constituting trade secrets or other financial, technical, research, development, strategic, or commercial information.

11.     Plaintiffs object to the Discovery to the extent that it seeks discovery concerning the total number of infringing works claimed by the plaintiffs in this case and/or damages.  In the case management conference held on November 6, 2006, the Court directed that proceedings on remedial issues such as these will be deferred until after summary judgment proceedings on the core issue of defendants' secondary liability.

Plaintiffs incorporate these General Objections into each specific response as if fully set forth in each response.

## RESPONSES

1.      List any and all copyrighted works that you are claiming were illegally copied in any manner with the assistance of Defendant's Websites, including, the title of the work/song, the registration number, the number of such copies made, the hash value, the dates and times that such copies were made and by whom with their contact information, where the copies were made, the web sites or URL that provided such copies, and the copyright owner(s) of the work/song.

RESPONSE:  Plaintiffs incorporate each General Objection as if set forth herein.  Plaintiffs further object to Interrogatory No. 1 on the grounds that it seeks information that is beyond the scope of the case management plan directed by Judge Wilson at the Nov. 6, 2006 case management conference, which requires the parties'

4

**PROOF OF SERVICE**

10064

1  discovery to be limited to core liability issues as reflected by the representative list

2  of copyrighted works annexed as Exhibit A to the First Amended Complaint.

3  Plaintiffs further object to this Interrogatory on the grounds that it is premature in

4  that plaintiffs have not completed discovery in this action, and Plaintiffs'

5  investigation is ongoing; and on the grounds that information supporting Plaintiffs'

6  claims is in the possession, custody, or control of Defendants, their agents, and third

7  parties.  Plaintiffs further object to this Interrogatory on the grounds that it is vague

8  and ambiguous.  Plaintiffs further object to this Interrogatory on the grounds that it

9  is overbroad, unduly burdensome and not reasonably calculated to lead to the

10  discovery of admissible evidence.  Plaintiffs object to this Interrogatory to the extent

11  that it seeks information that is subject to the attorney-client privilege, the joint

12  defense or common interest privilege, the work product doctrine or any other

13  applicable privilege or doctrine, or that it seeks the disclosure of communications

14  with, facts known by, or opinions held by non-testifying experts retained pursuant or

15  specially employed in anticipation of litigation or preparation of trial, pursuant to

16  Fed. R. Civ. P. 26(b)(4)(B).

17      Without waiver of and subject to and incorporating the specific and general

18  objections set forth above, and pursuant to Rule 33(d) of the Federal Rules of Civil

19  Procedure, Plaintiffs will produce copies of documents relating to the copyright

20  ownership of the representative list of works in the First Amended Complaint.

21

22      2.      State all the reasons the responding party has not used the DMCA take

23          down services located on Defendant's Websites to remove torrent files that

24          the responding party believes were/are infringing RESPONDENT's

25          copyrights.

26      RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

27  herein.  Plaintiffs further object to Interrogatory No. 2 on the grounds that it assumes

28

10064

1   facts not in evidence and is irrelevant, overbroad, unduly burdensome and not

2   reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs

3   further object to this Interrogatory on the grounds that it is vague and ambiguous.

4   Plaintiffs object to this Interrogatory on the grounds that it calls for a legal

5   conclusion.  Plaintiffs further object to this Interrogatory to the extent that it seeks

6   information that is subject to the attorney-client privilege, the joint defense or

7   common interest privilege, the work product doctrine or any other applicable

8   privilege or doctrine, or that it seeks the disclosure of communications with, facts

9   known by, or opinions held by non-testifying experts retained pursuant or specially

10  employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ.

11  P. 26(b)(4)(B).

12

13      3.     Identify all facts that support your contention that defendants are liable

14             for secondary copyright infringement.

15  RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

16  herein.  Plaintiffs object to Interrogatory No. 3 on the grounds that it is a contention

17  interrogatory and is premature given that discovery is not complete and the court's

18  schedule directs the parties to serve summary judgment motions not later than Aug.

19  20, 2007, at which time defendants will have plaintiffs' case laid out for them,

20  complete with plaintiffs' legal theories and evidence.  Plaintiffs further object to this

21  Interrogatory on the grounds that it calls for a legal conclusion.  Plaintiffs further

22  object to this Interrogatory on the grounds that it is premature in that Defendants

23  have not completed discovery in this action, and Plaintiffs' investigation is ongoing;

24  and on the grounds that information supporting Plaintiffs' claims is in the

25  possession, custody, or control of Defendants, their agents, and third parties.

26  Plaintiffs further object to this Interrogatory on the grounds that it is overbroad,

27  unduly burdensome and not reasonably calculated to lead to the discovery of

28  admissible evidence.  Plaintiffs further object to this Interrogatory to the extent that

6

10064

1  it seeks information that is subject to the attorney-client privilege, the joint defense

2  or common interest privilege, the work product doctrine or any other applicable

3  privilege or doctrine, or that it seeks the disclosure of communications with, facts

4  known by, or opinions held by non-testifying experts retained pursuant or specially

5  employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ.

6  P. 26(b)(4)(B).

7

8        4.     State the amount of monetary damages, statutory or otherwise, you

9        believe you are entitled to and describe with specificity how such amounts are

10        calculated.

11        RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

12  herein.  Plaintiffs object to Interrogatory No. 4 on the grounds that it is a contention

13  interrogatory and is premature given that discovery is not complete and the court's

14  schedule directs the parties to serve summary judgment motions not later than Aug.

15  20, 2007, at which time defendants will have plaintiffs' case laid out for them,

16  complete with plaintiffs' legal theories and evidence.  Plaintiffs further object to

17  Interrogatory No. 4 on the grounds that it seeks information that is beyond the scope

18  of the case management plan directed by Judge Wilson at the Nov. 6, 2006 case

19  management conference, which requires the parties' discovery to be limited to core

20  liability issues as reflected by the representative list of copyrighted works annexed

21  as Exhibit A to the First Amended Complaint.  Plaintiffs further object to this

22  Interrogatory on the grounds that it is premature in that Defendants have not

23  completed discovery in this action, and Plaintiffs' investigation is ongoing.

24  Plaintiffs further object to this Interrogatory on the grounds that information

25  supporting Plaintiffs' claims is in the possession, custody, or control of Defendants,

26  their agents, and third parties.  Plaintiffs further object to this Interrogatory on the

27  grounds that it calls for a legal conclusion.  Plaintiffs further object to this

28

**PROOF OF SERVICE**

10064

1 Interrogatory to the extent that it seeks information that is subject to the attorney-

2 client privilege, the joint defense or common interest privilege, the work product

3 doctrine or any other applicable privilege or doctrine, or that it seeks the disclosure

4 of communications with, facts known by, or opinions held by non-testifying experts

5 retained pursuant or specially employed in anticipation of litigation or preparation of

6 trial, pursuant to Fed. R. Civ. P. 26(b)(4)(B).

7

8      5.    Identify each torrent file ever located on Defendant's Websites or

9            linked to by Defendant's Websites that RESPONDENT believes is

10           secondarily infringing its Copyrights by complete torrent file name, the

11           identity of RESPONDENT'S copyrighted work including name of the work

12           and hash value of the file containing the copyrighted work, and date(s) of

13           appearance on Defendant's Websites.

14 RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

15 herein.  Plaintiffs further object to Interrogatory No. 5 on the grounds that it is a

16 contention interrogatory and is premature given that discovery is not complete and

17 the court's schedule directs the parties to serve summary judgment motions not later

18 than Aug. 20, 2007, at which time defendants will have plaintiffs' case laid out for

19 them, complete with plaintiffs' legal theories and evidence.  Plaintiffs further object

20 to Interrogatory No. 5 on the grounds that it seeks information that is beyond the

21 scope of the case management plan directed by Judge Wilson at the Nov. 6, 2006

22 case management conference, which requires the parties' discovery to be limited to

23 core liability issues as reflected by the representative list of copyrighted works

24 annexed as Exhibit A to the First Amended Complaint.  Plaintiffs further object to

25 this Interrogatory on the grounds that it calls for a legal conclusion.  Plaintiffs

26 further object to this Interrogatory on the grounds that it is premature in that

27 Defendants have not completed discovery in this action, and Plaintiffs' investigation

28

8

10064

PROOF OF SERVICE

1   is ongoing; and on the grounds that information supporting Plaintiffs' claims is in

2   the possession, custody, or control of Defendants, their agents, and third parties.

3   Plaintiffs further object to this Interrogatory on the grounds that it is vague and

4   ambiguous and incapable of precise determination as to the information requested.

5   Plaintiffs further object to this Interrogatory on the grounds that it is overbroad,

6   unduly burdensome and not reasonably calculated to lead to the discovery of

7   admissible evidence.  Plaintiffs further object to this Interrogatory to the extent that

8   it seeks information that is subject to the attorney-client privilege, the joint defense

9   or common interest privilege, the work product doctrine or any other applicable

10  privilege or doctrine, or that it seeks the disclosure of communications with, facts

11  known by, or opinions held by non-testifying experts retained pursuant or specially

12  employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ.

13  P. 26(b)(4)(B).

14

15      6.    Identify each eDonkey hash link ever located on Defendant's Websites

16          or linked to by Defendant's Websites that RESPONDENT believes is

17          secondarily infringing its Copyrights by complete eDonkey hash link name,

18          hash value, the identity of RESPONDENT'S copyrighted work, and date(s) of

19          appearance on Defendant's Websites.

20  RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

21  herein.  Plaintiffs further object to Interrogatory No. 6 on the grounds that it is a

22  contention interrogatory and is premature given that discovery is not complete and

23  the court's schedule directs the parties to serve summary judgment motions not later

24  than Aug. 20, 2007, at which time defendants will have plaintiffs' case laid out for

25  them, complete with plaintiffs' legal theories and evidence.  Plaintiffs further object

26  to Interrogatory No. 5 on the grounds that it seeks information that is beyond the

27  scope of the case management plan directed by Judge Wilson at the Nov. 6, 2006

28

9

**PROOF OF SERVICE**

1  case management conference, which requires the parties' discovery to be limited to

2  core liability issues as reflected by the representative list of copyrighted works

3  annexed as Exhibit A to the First Amended Complaint. Plaintiffs further object to

4  this Interrogatory on the grounds that it calls for a legal conclusion.  Plaintiffs

5  further object to this Interrogatory on the grounds that it is premature in that

6  Defendants have not completed discovery in this action, and Plaintiffs' investigation

7  is ongoing; and on the grounds that information supporting Plaintiffs' claims is in

8  the possession, custody, or control of Defendants, their agents, and third parties.

9  Plaintiffs further object to this Interrogatory on the grounds that it is vague and

10  ambiguous and incapable of precise determination as to the information requested.

11  Plaintiffs further object to this Interrogatory on the grounds that it is overbroad,

12  unduly burdensome and not reasonably calculated to lead to the discovery of

13  admissible evidence.  Plaintiffs further object to this Interrogatory to the extent that

14  it seeks information that is subject to the attorney-client privilege, the joint defense

15  or common interest privilege, the work product doctrine or any other applicable

16  privilege or doctrine, or that it seeks the disclosure of communications with, facts

17  known by, or opinions held by non-testifying experts retained pursuant or specially

18  employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ.

19  P. 26(b)(4)(B).

20

21      7.      State the name, address, telephone number, email address, and

22          relationship to you of each person who has knowledge of the facts supporting

23          your response to each interrogatory.

24      RESPONSE:   Plaintiffs incorporate each General Objection as if set forth

25  herein.  Plaintiffs further object to Interrogatory No. 7 to the extent that it seeks

26  information that is subject to the attorney-client privilege, the joint defense or

27  common interest privilege, the work product doctrine or any other applicable

28

10

10064

1   privilege or doctrine, or that it seeks the disclosure of communications with, facts

2   known by, or opinions held by non-testifying experts retained pursuant or specially

3   employed in anticipation of litigation or preparation of trial, pursuant to Fed. R. Civ.

4   P. 26(b)(4)(B).  Plaintiffs further object to this Interrogatory on the grounds that it is

5   vague and ambiguous because the meaning of "supporting your response" is

6   unclear.

7         Plaintiffs further object to this Interrogatory to the extent it seeks to determine

8   whom in-house counsel selected to approach for information responsive to the

9   interrogatories.  The identity of whom counsel selects to approach goes to the

10  mental impressions and strategies of counsel and is thereby protected from

11  disclosure by the work product doctrine.  See *In re MTI Tech. Corp. Sec. Litig.*, No.

12  00-0745, 2002 WL 32344347, at *3 (C.D. Cal. 2002) ("Although the identity and

13  location of witnesses that may have knowledge of any discoverable matter is not

14  protected, the identity of witnesses interviewed by opposing counsel is protected.")

15  (footnote omitted); *Massachusetts v. First National Supermarkets, Inc.*, 112 F.R.D.

16  149, 152 (D. Mass. 1986) (holding that interrogatory "asking the identity of persons

17  contacted and/or interviewed during an investigation" is improper on work product

18  grounds).

19        Based on the foregoing objections to each interrogatory herein, there are no

20  responsive persons to be identified.

21

22        8.    Describe any and all documents, including, but not limited to, Bates

23        Stamp number if produced in discovery in this action, that refer or relate to

24        your responses to each interrogatory or upon which you relied in responding

25        to such interrogatories.

26        RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

27  herein.  Plaintiffs object to Interrogatory No. 8 on the grounds that it is vague and

28

11

10064

1   ambiguous.  Plaintiffs further object to this Interrogatory on the grounds that it is

2   overbroad,  unduly burdensome and not reasonably calculated to lead to the

3   discovery of admissible evidence.  Plaintiffs further object to this Interrogatory on

4   the grounds that it lacks foundation.  Plaintiffs further object to this Interrogatory to

5   the extent that it seeks information that is subject to the attorney-client privilege, the

6   joint defense or common interest privilege, the work product doctrine or any other

7   applicable privilege or doctrine, or that it seeks the disclosure of communications

8   with, facts known by, or opinions held by non-testifying experts retained pursuant or

9   specially employed in anticipation of litigation or preparation of trial, pursuant to

10  Fed. R. Civ. P. 26(b)(4)(B).  Based on the foregoing objections to each interrogatory

11  herein, there are no responsive documents to be identified.

12

13          9.      Provide any and all facts (and the source of such facts) that support any

14      claim that you may have that Defendants had specific knowledge that specific

15      torrent files or edonkey hash link files on Defendant's Websites infringed or

16      lead to infringement of specific copyrighted works alleged in the Complaint

17      or for which you are claiming damages in this case.

18  RESPONSE:  Plaintiffs incorporate each General Objection as if set forth

19  herein.   Plaintiffs object to Interrogatory No. 9 on the grounds that it is a contention

20  interrogatory and is premature given that discovery is not complete and the court's

21  schedule directs the parties to serve summary judgment motions not later than Aug.

