Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
Thomas Patrick Lane (admitted *pro hac vice*)
tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Telephone:  (212) 294-6700
Facsimile:   (212) 294-4700

Ira P. Rothken (SBN: 160029)
ira@techfirm.net
Jared R. Smith (SBN: 130343)
jared@techfirm.net
**ROTHKEN LAW FIRM**
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:  (415) 924-4250
Facsimile:   (415) 924-2905

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111-5802
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GARY FUNG, et al.,<br><br>Defendants. | **Case No. CV 06-5578-SVW (JCx)**<br><br>**DEFENDANTS' RESPONSE BRIEF RE CONTEMPT MOTIONS PURSUANT TO THE COURT'S AUGUST 7, 2013 ORDER (DKT. 554)**<br><br>*Hearing Date:*<br>October 7, 2013 at 1:30 p.m.<br><br>Hon. Stephen V. Wilson<br>Courtroom 6 |

# TABLE OF CONTENTS

**PAGE (S)**

I. Introduction ................................................................................................... 1

II. Factual background ....................................................................................... 4

    A. Defendants Have Taken Reasonable Steps To Comply With The Injunction, Including Filtering On The Main isoHunt Site Since 2010 ................................................................................................... 4

    B. Plaintiffs' 2010 Motion for Contempt ............................................... 6

    C. The Ninth Circuit Finds The Injunction Is Unclear And Fails To Give Defendants Notice in Multiple Respects ............................................ 7

    D. The Court Modified The Injunction August 5, 2013 ........................... 8

    E. Plaintiffs' Supporting Declaration of Horowitz Concedes That Defendants' Existing Filtering Would Be An Acceptable Alternative, and Horowitz's Arguments Are Based On Erroneous Exhibits From the Version of the isoHunt Site Only Available to Non-U.S. Users ................................................................................. 8

III. Plaintiffs' Motion for Contempt Should Be Denied ..................................... 9

    A. Defendants Are Filtering On The Main Site, Which Plaintiffs Concede Renders Plaintiffs' Request For Sanctions Moot .................. 9

    B. Defendants' Technical Ability To Limit Users From Accessing Non-isoHunt Trackers Is Neither Necessary Nor Required For Defendants to Reasonably Comply With The Injunction ................... 10

    C. The Ninth Circuit Order Renders Moot Plaintiffs' Pending Claims of Contempt ...................................................................................... 14

IV. Conclusion ................................................................................................... 15

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Davies v. Grossmont Union High Sch. Dist.*
  930 F.2d 1390 (9th Cir.1991) ................................................................................14

*Fonar Corp. v. Deccaid Services, Inc.*
  983 F2d 427 (2nd Cir. 1993) .................................................................................14

*Hook v. Arizona Department of Corrections*
  107 F.3d 1397 (9th Cir. 1997) ...............................................................................11

*Kirkland v. Legion Ins. Co.*
  343 F.3d 1135 (9th Cir.2003) ................................................................................14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
  518 F.Supp. 1197 ............................................................................................12, 13

*NLRB v. Express Pub. Co.*
  312 U.S. 426 (1941) ..............................................................................................13

*Reno Air Racing Ass'n v. McCord*
  452 F.3d 1126 (9th Cir.2006) .........................................................................14, 15

*Scott & Fetzer Co. v. Dile*
  643 F.2d 670 (9th Cir.1981) ..................................................................................14

*United States v. United Mine Workers*
  330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) .................................................14

**OTHER AUTHORITIES**

Fed.R.Civ.P. 65(d) ..................................................................................................3, 7, 8

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Pursuant to the Court's August 7, 2013 Order (Dkt. 554), Defendants hereby file their response to Plaintiffs' September 9, 2013 Brief Re Contempt (Dkt. 586).

# I. INTRODUCTION

Plaintiffs acknowledge that if Defendants were filtering Plaintiffs' works from isoHunt.com (the "Main isoHunt site"), this would be sufficient to comply with the Injunction. [Plaintiffs' Brief (*see* Dkt. 586) at 3:10-12 ("it is important to note that Defendants otherwise could have complied with the Injunction simply by applying an effective copyright filter to Main Isohunt Dot-Torrent files that correspond to Plaintiffs' copyrighted works"); *id.* at 12:5-6 ("... there is no question that Defendants could have applied the same keyword filter [as they applied to isoHunt Lite] to the Main IsoHunt site").] But as Defendants pointed out in their July 25, 2013 brief and in the Declaration of Gary Fung opposing Plaintiffs' renewed request for sanctions —*Defendants have been filtering Plaintiffs' titles from U.S. users on the Main isoHunt site to comply with the Injunction since 2010*. [7/25/13 (Dkt. 547-1) Decl. of Gary Fung, ¶¶ 2-3; Dkt. 547 at 12:16-17 ("And isoHunt filters Plaintiffs' titles from the main isoHunt site search results just as it filters on isoHunt lite."); Supplemental Declaration of Gary Fung ("Supp. Fung Decl.") ¶¶ 4-10.]

