Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
Thomas Patrick Lane (admitted *pro hac vice*)
tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

Ira P. Rothken (SBN: 160029)
ira@techfirm.net
Jared R. Smith (SBN: 130343)
jared@techfirm.net
**ROTHKEN LAW FIRM**
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:   (415) 924-4250
Facsimile:   (415) 924-2905

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111-5802
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>GARY FUNG, et al.,<br><br>            Defendants. | **Case No. CV 06-5578-SVW (JCx)**<br><br>DISCOVERY MATTER<br>Hon. Jacqueline Chooljian<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RE RULE 30(b)(6) DEPOSITIONS—FEES REQUESTED**<br><br>Trial Date:  November 5, 2013 |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................. 1

II.    FACTUAL BACKGROUND ..................................................... 3

    A.    This Case .......................................................................... 3

    B.    This Case Is Bifurcated Between Liability And Damages ........................ 3

    C.    Despite Affirming Liability Based On Inducement, The Ninth Circuit Makes Clear Causation Must Be Carefully Assessed In Damages Phase .................................................................. 3

    D.    Plaintiffs Seek To Exponentially Expand The Scope Of The Case In The Damages Phase ................................................... 4

    E.    Defendants' 30(b)(6) Notice Seeks Fundamental Discoverable Information For  Defendants To Properly Defend Themselves In The Damages Phase From Demands Of Nearly $600 Million In Statutory Damages ................................................................. 5

    F.    After Promising Written Objections As Part Of Ongoing Meet And Confer Efforts, Defendants Delay Serving Objections To The 30(b)(6) Notice Until Hours Before They Filed This Ex Parte Application ......................................................................... 5

    G.    Judge Wilson Has Ordered Further Briefing To Determine What Factors Should Go Into Jury Analysis Of Statutory Damages, But To Date, Nothing Has Been Excluded .................................... 6

III.   PLAINTIFFS' EX PARTE APPLICATION SHOULD BE DENIED ............... 7

    A.    The Jury Is Afforded Wide Discretion In Deciding The Amount Of Statutory Damages ......................................................... 7

    B.    Defendants' 30(b)(6) Topics Are Proper For The Damages Phase ........... 8

        1.    Testimony About Actual Damages Through Internet Marketing, Revenues And Use Of Bittorrent Technology Is Discoverable ..................................................................... 8

        2.    Testimony About Mitigation Of Evidence Is Discoverable ......... 11

        3.    Testimony Regarding Plaintiffs' Investigations Are Discoverable ................................................................... 13

    C.    Plaintiffs Cannot Resist Discovery Plainly Relevant Based On An Unrelated Case And A Discovery Order Limiting Discovery In The Liability Phase From Seven Years Ago ............................................. 14

IV.    NO SANCTIONS OR ATTORNEYS' FEES SHOULD BE AWARDED HERE .................................................................................. 16

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

i

V.    CONCLUSION ................................................................................................17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION RE RULE 30(b)(6) PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adobe Sys., Inc. v. Tilley*,
  C 09-1085 PJH, 2010 WL 309249 (N.D. Cal. Jan. 19, 2010) ............................ 9

*Autodesk, Inc. v. Flores*,
  10-CV-01917-LHK, 2011 WL 337836 (N.D. Cal. Jan. 31, 2011) ..................... 9

*Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*,
  253 F.R.D. 521 (C.D. Cal. 2008) ........................................................................ 17

*Bryant v. Media Right Prods., Inc.*,
  603 F.3d 135 (2d Cir. 2010) .............................................................................. 10

*Capitol Records, Inc. v. Thomas-Rasset*,
  692 F.3d 899 (8th Cir. 2012) ............................................................................. 10

*Carpenter v. Forrest Meadows Owners Ass'n*,
  1:09CV01918 DLB, 2011 WL 666765 (E.D. Cal. Feb. 14, 2011) .................... 16

*Cohorst v. BRE Properties, Inc.*,
  2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) ..................................................... 9

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) .............................................................. 4, 13, 16

*Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*,
  656 F.3d 47 (1st Cir. 2011) ............................................................................... 10

*Eros Entm't, Inc. v. Melody Spot, L.L.C.*,
  2005 WL 4655385 (E.D.N.Y. Oct.11, 2005) ...................................................... 8

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998) ........................................................................................ 6, 7

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
  807 F.2d 1110 (2d Cir. 1986) .............................................................................. 8

*Harris v. Emus Records Corp.*,
  734 F.2d 1329 (9th Cir. 1984) ............................................................................ 7

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

*Lumber Liquidators, Inc. v. Sullivan*, EDCV 12-1191-ABC, 2012 WL 4464867
  (C.D. Cal. Aug. 31, 2012)................................................................................17

*Microsoft Corp. v. Ricketts*,
  C 06-06712 WHA, 2007 WL 1520965 (N.D. Cal. May 24, 2007).....................9

*Muppets Studio, LLC v. Pacheco,*
  CV 12-7303 JGB FFMX, 2013 WL 2456617 (C.D. Cal. June 6, 2013).............9

