Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
Thomas Patrick Lane (admitted *pro hac vice*)
tlane@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

Ira P. Rothken (SBN: 160029)
ira@techfirm.net
Jared R. Smith (SBN: 130343)
jared@techfirm.net
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:  (415) 924-4250
Facsimile:  (415) 924-2905

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400

Attorneys for Defendants,
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GARY FUNG, et al.,<br><br>  Defendants. | Case No. CV 06-5578-SVW (JCx)<br>*[Honorable Stephen V. Wilson]*<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF *EX PARTE* APPLICATION TO COMPEL PLAINTIFFS' RESPONSES TO DISCOVERY**<br><br>Discovery Cutoff: None Set<br>Pretrial Conference Date: 10/28/13<br>Trial Dates: 11/5/13 |

## I. INTRODUCTION

On October 2, 2013, Plaintiffs filed a supplemental response in opposition to Defendants' *Ex Parte* Application to Compel Responses to Discovery (the "Application"), Dkt. 640, asking the Court to deny the Application because the parties' meet and confer efforts—and Plaintiffs' belated production of certain chain-of-title documents over the past two weeks—have mooted it. To the contrary, despite Defendants' multiple efforts to reach compromise with Plaintiffs on the issues raised in the Application, the issues have not been resolved, and Plaintiffs have made clear that they will not provide the requested discovery. With the November 5, 2013 trial date fast approaching, and depositions of Plaintiffs' witnesses scheduled to start as early as next week, Plaintiffs' request that the Court now deny the Application and require Defendants to re-file it after further meet and confer is nothing more than a delay tactic to run the clock on Defendants' ability to obtain critical discovery before the damages trial. Defendants respectfully request the Court's assistance in resolving the following critical discovery issues raised in the Application.

## II. IDENTIFICATION AND EVIDENCE OF OWNERSHIP OF PLAINTIFFS' ALLEGED WORKS

Section II of Defendants' Application sought proper identification of Plaintiffs' alleged works and chain of title production. While on September 30—a mere five weeks before trial—Plaintiffs belatedly identified the thousands of works they now claim have been infringed along with the associated copyright registration numbers, Plaintiffs continue to refuse to produce all of the requested chain-of-title related documents, and the documents they have produced are highly redacted impeding review. Particularly in light of the fact that Plaintiffs filed a motion for summary judgment on Monday, September 30, seeking a determination that there are no genuine issues concerning Plaintiffs' ownership of each of the thousands of claimed works, Plaintiffs should be required to produce this discovery immediately.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

### A. Ownership and Chain of Title Documents (Requests for Production 96-101; Interrogatory 10)

Initially, Plaintiffs indicated that they were seeking statutory damages for inducing direct copyright infringement of 4,145 copyrighted works, which they partially identified on September 16, 2013. Despite repeated representations that they would produce documents on September 19, 2013, Plaintiffs produced copyright registrations and recordation documents for only about half of the 4,145 alleged works on that date.[1] Defendants immediately reviewed and pointed out defects in Plaintiffs' production—for example, a substantial number of registrations were missing, and hundreds of the copyright registrations appeared to be owned by third parties and not by Plaintiffs, with no corresponding chain of title documents showing the registration passing to Plaintiffs.

Apparently due to an inability to locate proper chain of title documents for all 4,145 claimed works, and in light of Defendants' pressing for the chain of title discovery, on September 30, 2013, Plaintiffs reduced the number of works for which they are seeking damages to 3,947, withdrawing nearly 200 works and thereby reducing potential statutory damages by nearly $3 million.

But Plaintiffs refused to produce *all* documents concerning ownership of the works at issue, including documents that might cast doubt on their ownership of their alleged works. Instead, Plaintiffs agreed to produce only documents "sufficient to show Plaintiffs' ownership of the Works-in-Suit." During meet and confer discussions Plaintiffs agreed to provide documents concerning any challenges to Plaintiffs' ownership of the claimed works, but have failed to do so to date. Moreover, a number of the purported chain of title Plaintiffs have produced are very heavily redacted, despite being also designated Highly Confidential, impeding Defendants' ability to

---

[1] The 2,101 documents Plaintiffs produced on September 19 is hardly "the substantial part of the actual documents" Plaintiffs claim it was, in light of the fact that, since Defendants filed their *ex parte* Application, Plaintiffs have now produced more than 3,000 additional chain of title documents.

analyze the sufficiency of such documents for establishing chain of title. For example, without knowing the terms of a purported copyright license, Defendants cannot determine whether the license is exclusive and thus whether the putative licensee has standing. There is no basis for Plaintiffs' redactions in light of the Protective Order entered in this case. Defendants wrote to Plaintiffs on September 30, 2013, seeking unredacted versions of these documents, but Plaintiffs have ignored that request and refused to confirm whether they would produce unredacted documents.[2]

Defendants respectfully request that the Court order Plaintiffs to produce all of their ownership and chain of title documents including any that challenge Plaintiffs' ownership of the claimed works (not just those that support Plaintiffs' claim of ownership) in <u>unredacted</u> form, and certify that no additional responsive documents exist.