22  20, 2007, at which time defendants will have plaintiffs' case laid out for them,

23  complete with plaintiffs' legal theories and evidence.  Plaintiffs further object to

24  Interrogatory No. 5 on the grounds that it seeks information that is beyond the scope

25  of the case management plan directed by Judge Wilson at the Nov. 6, 2006 case

26  management conference, which requires the parties' discovery to be limited to core

27  liability issues as reflected by the representative list of copyrighted works annexed

28

10064

1 | as Exhibit A to the First Amended Complaint.  Plaintiffs further object to this
2 | Interrogatory on the grounds that it calls for a legal conclusion.  Plaintiffs further
3 | object to this Interrogatory on the grounds that it is premature in that Defendants
4 | have not completed discovery in this action, and Plaintiffs' investigation is ongoing;
5 | and on the grounds that information supporting Plaintiffs' claims is in the
6 | possession, custody, or control of Defendants, their agents, and third parties.
7 | Plaintiffs further object to this Interrogatory on the grounds that it is vague and
8 | ambiguous.  Plaintiffs further object to this Interrogatory on the grounds that it is
9 | overbroad, unduly burdensome and not reasonably calculated to lead to the
10 | discovery of admissible evidence.  Plaintiffs further object to this Interrogatory to
11 | the extent that it seeks information that is subject to the attorney-client privilege, the
12 | joint defense or common interest privilege, the work product doctrine or any other
13 | applicable privilege or doctrine, or that it seeks the disclosure of communications
14 | with, facts known by, or opinions held by non-testifying experts retained pursuant or
15 | specially employed in anticipation of litigation or preparation of trial, pursuant to
16 | Fed. R. Civ. P. 26(b)(4)(B).

13

10064

Dated:  June 18, 2006

JENNER & BLOCK LLP

By: _____
       Gianni P. Servodidio

STEVEN B. FABRIZIO
GIANNI P. SERVODIDIO
SAMI J. VALKONEN
   JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
   LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
   15503 Ventura Boulevard
   Encino, CA 91436

*Attorneys for Plaintiffs*

14

10064

## PROOF OF SERVICE

I, Carole Duran, the undersigned, declare that:

I am employed in the County of New York, State of New York, over the age of 18, and not a party this cause.  My business address is 919 Third Avenue, 37th Floor, New York, New York, 10022.

On June 18, 2007, I served a true copy of **PLAINTIFFS' OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES** and **PLAINTIFFS' RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET 2** on the parties in this cause as follows:

[X]    (VIA FIRST CLASS MAIL) by placing the above named document in a sealed envelope addressed as set forth below and by then causing said envelope to be deposited for collection and delivery via First Class Mail, in accordance with Jenner & Block LLP's ordinary business practices.

[X]    (VIA EMAIL)  I caused the transmission of the above named document to the email addresses set forth below.

Ira P. Rothken, Esq.
Jared R. Smith, Esq.
Robert L. Kovsky, Esq.
Rothken Law Firm LLP
3 Hamilton Landing, Suite 280
Novato, CA  94949
Email:  ira@techfirm.net
Email:  jared@techfirm.com
Email:  rlk@sonic.net

Kirk J. Retz
Retz & Hopkins LLP
21535 Hawthorne Blvd.
Suite 200
Torrance, CA 90503
Email:  kretz@retzhopkins.com
*Counsel for Defendants*

**PROOF OF SERVICE**

10064

1      I am readily familiar with Jenner & Block LLP's practice for collecting and

2  processing correspondence for First Class Mail.

3      I declare under penalty of perjury that the foregoing is true and correct.

4      Executed on June 18, 2007, at New York, New York.

5

6

7

8                                              Carole Duran

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

1                   UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                         WESTERN DIVISION

4

5     THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

6

7     COLUMBIA PICTURES INDUSTRIES, )
      INC., ET AL.,                  )
8                                    )
              Plaintiffs,            )
9                                    )
        vs.                          )     No. CV 06-5578-SVW
10                                   )
                                     )
11    GARY FUNG, ET AL.,             )
                                     )
12            Defendants.            )
      _____)

13

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17               LOS ANGELES, CALIFORNIA

18               MONDAY, JULY 1, 2013

19

20               **STATUS CONFERENCE**

21

22    _____

23               DEBORAH K. GACKLE, CSR, RPR
                   United States Courthouse
24            312 North Spring Street, Room 402A
                 Los Angeles, California 90012
25                    (213) 620-1149

            U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
                 COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 036

```
 1    APPEARANCES OF COUNSEL:

 2

 3

 4        For the Plaintiff:

 5

 6            Steven B Fabrizio
              Jenner and Block LLP
 7            1099 New York Avenue NW Suite 900
              Washington, DC 20001-4412
 8            202-639-6040
              Fax: 202-661-4823
 9            Email: sfabrizio@jenner.com

10

11            Karen R Thorland
              Loeb and Loeb
12            10100 Santa Monica Boulevard Suite 2200
              Los Angeles, CA 90067-4120
13            310-282-2000
              Fax: 310-282-2200
14            Email: karen_thorland@mpaa.org

15

16

17        For the Defendant:

18

19            Ira P Rothken
              Rothken Law Firm
20            Three Hamilton Landing Ste 280
              Novato, CA 94949
21            415-924-4250
              Fax: 415-924-2905
22            Email: ira@techfirm.com

23    ///

24    ///

25
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 037

```
 1      APPEARANCES OF COUNSEL (Continued):

 2

 3       For the Defendants:

 4

 5            Michael S Elkin
              Winston and Strawn LLP
 6            200 Park Avenue
              New York, NY 10166
 7            212-294-6700
              Fax: 212-294-4700
 8            Email: melkin@winston.com

 9

10            Thomas P Lane
              Winston and Strawn LLP
11            200 Park Avenue
              New York, NY 10166
12            212-294-6700
              Fax: 212-294-4700
13            Email: tlane@winston.com

14

15                         - - - - -

16

17

18

19

20

21

22

23

24

25
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 038

```
 1      LOS ANGELES, CALIFORNIA; MONDAY, JULY 1, 2013; 1:45 P.M.

 2                           - - - - -

 3

 4          THE CLERK:  Item 5, 06-5578-SVW, Columbia Pictures

 5   Industries, Inc., et al. versus Gary Fung, et al.

 6          Counsel, please state your appearances.

 7          MR. FABRIZIO:  Good afternoon, Your Honor.  Steven

 8   Fabrizio for the plaintiffs.

 9          MS. THORLAND:  Good afternoon, Your Honor.  Karen

10   Thorland, also for the plaintiffs.

11          MR. ELKIN:  Good afternoon, Your Honor.  Michael

12   Elkin, Winston and Strawn, co-counsel for defendant Gary Fung

13   and Isohunt Technologies.

14          MS. ROTHKIN:  Good afternoon, Your Honor.  Ira

15   Rothkin, co-counsel for Gary Fung and Isohunt.

16          MR. LANE:  Good afternoon, Your Honor.  Thomas Lane

17   from the law firm of Winston and Strawn for the defendants as

18   well.

19          THE COURT:  The status conference is with regard to

20   the Ninth Circuit's mandate and also the request by the

21   plaintiff to proceed with the damages aspect of the case.  With

22   regard to the mandate, I'm going to give the parties two weeks

23   to meet and confer and to attempt to modify the injunction in

24   light of the Ninth Circuit's observations, and if that can't be

25   done, then I'm going to order the parties seven days thereafter
```

EXHIBIT 6
Page 039

5

```
1    to file a pleading indicating where they have agreed, where

2    they disagree, and why a particular party's position in the

3    redrafting of the injunction should be followed.  If I have

4    need to have a further hearing, I'll request it.

5           MR. FABRIZIO:  Thank you, Your Honor.

6           THE COURT:  Now, with regard to the damages claim,

7    the court did receive a pleading from the defendants indicating

8    that it was their view that damages in this case would be too

9    speculative.  Obviously, I'm not in a position to make such a

10   ruling but, Mr. Fabrizio, could you take the lectern and tell

11   me how you intend to prove damages.

12          MR. FABRIZIO:  Yes, Your Honor.  First of all, the

13   defense that the damages are speculation is not an issue in the

14   case; plaintiffs are lacking statutory damages.

15          THE COURT:  I see.

16          MR. FABRIZIO:  In order to prove damages under the

17   statutory provision, plaintiffs would have to demonstrate

18   ownership of copyrighted works, that those copyrighted works

19   were infringed by users of defendant's system, and then there

20   would be the quantum of per-work statutory damages to be

21   applied for each work infringed.

22          THE COURT:  Give me an example how that would follow.

23          MR. FABRIZIO:  We would have a --

24          THE COURT:  How many copyrights are involved?

25          MR. FABRIZIO:  Your Honor, defendant's website
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 040

Case 2:06-cv-05578-SVW-JC   Document 585   Filed 09/06/13   Page 74 of 125   Page ID #:5811
Case 2:06-cv-05578-SVW-JC   Document 567-13   Filed 08/26/13   Page 7 of 26   Page ID #:5463

6

```
 1   infringed virtually the entire library of motion pictures and

 2   television programs that our clients own.  In the damages

 3   proceeding, as a matter of practicalities, there would probably

 4   be three to 5,000, which is probably substantially less than

 5   the tens of thousands that it could be.

 6           THE COURT:  How do you intend to go about offering a

 7   calculation?

 8           MR. FABRIZIO:  First, as to the issue of direct

 9   infringement, this issue should be -- come down to a rather

10   ministerial act because defendants are in -- are in violation

11   of two court orders to produce the server log data that would

12   prove direct infringement conclusively.  The magistrate judge,

13   having sanctioned them repeatedly and warned them, has

14   issued --

15           THE COURT:  Start again.  I couldn't hear you.

16           MR. FABRIZIO:  I'm sorry, Your Honor.

17           The magistrate judge twice ordered defendants to

18   produce server log data that we would use to conclusively prove

19   direct infringement of our copyrighted works.  Having already

20   sanctioned defendants five times and having warned defendants

21   specifically about their failure to comply with these discovery

22   orders, the magistrate judge issued to Your Honor a report and

23   recommendation that evidentiary sanctions be entered in this

24   case and that, effectively, the evidentiary sanction is that

25   direct infringement be established for plaintiff's works where
```

Case 2:06-cv-05578-SVW-JC   Document 585   Filed 09/06/13   Page 75 of 125   Page ID #:5812
Case 2:06-cv-05578-SVW-JC   Document 567-13   Filed 08/26/13   Page 8 of 26   Page ID #:5464

7

```
 1    there were torrent files representing those works on

 2    defendant's sites; and we are awaiting Your Honor's decision as

 3    to whether you are going to adopt that report and

 4    recommendation.

 5              THE COURT:  That report and recommendation was with

 6    regard to sanctions not the contempt order.

 7              MR. FABRIZIO:  That's right, Your Honor --

 8              THE COURT:  Contempt is separate.

 9              MR. FABRIZIO:  They are completely separate from the

10    contempt --

11              THE COURT:  I want to get to the contempt issue in a

12    moment, but -- so on the assumption that you get the server,

13    your view is that it would be somewhat mechanical to determine

14    the number of infringements?

15              MR. FABRIZIO:  Yes, Your Honor, but we're not going

16    to get the actual data.  Defendants have refused to give it to

17    us, and now that data is gone.  They have failed to preserve

18    it, so that's why the magistrate judge has recommended an

19    evidentiary sanction, that the issue of direct infringement be

20    deemed established.  So we believe that if you were to adopt

21    that report and recommendation -- obviously, we believe you

22    should -- that the issue of direct infringement will be a

23    relatively ministerial task and won't be one that will need to

24    take up jury time.  As to copyright ownership --

25              THE COURT:  When you say won't "take up jury time,"
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 042

Case 2:06-cv-05578-SVW-JC   Document 585   Filed 09/06/13   Page 76 of 125   Page ID #:5813
Case 2:06-cv-05578-SVW-JC   Document 567-13   Filed 08/26/13   Page 9 of 26   Page ID #:5465

8

```
1    you're saying that you're -- if I adopt the recommendation of
2    the magistrate, you're suggesting that damages would be a
3    matter of summary judgment?
4           MR. FABRIZIO:  The issue of direct infringement would
5    be a matter of summary judgment.
6           THE COURT:  What about the calculation?
7           MR. FABRIZIO:  The parties have an absolute right to
8    trial by jury in terms of the amount of statutory damages.  The
9    parties can, obviously, waive that right and have Your Honor
10   try that issue, and the plaintiffs would be willing to do that.
11          THE COURT:  Maybe the defendants wouldn't, and the
12   law now is that even statutory -- even with regard to statutory
13   damages, the parties have a right to a jury trial.
14          MR. FABRIZIO:  Yes, that is correct, Your Honor, the
15   parties have a right to a jury trial.  So if this issue goes to
16   the jury, the largest issue in this case -- the jury will be
17   charged that they have a range of damages they can award,
18   between $750 per work; and if the court finds that defendant's
19   conduct is willful -- and we believe the court has effectively
20   already found that with your liability findings -- the maximum
21   per work is $100,000.  The jury will be charged that it can
22   decide between those two numbers, and the factors that the jury
23   will be able to consider are -- aren't many, but they largely
24   go to defendant's conduct, egregiousness of defendant's
25   conduct --
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 043

Case 2:06-cv-05578-SVW-JC   Document 585   Filed 09/06/13   Page 77 of 125   Page ID #:5814
Case 2:06-cv-05578-SVW-JC   Document 567-13   Filed 08/26/13   Page 10 of 26   Page ID #:5466

9

```
 1          THE COURT:  What, then, is the -- would be your

 2   argument for the total amount of damages?

 3          MR. FABRIZIO:  We would argue the defendant's conduct

 4   in this case -- as found by Your Honor and affirmed by the

 5   Ninth Circuit -- is particularly egregious.  This was not

 6   inadvertent copyright infringement, it was intentional, willful

 7   copyright infringement, and that the jury should award an

 8   amount of damages that not only will punish defendants but

 9   deter defendants and those like him.

10          THE COURT:  But the jury is going to award statutory

11   damages, correct?

12          MR. FABRIZIO:  Yes, Your Honor.

13          THE COURT:  And how would the jury calculate those

14   damages?

15          MR. FABRIZIO:  It would simply be the number of works

16   that are determined to have been infringed times whatever the

17   jury decides --

18          THE COURT:  Between the range of 750 and --

19          MR. FABRIZIO:  $150,000.

20          THE COURT:  750 and 150,000.

21          MR. FABRIZIO:  Yes, Your Honor.

22          THE COURT:  I see.  So the -- without the server --

23   that's not available, so you said, correct?