And that filtering has been very effective. As of July 25, 2013, Defendants' title filtering has successfully blocked 3,656,701 torrent files. [7/25/13 (Dkt. 547-1) Decl. of Gary Fung, ¶ 3).] In just the past few months, Defendants have filtered nearly 200,000 additional torrent files, making the total number to date more than 3,843,483. [Supp. Fung Decl. ¶ 10.] Defendants also err on the side of "over-filtering." [7/25/13 Fung Decl. (Dkt. 547-1) ¶ 3; Supp. Fung Decl. ¶ 5.] Additionally, 929,027 titles are blocked *globally* (from *both* U.S. and international users) through Defendants following their DMCA notice and takedown procedures. [*Id.* at ¶ 11.]

Even if Defendants were not filtering U.S. users from the Main isoHunt site (which they plainly are), this Court made clear in the Injunction itself and in subsequent orders that Defendants must only take "all reasonable steps" to comply

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

with the Injunction, and could only be held in contempt for "knowing" violations. [6/11/10 Order (Dkt. 445) at 4:18-5:6; (citing original Injunction ¶¶ 2, 3); 8/7/13 Order (Dkt. 554) at 6 ("…Defendants must only take 'all *reasonable* steps within [their] power to insurance compliance' with an injunction.") (quoting *Hook v. Arizona Dep't of Corr*. 107 F.3d 1397, 1403 (9th Cir. 1997).] Moreover, Paragraph 10 of the original Injunction makes clear that the Injunction "covers any acts of direct infringement, as defined in 17 U.S.C. § 106, that take place in the United States." As the Court recognized in its August 7, 2013 Order, Plaintiffs are alleging contempt based on the Main isoHunt site even though:

> the *only* way that a foreign computer that has downloaded a Dot-Torrent file from the Main Isohunt Site might participate in a swarm that included an American computer is if the Dot-Torrent file *itself* directed the foreign computer to use a tracker *not operated by Defendants*. Plaintiffs do not dispute that, any time a computer contacts one of Defendants' trackers and asks to participate in a swarm, Defendants' trackers do *not* permit the computer to download or upload content to an American computer.

[8/7/13 Order (Dkt. 554) at 5 (emphasis in original).]

The grounds upon which Plaintiffs base their request for contempt are so far attenuated they do not present a reasonable or feasible basis for finding Defendants in contempt for knowing violations of the Injunction, and bear no connection to the inducement for which Defendants were found liable and that the Injunction was designed to prevent. This conduct of parties participating in swarms controlled by *non*-isoHunt trackers is unknown to Defendants such that it cannot result in a contempt finding, and certainly not reasonably within the scope of any U.S. Injunction. It is not reasonable or feasible to expect Defendants to shoulder the burden of controlling what swarm an international user joins after leaving Defendants' system through *non*-isoHunt trackers. While technically Defendants "could" require users to only be directed towards isoHunt trackers, this is outside the scope of the