*N.A.S. Impor. Corp. v. Chenson Enters., Inc.*,
  968 F.2d 250 (2d Cir. 1992) ......................................................................10, 11

*Nexon Am. Inc. v. Kumar*,
  2:11-CV-06991-ODW, 2012 WL 1116328 (C.D. Cal. Apr. 3, 2012) ...............9

*Peterson v. California*,
  1:10-CV-01132-SMS, 2011 WL 3875616 (E.D. Cal. Sept. 1, 2011) ...............17

*Sony BMG Music Entm't v. Tenebaum*,
  719 F.3d 67 (1st Cir. 2013)...............................................................................10

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
  251 U.S. 63 (1919)..............................................................................................10

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*,
  74 F.3d 488 (4th Cir. 1996) ..............................................................................11

*Symantec Corp. v. Logical Plus, Inc.*,
  C 06-7963 SI, 2010 WL 2330388 (N.D. Cal. June 4, 2010)...............................9

*Winding v. NDEX W., LLC*,
  1:10CV02026 AWI DLB, 2011 WL 1080650 (E.D. Cal. Mar. 21, 2011)........16

STATUTES

17 U.S.C. § 504(c) ..................................................................................................7

Cal. Code Civ. Proc. § 405.38 ..............................................................................16

OTHER AUTHORITIES

4 Nimmer on Copyright § 14.04 [B][1][a] (2005)..................................................7

Fed. R. Civ. P. 26(c)(1)..........................................................................................17

Fed. R. Civ. P. 26(c)(3)..........................................................................................16

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iv

Fed. R. Civ. P. 30(b)(6) ........................................................................1, 16

Fed. R. Civ. P. 37 ................................................................................16, 17

C.D. Cal. L.R. 37-1 ...................................................................................17

U.S. Constitution, 7th Amendment .............................................................7

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION RE RULE 30(b)(6) PROTECTIVE ORDER

Defendants hereby oppose Plaintiffs' *Ex Parte* Application For Protective Order re Rule 30(b)(6) Depositions—Fees Requested (Dkt. No. 636) ("*Ex Parte* Application").

## I.   <u>INTRODUCTION</u>

The Supreme Court has found that in copyright cases, the jury has the power to consider factors that might inform them on what they find fair and just when deciding where on the wide scale—from $750 through $150,000 per infringed work—a plaintiff should be awarded statutory damages.  Gary Fung, an individual, is defending himself and his company in this case against claimed statutory damages of nearly $600 million.  While affirming an award on liability, the Ninth Circuit cautioned that even with respect to the 44 works at issue at that time, the Court should take a closer look at causation before deciding the "degree" to which Defendants can be held liable for damages for the alleged resulting infringements.   With their latest *Ex Parte,* Plaintiffs seek to prevent Defendants from obtaining testimony through 30(b)(6) witnesses regarding topics squarely relevant to the jury's statutory damages inquiry, discovery that Defendants have a right to at the very least investigate and analyze so that Defendants may have the chance to incorporate this information into their defense at trial—scheduled to begin in just one month.

Rather than allowing the jury to decide what is fair here based on the available evidence, Plaintiffs essentially seek to prevent Defendants from even investigating potential evidence, before Judge Wilson has made any rulings about what type of evidence, if any, will be precluded.  Plaintiffs' delays in providing any relevant discovery, and efforts to foreclose the majority of relevant topics at 30(b)(6) depositions, are preventing Defendants from investigating the very recently identified alleged infringements, and preventing Defendants' financial expert from preparing his analysis.  Defendants should at least be afforded the opportunity to investigate factors relevant to statutory damages when the ultimate award could range from as low as $750 for each work infringed (which would be less than 3 million if the jury found an

Winston & Strawn LLP<br>333 S. Grand Avenue<br>Los Angeles, CA  90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  award appropriate for all 3,947 allegedly infringed works), up to nearly $600 million

2  in statutory damages if the jury applied the higher end of statutory damages available.

3  Plaintiffs' effort to rely on a protective order issued in 2007, dealing with

4  discovery in the *liability* phase, as a basis to shield Plaintiffs from producing

5  information that is directly relevant to the damages analysis and will assist the jury

6  with deciding what damages are appropriate in these circumstances should be rejected.

7  Defendants must be provided an opportunity to obtain discovery relevant to the

8  damages phase so they at least have the opportunity to show Judge Wilson why, for

9  instance, he should allow the jury to hear evidence about the value of Plaintiffs' works

10  and other discovery relevant to actual damages, which has repeatedly been found

11  relevant to the challenging enterprise of determining where on the wide range to

12  assess statutory damages.  Plaintiffs have also refused to permit testimony into

13  whether Plaintiffs or their agents uploaded content including the allegedly infringed

14  works through BitTorrent or isohunt, only agreeing to provide a witness to testify that

15  any such conduct was not officially authorized, regardless of whether it occurred

16  without official authorization.