### B. Copies of the Claimed Works (Request for Production 95)

Plaintiffs also refuse to provide copies of their alleged works that would allow Defendants to compare allegedly infringing files to the works Plaintiffs claim have been infringed. Instead, Plaintiffs apparently think that Defendants should rely on evidence Plaintiffs have put in the record to support their pending summary judgment motion on ownership of all claimed works, namely unauthenticated charts, which concededly relied on "third-party sources, such as IMDB.com, Wikipedia, or even Netflix," to identify thousands of works for which they lacked personal knowledge.[3] *See* Aul Dec. ¶¶ 7-13. Compounding the problem, Plaintiffs fail to identify the particular third-party sources that their reviewers consulted.[4]

---

[2] In light of the redactions to clearly non-privileged agreements with third parties, Defendants also asked Plaintiffs to confirm that they were not withholding otherwise responsive documents on the basis of privilege, or to provide a privilege log immediately. Plaintiffs ignored this request as well.
[3] More than 3,000 of Plaintiffs' alleged works are television episodes. Dkt. 604; Aul Dec. Ex. 1.
[4] Plaintiffs' concede that their investigators matched television episodes (identified in Plaintiffs' List by number and not by name) to copyright registration documents (which identify episodes by name and not by number) by viewing "portions" of episodes and comparing them to a "general sense of the plots" gleaned from reading

3

*Winston & Strawn LLP*
*333 S. Grand Avenue*
*Los Angeles, CA 90071-1543*

Plaintiffs concede they *have* this information, and indeed acknowledge that without this information the analysis of ownership and direct infringements is inadequate. *Id.* ¶ 14 ("If … the reviewer did not indicate what source was used to verify a TV episode … the content file was marked for further review and re-reviewed."). Nonetheless, Plaintiffs fail to provide this information. Without having identifiable copies of Plaintiffs' works, or even basic information about the process by which Plaintiffs purported to identify their own alleged works, Defendants cannot analyze the alleged infringements to determine if the purported downloads by Plaintiffs' expert actually correspond to Plaintiffs' alleged works, or to determine whether, for example, any of the alleged infringements is a fair use.

### III. IDENTIFICATION OF ALLEGED DIRECT INFRINGEMENTS.

Section III of Defendants' Application sought an order requiring Plaintiffs to identify the alleged direct infringements upon which they base their claims of Defendants' secondary infringement, and basic information about such alleged infringements such as the facts and circumstances upon which Plaintiffs base their claims that acts of inducement by Defendants caused the alleged direct infringements, as well as documents and information upon which Plaintiffs base their claims that enhanced damages should be awarded for particular alleged infringements on the basis of Defendants' willfulness.[5] Defendants will need to investigate the facts and circumstance of direct infringement to determine whether any of the allegedly infringing downloads were made by Plaintiffs or their agents; to determine if particular alleged infringements are fair use; to challenge Plaintiffs' arguments that

---

information on third-party websites. Aul Dec. ¶ 12. But Plaintiffs identify the third-party reference they consulted for only *twenty-two* of Plaintiffs' 3,947 works, even though more than 3,000 of the works are television episodes. *See* Aul Dec. ¶ 11.
[5] Although Judge Wilson has indicated he will issue a summary judgment order that Defendants acted willfully as to at least some infringements, that merely means that the jury *may* award statutory damages up to a maximum $150,000, and the Court has not found that any particular acts of Defendants were willful. Plaintiffs have stated that they intend to introduce evidence of specific acts by Defendants to argue for a higher amount of damages, and Defendants must be permitted discovery so that they can rebut Plaintiffs' claims and arguments as to those specific acts.

acts of inducement by Defendants caused particular direct infringements; and to challenge Plaintiffs' arguments that Defendants' acts in connection with any alleged direct infringement should result in statutory damages at the higher end of the range from $750 to $150,000. Because Plaintiffs have stated that they intend to present evidence concerning willfulness at trial to advocate for damages at the higher end of the range, their refusal to provide discovery on the subject is improper and deprives Defendants of the opportunity to rebut—or even investigate—Plaintiffs' claims. Plaintiffs' refusal to identify documents in response to Interrogatory No. 14, stating instead that they intend to list documents on their Trial Exhibit List, is improper: Defendants are entitled to have Plaintiffs specifically identify these documents. Even after Defendants extensively met and conferred with Plaintiffs, Plaintiffs still refuse to respond to this discovery.