24          MR. FABRIZIO:  The data that they were supposed to

25   report does not exist anymore.
```

EXHIBIT 6
Page 044

10

 1          THE COURT:  So how can it be determined, then, that

 2   all of the plaintiff's copyrights were infringed?

 3          MR. FABRIZIO:  Well, initially, Your Honor, we would

 4   urge Your Honor to adopt the magistrate judge's report and

 5   recommendation, in which case those infringements would be

 6   deemed established.  We would simply show --

 7          THE COURT:  In other words, they're deemed

 8   established as a sanction for destroying evidence.

 9          MR. FABRIZIO:  And disobeying two court orders.

10          THE CLERK:  But in the absence of that, it would seem

11   that there isn't any evidence.

12          MR. FABRIZIO:  No, Your Honor.  In the absence of

13   that, we have copies of what defendant's websites look like; we

14   have the torrent files representing our client's works that

15   were available --

16          THE COURT:  What files again?

17          MR. FABRIZIO:  Torrent files -- the small files that

18   defendant hosts on their site.  They're called ".torrent"

19   files.  So we have copies of what was on defendant's site, and

20   we would be able to establish, in a much more cumbersome way

21   that those files represented our client's works, and that by a

22   preponderance of the evidence, they were downloaded and

23   infringed.

24          THE COURT:  I see.

25          MR. FABRIZIO:  So that would be much more of a

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 045

Case 2:06-cv-05578-SVW-JC  Document 585  Filed 09/06/13  Page 79 of 125  Page ID
#:5816
Case 2:06-cv-05578-SVW-JC  Document 567-13  Filed 08/26/13  Page 12 of 26  Page ID
#:5468
11

```
 1   work-by-work showing, Your Honor, because the evidence that

 2   would have conclusively established --

 3        THE COURT:  So it seems, prior to getting into the

 4   damage trial, the court has to make a ruling on the

 5   magistrate's recommendation.

 6        MR. FABRIZIO:  Yes, Your Honor.  That would expedite

 7   trial preparation considerably.

 8        THE COURT:  And since the appeal took some time, was

 9   that issue briefed?  In other words, did you file a brief

10   supporting the magistrate's view, and did the defendants file a

11   brief opposing it?

12        MR. FABRIZIO:  This was actually fully briefed -- I

13   think a couple of rounds of briefs in front of the magistrate

14   judge, who issued a proposed report and recommendation that

15   then we filed objections to, and I think what the magistrate

16   judge did is take that whole package with a cover memo -- which

17   the parties haven't seen -- to Your Honor, supporting the

18   recommendation, and I think everything's now fully briefed and

19   before Your Honor ready for decision.

20        THE COURT:  In other words, the issue was fully

21   briefed before the magistrate judge and my task is to review

22   that.

23        MR. FABRIZIO:  Yes, Your Honor.

24        THE COURT:  Or adopt it or not.

25        MR. FABRIZIO:  Yes, Your Honor.  If it would make it
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 046

12

```
 1   easy for Your Honor -- or your clerks -- I have a list of all

 2   the docket numbers if you would like.  I can hand up it

 3   afterwards --

 4              THE COURT:  That's all right.

 5              And then finally, on the contempt issue, it does seem

 6   to me that the contempt issues stemmed from the injunction,

 7   correct?

 8              MR. FABRIZIO:  Yes, Your Honor.

 9              THE COURT:  And the injunction in several parts --

10   that's what I addressed at the outset -- was viewed by the

11   Ninth Circuit as being less than clear.

12              So the question becomes if parts of the injunction

13   were not as clear as they ought to have been, that would seem

14   to be a built-in defense to contempt.

15              MR. FABRIZIO:  No, Your Honor, not in this case.

16              THE COURT:  Explain why.

17              MR. FABRIZIO:  First of all, the Ninth Circuit in a

18   25-page opinion had two pages of commentary on the injunction

19   and found four relatively small issues with it.  They all had

20   to do with provisions that are not at issue in the contempt

21   motion, so none of what the Ninth Circuit suggested or directed

22   to be modified has anything to do with any of the issues that

23   are subject of the contempt motions.

24              THE COURT:  I see.

25              MR. FABRIZIO:  And it is black letter law in this
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 047

```
 1    circuit, Your Honor, that when an appellate court modifies an

 2    injunction in part, the unaffected parts of the injunction

 3    remain in force, and defendants can be held in contempt for

 4    violating them.

 5             THE COURT:  Let me hear from the defendant.

 6             MR. FABRIZIO:  If I may, Your Honor, on the contempt

 7    motions?  Because defendants -- the contempt motions are not

 8    moot by any stretch.

 9             THE COURT:  I didn't say they were moot.  That wasn't

10    my thought.

11             MR. FABRIZIO:  Okay.

12             THE COURT:  It was that they -- they might be

13    affected by the Ninth Circuit's view of parts of the

14    injunction.  I understand your argument that they're not, but I

15    want to hear from the defendant.

16             MR. FABRIZIO:  One of the motions -- one aspect of

17    the motions may not be fresh anymore, so is it worth explaining

18    that to Your Honor?

19             THE COURT:  Not right now.

20             MR. FABRIZIO:  Okay.  Thank you, Your Honor.

21             MR. ELKIN:  Your Honor, if I may, Michael Elkin here.

22    May I just start with Your Honor's invitation to talk about the

23    damages trial, and then we can circle back on the injunction?

24             THE COURT:  Yes.

25             MR. ELKIN:  Thank you.
```

1           The defendant's lost the case on liability relative

2   to copy -- relative to contributory liability.  We know that

3   from Your Honor's decision and the Ninth Circuit's affirmance

4   with respect to that.  So what we have left in this case, aside

5   from the injunction issue, is a trial on damages.

6           Mr. Fabrizio, with all due respect, conflated in his

7   presentation to Your Honor contributory liability, which the

8   district court found, and direct liability, which has yet to be

9   adjudicated.

10          THE COURT:  I don't think he's conflated anything.

11  He explained that the direct-liability aspect derives from the

12  court's adoption, or not, of the magistrate's recommendation.

13  If the court follows the magistrate's recommendation, direct

14  liability would be imposed as a sanction.

15          MR. ELKIN:  I appreciate that, Your Honor, so let me

16  do the following:  Let me address the contributory liability.

17  That is the summary judgment finding and order that this court

18  has entered, as affirmed by the Ninth Circuit Court of Appeals.

19  So with respect to what is front and center in terms of the

20  damages trial -- are the following elements:  No. 1, under

21  *Perfect 10 versus Google*, the plaintiffs have to demonstrate

22  that there is an underlying infringement with respect to any

23  works that they put into issue.  There was a showing to Your

24  Honor --

25          THE COURT:  I'm going to interrupt because I think

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 049

```
 1    we're getting too much into the details of the positions.  So

 2    what I'm going to do is this:  I'm going to first, as I

 3    indicated, order the parties to meet and confer on how the

 4    injunction should be modified or not, and file those pleadings

 5    within 14 days of today -- within seven days of the meet and

 6    confer period, indicating where there's agreement and

 7    disagreement and why one party's position should be followed.

 8             With regard to the damage aspect of the case, as a

 9    first matter, I'm going to have to now make a ruling on the

10    magistrate's recommendation, which I hopefully can do in a

11    reasonable period of time; then once I make that ruling, I'll

12    have another hearing on the damage phase and hear your

13    arguments in greater detail.  And with regard to the contempt

14    argument, I want that briefed.  In other words, I want the

15    plaintiff to first file a brief within ten days of today

16    explaining your position that the order of contempt -- the

17    proposed order of contempt -- which was never adopted, correct?

18             MR. FABRIZIO:  No, Your Honor, never --

19             THE COURT:   -- should -- why it wasn't affected by

20    the Ninth Circuit's observations regarding parts of the

21    injunction, and then I'll give you seven days thereafter to

22    respond.

23             And then you can reply in three days.  And we'll have

24    a hearing -- just one moment.

25             THE CLERK:  Plaintiff's brief will be due July 11;
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 050

Case 2:06-cv-05578-SVW-JC   Document 585   Filed 09/06/13   Page 84 of 125   Page ID #:5821
Case 2:06-cv-05578-SVW-JC   Document 567-13   Filed 08/26/13   Page 17 of 26   Page ID #:5473

16

```
 1   defendant's response will be July 18th; and the reply brief
 2   will be July 22nd; hearing will be July 29th at 1:30.
 3           THE COURT:  Just -- and not to get into this in great
 4   detail, but is it the defense argument that, for some reason,
 5   damages are not available at all?
 6           MR. ELKIN:  Your Honor, if you could give me two
 7   minutes.
 8           THE COURT:  Just answer my question.
 9           MR. ELKIN:  Damages are certainly available with
10   respect to any claim as to whether liability has been
11   established.  It's only been established as contributory.
12           THE COURT:  So let's assume for the moment that
13   that's where things will stand, there's only a liability for
14   contributory damages.  What is the plaintiff left with?  Is the
15   plaintiff without a damage remedy?
16           MR. ELKIN:  I think there are two things:  No. 1, the
17   Ninth Circuit decision -- as Your Honor knows well -- clearly
18   stated that in order for there to be damages, the plaintiff has
19   to show a sufficient causal connection between the user's
20   infringing activity and the use of Fung's trackers.  There is
21   an element of causation relative to the works they're putting
22   into issue.  There were 44 exemplar works that were part of the
23   amended complaint.  Mr. Fabrizio -- we just heard Mr. Fabrizio
24   talk about three to 5,000 works for which discovery hasn't even
25   been made available.  They have to demonstrate, aside from --
```

17

```
 1   with respect to contributory liability, there hasn't been any
 2   adjudication of direct liability.  I understand what the
 3   representations --
 4          THE COURT:  But your argument about the number of
 5   works, as defined in the complaint, would hold true even if
 6   there was direct infringement.
 7          MR. ELKIN:  With respect to the 44 works, this is
 8   what would have to happen, in our view.
 9          THE COURT:  You have to answer my questions.  You
10   have an interest in informing the court -- I appreciate that --
11   but I want you to answer the question.
12          If there was direct infringement, would the direct
13   infringement be limited to the works described in the
14   complaint?
15          MR. ELKIN:  Yes, it would be, in our review.  Until
16   the court were to permit -- if it would -- an amendment
17   relevant to new works, it would be, to the extent that the
18   court would permit that --
19          THE COURT:  I understand that.  You've answered the
20   question.  I understand it.
21          Now, when you file your pleading regarding the
22   damages -- I didn't ask you to file a pleading.
23          MR. FABRIZIO:  No, Your Honor, we haven't.
24          THE COURT:  Well, just in a nutshell, what is your
25   response to that?
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 052

18

1          MR. FABRIZIO:  On the issue of -- that the case is

2    limited to the works that are named in the complaint --

3          THE COURT:  Yes.

4          MR. FABRIZIO:  -- at the initial case management

5    conference with Your Honor, the parties and the court decided

6    that the liability phase of this case would go forward based on

7    the 44 or so works that were named in the complaint with the

8    ability to bring in the other works in the damages phase.

9          THE COURT:  But that's what counsel is now saying.

10   He's saying that there's -- don't you have to prove that?

11         MR. FABRIZIO:  We have to prove that they were

12   directly infringed through the use of defendant's sites, which

13   the report and recommendation of the magistrate judge would

14   largely take care of.

15         THE COURT:  With regard to the 44.

16         MR. FABRIZIO:  No, no.  That's already been

17   established.  That was on summary judgment.  With regard to the

18   other -- let's call it -- three to 5,000.

19         THE COURT:  Yes.  How is that going to be

20   established?

21         MR. FABRIZIO:  That would be -- again, that is what

22   the magistrate judge's report and recommendation goes to.

23         THE COURT:  I'll have to review that, and if I need

24   further briefing or hearing, I'll let you know.  The matter

25   will stand submitted.  Thank you.

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 053

19

```
1          MR. FABRIZIO:  On the dates --

2          THE COURT:  No, no.  I issued the order.

3          I'm not hearing from the parties any further.  I've

4   given you an opportunity.  If I need further comment, I'll

5   order it.  Thank you.

6              (Proceedings concluded at 2:10 p.m.)