1  Injunction in light of the fact that Defendants are already complying with the U.S.
2  Injunction as to U.S. users by title filtering, and in any event, Plaintiffs' expansive
3  interpretation should be rejected as unreasonable and an overly broad interpretation of
4  Paragraph 10 of the Injunction.
5       Defendants are already taking steps that Plaintiffs themselves acknowledge
6  moot Plaintiffs' requests for sanctions regarding the Main isoHunt site. Plaintiffs'
7  arguments to the contrary appear to be based on a fundamental misapprehension of the
8  scope of Defendants' filtering. Plaintiffs' supporting Declaration of Ellis Horowitz
9  ("Horowitz Decl.") not only relies on data from the version of Defendants' site only
10  available to *non*-U.S. users, Plaintiffs' expert *also* states that Defendants could have
11  alternatively filtered the Main isoHunt site like it does the U.S. site. [Horowitz Decl.
12  (Dkt. 586) ¶ 23; Supp. Fung Decl. ¶ 12.] The Court's question regarding whether it
13  would be technically feasible to take separate steps to prevent activity that does not
14  even occur through Defendants' systems is therefore moot, as Defendants are already
15  title filtering the Main isoHunt site for users with U.S. IP addresses.
16       In its August 7, 2013 Order (Dkt. 554), this Court stated that it had not yet
17  decided the parties' dispute over "whether or not this Court can hold Defendants in
18  contempt of a motion subsequently modified by the Ninth Circuit." *Id.* at 4. Plaintiffs
19  ask this Court to hold Defendants in contempt based on a motion pending since 2010,
20  for alleged violations of an Injunction that has been found by the Ninth Circuit to be
21  defective and require modification in multiple respects, including that "several
22  provisions" of the original Injunction "fail[ed]" to meet the standard of Rule 65(d) of
23  the Federal Rules of Civil Procedure because they were "too vague," "too imprecise,"
24  "unclear" and "more burdensome than necessary." Because the modified Injunction
25  was entered by the Court *after* Plaintiffs' Motion for contempt, it would be improper
26  to hold Defendants in contempt for alleged violations under the original Injunction.
27  Plaintiffs have suggested that the Court should attempt to parse out those issues
28  presented in 2010 because the injunction was only ordered to be modified in part. But

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

given that the modifications ordered by the Ninth Circuit impact the preliminary definitions, overall clarity, and notice to Defendants, there is no reasonable way to separate the issues impacted by the Ninth Circuit Order from those left undisturbed. Indeed, the Ninth Circuit clarified that Defendants were not required to correct or ascertain alternate titles to Plaintiffs' works, an issue that was squarely at issue in Plaintiffs' Motion for contempt. The Ninth Circuit also made clear that the Injunction did not extend to acts outside of the United States, and yet Plaintiffs' contempt allegations seek to do just that.

For any or all of these reasons, the Court should deny Plaintiffs' efforts to hold Defendants in contempt of the original Injunction.

## II.     FACTUAL BACKGROUND

### A.     Defendants Have Taken Reasonable Steps To Comply With The Injunction, Including Filtering On The Main isoHunt Site Since 2010

The original Injunction provided that Defendants could *not* be found in contempt if they had taken reasonable steps to comply. [6/11/10 Order (Dkt. 445) at 4:18-5:6 (citing original injunction ¶¶ 2, 3); 8/7/13 Order (Dkt. 554) at 6.] Defendants have gone to great lengths to reasonably comply with the Injunction, including through the following steps: (1) U.S. users are blocked from all isoHunt trackers (which operate at podtropolis.com and torrentbox.com); (2) U.S. users cannot even access Defendants' websites at podtropolis.com and torrentbox.com, but instead are redirected to search pages on isohunt.com/lite; and (3) U.S. user searches—including searches on the Main isoHunt site—are filtered based on Plaintiffs' lists of titles. While *non*-U.S. users can access Defendants' websites and trackers, the actions of such non-U.S. users were never intended to be the focus of the Injunction, which only applies to acts that occur *within the United States.* [Inj. ¶ 4.]

In April, 2010, Defendants launched a new service, "isoHunt Lite." As Mr. Fung explained in his August 10, 2010 Declaration (Dkt. 455-5, ¶ 2), when isoHunt Lite was launched, isohunt.com (the "Main isoHunt site") was subject to an IP address

firewall so that visitors with United States IP addresses ("U.S. users") could not access the Main isoHunt site. Instead, U.S. users were directed to isoHunt Lite. Since about June 2010, pursuant to the Court's May 20, 2010 Injunction, isoHunt has filtered search results for U.S. users using lists of titles provided to it by Plaintiffs under the terms of the Injunction. isoHunt uses Plaintiffs' lists of titles to determine which dot-torrent files in isoHunt's index correspond to titles on Plaintiffs' lists. This is not a simple or mechanical process, but requires extensive manual review and human intervention. [Supp. Fung Decl. ¶ 5.]