17  Not only would Plaintiffs' proposed protective order be improper and prevent

18  Defendants from obtaining probative testimony relating to damages, Plaintiffs'

19  sanctions request is also entirely unwarranted here.  The parties were in the midst of

20  meet and confer discussions regarding the scope and timing of the depositions when

21  Plaintiffs rushed to Court demanding emergency relief and sanctions.  In fact,

22  Plaintiffs filed their latest *Ex Parte* Application just hours after providing their

23  objections to Defendants' 30(b)(6) deposition notice (a notice first served over a ten

24  days ago) (Servodidio Declaration, Ex. A ("30(b)(6) Notice")), and despite the fact that

25  Defendants had informed Plaintiffs that they would review the objections and consider

26  whether it would be appropriate to narrow certain topics.  Plaintiffs provide no basis

27  or authority for permitting sanctions or fees in these circumstances.

28  The Court should deny Plaintiffs' *Ex Parte* Application in its entirety.

## II.   FACTUAL BACKGROUND

### A.   This Case

Defendants' websites facilitate user searches and access to information—using a similar type of search engine functionality as Yahoo! or Google—and neither store nor transmit any copyrighted material in the process of servicing user requests for search results.  Plaintiffs brought this action seeking to hold Defendants liable for inducing certain alleged direct infringements by Defendants' users through Defendants' system.  While this Court found in 2009 that Defendants were liable for inducing infringement of 44 works, granting Plaintiffs' motion filed in (and based on a record from) 2007, no damages for any infringements in this case have yet been assessed.

### B.   This Case Is Bifurcated Between Liability And Damages

On November 6, 2006, Judge Wilson bifurcated this case into liability and damages for the purposes of discovery, summary judgment and trial, whereby Defendants were to "provide all evidence as to" their "state of mind" and "how [the] site works" during the damages phase [(11/6/06 Status Conference Minute Order (Dkt. 33).]  On February 20, 2007, the District Court further clarified the scheduling order, noting that "Plaintiffs are hereby entitled to seek discovery necessary for filing a motion for summary judgment as to inducement, contributory infringement AND vicarious infringement." [(2/20/07 Orders Modifying Summary Judgment Schedule (Dkt. No. 49-50); Trans. 2/20/09 (Dkt. No. 55)).]  All other discovery was deferred until the damages phase.

### C.   Despite Affirming Liability Based On Inducement, The Ninth Circuit Makes Clear Causation Must Be Carefully Assessed In Damages Phase

In its decision the Ninth Circuit explained that even though it was adopting a "loose causation" theory for purposes of assessing injunctive relief, it expected the District Court would deal with those issues specifically when assessing damages, stating:

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   We do not decide the degree to which Fung can be held liable for

2   having caused infringements by users of his sites or trackers. The

3   only issue presently before us is the permanent injunction, which,

4   as in *Grokster III*, does not in this case depend on the "exact

5   calculation of infringing use[ ] as a basis for a claim of damages."

6   545 U.S. at 941, 125 S.Ct. 2764. We therefore need not further

7   entertain Fung's causation arguments at this time, but leave it to

8   the district court to consider them, in light of the observations we

9   have made, when it calculates damages.

10  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1039 (9th Cir. 2013).

11          Thus, the Ninth Circuit made clear that "causation… cannot be assumed" and

12  that Plaintiffs must plausibly link direct infringements of the works to Defendants'

13  inducements.  *Id.* at 1038-39.  As the Ninth Circuit explicitly cautioned, "proving that

14  an entity had an unlawful purpose at a particular time in providing a product or service

15  does not infinitely expand its liability in either temporal direction…an individual or

16  entity's unlawful objective at time B is not a virus that infects all future actions.

17  People, companies and technologies must be allowed to rehabilitate… lest the public

18  be deprived of a useful good or service they are still capable of producing."  *Id.* at

19  1038.

20          **D.      Plaintiffs Seek To Exponentially Expand The Scope Of The Case In**
**The Damages Phase**

21

22          Recently, Plaintiffs indicated that they would seek statutory damages for

23  inducing direct copyright infringement of 4,145 copyrighted works, which they

24  partially identified on September 16, 2013.   Only after Defendants pressed for

25  Plaintiffs to provide chain of title and ownership discovery sufficient to establish

26  ownership of each of the thousands of alleged works,  pointed out defects in that a

27  substantial number of registrations and chain of title documents appeared to be

28  missing, and sought *ex parte* relief from this Court, Plaintiffs have now voluntarily

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

4

1    withdrawn almost 200 claimed works, reducing the number of works for which they

2    are seeking damages to 3,947, and thereby reducing potential statutory damages by

3    more than $3 million.  Plaintiffs now seek maximum statutory damages of up to

4    $150,000 per infringed work, or almost $600 million for infringements for the

5    remaining works.

6         **E.    Defendants' 30(b)(6) Notice Seeks Fundamental Discoverable**
         **Information For  Defendants To Properly Defend Themselves In The**
7         **Damages Phase From Demands Of Nearly $600 Million In Statutory**
         **Damages**

8

9         To the extent that any of the currently noticed topics were already covered—

10   they could not have yet been covered in depositions taken in or around 2007 when the

11   case was about just 44 works, with respect to thousands of new works that were just

12   named in September 2013. Given that trial is set to begin in one month, Defendants

13   noticed 30(b)(6) depositions for October to cover both specific topics that Plaintiffs

14   explicitly deferred to the damages phase, and mitigating circumstances and other

15   evidence that the jury should be permitted to consider when it takes on the challenging

16   task of deciding the appropriate amount of statutory damages here.