Plaintiffs claim they have now belatedly identified alleged direct infringements of their works, by sending Defendants a copy of Defendants' server log data with certain download events removed. Dkt. 640 at 3:4-14. However, Plaintiffs say that they have identified only "exemplar" dot-torrent files and associated download events. *Id.* Plaintiffs refuse to confirm when they will provide a final list of all direct infringements.

### IV. VALUATION OF PLAINTIFFS' WORKS AND PLAINTIFFS' LOST REVENUES

Section IV of Defendants' Application sought basic discovery concerning the value of Plaintiffs' claimed works and their lost revenues. Plaintiffs continue to categorically refuse to respond to such discovery, despite the extensive case law holding that such discovery is key to determining the proper level within the permissible range of statutory damages up to $150,000. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) ((information relevant to informing their determination of statutory damages includes (1) the expenses saved and the profits reaped, (2) the revenues lost by the plaintiff, (3) the value of the

5

copyright, (4) the deterrent effect on others besides the defendant, (5) whether the defendant's conduct was innocent or willful, (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced, and (7) the potential for discouraging the defendant); *accord Eros Entm't, Inc. v. Melody Spot, L.L.C.*, 2005 WL 4655385, at *10 (E.D.N.Y. Oct. 11, 2005); *and see, e.g.,* 4 Nimmer on Copyright § 14.04 [B][1][a] (2005) ("the determination of statutory damages within the applicable limits may turn upon such factors as . . . the revenues lost by the plaintiffs as a result of the defendant's conduct and the infringers' state of mind – whether willful, knowing or innocent"). Statutory damages must "bear some relation to actual damages suffered." *Id.*; *Muppets Studio, LLC v. Pacheco*, CV 12-7303 JGB FFMX, 2013 WL 2456617, at *1 (C.D. Cal. June 6, 2013); *Nexon Am. Inc. v. Kumar*, 2:11-CV-06991-ODW, 2012 WL 1116328, at *7 (C.D. Cal. Apr. 3, 2012); *Autodesk, Inc. v. Flores*, 10-CV-01917-LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011); *Symantec Corp. v. Logical Plus, Inc.*, C 06-7963 SI, 2010 WL 2330388, at *2 (N.D. Cal. June 4, 2010); *Adobe Sys., Inc. v. Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010); *Microsoft Corp. v. Ricketts*, C 06-06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007). Defendants must be allowed the opportunity to present this evidence to the jury to give them a reasoned basis to evaluate the proper level of statutory damages, and Defendants' damages expert cannot finalize his report without such information.

Plaintiffs have agreed to supplement their responses to Interrogatories 17 and 18, which seek information about calculations directly relevant to Plaintiffs' damages and lost revenues, but because they have refused to show Defendants the proposed supplements, Defendants cannot determine whether they are an adequate response.

## V. CONCLUSION

Plaintiffs continue to refuse to respond to critical discovery despite the fact that trial is barely three weeks away. Despite the parties meeting and conferring at length on these issues, they remain unresolved and Plaintiffs have made clear that they will

not provide the requested discovery absent a court order. Plaintiffs' request that Defendants' Application be denied pending further discussions and another round of briefing is entirely impractical in light of the approaching trial date and the fact that the parties have reached an impasse on the issues identified above.

Defendants respectfully request that the Court compel Plaintiffs to immediately provide the following discovery:

- Copies of each of Plaintiffs' alleged works still at issue [Document Request 95];

- *All* ownership and chain of title documents concerning Plaintiffs' alleged works in unredacted form [Document Requests 96-101];

- A date certain for final identification of *all* direct infringements [Document Requests 102 and 110-111, Interrogatory 11];

- Evidence of causation [Interrogatories 12, 13, and 15, Document Requests 103-106] and willfulness [Interrogatories 14 and 20-21, Document Request 108];

- Evidence concerning Plaintiffs' lost revenue, the valuation of Plaintiffs' works, Plaintiffs' computation of any actual or statutory damages, and Plaintiffs' failure to mitigate damages [Interrogatories 16-19 and 22, Document Requests 108 and 112-113].

Dated: October 4, 2013    WINSTON & STRAWN LLP

By: */s/ Erin R. Ranahan*
Michael S. Elkin
Thomas Patrick Lane
Erin R. Ranahan
Jennifer A. Golinveaux
Thomas J. Kearney

ROTHKEN LAW FIRM
Ira P. Rothken
Jared R. Smith

*Attorneys for Defendants*
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.