7                       - - - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 054

```
 1                    C E R T I F I C A T E

 2

 3          I hereby certify that the foregoing is a true and

 4     correct transcript from the stenographic record of

 5     the proceedings in the foregoing matter.

 6

 7                                         July 8, 2013

 8     /S/_____        _____

 9          Deborah K. Gackle                     Date
            Official Court Reporter
10          CSR No. 7106

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
COURT REPORTER DEBORAH K. GACKLE

EXHIBIT 6
Page 055

**$**

$100,000 [1] 8/21
$150,000 [1] 9/19
$750 [1] 8/18

**.**

.torrent [1] 10/18

**/**

/S [1] 20/8

**0**

06-5578-SVW [2] 1/9 4/4

**1**

10 [1] 14/21
10100 [1] 2/12
10166 [2] 3/6 3/11
1099 [1] 2/7
11 [1] 15/25
1149 [1] 1/25
14 [1] 15/5
150,000 [1] 9/20
18th [1] 16/1
1:30 [1] 16/2
1:45 [1] 4/1

**2**

200 [2] 3/6 3/11
2000 [1] 2/13
20001-4412 [1] 2/7
2013 [3] 1/18 4/1 20/7
202-639-6040 [1] 2/8
202-661-4823 [1] 2/8
212-294-4700 [2] 3/7 3/12
212-294-6700 [2] 3/7 3/12
213 [1] 1/25
2200 [2] 2/12 2/13
22nd [1] 16/2
25-page [1] 12/18
280 [1] 2/20
2905 [1] 2/21
29th [1] 16/2
2:10 [1] 19/6

**3**

310-282-2000 [1] 2/13
310-282-2200 [1] 2/13
312 [1] 1/24

**4**

402A [1] 1/24
4120 [1] 2/12
415-924-2905 [1] 2/21
415-924-4250 [1] 2/21
4250 [1] 2/21
44 [4] 16/22 17/7 18/7 18/15
4412 [1] 2/7
4700 [2] 3/7 3/12
4823 [1] 2/8

**5**

5,000 [3] 6/4 16/24 18/18

**6**

6040 [1] 2/8
620-1149 [1] 1/25
6700 [2] 3/7 3/12

**7**

7106 [1] 20/10
750 [2] 9/18 9/20

**9**

900 [1] 2/7
90012 [1] 1/24
90067-4120 [1] 2/12
94949 [1] 2/20

**A**

ability [1] 18/8
able [2] 8/23 10/20
about [6] 6/6 6/21 8/6 13/22 16/24 17/4
absence [2] 10/10 10/12
absolute [1] 8/7
act [1] 6/10
activity [1] 16/20
actual [1] 7/16
actually [1] 11/12
address [1] 14/16
addressed [1] 12/10
adjudicated [1] 14/9
adjudication [1] 17/2
adopt [5] 7/3 7/20 8/1 10/4 11/24
adopted [1] 15/17
adoption [1] 14/12
affected [2] 13/13 15/19
affirmance [1] 14/3
affirmed [2] 9/4 14/18
afternoon [5] 4/7 4/9 4/11 4/14 4/16
afterwards [1] 12/3
again [3] 6/15 10/16 18/21
agreed [1] 5/1
agreement [1] 15/6
al [4] 1/7 1/11 4/5 4/5
all [8] 5/12 10/2 12/1 12/4 12/17 12/19 14/6 16/5
already [3] 6/19 8/20 18/16
also [2] 4/10 4/20
amended [1] 16/23
amendment [1] 17/16
amount [3] 8/8 9/2 9/8
ANGELES [4] 1/17 1/24 2/12 4/1
another [1] 15/12
answer [3] 16/8 17/9 17/11
answered [1] 17/19
any [7] 10/11 12/22 13/8 14/22 16/10 17/1 19/3
anymore [2] 9/25 13/17
anything [2] 12/22 14/10
appeal [1] 11/8
Appeals [1] 14/18
appearances [3] 2/1 3/1 4/6
appellate [1] 13/1
applied [1] 5/21
appreciate [2] 14/15 17/10
are [18] 5/13 5/14 5/24 6/10 6/10 7/2 7/3 7/9 8/23 9/16 12/20 12/23 13/7 14/20 16/5 16/9 16/16 18/2
aren't [1] 8/23
argue [1] 9/3
argument [5] 9/2 13/14 15/14 16/4 17/4
arguments [1] 15/13
as [18] 4/17 6/3 6/8 7/2 7/24 9/4 10/8 12/11 12/13 12/13 14/14 14/18 15/2 15/8 16/10 16/11 16/17 17/5
aside [2] 14/4 16/25
ask [1] 17/22
aspect [4] 4/21 13/16 14/11 15/8
assume [1] 16/12
assumption [1] 7/12
at [6] 12/10 12/20 16/2 16/5 18/4 19/6
attempt [1] 4/23
available [5] 9/23 10/15 16/5 16/9 16/25
Avenue [3] 2/7 3/6 3/11

awaiting [1] 7/2
award [3] 8/17 9/7 9/10

**B**

back [1] 13/23
based [1] 18/6
be [45]
because [4] 6/10 11/1 13/7 14/25
becomes [1] 12/12
been [7] 9/16 12/13 16/10 16/11 16/25 17/1 18/16
before [2] 11/19 11/21
being [1] 12/11
believe [3] 7/20 7/21 8/19
between [4] 8/18 8/22 9/18 16/19
black [1] 12/25
Block [1] 2/6
Boulevard [1] 2/12
brief [5] 11/9 11/11 15/15 15/25 16/1
briefed [5] 11/9 11/12 11/18 11/21 15/14
briefing [1] 18/24
briefs [1] 11/13
bring [1] 18/8
built [1] 12/14
built-in [1] 12/14
but [12] 5/10 7/12 7/15 8/23 9/8 9/10 10/10 13/14 16/4 17/4 17/11 18/9

**C**

CA [2] 2/12 2/20
calculate [1] 9/13
calculation [2] 6/7 8/6
CALIFORNIA [4] 1/2 1/17 1/24 4/1
call [1] 18/18
called [1] 10/18
can [9] 8/9 8/17 8/21 10/1 12/2 13/3 13/23 15/10 15/23
can't [1] 4/24
care [1] 18/14
case [14] 4/21 5/8 5/14 6/24 8/16 9/4 10/5 12/15 14/1 14/14 15/8 18/1 18/4 18/6
causal [1] 16/19
causation [1] 16/21
center [1] 14/19
CENTRAL [1] 1/2
certainly [1] 16/9
certify [1] 20/3
charged [2] 8/17 8/21
circle [1] 13/23
circuit [7] 9/5 12/11 12/17 12/21 13/1 14/18 16/17
Circuit's [5] 4/20 4/24 13/13 14/3 15/20
claim [2] 5/6 16/10
clear [2] 12/11 12/13
clearly [1] 16/17
clerks [1] 12/1
client's [2] 10/14 10/21
clients [1] 6/2
co [2] 4/12 4/15
co-counsel [2] 4/12 4/15
COLUMBIA [2] 1/7 4/4
come [1] 6/9
comment [1] 19/4
commentary [1] 12/18
complaint [5] 16/23 17/5 17/14 18/2 18/7
completely [1] 7/9
comply [1] 6/21
concluded [1] 19/6
conclusively [3] 6/12 6/18 11/2
conduct [4] 8/19 8/24 8/25 9/3
conference [3] 1/20 4/19 18/5
conflated [2] 14/6 14/10

EXHIBIT 6
Page 056

## C

connection [1]  16/19
consider [1]  8/23
considerably [1]  11/7
contempt [15]  7/6 7/8 7/10 7/11 12/5 12/6
12/14 12/20 12/23 13/3 13/6 13/7 15/13
15/16 15/17
Continued [1]  3/1
contributory [6]  14/2 14/7 14/16 16/11 16/14
17/1
copies [2]  10/13 10/19
copy [1]  14/2
copyright [3]  7/24 9/6 9/7
copyrighted [3]  5/18 5/18 6/19
copyrights [2]  5/24 10/2
correct [6]  8/14 9/11 9/23 12/7 15/17 20/4
could [3]  5/10 6/5 16/6
couldn't [1]  6/15
counsel [6]  2/1 3/1 4/6 4/12 4/15 18/9
couple [1]  11/13
court [17]  1/1 5/7 6/11 8/18 8/19 10/9 11/4
13/1 14/8 14/13 14/17 14/18 17/10 17/16
17/18 18/5 20/9
court's [1]  14/12
Courthouse [1]  1/23
cover [1]  11/16
CSR [2]  1/23 20/10
cumbersome [1]  10/20
CV [1]  1/9

## D

damage [4]  11/4 15/8 15/12 16/15
damages [26]
data [5]  6/11 6/18 7/16 7/17 9/24
Date [1]  20/9
dates [1]  19/1
days [6]  4/25 15/5 15/5 15/15 15/21 15/23
DC [1]  2/7
DEBORAH [2]  1/23 20/9
decide [1]  8/22
decided [1]  18/5
decides [1]  9/17
decision [4]  7/2 11/19 14/3 16/17
deemed [3]  7/20 10/6 10/7
defendant [5]  2/17 4/12 10/18 13/5 13/15
defendant's [12]  5/19 5/25 7/2 8/18 8/24
8/24 9/3 10/13 10/19 14/1 16/1 18/12
defendants [15]  1/12 3/3 4/17 5/7 6/10 6/17
6/20 6/20 7/16 8/11 9/8 9/9 11/10 13/3 13/7
defense [3]  5/13 12/14 16/4
defined [1]  17/5
demonstrate [3]  5/17 14/21 16/25
derives [1]  14/11
described [1]  17/13
destroying [1]  10/8
detail [2]  15/13 16/4
details [1]  15/1
deter [1]  9/9
determine [1]  7/13
determined [2]  9/16 10/1
did [4]  5/7 11/9 11/10 11/16
didn't [2]  13/9 17/22
direct [14]  6/8 6/12 6/19 6/25 7/19 7/22 8/4
14/8 14/11 14/13 17/6 17/12 17/12
direct-liability [1]  14/11
directed [1]  12/21
directly [1]  18/12
disagree [1]  5/2
disagreement [2]  15/7
discovery [2]  6/21 16/24
disobeying [1]  10/9
district [4]  1/1 1/2 1/5 14/8

## DIVISION [1]  1/3
do [7]  6/6 8/10 12/20 12/22 14/16 15/2 15/10
docket [1]  12/2
does [2]  9/25 12/5
don't [2]  14/10 18/10
done [1]  4/25
down [1]  6/9
downloaded [1]  10/22
due [2]  14/6 15/25

## E

each [1]  5/21
easy [1]  12/1
effectively [2]  6/24 8/19
egregious [1]  9/5
egregiousness [1]  8/24
element [1]  16/21
elements [1]  14/20
Elkin [3]  3/5 4/12 13/21
Email [5]  2/9 2/14 2/22 3/8 3/13
entered [2]  6/23 14/18
entire [2]  6/1
establish [1]  14/20
established [9]  6/25 7/20 10/6 10/8 11/2
16/11 16/11 18/17 18/20
et [4]  1/7 1/11 4/5 4/5
even [4]  8/12 8/12 16/24 17/5
everything's [1]  11/18
evidence [4]  10/8 10/11 10/22 11/1
evidentiary [3]  6/23 6/24 7/19
example [1]  5/22
exemplar [1]  16/22
exist [1]  9/25
expedite [1]  11/6
Explain [1]  12/16
explained [1]  14/11
explaining [2]  13/17 15/16
extent [1]  17/17

## F

Fabrizio [2]  2/6 4/8 5/10 14/6 16/23 16/23
factors [1]  8/22
failed [1]  7/17
failure [1]  6/21
Fax [5]  2/8 2/13 2/21 3/7 3/12
file [7]  5/1 11/9 11/10 15/4 15/15 17/21 17/22
filed [1]  11/15
files [7]  7/10 10/14 10/16 10/17 10/17 10/19
10/21
finally [1]  12/5
finding [1]  14/17
findings [1]  8/20
finds [1]  8/18
firm [2]  2/19 4/17
first [6]  5/12 6/8 12/17 15/2 15/9 15/15
five [1]  6/20
follow [1]  5/22
followed [2]  5/3 15/7
following [2]  14/16 14/20
follows [1]  14/13
force [1]  13/3
foregoing [2]  20/3 20/5
forward [1]  18/6
found [4]  8/20 9/4 12/19 14/8
four [1]  12/19
fresh [1]  13/17
front [2]  11/13 14/19
fully [3]  11/12 11/18 11/20
FUNG [4]  1/11 4/5 4/12 4/15
Fung's [1]  16/20
further [4]  5/4 18/24 19/3 19/4

## G

GACKLE [2]  1/23 20/9

## GARY [4]  1/11 4/5 4/12 4/15
get [4]  7/11 7/12 7/16 16/3
getting [2]  11/3 15/1
give [5]  4/22 5/22 7/16 15/21 16/6
given [1]  19/4
go [3]  6/6 8/24 18/6
goes [2]  8/15 18/22
going [10]  4/22 4/25 7/3 7/15 9/10 14/25 15/2
15/2 15/9 18/19
gone [1]  7/17
Good [5]  4/7 4/9 4/11 4/14 4/16
Google [1]  14/21
great [1]  16/3
greater [1]  15/13

## H

had [2]  12/18 12/19
Hamilton [1]  2/20
hand [1]  12/2
happen [1]  17/8
has [9]  6/13 7/18 8/19 11/4 12/22 14/8 14/18
16/10 16/18
hasn't [2]  16/24 17/1
have [31]
haven't [2]  11/17 17/23
having [3]  6/13 6/19 6/20
He [1]  14/11
he's [2]  14/10 18/10
hear [4]  6/15 13/5 13/15 15/12
heard [1]  16/23
hearing [6]  5/4 15/12 15/24 16/2 18/24 19/3
held [1]  13/3
here [1]  13/21
hereby [1]  20/3
him [1]  9/9
his [1]  14/6
hold [1]  17/5
Honor [42]
Honor's [3]  7/2 13/22 14/3
HONORABLE [1]  1/5
hopefully [1]  15/10
hosts [1]  10/18
how [6]  5/11 5/22 5/24 6/6 9/13 10/1 15/3
18/19

## I

I'll [6]  5/4 15/11 15/21 18/23 18/24 19/4
I'm [9]  4/22 4/25 5/9 6/16 14/25 15/2 15/2
15/9 19/3
I've [1]  19/3
if [18]  4/24 5/3 7/20 8/1 8/15 8/18 11/25 12/2
12/12 13/6 13/21 14/13 16/6 17/5 17/16
17/16 18/23 19/4
imposed [1]  14/14
in [51]
inadvertent [1]  9/6
INC [2]  1/7 4/5
indicated [1]  15/3
indicating [3]  5/1 5/7 15/6
INDUSTRIES [2]  1/7 4/5
informing [1]  17/10
infringed [7]  5/19 5/21 6/1 9/16 10/2 10/23
18/12
infringement [13]  6/9 6/12 6/19 6/25 7/19
7/22 8/4 9/6 9/7 14/22 17/6 17/12 17/13
infringements [2]  7/14 10/5
infringing [1]  16/20
initial [1]  18/4
initially [1]  10/3
injunction [13]  4/23 5/3 12/6 12/9 12/12
12/18 13/2 13/2 13/14 13/23 14/5 15/4 15/21
intend [2]  5/11 6/6
intentional [1]  9/6

EXHIBIT 6
Page 057

**I**

interest [1]  17/10
interrupt [1]  14/25
into [5]  11/3 14/23 15/1 16/3 16/22
invitation [1]  13/22
involved [1]  5/24
ira [2]  2/19 2/22 4/14
is [34]
isn't [1]  10/11
Isohunt [2]  4/13 4/15
issue [18]  5/13 6/8 6/9 7/11 7/19 7/22 8/4
  8/10 8/15 8/16 11/9 11/20 12/5 12/20 14/5
  14/23 16/22 18/1
issued [4]  6/14 6/22 11/14 19/2
issues [3]  12/6 12/19 12/22
it [30]
It's [1]  16/11
Item [1]  4/4

**J**

Jenner [1]  2/6
jenner.com [1]  2/9
judge [9]  1/5 6/12 6/17 6/22 7/18 11/14
  11/16 11/21 18/13
judge's [2]  10/4 18/22
judgment [4]  8/3 8/5 14/17 18/17
JULY [7]  1/18 4/1 15/25 16/1 16/2 16/2 20/7
jury [13]  7/24 7/25 8/8 8/13 8/15 8/16 8/16
  8/21 8/22 9/7 9/10 9/13 9/17
just [6]  13/22 15/24 16/3 16/8 16/23 17/24

**K**

karen [3]  2/11 2/14 4/9
know [2]  14/2 18/24
knows [1]  16/17

**L**

lacking [1]  5/14
Landing [1]  2/20
Lane [2]  3/10 4/16
largely [2]  8/23 18/14
largest [1]  8/16
law [4]  2/19 4/17 8/12 12/25
lectern [1]  5/10
left [2]  14/4 16/14
less [2]  6/4 12/11
let [4]  13/5 14/15 14/16 18/24
let's [2]  16/12 18/18
letter [1]  12/25
liability [13]  8/20 14/1 14/2 14/7 14/8 14/11
  14/14 14/16 16/10 16/13 17/1 17/2 18/6
library [1]  6/1
light [1]  4/24
like [3]  9/9 10/13 12/2
limited [2]  17/13 18/2
list [1]  12/1
LLP [3]  2/6 3/5 3/10
Loeb [2]  2/11 2/11
log [2]  6/11 6/18
look [1]  10/13
LOS [4]  1/17 1/24 2/12 4/1
lost [1]  14/1

**M**

made [1]  16/25
magistrate [11]  6/12 6/17 6/22 7/18 8/2 10/4
  11/13 11/15 11/21 18/13 18/22
magistrate's [5]  11/5 11/10 14/12 14/13
  15/10
make [5]  5/9 11/4 11/25 15/9 15/11
management [1]  18/4
mandate [2]  4/20 4/22
many [2]  5/24 8/23

matter [6]  6/3 8/3 8/5 15/9 18/24 20/5
maximum [1]  8/20
may [4]  13/6 13/17 13/21 13/22
Maybe [1]  8/11
me [7]  5/11 5/22 12/6 13/5 14/15 14/16 16/6
mechanical [1]  7/13
meet [3]  4/23 15/3 15/5
melkin [1]  3/8
memo [1]  11/16
Michael [3]  3/5 4/11 13/21
might [1]  13/12
ministerial [2]  6/10 7/23
minutes [1]  16/7
modified [2]  12/22 15/4
modifies [1]  13/1
modify [1]  4/23
moment [5]  7/12 15/24 16/12
MONDAY [2]  1/18 4/1
Monica [1]  2/12
moot [2]  13/8 13/9
more [2]  10/20 10/25
motion [2]  6/1 12/21
motions [5]  12/23 13/7 13/7 13/16 13/17
mpaa.org [1]  2/14
Mr [1]  16/23
Mr. [3]  5/10 14/6 16/23
Mr. Fabrizio [3]  5/10 14/6 16/23
much [3]  10/20 10/25 15/1
my [4]  11/21 13/10 16/8 17/9

**N**

named [2]  18/2 18/7
need [4]  5/4 7/23 18/23 19/4
never [2]  15/17 15/18
new [4]  2/7 3/6 3/11 17/17
Ninth [11]  4/20 4/24 9/5 12/11 12/17 12/21
  13/13 14/3 14/18 15/20 16/17
no [10]  1/9 10/12 12/15 15/18 17/23 18/16
  18/16 19/2 19/2 20/10
No. [2]  14/20 16/16
No. 1 [2]  14/20 16/16
none [1]  12/21
North [1]  1/24
not [21]
Novato [1]  2/20
now [8]  5/6 7/17 8/12 11/18 13/19 15/9 17/21
  18/9
number [3]  7/14 9/15 17/4
numbers [2]  8/22 12/2
nutshell [1]  17/24
NW [1]  2/7
NY [2]  3/6 3/11

**O**

objections [1]  11/15
observations [2]  4/24 15/20
obviously [3]  5/9 7/21 8/9
offering [1]  6/6
Official [1]  20/9
Okay [2]  13/11 13/20
on [18]  7/1 7/12 10/18 10/19 11/4 12/5 12/18
  13/6 13/23 14/1 14/5 15/3 15/9 15/12 18/1
  18/6 18/17 19/1
once [1]  15/11
one [5]  7/23 13/16 13/16 15/7 15/24
only [3]  9/8 16/11 16/13
opinion [1]  12/18
opportunity [1]  19/4
opposing [1]  11/11
or [8]  11/24 11/24 12/1 12/21 14/12 15/4
  18/7 18/24
order [10]  4/25 5/16 7/6 14/17 15/3 15/16
  15/17 16/18 19/2 19/5

ordered [1]  6/17
orders [3]  6/11 6/22 10/9
other [6]  10/7 11/9 11/20 15/14 18/8 18/18
ought [1]  12/13
our [6]  6/2 6/19 10/14 10/21 17/8 17/15
outset [1]  12/10
own [1]  6/2
ownership [2]  5/18 7/24

**P**

p.m [2]  4/1 19/6
package [1]  11/16
page [1]  12/18
pages [1]  12/18
Park [2]  3/6 3/11
part [2]  13/2 16/22
particular [1]  5/2
particularly [1]  9/5
parties [10]  4/22 4/25 8/7 8/9 8/13 8/15
  11/17 15/3 18/5 19/3
parts [5]  12/9 12/12 13/2 13/13 15/20
party's [2]  5/2 15/7
per [3]  5/20 8/18 8/21
per-work [1]  5/20
Perfect [1]  14/21
period [2]  15/6 15/11
permit [2]  17/16 17/18
phase [3]  15/12 18/6 18/8
pictures [1]  1/7
plaintiff [6]  2/4 4/21 15/15 16/14 16/15
  16/18
plaintiff's [3]  6/25 10/2 15/25
plaintiffs [7]  1/8 4/8 4/10 5/14 5/17 8/10
  14/21
pleading [4]  5/1 5/7 17/21 17/22
pleadings [1]  15/4
please [1]  4/6
position [4]  5/2 5/9 15/7 15/16
positions [1]  15/1
practicalities [1]  6/3
preparation [1]  11/7
preponderance [1]  10/22
presentation [1]  14/7
preserve [1]  7/17
PRESIDING [1]  1/5
prior [1]  11/3
probably [2]  6/3 6/4
proceed [1]  4/21
proceeding [1]  6/3
proceedings [3]  1/16 19/6 20/5
produce [2]  6/11 6/18
programs [1]  6/2
proposed [2]  11/14 15/17
prove [6]  5/11 5/16 6/12 6/18 8/10 8/11
provision [1]  5/17
provisions [1]  12/20
punish [1]  9/8
put [1]  14/23
putting [1]  16/21

**Q**

quantum [1]  5/20
question [4]  12/12 16/8 17/11 17/20
questions [1]  17/9

**R**

range [2]  8/17 9/18
rather [1]  6/9
ready [1]  11/19
reason [1]  16/4
reasonable [1]  15/11
receive [1]  5/7