For example, as this Court and the Ninth Circuit have recognized, Plaintiffs' lists often contain errors, such as misspellings or typographical errors. In addition, many of the titles on Plaintiffs' lists are common words (such as "Cars"), widely-used names (such as "Madagascar"), or are identical to works that are in the public domain (such as "Alice in Wonderland" or "The Jungle Book"). *Id.* The Ninth Circuit stated that Defendants have no obligation to correct errors in Plaintiffs' titles lists, and also found parts of the Injunction were "unduly burdensome" and "more burdensome than necessary." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d at 1049 (citing *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) ("[I]njunctive relief should be no more burdensome to the defendant than necessary . . . ."). Yet even where ambiguities in Plaintiffs' titles lists create uncertainty, Defendants' filtering strives to err on the side of over-inclusion rather than under-inclusion. [Supp. Fung Decl. ¶ 5. ] If a dot-torrent file corresponds to one of the titles on Plaintiffs' lists, isoHunt's filtering software prevents the search engine from returning that file in response to a U.S. user's search. Thus, U.S. users cannot use isoHunt's websites to locate dot-torrent files corresponding to the titles Plaintiffs have identified.

Because both the Main isoHunt site and isoHunt Lite use the same search engine back-end, search filtering works exactly the same way on each site. [Supp. Fung Decl. ¶¶ 2-10.] The isoHunt Lite site also did not offer certain other features that the Court had determined were indicia of inducement of copyright infringement,

such as lists of "top searches" or the ability to browse torrents by category. [*Id.* at ¶ 7.] Those features were not available on isoHunt Lite, and thus were unavailable to U.S. users who were redirected to isoHunt Lite beginning in April, 2010.  Defendants subsequently determined that they would comply with the Injunction by fully filtering such features on the Main isoHunt site for U.S. users, just as they did for isoHunt Lite. [*Id.* at ¶ 9.] Consequently, as Mr. Fung explained in his September 6, 2013 Declaration (Dkt. 583-3, ¶ 8) and again here (Fung Supp. Decl. ¶¶ 7-10), on or about November 1, 2010, once the redirection from the Main isoHunt site to the isoHunt Lite site became a redundant precaution in light of the filtering on the Main isoHunt site, and the disabling of certain features from the Main isoHunt site, isoHunt stopped automatically redirecting United States users of the Main isoHunt site to isoHunt Lite. [*Id.*] Since that time, isoHunt has continuously filtered on the Main isoHunt site in the same manner as it filters for isoHunt Lite. [*Id.* at ¶ 9.]

As of September 15, 2013, based upon the titles lists provided by Plaintiffs, Defendants have filtered 3,843,483 torrent files so that they are not available to U.S. users. [*Id.* at ¶ 10.] In addition, 929,027 titles are blocked globally for all users based upon our receipt of takedown notices from third party claimants and our implementation of notice and takedown procedures in line with those set forth in the Digital Millennium Copyright Act ("DMCA").  [*Id.* at ¶ 11.] Plaintiffs are simply wrong when they say Defendants are not filtering Plaintiffs' titles from the Main isoHunt site, and Plaintiffs' expert's opinions and arguments based on that misapprehension should be rejected.

**B.    Plaintiffs' 2010 Motion for Contempt**

Plaintiffs' Motion for Contempt filed on August 10, 2010 (Dkt. 454) ("Motion") spent a significant time in briefs and at oral argument complaining that Defendants should be held in contempt because alternate names to Plaintiffs' titles were not picked up by Defendants' filtering. [Mot. for Contempt (Dkt. 454) 8/1/10 at 5-8; Trans. (Dkt. 484) 9/1/10 at 5:5-6:7; Trans. 12/14/10 (Dkt. 498) at 7:10-8:4.]

6
DEFENDANTS' BRIEF RE CONTEMPT

1  Defendants presented evidence in response to the Motion explaining the good faith
2  efforts Defendants had made to deal with the tens of thousands of titles that had been
3  provided, and the burdens that Plaintiffs were attempting to place on Defendants with
4  virtually no cooperation from Plaintiffs.  [Fung Decl. In Support of Opp. to Mot. for
5  Contempt (Dkt. 455-5) ¶¶ 31-33.]

Paragraph 10 of the original injunction states that the injunction applies "if even a single United States-based user is involved in the swarm process"—but this still requires that the user have some connection to Defendants' sites or services.  It is not enough that a U.S. user with *no connection whatsoever* to isoHunt may have a connection to a non-U.S. third party who may have a connection to isoHunt. Such a "connection" is simply too attenuated to fall under the strictures of the Injunction, and forcing Defendants to comply with such a broad interpretation of the Injunction would run afoul of international sovereignty.  Paragraph 5 of the original Injunction also makes clear that Defendants shall not be in violation of this Permanent Injunction as to Copyrighted Works that Plaintiffs have not identified to Defendants, but finding contempt on these grounds would take identification out of the equation altogether.