17        **F.    After Promising Written Objections As Part Of Ongoing Meet And**
         **Confer Efforts, Defendants Delay Serving Objections To The**
18        **30(b)(6) Notice Until Hours Before They Filed This *Ex Parte***
         **Application**

19

20        Defendants served their 30(b)(6) notice that is the subject of this *ex parte*

21   application on September 20, 2013. On September 25, counsel held a meet and confer

22   discussion about the 30(b)(6) Notice, during which Plaintiffs' counsel explained that

23   Plaintiffs' written objections would be forthcoming.   Defendants' counsel responded

24   that they would review the forthcoming written objections and would let Plaintiffs'

25   counsel know if they could agree to narrow or withdraw certain topics.  Seven days

26   went by without Plaintiffs serving any objections.  During this time, the parties

27   continued to negotiate the dates of certain of the depositions.   Then on the afternoon

28   of October 1, Plaintiffs sent an email "further to our meet and confer," attaching the

     written objections, but in the same email, Plaintiffs provided notice that Plaintiff

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

5

would be seeking an *ex parte* protective order that same day, allowing no time to "further meet and confer." [Servodidio Decl. ¶ 10, Ex. I.] Plaintiffs could have served the objections days earlier so that the parties could have completed their meet and confer process before Plaintiffs filed their *ex parte* application.

### G. Judge Wilson Has Ordered Further Briefing To Determine What Factors Should Go Into Jury Analysis Of Statutory Damages, But To Date, Nothing Has Been Excluded

The parties filed their respective motions *in limine* on September 30, 2013, which are set to be heard at the Court's final pretrial conference on October 28, 2013, and trial begins November 5, 2013. Judge Wilson has not yet decided what evidence he will permit or disallow that relate to the factors that should be considered by the jury in assessing statutory damages. In fact, during a hearing on September 30, 2013, Judge Wilson just set a briefing schedule ordering the parties to submit their respective proposals within ten days providing authority for what should be relevant to the jury's ability to decide the appropriate level of statutory damages between $750 and $150,000 per work. Indeed, given the jury's wide discretion, and the fact that the statute itself provides little guidance, and given the Supreme Court's determination in *Feltner* that a defendant is entitled to a jury trial to assess damages in a copyright case, the jury *must* be provided sufficient evidence to make a just decision about the appropriate level of damages. With the range of potential damages here being all the way from just under $3 million to nearly $600 million, the more discovery that is allowed that might impact a jury, the more informed the award will be in making a just decision. Similarly, even if Judge Wilson carves out certain affirmative defense as waived with respect to the original 44 works, which he indicated he may do at the hearing on September 30, 2013, this would mean there are still well over 3,000 works about which the defenses of failure to mitigate and fair use would still apply.

In the meantime, trial is rapidly approaching, and Defendants should not have to wait until Judge Wilson makes any final evidentiary rulings or rules on Plaintiffs' multiple pending summary judgment motions (concerning which Judge Wilson

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

indicated he anticipated finding waiver of certain affirmative defenses for the original 44 works, but not the thousands of other newly added works), before even obtaining the discovery Defendants would ask Judge Wilson to admit before trial.

## III.   PLAINTIFFS' *EX PARTE* APPLICATION SHOULD BE DENIED

### A.   The Jury Is Afforded Wide Discretion In Deciding The Amount Of Statutory Damages

17 U.S.C. § 504(c) provides statutory damages for copyright infringement of up to $150,000.00 per work infringed.  In *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340 (1998), the Supreme Court held that the Seventh Amendment of the United States Constitution requires a jury trial to determine the amount of statutory damages in a copyright case.  *Id.* at 353.  As the Supreme Court explained in *Feltner,* "[t]he right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner.  *Id.* (emphasis in original). This is because it has "long been recognized" that "the jury are judges of damages." *Id.*

"[T]he court has wide discretion in determining the amount of statutory damages to be awarded, *constrained only by the specified maxima and minima*."  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (emphasis added).  The trier of fact must be guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like"). And Professor Nimmer, a leading commentator about U.S. copyright law and often used by content owners as an expert on these issues, agrees that "the determination of statutory damages within the applicable limits may turn upon such factors as . . . **the revenues lost by the plaintiffs as a result of the defendant's conduct** and the infringers' state of mind – whether willful, knowing or innocent."  4 Nimmer on Copyright § 14.04 [B][1][a] (2005).