recommendation [14]  6/23 7/4 7/5 7/21 8/1
  10/5 11/5 11/14 11/18 14/12 14/13 15/10

EXHIBIT 6
Page 058

**R**

recommendation... [2]  18/13 18/22
recommended [1]  7/18
record [1]  20/4
redrafting [1]  5/3
refused [1]  7/16
regard [9]  4/19 4/22 5/6 7/6 8/12 15/8 15/13 18/15 18/17
regarding [2]  15/20 17/21
relative [3]  14/1 14/2 16/21
relatively [2]  7/23 12/19
relevant [1]  17/17
remain [1]  13/3
remedy [1]  16/15
repeatedly [1]  6/13
reply [2]  15/23 16/1
report [9]  6/22 7/3 7/5 7/21 9/25 10/4 11/14 18/13 18/22
Reporter [1]  20/9
REPORTER'S [1]  1/16
representations [1]  17/3
represented [1]  10/21
representing [2]  7/1 10/14
request [2]  4/20 5/4
respect [7]  14/4 14/6 14/19 14/22 16/10 17/1 17/7
respond [1]  15/22
response [2]  16/1 17/25
review [3]  11/21 17/15 18/23
right [7]  7/7 8/7 8/9 8/13 8/15 12/4 13/19
right to [1]  8/15
Room [1]  1/24
Rothken [2]  2/19 2/19
Rothkin [1]  4/15
rounds [1]  11/13
RPR [1]  1/23
ruling [4]  5/10 11/4 15/9 15/11

**S**

said [1]  9/23
sanction [4]  6/24 7/19 10/8 14/14
sanctioned [2]  6/13 6/20
sanctions [2]  6/23 7/6
Santa [1]  2/12
say [2]  7/25 13/9
saying [3]  8/1 18/9 18/10
see [4]  5/15 9/22 10/24 12/24
seem [3]  10/10 12/5 12/13
seems [1]  11/3
seen [1]  11/17
separate [2]  7/8 7/9
server [4]  6/11 6/18 7/12 9/22
seven [3]  4/25 15/5 15/21
several [1]  12/9
sfabrizio [1]  2/9
should [7]  5/3 6/9 7/22 9/7 15/4 15/7 15/19
show [2]  10/6 16/19
showing [2]  11/1 14/23
simply [2]  9/15 10/6
since [1]  11/8
site [2]  10/18 10/19
sites [2]  7/2 18/12
small [2]  10/17 12/19
so [19]  7/12 7/18 7/20 8/15 9/22 9/23 10/1 10/19 10/25 11/3 12/12 12/21 13/17 14/4 14/15 14/19 15/1 16/12 18/7
some [2]  11/8 16/4
somewhat [1]  7/13
sorry [1]  6/16
specifically [1]  6/21
speculation [1]  5/13
speculative [1]  5/9

Spring [1]  1/24
stand [2]  16/13 18/25
start [2]  6/15 13/22
state [1]  4/6
stated [1]  16/18
STATES [2]  1/1 1/23
status [2]  1/20 4/19
statutory [7]  5/14 5/17 5/20 8/8 8/12 8/12 9/10
Ste [1]  2/20
stemmed [1]  12/6
stenographic [1]  20/4
STEPHEN [1]  1/5
Steven [2]  2/6 4/7
Strawn [4]  3/5 3/10 4/12 4/17
Street [1]  1/24
stretch [1]  13/8
subject [1]  12/23
submitted [1]  18/25
substantially [1]  6/4
such [1]  5/9
sufficient [1]  16/19
suggested [1]  12/21
suggesting [1]  8/2
Suite [2]  2/7 2/12
summary [4]  8/3 8/5 14/17 18/17
supporting [2]  11/10 11/17
supposed [1]  9/24
SVW [2]  1/9 4/4
system [1]  5/19

**T**

take [5]  5/10 7/24 7/25 11/16 18/14
talk [2]  13/22 16/24
task [2]  7/23 11/21
techfirm.com [1]  2/22
Technologies [1]  4/13
television [1]  6/2
tell [1]  5/10
ten [1]  15/15
tens [1]  6/5
terms [2]  8/8 14/19
than [2]  6/4 12/11
Thank [5]  5/5 13/20 13/25 18/25 19/5
that [96]
that's [8]  7/7 7/18 9/23 12/4 12/10 16/13 18/9 18/16
their [3]  5/8 6/21 10/18
them [3]  6/13 6/13 13/4
then [10]  4/25 5/19 9/1 10/1 11/15 12/5 13/23 15/11 15/21 15/23
there [13]  5/19 6/3 7/1 10/11 14/22 14/23 16/16 16/18 16/20 16/22 17/1 17/6 17/12
there's [3]  15/6 16/13 18/10
thereafter [2]  4/25 15/21
these [1]  6/21
they [17]  5/1 5/2 7/9 7/17 8/17 8/17 8/23 9/24 10/22 12/13 12/19 13/9 13/12 13/12 14/23 16/25 18/11
they're [4]  10/7 10/18 13/14 16/21
things [2]  16/13 16/16
think [6]  11/13 11/15 11/18 14/10 14/25 16/16
this [16]  5/6 6/9 6/23 8/15 8/16 9/4 9/5 11/12 12/15 12/25 14/4 14/17 15/2 16/3 17/7 18/6
Thomas [2]  3/10 4/16
thorland [2]  2/11 2/14 4/10
those [8]  5/18 7/1 8/22 9/9 9/13 10/5 10/21 15/4
thought [1]  13/10
thousands [1]  6/5
three [5]  2/20 6/4 15/23 16/24 18/18
through [1]  18/12

time [4]  7/24 7/25 11/8 15/11
times [2]  6/20 9/16
tlane [1]  3/13
today [2]  15/5 15/15
too [2]  5/8 15/1
took [1]  11/8
torrent [3]  7/1 10/14 10/17
total [1]  9/2
trackers [1]  16/20
transcript [2]  1/16 20/4
trial [8]  8/8 8/13 8/15 11/4 11/7 13/23 14/5 14/20
true [2]  17/5 20/3
try [1]  8/10
twice [1]  6/17
two [7]  4/22 6/11 8/22 10/9 12/18 16/6 16/16

**U**

U.S [1]  1/5
unaffected [1]  13/2
under [2]  5/16 14/20
underlying [1]  14/22
understand [4]  13/14 17/2 17/19 17/20
UNITED [2]  1/1 1/23
Until [1]  17/15
up [3]  7/24 7/25 12/2
urge [1]  10/4
us [1]  7/17
use [3]  6/18 16/20 18/12
user's [1]  16/19
users [1]  5/19

**V**

versus [2]  4/5 14/21
view [5]  5/8 7/13 11/10 13/13 17/8
viewed [1]  12/10
violating [1]  13/4
violation [1]  6/10
virtually [1]  6/1

**W**

waive [1]  8/9
want [5]  7/11 13/15 15/14 15/14 17/11
warned [2]  6/13 6/20
was [15]  5/8 7/5 9/5 9/6 10/19 11/8 11/12 11/20 12/10 13/12 14/23 15/17 17/6 17/12 18/17
Washington [1]  2/7
wasn't [2]  13/9 15/19
way [1]  10/20
we [20]  5/23 6/18 7/2 7/20 7/21 8/19 9/3 10/3 10/6 10/13 10/13 10/19 10/20 11/15 13/23 14/2 14/4 16/23 17/23 18/11
we'll [1]  15/23
we're [2]  7/15 15/1
website [1]  5/25
websites [1]  10/13
weeks [1]  4/22
well [4]  4/18 10/3 16/17 17/24
were [14]  5/19 7/1 7/20 9/24 10/2 10/15 10/22 12/13 13/9 16/22 16/22 17/16 18/7 18/11
WESTERN [1]  1/3
what [17]  8/6 9/1 10/13 10/16 10/19 11/15 12/10 12/11 14/4 14/19 15/2 16/14 17/2 17/8 17/24 18/9 18/21
whatever [1]  9/16
when [3]  7/25 13/1 17/21
where [5]  5/1 5/1 6/25 15/6 16/13
whether [2]  7/3 16/10
which [9]  6/4 10/5 11/16 14/7 14/8 15/10 15/17 16/24 18/12
who [1]  11/14
whole [1]  11/16

EXHIBIT 6
Page 059

**W**

why [5]  5/2 7/18 12/16 15/7 15/19
will [12]  7/22 7/23 8/16 8/21 8/23 9/8 15/25
  16/1 16/2 16/2 16/13 18/25
willful [2]  8/19 9/6
willing [1]  8/10
WILSON [1]  1/5
Winston [4]  3/5 3/10 4/12 4/17
winston.com [2]  3/8 3/13
within [3]  15/5 15/5 15/15
without [2]  9/22 16/15
won't [2]  7/23 7/25
words [4]  10/7 11/9 11/20 15/14
work [6]  5/20 5/21 8/18 8/21 11/1 11/1
work-by-work [1]  11/1
works [19]  5/18 5/18 6/19 6/25 7/1 9/15
  10/14 10/21 14/23 16/21 16/22 16/24 17/5
  17/7 17/13 17/17 18/2 18/7 18/8
worth [1]  13/17
would [38]
wouldn't [1]  8/11

**Y**

Yes [13]  5/12 7/15 8/14 9/12 9/21 11/6 11/23
  11/25 12/8 13/24 17/15 18/3 18/19
yet [1]  14/8
York [3]  2/7 3/6 3/11
you [28]
you're [3]  8/1 8/1 8/2
You've [1]  17/19
your [56]

EXHIBIT 6
Page 060

# EXHIBIT F

JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C.  20005
Telephone:  (202) 639-6000;
Facsimile:  (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
SAMI J. VALKONEN (*pro hac vice*)
  svalkonen@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600;
Facsimile:  (212) 891-1699
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>   *Plaintiffs*,<br><br>v.<br><br>GARY FUNG, *et. al.*<br><br>   *Defendants*. | Case No. CV-06-05578 SVW (JCx)<br><br>DISCOVERY MATTER<br><br>The Honorable Jacqueline Chooljian<br><br>**PLAINTIFFS' AND MPAA'S NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RE RULE 30(b)(6) DEPOSITIONS -- FEES REQUESTED**<br><br>Summary Judgment Filing Deadline: August 20, 2007<br><br>Pretrial Conf./Trial Date:   TBA |

# TABLE OF CONTENTS

NOTICE OF APPLICATION ...................................................................................1

EX PARTE APPLICATION ..................................................................................1

    A.    Noticed Deposition Topics.........................................................................2

        1.    Topics 1, 3, and 6..........................................................2

        2.    Topics 2, 8 and 9.............................................................4

        3.    Topics 4 and 5................................................................6

        4.    Topics 7 and 22..............................................................8

        5.    Topics 10, 12, 13, 28 and 29.........................................9

        6.    Topics 11, 24, 25 and 31..............................................11

        7.    Topic 14........................................................................12

        8.    Topics 15, 18 and 30.....................................................13

        9.    Topics 17 and 32...........................................................14

        10.    Topic 20........................................................................16

        11.    Topic 21........................................................................17

        12.    Topic 23........................................................................18

        13.    Topic 26........................................................................18

        14.    Topic 27........................................................................19

    B.    The Notice's Definition Nos. 1 and 3 ................................................20

CONCLUSION...........................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646 (C.D. Cal. 1997) ................................................................. 5

*Central Valley Chrysler Valley Jeep, Inc. v. Witherspoon*, No. CV-F-04-6663, 2006 WL 1883363 (E.D. Cal. July 7, 2006) ............................ 16

*DirecTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002) ............................ 14

*EEOC v. Nebco Evans Distributing*, No. 8:CV96-00644, 1997 WL 416423 (D. Neb. June 9, 1997) ................................................. 10

*Green v. Baca*, 225 F.R.D. 612 (C.D. Cal. 2005) ........................................ 21

*In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria, No. MDL 1428*, 2006 WL 1328259 (S.D.N.Y. May 16, 2006) ......................................... 20

*Linder v. National Security Agency*, 94 F.3d 693 (D.C. Cir. 1996) ............... 3

*McCormick-Morgan, Inc. v. Teledyne Industrial, Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) .................................................................................. 5

*U.S. v. District Council of New York City & Vicinity of United Broth. of Carpenters & Joiners of America*, No. 90-Civ.-5722, 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992) ............................................. 5

*Wechsler v. Hunt Health System, Ltd.*, No. 94-Civ.-8294, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) ............................................. 6

# FEDERAL STATUTES

17 U.S.C. § 512(d)...........................................................................................15

Fed. R. Civ. P. 26(c), 37(a)(4)........................................................................21

Fed. R. Evid. 401 .............................................................................................3

## NOTICE OF APPLICATION

**PLEASE TAKE NOTICE** that the above-named plaintiffs and third-party the Motion Picture Association of America ("MPAA") hereby move *ex parte* for an order (i) limiting defendants' Rule 30(b)(6) deposition topics as set forth in the proposed order, and (ii) awarding plaintiffs and the MPAA their reasonable costs and attorneys' fees for the filing of this application.  Defendants have served Rule 30(b)(6) notices on the plaintiffs and on the MPAA, plaintiffs' counsel of record in this action, that vastly exceed the scope of a permissible deposition in this case. This Court has previously ruled on identical issues – multiple times – in the parallel case of *Columbia Pictures Industries, Inc. v. Bunnell*, No. 06-1093 FMC(JCx), involving the same counsel, but counsel for defendants here has refused to consider or be guided by the Court's express rulings on those issues – or to any basic concept of what is at issue in this case.  Accordingly, with the MPAA's noticed deposition scheduled for early next week, August 7, 2007, plaintiffs and the MPAA are forced to file this *ex parte* application seeking relief from the Court.

This Ex Parte Application is based on this Notice, the accompanying Application; the accompanying Declaration of Steven B. Fabrizio and exhibits; all pleadings on file with the Court; all matters of which the Court may take judicial notice; and all such additional evidence and argument as may be presented to the Court during any hearing on this Application, if a hearing is required.

Plaintiffs and the MPAA have diligently sought the relief requested here through discussions with defendants, including a formal meet-and-confer with defendants' counsel on July 31, 2007.  Defendants' counsel has stated that because defendants disagree with the Court's previous rulings and because defendants' goal is to "create a legally recognizable record for an appellate court to review," the filing of this *ex parte* application, and the issuance of an order limiting the scope of the deposition, is necessary.

**PTFS' & MPAA'S EX PARTE RE RULE 30(B)(6) DEPOSITIONS**

1    Despite the fact that plaintiffs produced substantially all of their documents
2  many months ago, and defendants' stated intention to take these Rule 30(b)(6)
3  depositions from the very outset, defendants waited until just a few days ago
4  (Saturday, July 28th) to serve their deposition notices.  Because summary judgment
5  briefs must be filed no later than August 20, 2007, and the MPAA and plaintiff
6  studio depositions are noticed for next week, beginning on August 7th, relief must
7  be had forthwith, and there is not time for this request to be heard on the normal
8  calendar.  Counsel for the defendants has received notice of this Ex Parte
9  Application pursuant to Local Rule 7-19.1 and met and conferred with plaintiffs'
10  counsel on July 31, 2007.  Defendants have indicated their intention to oppose this
11  Application.

12  Dated:  August 1, 2007                         Respectfully submitted,

13                                                 JENNER & BLOCK LLP

14                                                 By:

15                                                    Steven B. Fabrizio

16                                                 STEVEN B. FABRIZIO
17                                                 GIANNI P. SERVODIDIO
18                                                 SAMI J. VALKONEN
                                                       JENNER & BLOCK LLP
19

20                                                 KAREN R. THORLAND
21                                                 W. ALLAN EDMISTON
                                                   LOEB & LOEB LLP
22

23                                                 GREGORY P. GOECKNER
24                                                 LAUREN T. NGUYEN
                                                      15503 Ventura Boulevard
25                                                    Encino, CA 91436

26
                                                   *Attorneys for Plaintiffs*
27

28