With respect to isoHunt Lite, Plaintiffs withdrew their pending *Ex Parte* Application seeking contempt in connection with Defendants' isoHunt Lite website based on factual issues regarding filtering, and the Court denied Plaintiffs' motion with respect to the isoHunt Lite site on that basis.  [8/7/13 Order (Dkt. 554) at 6-7.]

### C. The Ninth Circuit Finds The Injunction Is Unclear And Fails To Give Defendants Notice in Multiple Respects

The Ninth Circuit found "several provisions" of the original injunction "fail[ed]" to meet the standard of Rule 65(d) of the Federal Rules of Civil Procedure because they were "too vague," "too imprecise," "unclear"  and "more burdensome than necessary."  *Fung*, 710 F.3d at 1047-49.  In multiple other areas, the Ninth Circuit held that additional clarity was required, and that the injunction must be modified to more clearly specify the conduct that is prohibited.  *Id.* at 1047-48.  Thus,

7

DEFENDANTS' BRIEF RE CONTEMPT

the Ninth Circuit also made clear that the injunction must provide notice to Defendants so that it was clear how to comply.

Relevant to the present issue, the Ninth Circuit held that Defendants had no obligation to correct Plaintiffs' lists of titles or ascertain alternate titles. *Id.* at 1048-49 ("Fung complains that Plaintiffs' lists of titles are error-filled and that Fung '[is] compelled to locate and correct [the errors] under threat of contempt proceedings'. . . we clarify that Fung has no burden to correct Plaintiffs' errors"). Second, the Ninth Circuit noted that "the injunction explicitly applies only to acts of infringement 'that take place in the United States.'" *Id.* at 1047 n.22. Thus, the Ninth Circuit made clear that nothing in the injunction should be interpreted or understood to apply to users residing outside the United States.

### D. The Court Modified The Injunction August 5, 2013

On July 22, 2013, the parties each submitted proposed modified Injunctions. [Dkt. 544.]   The Court issued a modified Injunction on August 5, 2013. [Dkt. 551.]

### E. Plaintiffs' Supporting Declaration of Horowitz Concedes That Defendants' Existing Filtering Would Be An Acceptable Alternative, and Horowitz's Arguments Are Based On Erroneous Exhibits From the Version of the isoHunt Site Only Available to *Non-U.S.* Users

Plaintiffs' expert, Mr. Horowitz, concedes that Defendants' filtering would be a sufficient alternative to the measures Plaintiffs are otherwise advocating. [Horowitz Decl. (Dkt. 586) ¶ 23 ("it is my understanding that Defendants already filter search results for U.S. users . . . [on the] Isohunt Lite Site . . . . Defendants would simply need to use the keyword filter for all Isohunt users regardless of location.").]  While Mr. Horowitz attempts to impose filtering "regardless of location," there is no requirement that Defendants filter titles for non-U.S. users. [Inj., ¶ 10.]

Even if, despite Plaintiffs' concession, the Court considered the feasibility of the drastic measures Plaintiffs are advocating, Mr. Horowitz's Exhibits B, C, and D were not even obtained from the versions of Defendants' websites available to U.S.

users.  [Supp. Fung Decl. ¶ 12]  Mr. Horowitz also concedes that only 80,000 of the over 13 million dot-torrent files are from Fung Trackers, and therefore concedes that the conduct Plaintiffs are claiming is contempt are *not* users that are being connected by any of Defendants' trackers, but by third parties.  [Horowitz Decl. ¶ 14.]

### III.  PLAINTIFFS' MOTION FOR CONTEMPT SHOULD BE DENIED

#### A.  Defendants Are Filtering On The Main Site, Which Plaintiffs Concede Renders Plaintiffs' Request For Sanctions Moot

Apparently recognizing that the measures they are requesting are susceptible to being rejected as beyond the reasonable bounds of compliance, Plaintiffs set forth the alternate manner in which Defendants could have complied—filtering—which Defendants have been doing since 2010. [Plaintiffs' Brief (Dkt. 586) at 3:10-12 ("it is important to note that Defendants otherwise could have complied with the Injunction simply by applying an effective copyright filter to Main Isohunt Dot-Torrent files that correspond to Plaintiffs' copyrighted works"); *id.* at 12:5-6 ("…there is no question that Defendants could have applied the same keyword filter [as they applied to isoHunt Lite] to the Main IsoHunt site").]  But as Defendants pointed out in their July 25, 2013 brief and in the Declaration of Gary Fung opposing Plaintiffs' renewed request for sanctions —Defendants have been filtering Plaintiffs' titles from U.S. users of  the Main isoHunt site since June 2010 to comply with the Injunction. (7/25/13 (Dkt. 547-1) Decl. of Gary Fung, ¶¶ 2-3; Dkt. 547 at 12:16-17 ("And isoHunt filters Plaintiffs' titles from the main isoHunt site search results just as it filters on isoHunt lite.").)