Indeed, courts have considered the following factors as relevant to informing their determination of statutory damages: (1) the expenses saved and the profits

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  reaped, (2) the revenues lost by the plaintiff, (3) the value of the copyright, (4) the

2  deterrent effect on others besides the defendant, (5) whether the defendant's conduct

3  was innocent or willful, (6) whether a defendant has cooperated in providing

4  particular records from which to assess the value of the infringing material produced,

5  and (7) the potential for discouraging the defendant.  *Fitzgerald Publ'g Co. v. Baylor

6  Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *accord Eros Entm't, Inc. v. Melody

7  Spot, L.L.C.*, 2005 WL 4655385, at *10 (E.D.N.Y. Oct.11, 2005).

8  **B.**    **Defendants' 30(b)(6) Topics Are Proper For The Damages Phase**

9        **1.**    **Testimony About Actual Damages Through Internet
10               Marketing, Revenues And Use Of Bittorrent Technology Is
                Discoverable**

11        Most of the topics that Plaintiffs seek to resist go to whether Defendants should

12  be able to obtain discovery regarding Plaintiffs' actual damages (or lack thereof) to

13  support a lower award.  These topics includes Plaintiffs' use of Internet marketing and

14  distribution for their copyrighted works (Topics #8, #10, #11, #12, #13, #14, #15, #16,

15  #18, #18, #22), revenues related to such works (Topic #20), and Plaintiffs' use of

16  BitTorrent technologies to distribute or promote Plaintiffs' works  (Topic #9).  While

17  these topics may have had little relevance to the liability phase, they are directly

18  relevant to the damages phase and the factors the jury is permitted to consider in

19  assessing the proper level of statutory damages.  For example, this testimony and

20  discovery is critical to Defendants' expert, Mr. Christian Tregillis, who Defendants

21  intend will analyze financial, economic and accounting issues related to claims by

22  Plaintiffs against Defendants for copyright infringement.  The scope of his testimony

23  will depend upon which testimony is provided by Plaintiffs and what discovery

24  Plaintiffs ultimately produce (currently the subject of Defendants' *ex parte* application

25  to compel discovery [Dkt. 615]), including regarding revenue, profits and licensing

26  regarding the allegedly infringed works.  Once additional discovery becomes

27  available, Mr. Tregillis expects to offer an informed analysis of statutory damages and

28  factors relevant to such a determination, as well as actual damages and the calculation

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

8

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    of Defendants' profits.

2         Cases within the Ninth Circuit have repeatedly held that statutory damages must

3    bear some relation to actual damages, even in cases where the defendant's

4    infringement was also found to be willful.  *Muppets Studio, LLC v. Pacheco,* CV 12-

5    7303 JGB FFMX, 2013 WL 2456617, at *2 (C.D. Cal. June 6, 2013) (while the

6    defendant knew she was copying Muppets characters, and therefore "demonstrating

7    willfulness" the plaintiff "has not provided the Court with evidence that the requested

8    amount is proper under the factors listed above" because "[t]here is no evidence of

9    actual profits, or how the introduction of these items specifically affected Plaintiff's

10   profit."); *Nexon Am. Inc. v. Kumar*, 2:11-CV-06991-ODW, 2012 WL 1116328, at *5-

11   6 (C.D. Cal. Apr. 3, 2012); *Autodesk, Inc. v. Flores*, 10-CV-01917-LHK, 2011 WL

12   337836, at *8 (N.D. Cal. Jan. 31, 2011) (noting that a willfulness finding "does not

13   end the inquiry, however, for the district court is given broad discretion to determine

14   the amount of statutory damages"); *Symantec Corp. v. Logical Plus, Inc.,* C 06-7963

15   SI, 2010 WL 2330388, at *3 (N.D. Cal. June 4, 2010) (even where evidence of the

16   defendant's willful infringement is considerable, the amount of damages sought by

17   Symantec is "too high" given the plaintiff's "modest profits");  *Adobe Sys., Inc. v.*

18   *Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5-6 (N.D. Cal. Jan. 19, 2010)

19   (concluding that an award of $50,000 per infringement would be a "windfall"  and

20   recommending that the plaintiff instead be awarded less in statutory damages);

21   *Microsoft Corp. v. Ricketts*, C 06-06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal.

22   May 24, 2007) (even where willful, "the Court thinks it just to award statutory

23   damages in the amount of $1500 per copyright infringed and $1000 per trademark

24   infringed, for a total of $12,500 because it was "twice the minimum under each statute

25   to reflect the finding of willfulness" and the "damages, coupled with the permanent

26   injunction granted against defendant, will adequately serve the purpose of

27   deterrence"); *see also id.* ("Statutory damages are intended to serve as a deterrent, but

28   that does not justify such a windfall."); *Cohorst v. BRE Properties, Inc.*, 2011 WL

9

1    7061923, at *14 (S.D. Cal. Nov. 14, 2011) ("Statutory damages . . . can be

2    unconstitutional in application under . . . [the] U.S. Constitution if they constitute

3    'excessive fines' or are imposed without due process of law.").