**EX PARTE APPLICATION**

The Court has gone through these issues very recently (multiple times), and the plaintiffs genuinely tried to avoid having to bring them before the Court yet again.  The issues presented here, regarding defendants' Rule 30(b)(6) notices to the plaintiff studios and the MPAA, Fabrizio Decl., Exs. 1 (notice to plaintiffs) & 2 (notice to MPAA), are substantively identical to those raised by notices sent by the same defendants' counsel to the same plaintiff studios and MPAA in *Columbia Pictures Industries, Inc. v. Bunnell*, No. 06-1093 FMC(JCx) (the "*Bunnell* Litigation").  While the categories in the new notices are fewer in number than the categories in the *Bunnell* Litigation notices, that is merely a matter of form: the notices here are more broadly crafted include *all* of the offending categories, including for instance multiple categories devoted to topics the Court repeatedly has ruled to be irrelevant (*e.g.*, Google, BitTorrent technology generally, every online license ever granted by any plaintiff, and so-called "spoof" files), and to topics that Judge Wilson has directed are outside the scope of the upcoming summary judgment motions (*e.g.*, damages and direct infringement of works other than the illustrative works identified in Exhibit A to the Complaint).  Indeed, the current notices are even broader and more irrelevant to any legitimate issues in this case.  To be sure, the Court's relevance rulings were made in context of the *Bunnell* Litigation; however, although this action and the *Bunnell* Litigation are not formally related, the two litigations are indistinguishable on the issue of the appropriate scope of Rule 30(b)(6) depositions, and the two cases have proceeded in parallel on discovery matters.  In any event, at a minimum, the parties and counsel are obligated to consider those precedents in arriving at discovery positions that are substantially justified.

In light of the explicit precedents and guidance from the Court on the identical issues, Fabrizio Decl., Exs. 3 (7/19/07 Order re MPAA) & 4 (7/27/07

Order re plaintiff studios), plaintiffs and the MPAA sought to resolve the issues presented here without further imposition on the Court's resources.  However, defendants' counsel advised plaintiffs and the MPAA that defendants affirmatively would *not* take action in this case in light of those *Bunnell* Litigation orders, because defendants disagree with them and want "to create a legally recognizable record for an appellate court to review."  Fabrizio Decl., Ex. 5 (7/30/07 12:18 p.m. Rothken to Fabrizio e-mail).  In an effort to accommodate defendants, plaintiffs and the MPAA proposed "to enter into a stipulation (to be so ordered by the Court) such that we deem the Court's orders applicable – to fully preserve your appeal issues, such as they are."  Fabrizio Decl., Ex. 5 (7/30/07 12:45 p.m. Fabrizio to Rothken e-mail).  Defendants refused, insisting that the issue be re-litigated in this case.

Accordingly, this application identifies those categories from the Rule 30(b)(6) notices to plaintiffs and the MPAA that are objectionable.  Because the categories in the notices to plaintiffs and the MPAA are word-for-word identical, for the convenience of the Court, plaintiffs and MPAA address both notices at the same time, collectively.  To the extent not addressed below, plaintiffs and the MPAA do not object to categories in the notices.  Further, because several of the categories are overlapping and duplicative of other categories, where doing so might assist the Court's analysis, categories raising the same issues are discussed together.

### A.   Noticed Deposition Topics

#### 1.   Topics 1, 3, and 6

**Topic No. 1:**  Any and all information related to efforts by MPAA and/or Plaintiffs [t]o investigate, assess, learn about and/or evaluate copyright piracy concerning torrent files in general, and all efforts by MPAA and/or Plaintiff specifically to detect, assess, monitor or prevent copyright piracy by users of the Defendants' Websites.

**Topic No. 3:**  Any and all information related to efforts by MPAA and/or Plaintiffs to investigate, assess, learn about

and/or evaluate whether or not Torrentspy is aware of the illegal nature of its website or can supervise or control infringers or infringement, profits from it, or materially contributes to infringement.

**Topic No. 6:** Any and all information related to MPAA and/or Plaintiffs' Investigation of Defendants' Websites and defendants.

These proposed topics, which facially relate entirely to the plaintiffs' and MPAA's *investigation* of the defendants, are not remotely relevant to the allegations of copyright infringement or affirmative defenses at issue here. Information about what the plaintiffs or MPAA did to ***investigate*** wrongdoing has no bearing on whether the defendants ***committed*** wrongdoing – especially here, where defendants have no affirmative defense even alleging investigative malfeasance. How plaintiffs and the MPAA went about uncovering defendants' copyright infringement simply is not reasonably calculated to uncover evidence that would "make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401.

Plaintiffs recognize the Court's ruling in the *Bunnell* Litigation that work-product issues should be dealt with on a question-by-question basis, Fabrizio Decl., Ex. 4 (7/27/07 Order ¶ 2); *but see Linder v. Nat'l Security Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) (quashing subpoena given "likelihood that virtually all of [the requested documents] were privileged"). However, the objection to these topics is not only that they would exclusively call for information protected by the attorney work product doctrine or attorney-client privilege. More fundamentally, there is ***absolutely no relevance*** to plaintiffs' or the MPAA's investigative process. This case is about defendants' conduct, not plaintiffs'. That is especially so in this action: unlike in the *Bunnell* Litigation, where defendants asserted various unclean hands, copyright misuse, and equitable affirmative defenses, defendants in this case

have affirmatively and expressly *withdrawn* all such defenses by stipulation after having been served with a Rule 11 motion related to them.  Fabrizio Decl., Ex. 7 (stipulation withdrawing affirmative defense nos. 17 (equitable bar), 26 (unclean hands), and 38 (copyright misuse)) & Ex. 8 (defendants' Answer).  Thus, whatever minimal relevance the investigative process may have had in the *Bunnell* Litigation, it has none in this case.  A protective order should be issued as to Topics 1, 3 and 6 on the basis that they are irrelevant to any claim or defense at issue.

### 2.    Topics 2, 8 and 9

> **Topic No. 2:**  Any and all information which will support or relate to Plaintiffs' claim of contributory or vicarious or "inducement" copyright infringement against defendants or the Defendants' Websites.

> **Topic No. 8:**  Any and all information related to Secondary copyright infringement caused or contributed to by defendants and Defendants' Websites and related facts, analysis, and basis.

> **Topic No. 9:**  Any and all information related to any act, statement, process, writing, or conduct, involving alleged inducement by any defendant of any copyright infringement of any copyrighted work, including but not limited to, the analysis of the availability of defendants' intent and the number or statistical analysis of the number of allegedly infringing works obtainable via the Defendants' Websites.

With these topics, defendants purport to seek to examine corporate witnesses, many of whom are not lawyers, as to the basis for every single claim and contention plaintiffs make in this case, and on every single fact or analysis that supports such claims or contentions.  That would be a physical impossibility for any individual at a deposition, even lead litigation counsel.  These requests amount to wildly overbroad and unduly burdensome ***contention interrogatories*** – demanded in the context of a deposition.  Moreover, in asking for all information supporting the plaintiffs'

infringement claims, defendants seek not mere facts possessed in the organization's knowledge, but entire theories of the case, encompassing expert testimony and attorney work product.  Indeed, most of the facts are not in possession of any of the noticed entities, but rather are known by their outside litigation counsel, for the very reason that the facts and evidence supporting plaintiffs' claims have been developed through discovery of defendants and independent investigation of outside counsel during the course of litigation.  It is wholly improper to attempt to use ***depositions*** of corporate representatives to propound contention interrogatories.  *E.g., U.S. v. Dist. Council of New York City & Vicinity of United Broth. of Carpenters & Joiners of America*, No. 90-Civ.-5722, 1992 WL 208284, at *15-*16 (S.D.N.Y. Aug. 18, 1992) (requiring party "to marshal all of its factual proof and then provide it to [the deponent] so that she could respond to what are essentially a form of contention interrogatories … would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information"); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286-87 (N.D. Cal. 1991) (ruling that contention interrogatory, not party deposition, is appropriate means of determining bases for claims, especially when subject matter is complicated), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991); *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997).

Furthermore, there is absolutely no point in subjecting corporate witnesses to this level of harassing examination in this case.  Plaintiffs' claims and contentions in this case have been clear all along, and plaintiffs have produced all non-privileged documents related to those claims.  The overwhelming part of the evidence supporting plaintiffs' claims and plaintiffs' ongoing expert analyses comes from the documents and other discovery produced by defendants – documents and discovery that neither the plaintiffs nor MPAA will have seen at any level of detail.  Those materials have been (and continue to be) analyzed by outside litigation counsel and

retained consulting and testifying expert witnesses.  Moreover, the purpose of contention interrogatories is to avoid unfair surprise *at trial*.  *E.g., Wechsler v. Hunt Health Sys.*, Ltd., No. 94-Civ.-8294, 1999 WL 672902, at *1 (S.D.N.Y. Aug. 27, 1999) (contention interrogatories are designed to "narrow[] and clarify[] the disputed issues and reduce[] the possibility of surprise at trial").  There is no risk of that here, given the case management plan ordered by Judge Wilson.  Both sides will be filing summary judgment motions in a matter of three weeks.  Defendants will have a full explication of the entirety of plaintiffs' case and all of their evidence supporting it – including expert evidence – long before any trial in this matter, if there is one.[1]

A protective order should issue as to Topics 2, 8 and 9 on the basis that they are overbroad and unduly burdensome, and because they seek to propound exhaustive contention interrogatories through the impermissible means of depositions.

### 3.    Topics 4 and 5

**Topic 4:**  Any and all information related to relations, agreements, and communications with BitTorrent Incorporated or BitTorrent.com or the use of BitTorrent technology by plaintiffs and others.

**Topic 5:**  Any and all information related to any plan of MPAA and/or Plaintiffs to take advantage of any opportunity afforded by using BitTorrent technology.

These two topics mingle issues that this Court has considered at least four times in the *Bunnell* Litigation – each time ruling that discovery as to BitTorrent

---

[1] In Topic 9, defendants also include specific reference to analysis of "the number or statistical analysis of the number of allegedly infringing works obtainable via the Defendants' Websites."  That issue is addressed below in connection with Topics 7 and 22.

technology generally is completely irrelevant to the claims and defenses in this case. Plaintiffs have never asserted (and in fact have specifically disavowed any suggestion) that BitTorrent technology itself is somehow unlawful.  This case is about conduct, *defendants' conduct*; not technology.  Both this Court and the District Court (Judge Cooper) have specifically ruled that information about the technology *generally* does *not* have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and is not "reasonably calculated to lead to the discovery of admissible evidence."  Fabrizio Decl., Exs. 9 (2/13/07 Order at 4), 10 (4/16/07 Den. of Review at 4), 11 (5/15/07 Order at 6), 12 (6/21/07 Den. of Review at 5 & n.3).  On that issue of relevance, this case and the *Bunnell* Litigation are indistinguishable, and the reasoning and force of those rulings applies equally here.

The Court also has considered (multiple times) the issue of the relevance of plaintiffs' dealings, if any, with the company BitTorrent, Inc.  In granting a protective order in the *Bunnell* Litigation, the Court identified one category of information that would be potentially relevant: namely, "whether plaintiffs have authorized BitTorrent, Inc. to distribute or to make available on a general and unrestricted basis, all or part of plaintiffs' copyrighted works alleged in the Complaint or listed in the attachment to the Complaint (and any others for which plaintiffs are claiming defendants infringed" through the commencement of the litigation.  Fabrizio Decl., Ex. 9 (2/13/07 Order at 4); Ex. 11 (5/15/07 Order at 6).

Plaintiffs have agreed that the Court's defined topic is appropriate and have offered to proceed on that basis.  Indeed, plaintiffs have offered to remove the date limitation of the commencement of the litigation such that defendants could inquire, without outer date restriction, as to the category defined by the Court.  Beyond that,

**PTFS' & MPAA'S EX PARTE RE RULE 30(B)(6) DEPOSITIONS**

as this Court has recognized, the general issue of dealings with any company, including BitTorrent, Inc., is simply not related to any claim or defense in this case.

Accordingly, a protective order should issue as to Topics 4 and 5 on the basis that they are irrelevant except insofar as defendants may inquire "whether plaintiffs have authorized BitTorrent, Inc. to distribute or to make available on a general and unrestricted basis, all or part of plaintiffs' copyrighted works alleged in the Complaint or listed in the attachment to the Complaint (and any others for which plaintiffs are claiming defendants infringed)."

### 4.    Topics 7 and 22

> **Topic 7:**  Any and all information related to Non-copyright infringing uses of torrent files or the bit-torrent network or bit-torrent technology or the Defendants' Websites.