As of July 25, 2013, title filtering has blocked 3,656,701 unique torrent hashes. [7/25/13 (Dkt. 547-1) Decl. of Gary Fung, ¶ 3.]  Defendants also err on the side of "over-filtering."  [*Id.*]  And since July 25, 2013, over 200,000 additional unique torrent hashes titles have been blocked.  Though Defendants previously pointed out to Plaintiffs its filtering on the Main isoHunt site, Plaintiffs disregarded this fact, calling it "misleading" and "at best a tautology," relying solely on the state of the record as it

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1 existed in August 2010.  [Plaintiffs' Br. (Dkt. 549) at 9:16-20.]  While Plaintiffs are
2 correct that there was a brief period where U.S. users were not permitted to access the
3 Main isoHunt site, Defendants subsequently complied with the Injunction by filtering
4 the Main isoHunt site allowing U.S. users to access the Main isoHunt site, but
5 applying the same title filtering as it did to isoHunt Lite on that site.  Plaintiffs of
6 course could have confirmed this by accessing the Main isoHunt site themselves using
7 a U.S. IP address.  Instead, they apparently chose to stick their heads in the sand,
8 willfully ignoring both the evidence and Defendants' repeated and easily-confirmed
9 representations.  While Plaintiffs claim that "Defendants continue to provide all Main
10 Isohunt users with unfiltered access to Plaintiffs' works," this is simply untrue given
11 Defendants' filtering of the Main isoHunt site.

12 **B.     Defendants' Technical Ability To Limit Users From Accessing Non-**
13 **isoHunt Trackers Is Neither Necessary Nor Required For**
14 **Defendants to Reasonably Comply With The Injunction**

15 The original Injunction made clear that if Defendants took "all reasonable
16 steps" to comply, "technical or inadvertent violations of the order will not support a
17 finding of civil contempt."  [Original Injunction, ¶¶ 2, 3.]  In its June 11, 2010 Order,
18 this Court clarified that this meant "Defendants are left with a reasonable safety-valve
19 that will prevent them from being harshly penalized for unintentional violations that
20 occur despite good faith attempts to comply with the injunction."  [6/11/13 Order, 5:3-
21 8].  Nonetheless, Plaintiffs seek to apply an extreme interpretation of the Injunction
22 and urge this Court to find contempt against Defendants for conduct that is not a
23 violation of the injunction at all: first, because Defendants *are* filtering the Main
24 isoHunt site in exactly the way that Plaintiffs advocate; and second, because even if
25 they were not, Defendants cannot be held responsible for conduct of unrelated third
26 parties occurring outside isoHunt's own system.  Plaintiffs are asking the Court to
27 hold Defendants in contempt, despite Defendants' reasonable, good faith efforts to
28 comply with the injunction, based on hypothetical conduct by non-isoHunt users

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

connected through non-isoHunt trackers to engage in activities entirely outside of Defendants' control.

Defendants have taken "all reasonable steps within" their "power to insure compliance with [the] injunction." *Hook*, 107 F.3d at 1403. Plaintiffs' strained interpretation of Paragraph 10 would interpret the term "United States-based user" so broadly as to hold isoHunt responsible for the actions of any United States-based user *of the Internet* irrespective of whether they ever used Defendants' system. Since before the Injunction Order, IsoHunt's trackers have no longer been accessible to visitors from the United States. (Fung Decl. (Dkt. 455-5) ¶¶ 2-3.) ] With isoHunt's filtering and blocking in place, no one with a U.S. IP address can download from isoHunt a dot-torrent file containing any metadata of Plaintiffs' works. Even if such an individual were to obtain the dot-torrent file from another source (unrelated to isoHunt), he or she could not use an isoHunt tracker to join any swarm distributing the Plaintiffs' work. Thus, individuals with U.S. IP addresses can *only* join a swarm for one of Plaintiffs' works if they (a) download a corresponding dot-torrent file from a non-isoHunt site, *and* (b) access a non-isoHunt tracker, which connects them with multiple specified users (i.e. the "swarm"). isoHunt cannot control or monitor the actions of such an individual, and the injunction does not require it.