4         Plaintiffs rely on essentially two cases, one from the First Circuit and one from

5    the Eighth Circuit.  Neither of these decisions, *Sony BMG Music Entm't v. Tenebaum*,

6    719 F.3d 67, 71-72 (1st Cir. 2013)[1] or *Capitol Records, Inc. v. Thomas-Rasset*, 692

7    F.3d 899, 907 (8th Cir. 2012)), supports the proposition that evidence of actual

8    damages is irrelevant to a fact-finder's consideration of the appropriate amount of

9    actual damages. Rather, those decisions held only that the jury's statutory damages

10   award in each case did not violate constitutional due process. *See St. Louis, I.M. & S.*

11   *Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919) (a statutory damage award violates due

12   process only "where the penalty prescribed is so severe and oppressive as to be wholly

13   disproportioned to the offense and obviously unreasonable"); *Thomas-Rasset*, 692

14   F.3d at 909 (under Williams, the "*constitutional* inquiry" does not require "a

15   comparison of an award of statutory damages to actual damages caused by the

16   violation") (emphasis added).

17        Moreover, neither the First Circuit nor the Eighth Circuit have nearly as many

18   copyright decisions as the Second Circuit and the Ninth Circuit, where such courts

19   have repeatedly found information regarding actual damages could be considered by

20   the jury. [2]  Like the Ninth Circuit, it is well established in the Second Circuit that

21   actual damages, including lost revenues and profits earned can be considered in

22   assessing statutory damages.  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144

23

24   [1] There is another case in the First Circuit that goes the other way, acknowledging that
     that a jury "may consider factors" such as "the expenses saved," and "revenues lost"
25   by the plaintiffs.  *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 58-
     59 (1st Cir. 2011) (quoting district court opinion (quoting *N.A.S. Impor. Corp. v.*
26   *Chenson Enters., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)).

27   [2] A Westlaw search shows in the past five years the First Circuit had 354 copyright
     cases and the Eighth Circuit had 505, while the Second Circuit had 1,549 copyright
28   cases and the Ninth Circuit had 4,541. This means there were 6,090 copyright cases
     filed in the Second and Ninth Circuits combined in the last five years, compared with
     only 859 cases filed in the First and Eighth Circuits during the same period.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(2d Cir. 2010) ("When determining the amount of statutory damages to award for copyright infringement, courts consider . . . the expenses saved, and profits earned, by the infringer" and "the revenue lost by the copyright holder") (citing *N.A.S. Impor. Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)).  The Fourth Circuit is in accord.  *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.,* 74 F.3d 488, 496 (4th Cir. 1996) (listing "the actual damages suffered by the plaintiffs" as a factor the jury should consider in determining statutory damages in a case where the infringement was found willful).

While the factors that Judge Wilson will instruct the jury have yet to be finally resolved, there is ample authority to assume that evidence of Plaintiffs' actual damages is potentially relevant for the trial, and therefore Plaintiffs have no basis for seeking a protective order from providing testimony relating to such actual damages.

Plaintiffs also argue that Your Honor conclusively found that Topic #9 is foreclosed because the Court found that this case is only about "defendants' conduct; not technology."  But of course this case is about technology—as the direct infringements were not by Defendants, but by users of technology.  There is nothing that states that the Plaintiff's actual use of the very technology at issue in the case is not relevant factor for the jury in impacting what statutory damages would be appropriate.  Moreover, here Plaintiffs are attempting to enter evidence of the number of uploads and downloads of their claimed works as an aggravating factor despite the fact that statutory damages are applied on a per work basis and require only one infringement of the work. If Plaintiffs in this case were utilizing the very technology at issue in this case to distribute or promote their works, as in other cases, and to download the claimed works from Defendants' websites as part of their investigation, that is of course directly relevant to whether such files or downloads can be counted as infringements.

### 2.    Testimony About Mitigation Of Evidence Is Discoverable

Plaintiffs seek to prevent discoverable testimony relating  to mitigation of

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1    damages.   (DMCA Defenses #1, #5, #7, #14, #25, #36).  Given the broad discretion

2    the jury may consider before awarding any damages, and given that the alleged

3    infringements here involve nearly 4,000 works that were *just named for the first time*

4    *on September 16, 2013, that Plaintiffs have just identified the allegedly infringing files*

5    *this week, and given that Defendants may have immediately removed the alleged*

6    *infringement at issue upon notice,* the jury must be permitted to hear evidence

7    regarding whether Defendants immediately removed any alleged infringement at

8    issue, *or* whether Plaintiffs actually provided notice to Defendants of those works, as

9    such could mitigate the amount that the jury believes is appropriate for that work.

10          Defendants have implemented a robust copyright policy modeled after the

11   DMCA under which Plaintiffs could have provided notice concerning alleged

12   infringements of their works. [Decl. of Gary Fung in Opp. to Pl. Mot. Summ. Jdgmt.

13   on Aff. Defenses (Dkt. 584-3) at ¶¶ 2-6, 8.]  Even if Defendants were not held entitled

14   to DMCA safe harbor, following such procedures and processing such notices would

15   have resulted in Defendants taking down or removing access to Plaintiffs' alleged

16   titles, thereby preventing further harm and mitigating Plaintiffs' damages.  A jury has

17   to know about whether that happened.

18          Likewise, even if the affirmative defenses do not operate to prevent liability—

19   evidence relating to these subjects might be considered relevant to the jury in deciding

20   where on the wide spectrum to set statutory damages.