> **Topic No. 22:**  Any and all information related to analysis of the number of allegedly infringing works and non-infringing works arising out of torrent files available or downloaded using Defendants' Websites or available on the BitTorrent Network.

Plaintiffs and MPAA have no objection to defendants inquiring about non-infringing uses of the *defendants' websites*.  However, again, as the Court already has ruled, information relating to the BitTorrent network or technology generally is simply not relevant to whether the defendants are liable for secondary copyright infringement, and poses an undue burden in preparing witnesses to testify.  Fabrizio Decl., Exs. 9 (2/13/07 Order at 4), 10 (4/16/07 Den. of Review at 4), 11 (5/15/07 Order at 6), 12 (6/21/07 Den. of Review at 5 & n.3).  Plaintiffs, accordingly, ask that these topics be narrowed to "non-infringing uses of the defendants' websites."

Plaintiffs also must emphasize that the information defendants seek is primarily the subject of expert analyses and testimony.  Plaintiffs are in the process of finalizing expert statistical analyses of the proportion of infringing works

available on defendants' sites and actually downloaded from defendants' sites by defendants' users.  Defendants will soon get discovery of all of plaintiffs' statistical analyses – but through plaintiffs' expert statisticians, not lay corporate witnesses who have no knowledge of statistics or the ongoing statistical analyses.  Plaintiffs intend to produce expert statistical analyses as soon as they are completed, and expect to do so next week or early the following week – a timeline defendants can hardly complain about, given that it was defendants' belated production of data that has delayed completion of plaintiffs' analyses.  Plaintiffs will make their experts available for deposition regarding those analyses prior to the August 20th summary judgment deadline, as directed by Judge Wilson.  Defendants should not be permitted to depose lay corporate representatives about ongoing statistical analyses (which are, in their incomplete state, attorney work product), particularly when those corporate representatives have no expertise or basis to provide such testimony and given that plaintiffs have represented that the appropriate expert witnesses will be made available to defendants when those analyses are completed.

According, a protective order should issue as to Topics 7 and 22, with the exception that defendants are permitted to ask the corporate representative about non-infringing uses of defendants' sites, if any, excluding plaintiffs' ongoing expert statistical analyses.

### 5.     Topics 10, 12, 13, 28 and 29

**Topic 10:**  Any and all information related to primary infringement that occurred in relation to use of or arising out of Defendants' Websites.

**Topic 12:**  Any and all information related to copyrighted works that were downloaded in an unauthorized manner using any torrent file found via Defendants' Websites.

**Topic 13:**  Any and all information related to Internet Files referenced by torrent files obtained using the

Defendants' Websites that MPAA and/or Plaintiffs or their representatives actually listened to or viewed or analyzed.

**Topic 28:**  Any and all information related to communications, documents, information, and data related to the number of downloads of plaintiffs' copyrighted works arising out of torrent files downloaded using Defendants' Websites.

**Topic 29:**  Any and all information related to plaintiffs['] copyright registrations for the copyrights mentioned in the complaint or at issue in this case.

These five topics all get at one thing:  plaintiffs' knowledge and evidence of direct infringement of their copyrighted works through defendants' sites.  That issue has obvious relevance to the case as a whole.  And, plaintiffs do not dispute that, at the appropriate time, defendants will have the opportunity to take appropriate discovery as to all works directly infringed by defendants' users for which plaintiffs are seeking to hold defendants liable as secondary copyright infringers.  However, as was the case in the *Bunnell* Litigation, Judge Wilson has expressly phased the management of this case, such that summary judgment motions will be heard on the core liability issues, and based on the illustrative works identified in Exhibit A to the Complaint.  Judge Wilson directed this during the initial case management conference in Chambers.  While there is no transcript of those proceedings, this should not be a matter of dispute.  It also is exactly how Judge Wilson organized the *Grokster* litigation currently pending before him – during this first phase of proceedings, plaintiffs were to establish the defendants' core liability by looking *only* at those files listed as representative in Exhibit A.  If the plaintiffs establish liability based on Exhibit A, a subsequent phase would open up questions of the multiplicity of other acts of direct infringement of plaintiffs' works and extent of the damages at issue.  *See, e.g.*, *EEOC v. Nebco Evans Distrib.*, No. 8:CV96-00644,

1997 WL 416423, at *2 (D. Neb. June 9, 1997) (deferring remedial discovery until liability was determined).

The very point of organizing the case in this manner is to avoid early discovery as to thousands of individual copyrighted works that undoubtedly have been directly infringed at the hand of defendants.  Thus, discovery into the particulars of copyrighted works beyond those identified in Exhibit A to the Complaint has always been outside the scope of discovery in the initial phase of litigation directed by Judge Wilson.  Document and written discovery to date in this case has respected that direction and abided by it.  Inexplicably, defendants now seek unfettered deposition discovery into all works, thousands or even tens of thousands of them, owned by plaintiffs.

For purposes of the upcoming summary judgment motions, plaintiffs do not intend to establish defendants' secondary copyright liability for direct infringement of works other than those identified in Exhibit A to the Complaint.  Accordingly, consistent with the Court's ruling in the *Bunnell* Litigation, at this time, defendants should be permitted to inquire about the specific copyrighted works identified in Exhibit A to the Complaint, and no other works.  Fabrizio Decl., Ex. 4 (7/27/07 Order at 2).

### 6.    Topics 11, 24, 25 and 31

**Topic 11:**  Any and all information related to research done regarding the impact of any and all "unauthorized" torrent files on Plaintiffs' commercial sales of copyrighted works.

**Topic 24:**  Any and all information related to research done regarding the impact of any and all "unauthorized" torrent files located on Defendants' Websites and other sites that point to infringing works on Plaintiffs' commercial sales of copyrighted works including the copyrighted works alleged in the complaint or at issue in this case.

**Topic 25:**  Any and all information regarding the impact of the Defendants' Websites or dissemination of torrent files and related files on the Internet on Plaintiffs' profitability.

**Topic 31:**  Any and all information related to quantification of monetary damages or related to plaintiffs' requests in the complaint for injunctive relief.

As with the previous set of topics, these topics all relate to an issue that Judge Wilson expressly put off limits during this first phase of the case.  Once plaintiffs have established core liability, the parties will *then* move to damages and, as the Court deems appropriate, the scope of and a schedule for damages discovery will be ordered.  But until they do, these topics – which deal with the "impact" or "monetary damages or … injunctive relief" based on defendants' actions – are premature.  In fact, it was precisely *because* such discovery would distract from, and delay adjudication of, the core liability issues that Judge Wilson directed the parties to defer it for a second phase.  Thus, as the Court recognized in ruling on this same issue in the *Bunnell* Litigation, "inquiring about damages/injunctive relief … at this stage of the proceedings" is inappropriate.  Ex. 4 (7/27/07 Order at 3).

### 7.    Topic 14

**Topic 14:**  Any and all information related to agreements, facts, and practices involving the distribution of copyrighted works of any plaintiff through any peer to peer technology over the Internet including but not limited to BitTorrent technology.

This topic is similar to Topics 4 and 5, except generalized beyond BitTorrent, Inc. to any potential online licensee of any plaintiff.  The Court has addressed this very topic (multiple times) in the *Bunnell* Litigation, ruling that plaintiffs' licenses to others are wholly irrelevant to any claim or defense in this case, except insofar as "plaintiffs have authorized general or unrestricted distribution or availability over

**PTFS' & MPAA'S EX PARTE
RE RULE 30(B)(6) DEPOSITIONS**

the internet of all or part of plaintiffs' copyrighted works alleged in the Complaint or listed in the attachment to the Complaint (and any others for which plaintiffs are claiming defendants infringed)."   Fabrizio Decl., Exs. 9 (2/13/07 Order at 3) & 11 (5/15/07 Order at 6).  Defendants already know that they do not have licenses to distribute plaintiffs' copyrighted works.  Unless plaintiffs have granted authorizations for "general or unrestricted" distribution of their works such that, arguably, the rampant re-distribution of those works by defendants' users could be deemed authorized, plaintiffs' licensing arrangements with others – *e.g.*, whether or not a plaintiff has licensed Apple's iTunes or other legitimate distributors – have no relation to any claim or defense in this action.

Accordingly, Topic 14 should be narrowed to only permit inquiry as to whether "plaintiffs have authorized general or unrestricted distribution or availability over the internet of all or part of plaintiffs' copyrighted works alleged in the Complaint or listed in the attachment to the Complaint (and any others for which plaintiffs are claiming defendants infringed)."

### 8.    Topics 15, 18 and 30

> **Topic 15:**  Any and all information related to Torrent files made available or distributed via the internet by any of the Plaintiffs or the MPAA or those acting on their behalf.

> **Topic 18:**  Any and all information related to Web sites or servers or services that are run or controlled by any of the plaintiffs or the MPAA or those acting on their behalf that in any manner host, store, link to, track, seed, download, upload, analyze, or make available torrent files or files pointed to by torrent files including but not limited to all or part of plaintiffs' copyrighted works.

> **Topic 30:**  Any and all information related to torrent files uploaded or downloaded by the MPAA or plaintiffs or those working on their behalf to the Defendants' Websites.

These topics seek to discover information about "spoof" files that defendants believe plaintiffs and/or the MPAA distribute as part of their antipiracy efforts. To be clear, plaintiffs are **not** claiming that defendants or their users have infringed so-called "spoof" files. Spoof files, by their very definition, do not contain the content that users expect the files to have. They are files that give the appearance of being infringing copies of the most popular copyrighted motion pictures and television shows – but they are not. They often contain nothing (white noise) or antipiracy messages, and often are designed so that they will never complete their download. The antipiracy value of these fake files is to disappoint and deter would-be infringing users: *i.e.*, those who explicitly are trying to download infringing copies of plaintiffs' copyrighted works. As this Court and Judge Cooper have already ruled, they have nothing to do with whether the defendants' are liable for secondary infringement. Fabrizio Decl., Exs. 10 (4/16/07 Den. of Review at 4-5) ("Defendants have failed to demonstrate that Judge Chooljian erred in her decision to exclude 'spoof' files from discovery") & 12 (6/21/07 Den. of Review at 6). There is absolutely no distinction between the relevance issue in this case and the *Bunnell* Litigation.

Indeed, defendants most likely want these materials because they reveal highly sensitive information about antipiracy strategies – which defendants could use to undermine those strategies. *See DirecTV, Inc. v. Trone*, 209 F.R.D. 455, 458-59 (C.D. Cal. 2002) (denying discovery of antipiracy efforts).

Accordingly, a protective order should issue as to Topics 15, 18 and 30 on the basis that they are irrelevant to any claim or defense at issue.

### 9.    Topics 17 and 32

**Topic 17:**  Any and all information regarding the reasons the MPAA or the Plaintiffs have avoided using the Defendants' Websites' DMCA procedure to remove

torrent files that MPAA and/or Plaintiffs believe were/are infringing or leading to infringing files.

**Topic 32:**  Any and all information related to the Defendants' Websites and DMCA mechanisms as it exists in its current state that the MPAA or plaintiffs find objectionable or that would in any way relate to plaintiffs' liability claims and allegations in the complaint that would not render such plaintiffs' liability claims and allegations moot or no longer existing.

As an initial matter, Topic 32 is so ambiguous as to be largely unintelligible. But to the extent that it and Topic 17 seek information about the reasons why some plaintiffs may *not* have used defendants' DMCA procedures, the topics are wholly irrelevant to the plaintiffs' Complaint *and* to the defendants' DMCA defense. Defendants know the relevant facts: whether a plaintiff has sent defendants DMCA notices and how defendants have responded to the notices.  The question of "why" any plaintiff may have sent a DMCA notice or may have decided not to send a notice has no bearing on any issue.  Defendants' DMCA procedures and practices become relevant only to the extent a copyright holder uses them; at that point defendants' response, or lack or response, may be relevant.  But the DMCA does ***not*** require any copyright holder to send notices.  The DMCA provides for at least four independent requirements that a qualifying service provider must satisfy in order to potentially be eligible for "safe harbor" under the DMCA.  17 U.S.C. § 512(d).  One of them is responding in a statutorily compliant manner with takedown notices when a copyright owner chooses to send them.  However, it does not require a copyright holder to send a notice, and even a defendant who fully complies with a notice would not be eligible for "safe harbor" if that defendant did not fully satisfy all of the other statutory prerequisites.  "Why" a plaintiff may or may not have sent defendants a DMCA notice is both irrelevant and, in almost all