Similarly, a foreign isoHunt user can join a swarm that includes a member with a U.S. IP address if, and *only* if, the foreign user accesses a non-isoHunt tracker to do so, *and* the United States user obtained his or her dot-torrent file from a non-isoHunt source, *and* the United States user also accesses a non-isoHunt tracker. Again, isoHunt cannot control or monitor these actions. Requiring it to do so would import the very extraterritoriality prohibition confirmed by the Ninth Circuit. *Fung*, 710 F.3d at 1047 n. 22.) Indeed, the Ninth Circuit noted in its Order that "[t]he injunction explicitly applies only to acts of infringement 'that take place in the United States.'" *Id.* Thus, nothing in the Injunction should be interpreted or understood to apply to users residing outside the United States. Plaintiffs have not articulated any theory of

copyright infringement—because there is none—under which Defendants could conceivably be held liable for the infringing acts of multiple, unrelated third parties, over whom they have no control whatsoever, concerning whose actions they lack knowledge and could not obtain knowledge. Nevertheless, under Plaintiffs' extreme and expansive interpretation of Paragraph 10, isoHunt must somehow police the entire Internet or risk violating the injunction. The Court should reject Plaintiffs' demand that it hold isoHunt to this impossible standard.

The difficulty is easily avoided by giving the term "United States-based user" its natural meaning: a United States-based user *of isoHunt.* Even Plaintiffs acknowledged that Paragraph 10 applies to <u>Defendants'</u> users (not just users of the Internet). (Plaintiffs Opp. to Mot. to Stay, filed under seal 6/1/10 (stating that "[t]he Court gave defendants . . . guidance as to the circumstances that would constitute violation of U.S. Copyright law by *their users*"; and noting that the "injunction" means that "*their non-U.S. users* violate U.S. copyright law when they join in a BitTorrent swarm with users from the United States.") Plaintiffs' inconsistency and opportunism is confirmed by their attempts to force the same words to mean different things as it suits their purposes in this case.

Moreover, Plaintiffs' proposed grounds for contempt against Defendants is for third party conduct that is entirely disassociated from the inducement Defendants were found liable for in this case. In *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d. 1197, this Court made clear that it was not proper for the plaintiffs' permanent injunction to prohibit the defendant from engaging in activities—even infringing activities—"that are far beyond the bounds of this lawsuit." *Id.* at 1226. In *Grokster*, as here, the defendant had been held "liable for the inducement of infringement only." *Id.* Yet the plaintiffs proposed a permanent injunction directed at direct infringement. This Court found that the plaintiff "offer[ed] no persuasive reasons why [the defendant] should be subject to an injunction that extends beyond inducement." *Id.* at 1227. As this Court explained, "a district court should only

include injunctive terms that have a common sense relationship to the needs of the specific case, and the conduct for which a defendant has been held liable." *Id.* at 1226.  In so holding, this Court relied on Supreme Court precedent, *NLRB v. Express Pub. Co.*, 312 U.S. 426 (1941) as "instructive," which held that "[a] federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past. But the mere fact that a court *has found that* a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged." *Id.* at 1126-27 (emphasis in original).

The very concerns articulated by the Supreme Court in *NLRB* and recognized by this Court in *Grokster* are also present here.  Defendants were held liable for inducement, and an injunction issued to prevent future conduct that could fairly be traceable to those acts of inducement.  But Plaintiffs are seeking to broaden the scope of Paragraph 10 of the injunction through interpreting "users" so broadly that it would subject Defendants to contempt based on conduct by third parties that Defendants do not control; conduct far removed from the inducement that was litigated for Plaintiffs to obtain summary judgment and the permanent injunction in the first place.  The Court should decline to adopt this retroactive expansion of liability against Defendants through contempt proceedings.

Finally, Exhibits B, C, and D attached to the Declaration of Mr. Ellis Horowitz filed on or about September 9, 2013 (Dkt. 587) are screenshots from a non-U.S. version of isoHunt.com—not a filtered version, which is the only version that would be accessible from a user with a United States IP address.  While Mr. Horowitz is correct (¶¶ 10-11) that the number of total torrents from the unfiltered Main isoHunt site is over 13 million, and that most of those torrents are not tracked by Fung

1  Trackers, none of his figures accurately reflect the filtered numbers of torrents
2  appearing to United States users of isoHunt's Main site.  [Supp. Fung Decl. ¶ 12.]