21          With respect to Topic #25 on willfulness, while Judge Wilson indicated that he

22   was inclined to find willfulness as a matter of law, at the same hearing he indicated

23   that he was not decided based on the precedent before him and the applicable jury

24   instructions whether his willfulness finding would foreclose any specific evidence,

25   instead requesting that the parties file supplemental briefs on the subject about what

26   factors are appropriate for consideration.  Thus, not only has there been no final order,

27   Judge Wilson has not made any rulings restricting certain evidence or foreclosing

28   Defendants from presenting evidence regarding actual damages.

### 3. Testimony Regarding Plaintiffs' Investigations Are Discoverable

Plaintiffs also seek to prevent any witnesses from testifying about any investigation for infringements on Defendants' Websites (Topic #6, #34), communications between Plaintiffs and Defendants (Topic #23) and Plaintiffs' organizational structure.

Plaintiffs argue that the Court should find that an order granting a protective order in 2007 during the liability phase, that related to topics about *general investigation of the websites* should now foreclose inquiry regarding the specific search for material that infringes the works sought by Current Notice Topic #6. Plaintiffs have just for the first time identified what they claim to be the infringing files for which they seek up to $150,000 in statutory damages per work.  Plaintiffs will need to present evidence to the Court or the jury about these allegedly infringing files, and Defendants should be permitted to ask a witness who knows how they identified the alleged infringements they are claiming to test whether there was integrity in that process.  Defendants should be able to test whether Plaintiffs have been diligent in investigating and notifying Defendants, or whether they waited six years to take any steps to identify (and therefore mitigate) the alleged damages.  Defendants are not specifically seeking any information about Plaintiffs' "antipiracy technologies," which are the only limitations Plaintiffs rely on in the cases Plaintiffs cite on page 8 of their brief.  Likewise, Defendants should be able to investigate whether there was any associated evidence that the infringements were sufficiently "caused" by Defendants' inducement to warrant statutory damages, as the Ninth Circuit has required that assessment to be part of the damages phase of this case.  *Fung*, 710 F.3d at 1038-39.

With respect to Topic #34, whether individual Plaintiffs devoted any resources to investigating or monitoring the sites, or left it to third parties like the MPAA or agents who sent takedown notices, could directly impact the economic analysis and actual damages.  Moreover, while on the one hand an inadvertent server crash should

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

entitle Plaintiffs to evidentiary sanctions based on the prejudice of losing the actual data, Plaintiffs monitoring may confirm that Plaintiffs have had all along the claimed "missing" data they are using to try to avoid the burdens of their case.

Contrary to Plaintiffs' suggestions, of course Defendants are not seeking any privileged testimony or work product, but only inquiry about factual topics and information relevant for the jury's consideration of general mitigation.

With respect to Plaintiffs' organizational structure, Defendants are investigating the thousands of  copyright registrations relating to ownership, and are seeking to collect relevant information regarding who within the organizations is responsible for Internet advertising and any instances where Plaintiffs or their agents were responsible for the allegedly infringing material available through Defendants system. Cases before show that it is quite common for studios to employ "street marketing" teams that are not official with the company, but have regular emails addresses and user names so that it seems that peers are promoting the works.  But the manner in which Plaintiffs have sought to restrict this topic is that Plaintiffs refuse to permit testimony into whether Plaintiffs or their agents uploaded content including the allegedly infringed works through BitTorrent or isoHunt, only agreeing to provide a witness to testify that any such conduct was not officially authorized, *regardless of whether it occurred without official authorization*. This is plainly inadequate, as if Plaintiffs are responsible for the uploading regardless of whether official "approvals" or " authorizations" were provided, this would still be relevant to the jury assessing statutory damages.   Defendants should also be provided the opportunity to investigate whether the witness appears to have sufficient knowledge relevant to these matters to provide testimony based upon an adequate foundation and understanding about the matters about which he testifies.

### C.   Plaintiffs Cannot Resist Discovery Plainly Relevant Based On An Unrelated Case And A Discovery Order Limiting Discovery In The Liability Phase From Seven Years Ago

Plaintiffs attempt to justify their refusal to provide witnesses who will testify

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

about topics relevant to damages by relying on separate litigation from 2007, and an order from 2007 from an entirely separate phase of this case, and separate phase of discovery.  Plaintiffs attempt to cause this Court to draw some negative connotation by likening Defendants here in some unspecified way to the defendants in *Bunnell,* litigation which Plaintiffs point out involved a 30(b)(6) deposition notice with "98 topics."  This case is not *Bunnell.*  There are only 1/3 as many topics at issue here, each of which is tailored to issues that will contribute to the jury's ability to make a just determination about appropriate statutory damages.

Plaintiffs also rely on an order where Your Honor adopted a form proposed order regarding a discovery dispute in 2007 (Servodidio Decl., Ex. C), which was granted in large part because Plaintiffs claimed that the 30(b)(6) included topics that were more appropriate for the damages phase, where we are now.  The additional topics all relate to mitigation evidence that the jury may be permitted to consider when deciding the wide range of available topics.  Defendants must be provided an opportunity to obtain discovery, which may also affect Judge Wilson's determination of what factors the jury should hear.