cases, would be privileged from disclosure based on the attorney-client privilege or attorney work product doctrine.

Accordingly, a protective order should issue as to Topics 17 and 32 on the basis that they are irrelevant.

### 10.    Topic 20

> **Topic 20:** Any and all information related to analysis of third party search engines and sites that make available Dot-torrent files and the existence, contribution, and cause of copyright infringement.

Topic 20, without naming names, seeks information about Google (and, as drafted, any other search engine on the Internet).  It is entirely irrelevant to the issues in this case, which concerns defendants' conduct, not the conduct of any third-party search engine.  This Court has ruled, and been affirmed, multiple times that evidence relating to the search engine Google.com has no relevance in this litigation.  As Judge Cooper put it in affirming this Court's decision the first time, "whether the online services Defendants provide are similar to other Internet entities, such as Google, is not relevant to whether Defendants are liable for copyright infringement as Plaintiffs allege in this case."  Fabrizio Decl., Ex. 10 (4/16/07 Den. of Review at 5-6); *see also* Exs. 9 (2/13/07 Order at 4-5), 4 (7/27/07 Order at 3) (denying Req. No. 61), 6 (*Bunnell* Plaintiffs Notice Req. No. 61) (search engines).  Plaintiffs here do not have to prove whether Google violates their copyrights; they need only prove that defendants do.  *See, e.g.*, *Central Valley Chrysler Valley Jeep, Inc. v. Witherspoon*, No. CV-F-04-6663, 2006 WL 1883363, at *3, *8 (E.D. Cal. July 7, 2006).  There is no conceivable basis for defendants to argue that there are distinctions between this case and the *Bunnell* Litigation that somehow make the conduct of Google, and every other search engine, remotely relevant to *defendants' conduct*, or the claims or defenses at issue in this case.

Accordingly, a protective order should issue as to Topic 20 on the basis that it is irrelevant.

**11.    Topic 21**

> **Topic 21:**  Any and all information related to relations, agreements, interviews, and communications with any witnesses who have used the Defendants' Websites or have in any manner interacted with it or had any relations involving it business or otherwise.

This topic is both overbroad and irrelevant, and vague and ambiguous to the point of impossibility.  Defendants seek to depose the plaintiffs about any communications that the company has ever had with anyone who has ever "used … [or] in any manner interacted with" defendants' websites, or has "had any relations involving" their websites – and, indeed, whether or not the communication even related to the websites.  Most basically, plaintiffs have no way of knowing who, of the thousands of people who interact with their companies, has ever "interacted with" the defendants' websites.

Moreover, there is no possible relevance to such a topic.  Were defendants interested in simply identifying any undisclosed witnesses for the plaintiffs, they could ask such information through other means.  But they do not even have to do that.  Judge Wilson has instructed the parties that they should make their summary judgment declarants available to the other side for deposition.  There is no suggestion that plaintiffs have been other than open on these issues.  The plaintiffs' Rule 30(b)(6) witnesses are very likely their only fact witnesses, and expert witnesses are being disclosed, and will be made available for deposition.  Whether the plaintiffs or their counsel, the MPAA, have communicated with *others* who have "interacted" with the defendants' websites is both impossible to know and, to the extent it is known, is irrelevant and almost wholly work product.

### 12.    Topic 23

**Topic 23:**  Any and all information related to efforts by MPAA and/or Plaintiffs to investigate, assess, learn about and/or evaluate that the Internet and bit-torrent technology provide budding artists without recording company contracts with an inexpensive vehicle for communicating their work to the public.

If there were any doubt about whether the defendants are wasting the Court's and plaintiffs' resources by forcing the present application, this topic should remove it.  Plainly, defendants have simply "cut and paste" from prior lists of Rule 30(b)(6) topics, without giving the care or thought that is required.  Had defendants even *read* this Topic 23 before serving it, even they would have to admit that the issue of "budding artists without recording company contracts" has no relevance here:  The plaintiffs and MPAA do not deal with "budding artists without recording company contracts."  This action concerns defendants' infringement of the motion picture studio plaintiffs' copyrighted motion pictures and television shows – not music or sound recordings.  Furthermore, the topic, again, impermissibly seeks information about all of BitTorrent technology in general (*see, e.g., supra* Topics 4 and 5).

Accordingly, a protective order should issue as to Topic 23 on the basis that it is irrelevant.

### 13.    Topic 26

**Topic 26:**  Any and all information related to correspondence or other communication between Plaintiffs and others, including but not limited to MPAA, concerning Defendants or Defendants' Websites.

This request is objectionable as being vague and overbroad.  It requires each plaintiff to designate a single individual to become educated about all correspondence, anywhere, regardless of whether defendants asked that the correspondence be produced, if it "concern[s]" defendants or their website.

Plaintiffs have already produced all non-privileged documents and correspondence responsive to any of defendants' document requests.  Plaintiffs have no objection to their corporate representatives being examined on any of the documents produced.  But, to the extent the topic seeks to go beyond that, it would be physically impossible to have any individual prepared to speak to every document in some corporate file.  Indeed, as framed, the topic seems to be an effort to propound a de facto document request for all correspondence that "concerns" defendants or their website, under the guise of a Rule 30(b)(6) notice.

Accordingly, a protective order should issue as to Topic 26 limiting it to documents produced by the plaintiff in response to one of defendants' document demands.

### 14.   Topic 27

> **Topic 27:**  Any and all information related to efforts made by MPAA and/or Plaintiffs to remove or take off the Internet or BitTorrent Network actual files allegedly referenced in torrent files available via the Defendants' Websites.

Topic 27 is irrelevant.  Like so many others, this topic is based on the simple (but repeated) fallacy that plaintiffs' or MPAA's actions regarding *other* infringing parties has relevance to whether *defendants* are liable for copyright infringement.  Whether or not the plaintiffs or MPAA have taken any such actions does not tend to make any fact in this action more or less likely.  Here, defendants seem to be seeking information as to whether plaintiffs or the MPAA have taken steps to remove the actual infringing content pointed to by defendants' dot-torrent files.  Since, as defendants know, that infringing content typically resides on the personal computers of defendants' (and other BitTorrent) users, the topic in fact seeks to inquire as to whether plaintiffs have taken action against those users.  That is irrelevant.  The secondary copyright liability issues in this case require plaintiffs to

prove that direct infringement occurred, not that plaintiffs have exhausted their efforts to enforce against each of the millions of direct infringers.  Whether plaintiffs have or have not taken any such actions is not probative of any claim or defense.  Defendants cannot even make the far-fetched claim that this information might relate to an equity-based affirmative defense, because (facing a Rule 11 motion) defendants withdrew all such affirmative defenses.  (*see supra* Topics 1, 3 and 6).

## B.   The Notice's Definition Nos. 1 and 3

**Definition No. 1:**  The term "Plaintiff" refers to the respective plaintiff responding to these requests and where applicable in this context, plaintiffs collectively, and plaintiff's corporate affiliates, predecessors, predecessors of corporate affiliates, representatives, agents, servants, counsel, employees, consultants, and person authorized to act, acting, or purporting to act on its behalf.

**Definition No. 3:**  The term "MPAA" refers to the Motion Picture Association of America and where applicable in this context, its corporate affiliates, predecessors, predecessors of corporate affiliates, representatives, agents, servants, counsel, employees, consultants, and person authorized to act, acting, or purporting to act on its behalf.

These definitions are overbroad and outside the scope permitted in a Rule 30(b)(6) deposition.  Rule 30(b)(6) permits deposition of "a public or private corporation," and imposes obligations only on "the organization so named" to provide a deponent to testify "as to matters known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  An organizational deponent can be asked to testify only regarding information "reasonably available" to the organization being deposed.  *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. MDL 1428, 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006).  The rule does not permit a single notice to one corporation to obligate the witness to provide testimony on behalf of "plaintiffs collectively," all affiliates (including parents and foreign

affiliates), predecessors, predecessors of affiliates, and consultants.  That is especially so here, where some plaintiffs are multinational conglomerates with unrelated affiliates all over the world.  If defendants wished to depose these entities, which are not parties here, they should have served a Rule 45 subpoena.

Accordingly, a protective order should issue limiting the definition of "Plaintiff" to the named party in suit, and limiting the definition of "MPAA" to the Motion Picture Association of America, Inc.

## CONCLUSION

Defendants have not identified any credible basis to distinguish the existing precedents on these very issues decided in the *Bunnell* Litigation.  Nonetheless, defendants required the filing of this application.  Defendants' positions on the Rule 30(b)(6) topics cannot be deemed to be "substantially justified" under any theory. Fed. R. Civ. P. 26(c), 37(a)(4) (award of fees shall be made unless the opposing party is "substantially justified"); *Green v. Baca*, 225 F.R.D. 612, 614-15 (C.D. Cal. 2005).

For the foregoing reasons, a protective order in the form of the proposed order should be granted, and plaintiffs and the MPAA should be awarded their costs and reasonable attorneys' fees incurred in making this application.

Dated: August 1, 2007                      Respectfully submitted,

                                           JENNER & BLOCK LLP

                                           By: _____
                                              Steven B. Fabrizio

                                           STEVEN B. FABRIZIO
                                           GIANNI P. SERVODIDIO
                                           SAMI J. VALKONEN
                                              JENNER & BLOCK LLP

PTFS' & MPAA'S EX PARTE
RE RULE 30(B)(6) DEPOSITIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAREN R. THORLAND
W. ALLAN EDMISTON
  LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
  15503 Ventura Boulevard
  Encino, CA 91436

*Attorneys for Plaintiffs*

22

## PROOF OF SERVICE

I, Vicki S. Henderson, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause.  My business address is 10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067-4120.

On August 1, 2007, I served a true copy of the **PLAINTIFFS' AND MPAA'S NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR PROTECTIVE ORDER RE RULE 30(B)(6) DEPOSITIONS – FEES REQUESTED** on the parties in this cause

[X]    (VIA OVERNIGHT DELIVERY) by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then causing said envelope to be deposited for collection and overnight delivery via Federal Express in accordance with Loeb & Loeb LLP's ordinary business practices.

Ira P. Rothken
Jared Smith
Robert Kovsky
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA  94949

**Email:  ira@techfirm.com; jared@techfirm.com; rlk@sonic.net**

[X]    (VIA EMAIL) I caused the transmission of the above named document to the email address set forth below.

| | |
|---|---|
| Ira P. Rothken<br>Jared Smith<br>Robert Kovsky<br>ROTHKEN LAW FIRM<br>3 Hamilton Landing, Suite 280<br>Novato, CA  94949 | Kirk J. Retz, Esq.<br>Retz & Hopkins LLP<br>21535 Hawthorne Boulevard, Suite 200<br>Torrance, CA  90503 |
| **Email:  ira@techfirm.com; jared@techfirm.com; rlk@sonic.net** | **Email:  kretz@retzhopkins.com** |

I am readily familiar with Loeb & Loeb LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and

1  Overnight Delivery Service.  That practice includes the deposit of all

2  correspondence with the United States Postal Service and/or Overnight Delivery

3  Service the same day it is collected and processed.

4       I certify that I am employed in the office of a member of the bar of this Court

5  at whose direction the service was made.

6       I declare under penalty of perjury that the foregoing is true and correct.

7       Executed on August 1, 2007, at Los Angeles, California.

Vicki S. Henderson

## PROOF OF SERVICE

I, _Gerard Gomez_ the undersigned, declare that:

I am an employee or independent contractor of Nationwide Legal, Inc., a registered California process service (Registration Number 5484 ), having its principal place of business in the County of Los Angeles, State of California, and whose telephone number is (213) 625-9100.  I am over the age of 18 and not a party to the within action; my business address is 316 West 2nd Street, Suite 705, Los Angeles, CA 90012.

On August 1, 2007, I served a true copy of **PLAINTIFFS' AND MPAA'S NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR PROTECTIVE ORDER RE RULE 30(B)(6) DEPOSITIONS – FEES REQUESTED** by delivering to the office of the addressee(s) in a sealed envelope:

Kirk J. Retz, Esq.
Retz & Hopkins LLP
21535 Hawthorne Boulevard, Suite 200
Torrance, CA  90503

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 1, 2007, at Los Angeles, California.

Signature

LA1661848.1
203351-10010