### C. The Ninth Circuit Order Renders Moot Plaintiffs' Pending Claims of Contempt

It is well settled in the Ninth Circuit that a defendant cannot be found in contempt of an injunction where the appellate court has found that underlying injunction unlawful.  *See e.g.*, *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1142 (9th Cir. 2003) ("The validity of a contempt adjudication is based on the legitimacy of the underlying order."); *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991) ("legitimacy of the contempt adjudication is based on the validity of the underlying order"); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981) ("Contrary to the general rule regarding criminal contempt, a civil contempt judgment may fall if the underlying injunction is invalidated.  The Supreme Court stated in *United States v. United Mine Workers*, 330 U.S. 258, 295, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947), that '(t)he right to remedial relief falls with an injunction which events prove was erroneously issued.'").  A district court may punish a party for contempt only if the order is clear and unambiguous: "An unclear order provides insufficient notice to justify a sanction as harsh as contempt."  *Fonar Corp. v. Deccaid Services, Inc.*, 983 F.2d 427, 429-30 (2d Cir. 1993); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (trial court's TRO was "improperly issued ex parte and failed to describe the prohibited conduct with specificity").  Here, there is no question that the Ninth Circuit has found the injunction unlawful and unclear in multiple respects.[1]

Plaintiffs' counsel has represented to the Court that the modifications and clarity at issue in the Ninth Circuit Opinion "all had to do with provisions that are not

---

[1] This Court has acknowledged the issue of clarity, noting that "the injunction in several parts . . . was viewed by the Ninth Circuit as being less than clear.  So the question becomes if parts of the injunction were not as clear as they ought to have been, that would seem to be a built-in defense to contempt." [Golinveaux Decl. (Dkt. 567-7 at Ex. 6) 7/1/13 Trans. at 12:9-11.]

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

at issue in the contempt motion, so none of what the Ninth Circuit suggested or directed to be modified has anything to do with any of the issues that are subject of the contempt motions." [Golinveaux Decl. (Dkt. 567-7 at Ex. 6) 7/1/13 Trans. at 12:19-23.]  That is patently incorrect.  A significant part of the pending contempt Motion turned on whether Defendants were required to correct or ascertain alternatives for the over 20,000 titles Plaintiffs provided.  The Ninth Circuit made clear that it was not required, finding unequivocally that Defendants had no obligation to correct Plaintiffs' lists of titles or ascertain alternate titles.   [*Fung*, 710 F.3d at 1048-49.]  Thus, with respect to Plaintiffs' complaints that Defendants are obligated to correct or ascertain alternate names to their works, this issue was *entirely mooted* by the Ninth Circuit's ruling. *Id.* at 1048-49.  This issue is inextricably interwoven with the issues for which Plaintiffs seek to hold Defendants in contempt, but Plaintiffs fail to explain how it is possible to parse the complex injunction without taking account of these highly relevant filtering issues.  The modifications to the injunction clearly impact Plaintiffs' pending claims of contempt, and the Court should deny Plaintiffs' Motion on this basis.

## IV.   CONCLUSION

Contrary to Plaintiffs' contentions, Defendants are filtering titles from U.S. users on the Main isoHunt site in the same manner as on isoHunt lite.  Thus, the Court should deny Plaintiffs' Motion with respect to the Main isoHunt site for the same reasons it did for isoHunt Lite.  Second, Defendants should not be found in contempt for their good faith and reasonable efforts to comply with the original Injunction for conduct that is not within their knowledge or control and would impermissibly extend the scope of the injunction extraterritorially.   Third, Plaintiffs should not be permitted to obtain a finding of contempt against Defendants with respect to an Injunction that was found unlawful and was modified *after* Plaintiffs filed their Motion.  For all of the foregoing reasons, the Court should deny Plaintiffs' Motion.

| | | |
|---|---|---|
| Dated:  September 16, 2013 | | WINSTON & STRAWN LLP |
| | | By: */s/ Erin R. Ranahan* |
| | |     Michael S. Elkin |
| | |     Thomas Patrick Lane |
| | |     Erin R. Ranahan |
| | | ROTHKEN LAW FIRM |
| | |     Ira P. Rothken |
| | |     Jared R. Smith |
| | | *Attorneys for Defendants* |
| | | GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC. |

*Additional counsel for Defendants:*

Robb C. Adkins (SBN: 194576)
radkins@winston.com
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5802
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400