In any event, applying a seven-year old Protective Order from a different phase of the case to restrict discovery to which Defendants are entitled in this phase is problematic in several ways. First, it flies in the face of the Ninth Circuit's admonition that Plaintiffs must demonstrate that Defendants alleged acts of inducement actually caused acts of direct infringement. Second, the Court's liability determination concerned only the 44 representative works that were at issue in the liability phase of the case. During that phase, Plaintiffs repeatedly refused to provide discovery concerning *any* other works, and refused to provide discovery concerning damages, on the basis that such discovery was premature and should be addressed during the damages phase. Plaintiffs cannot now pretend that all such issues have somehow been resolved, including as to the 4,101 works that Plaintiffs identified only on September 16, 2013. Third, "proving that an entity had an unlawful purpose at a particular time in

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

15

1  providing a product or service does not infinitely expand its liability in either temporal

2  direction." *Fung*, 710 F. 3d at 1038. "People, companies, and technologies must be

3  allowed to rehabilitate, so to speak, through actions actively discouraging the

4  infringing use of their product, lest the public be deprived of the useful good or

5  service they are still capable of producing." *Id.*

## IV.   NO SANCTIONS OR ATTORNEYS' FEES SHOULD BE AWARDED HERE

8         Plaintiffs are not entitled to an award of attorneys' fees under Rule 26(c)(3)3

9  because at the very least, Defendants' position is "substantially justified,"  as

10  Defendants are simply seeking to obtain testimony on 30(b)(6) Topics that Defendants

11  believe in good faith could factor into the jury's assessment of statutory damages.

12  Indeed, the Court "must not order" the payment of attorneys' fees if any of the

13  following apply: (1) "the movant filed the motion before attempting in good faith to

14  obtain the disclosure or discovery without court action," (2) the opposing party's

15  conduct was "substantially justified," or (3) "other circumstances make an award of

16  expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).  For the reasons described above,

17  Defendants' deposition notice was justified, and Defendants reasonably believe they

18  are entitled to depose Plaintiffs' Rule 30(b)(6) witness on the topics identified that

19  relate to factors that the jury may consider in determining an amount of statutory

20  damages.  *See, e.g., Carpenter v. Forrest Meadows Owners Ass'n*, 1:09CV01918

21  DLB, 2011 WL 666765, at *2 (E.D. Cal. Feb. 14, 2011) (denying Rule 37 sanctions

22  where there was "no indication that the [discovery] responses at issue were

23  substantially unjustified").

24         Further, Plaintiffs' counsel moved *ex parte* for a protective order the same day

25  they served their objections, without allowing Defendants any time to review the

---

3 Plaintiffs also cite *Winding v. NDEX W., LLC*, 1:10CV02026 AWI DLB, 2011 WL 1080650 (E.D. Cal. Mar. 21, 2011).  In that case, attorneys' fees were awarded under Cal. Code Civ. Proc. § 405.38, which provides for attorneys' fees when a court orders a lis pendens expunged.  This case has no application here and underscores the weakness of Plaintiffs' argument.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

written objections.  Because the parties had been negotiating dates and Plaintiffs delayed serving objections until the same moment they provided *ex parte* notice, Plaintiffs failed to make a good faith effort to resolve this dispute without court action. *See, e.g., Lumber Liquidators, Inc. v. Sullivan*, EDCV 12-1191-ABC, 2012 WL 4464867, at *4 (C.D. Cal. Aug. 31, 2012) (denying sanctions due to plaintiff's failure to make a good faith attempt to meet and confer or attempt to resolve the dispute without court action, as required by Rule 26(c)(1) and Local Rule 37-1); *Peterson v. California*, 1:10-CV-01132-SMS, 2011 WL 3875616, at *3 (E.D. Cal. Sept. 1, 2011); *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd*., 253 F.R.D. 521, 523 (C.D. Cal. 2008) ("defendant Lucent is not entitled to attorney's fees since, before filing the motion, defendant Lucent did not attempt in good faith to obtain the disclosure without court action, as required by Fed. R. Civ. P. 37(a)(5)(A)(i)").  Under these circumstances, even if the Court were to grant plaintiffs' *ex parte* application, an award of expenses would be unjust.

## V.    **CONCLUSION**

Plaintiffs have presented no basis for a protective order here, as all of the noticed topics could lead to discoverable information that a jury might consider appropriate in deciding whether to award Plaintiffs less than $3 million, more than $600 million or anywhere in between.  In any event, there is no basis for sanctions when Defendants should have the opportunity to obtain information to defend and mitigate a damages award that could be as high as almost $600 million, but as low as $750 per work.  For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' *Ex Parte* Application.

Dated:  October 3, 2013            WINSTON & STRAWN LLP


By:  */s/ Erin R. Ranahan*

WINSTON & STRAWN LLP
    Michael S. Elkin
    Thomas Patrick Lane
    Robb C. Adkins

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

17

Jennifer A. Golinveaux
Erin R. Ranahan
Thomas Kearney

ROTHKEN LAW FIRM
Ira P. Rothken
Jared R. Smith

*Attorneys for Defendants*
GARY FUNG and ISOHUNT WEB
TECHNOLOGIES, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543