JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
  sfabrizio@jenner.com
KENNETH L. DOROSHOW (*pro hac vice*)
  kdoroshow@jenner.com
1099 New York Avenue, N.W.
Suite 900
Washington, D.C.  20001
Telephone:  (202) 639-6000
Facsimile:  (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
  gps@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br><br>      *Plaintiffs*,<br><br>    v.<br><br>GARY FUNG, *et. al.*<br><br><br>      *Defendants*. | DISCOVERY MATTER<br><br>The Honorable Jacqueline Chooljian<br><br>Case No. CV-06-05578 SVW (JCx)<br><br>**REPLY BRIEF IN SUPPORT OF *EX PARTE* APPLICATION FOR PROTECTIVE ORDER RE RULE 30(b)(6) DEPOSITIONS – FEES REQUESTED**<br><br>Trial Date:  November 5, 2013 |

# **TABLE OF CONTENTS**

Argument ................................................................................................................ 3

I.      Defendants Should Be Precluded From Asking Questions On Topics
        Subject To An Existing Protective Order And Already Ruled Irrelevant .... 6

II.     Independent of the Existing Protective Order, Plaintiffs Are Entitled To
        A Protective Order To Protect Against Irrelevant And Harassing
        Discovery.......................................................................................................... 6

        a.      Plaintiffs are entitled to a protective order on topics related to
                Plaintiffs' efforts to investigate infringement (Plfs' App. at 6-9) ...... 6

        b.      Plaintiffs are entitled to a protective order on topics related to
                Plaintiffs' alleged use of BitTorrent Technology and topics
                related to marketing and distribution strategy.  (Plfs' App. at 11-
                18) ................................................................................................... 7

        c.      Plaintiffs are entitled to a protective order on topics related to
                Plaintiffs' efforts to send DMCA notices or prevent copyright
                infringement.  (Plfs' App. at 9-11).................................................. 10

        d.      Plaintiffs are entitled to a protective order on the topic related to
                willfulness (Plfs' App. at 20) ........................................................... 11

        e.      Plaintiffs are entitled to a protective order on the other topics
                addressed in plaintiffs' application (Plfs' App. at 21-22)................. 11

III.    The Court Should Award Plaintiffs Their Costs and Attorneys' Fees........ 12

Conclusion .......................................................................................................... 12

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Columbia Pictures Indus., Inc. v. Fung*,
5    No. CV-06-05578 SVW, 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009)
6    ("*Fung I*") ....................................................................................................... 4, 10

7   *F.W. Woolworth Co. v. Contemporary Arts*,
    344 U.S. 228 (1952) ....................................................................................... 8
8

9   *Kamar Intern. v. Russ Berrie & Co., Inc.*,
    829 F.2d 783 (9th Cir. 1987) ......................................................................... 8
10

11  *Nintendo of America, Inc. v. Dragon Pacific Intern.*,
    40 F.3d 1007 (9th Cir. 1994) ......................................................................... 8
12

13  *Peer Int'l Corp. v. Pausa Records, Inc.*,
    909 F.2d 1332 (9th Cir. 1990) ....................................................................... 9

14  *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,
15    562 F.2d 1157 (9th Cir. 1977) ....................................................................... 9

16  **FEDERAL STATUTES**

17  17 U.S.C. 504(c)(2) ............................................................................................. 8, 11

18

19

20

21

22

23

24

25

26

27

28

        With five weeks before trial, Defendants ask this Court to nullify years of litigation and prior discovery rulings in an attempt to subject Plaintiffs to broad discovery on topics already ruled to be irrelevant to this case for all purposes.  It is undisputed that in 2007 this Court issued a protective order covering a broad range of topics in Defendants' Rule 30(b)(6) deposition on the grounds that those topics were irrelevant – not just for purposes of determining Defendants' liability, but for all purposes including damages.[1]  In attempting to persuade the Court to reverse its prior ruling, Defendants rely on irrelevant dicta from the Ninth Circuit on causation and "rehabilitation" to argue that there has been some relevant shift in the legal terrain.  But Judge Wilson has expressly held, following remand from the Ninth Circuit, that there are no causation issues left in this case and Defendants have not rehabilitated with respect to the infringements at issue in this suit, which all took place before the injunction issued.  Defendants fail to give any colorable argument that the Court should revisit its prior ruling.

        Even evaluated *de novo*, Defendants' current discovery requests should be rejected.  Defendants contend they should be entitled to discovery into actual damages, but here Plaintiffs have elected *statutory* damages under the Copyright Act.  The very purpose of statutory damages is to allow a plaintiff not to be subjected to burdensome discovery into actual damages.  This rationale applies with even greater force here where Plaintiffs have disclaimed any intent to quantify their actual damages in this case, in part because Defendants violated a Court Order

---

[1] The Court also struck other topics—not at issue in this application—because they applied more appropriately to the damages phase of the case.  Plaintiffs have agreed to produce corporate witnesses concerning such non-objectionable damages-related topics including *inter alia*:  (i) their ownership of all of the Works in Suit (Current Notice Topics 2-3, 31, 35); (ii) "Infringements of the allegedly infringed works for which You seek damages" (Current Notice Topic 4); and (iii) "Damages arising from the allegations in Plaintiffs' Complaint" (Current Notice Topic 19).

1  requiring them to produce Server Log Data that would have allowed Plaintiffs to
2  assess their actual damages via expert testimony.  Indeed, if the Court grants the
3  pending request for evidentiary sanctions, then much of the disputed discovery
4  would be irrelevant for that independent reason.

5      Even apart from the pending motion for sanctions, during the September 30
6  hearing before Judge Wilson, the Court ruled that Defendants were willful infringers
7  and questioned whether actual damages have any place in a statutory damages case,
8  especially when willfulness has been found.  Transcript of Hearing, Sept. 30, 2013
9  ("Sept. 30 Hearing Tr.") at 5:2-14 ("There are a few courts which have said that you
10 can consider actual loss in considering the measure of statutory damages, but no
11 case that I have found has said you must.  And the question has to also be
12 considered in terms of the fact that there is a finding of willfulness.  Now,
13 willfulness involves issues that don't necessarily relate to loss.  It is punitive.  So to
14 the extent that there is some authority that actual loss is relevant to statutory
15 damages, I am wondering whether that would, to the extent that that is good
16 authority, whether or not that would be equally applicable where there was
17 willfulness."); *id.* at 11:9-12 ("there isn't persuasive authority" saying actual
18 damages are an appropriate consideration); *id.* at 38:25-39-3 (emphasizing that
19 Court may not "open the gates to actual damages").  Unless Judge Wilson concludes
20 both that actual damages are relevant and that Defendants can take discovery on this
21 issue, the court should not force Plaintiffs to submit to this discovery.[2]

22     Finally, on August 7 of this year, the Court set this case for a trial to begin on
23 November 5 – *less than three months later*.  Clearly the Court understood (and in
24

25 [2] Defendants' repeated claim that Plaintiffs seek a large statutory damages award
26 does not justify their unreasonable discovery demands.  At best, Defendants have
   the financial wherewithal to pay a few million dollars (and Defendants' counsel has
27 indicated that it is far less than that).
28

fact was told) that some discovery remained on damages issues. But, equally clearly, Judge Wilson did not contemplate the extensive, months-long discovery envisioned by Defendants' current demands. Emphasizing this point, Judge Wilson has ***twice*** since August 7 refused even to consider Defendants' "emergency" motions to adjourn the trial due based on the amount of discovery that Defendants wished to conduct. Respectfully, the impending damages trial should guide consideration of Defendants' discovery requests.[3]

## ARGUMENT

### I.   Defendants Should Be Precluded From Asking Questions on Topics Subject To An Existing Protective Order And Already Ruled Irrelevant.

As explained in Plaintiffs' opening brief, the Current Notice Topics covered by the Protective Order include topics concerning: Plaintiffs' investigation of Defendants' illegal behavior; whether Plaintiffs expended sufficient effort in halting Defendants' illegal behavior; Plaintiffs' use of BitTorrent, and Plaintiffs' distribution methods. Plfs' App. at 6-18. It is undisputed that the Court struck these categories as being irrelevant to both the liability phase, and the damages phase. It is also undisputed that the Current Notice contains the same or comparable topics.

_____

[3] Some of the core issues in dispute relating to actual damages and mitigation are currently the subject of pending motions before Judge Wilson or briefing that was just ordered by Judge Wilson. The Court will hear those issues on October 28 in connection with the Pretrial Conference. As a practical matter, the document discovery Defendants seek could not physically be produced prior to October 28. In light of this reality, this Court should defer to the existing briefing before Judge Wilson on these issues, by granting the pending application for a protective order to allow the upcoming depositions to go forward on undisputed topics. Even if Judge Wilson were to rule that the issues were marginally relevant, it seems likely that Defendants would not be entitled to the invasive discovery they seek. In the unlikely event Judge Wilson were to conclude that the issues have relevance and Defendants are entitled to further discovery, then Judge Wilson can, at that time, adjourn the trial to accommodate the discovery.

In an attempt to circumvent this Court's ruling, Defendants first argue that there is an open question as to causation with respect to the works in suit and cite a portion of the Ninth Circuit's opinion addressing Defendants' potential liability bases on their *trackers*. Plfs' App. at 1, 3, 4, 15. To be clear: the Ninth Circuit was discussing whether Defendants could be liable for causing infringements when a Dot-torrent file was tracked by Defendants' Trackers but **not** downloaded from Defendants' Websites. However, Judge Wilson already has had briefing on this very issue. In response to the Court's inquiry, *Plaintiffs have disclaimed any damages based solely on Defendants' trackers.* Plfs' Br. Re Damages (ECF # 543), at 6. For that reason, Judge Wilson already has ruled that "for BitTorrent files downloaded from Defendants' websites, no causation dispute exists: *Defendants have caused the infringement.*" Order, July 3, 2013 (ECF # 527), at 3 & n.2. Defendants just disregard Judge Wilson's definitive ruling on this issue.

Next, Defendants take the remarkable position that the Court's liability determination concerned only the 44 representative works annexed to the complaint and that they are entitled to relitigate *everything* – including the Protective Order and, apparently, the Court's liability filing – for every single other work. Defs' Br. at 15. While the Court did bifurcate liability and damages, it <u>did not limit</u> the scope of its liability ruling to the works identified in the complaint. To the contrary, the Court expressly rejected Defendants' repeated arguments that Defendants could only be liable (and therefore subject to damages) for individual acts of inducement on a work-by-work basis. *See, e.g.*, *Fung I*, 2009 WL 6355911, at *10. Judge Wilson confirmed this explicitly at the hearing on September 30, where he made clear (in response to Defendants' inquiry) that the Court found Defendants to be "willful" infringers of ***all the works in suit*** for the upcoming damages trial, not just the 44 exemplar works that were at issue in the liability phase. Sept. 30 Hearing Tr. at 3:12-21 ("Is your ruling with respect to the 44 works, or is your ruling with

respect to now the 4100 works?  THE COURT: My ruling there is across the board because that was a uniform way of doing things.").[4]

Finally, Defendants argue that the Court should reconsider the Protective Order because they may have "rehabilitate[d]."  Defs' Br. at 15-16.  As Judge Wilson recognized at the September 30 hearing, any claim by Defendants of their supposed "rehabilitation" is irrelevant, because – as Defendants are fully aware – Plaintiffs are not relying on *any* infringements that took place after the Court's permanent injunction decision.  Sept. 30 Hearing Tr. at 6:12-18 ("The plaintiff is limiting its damages to the instances of infringement prior to the injunction … And so, in that light, it is hard to understand how the argument that mitigation of damages fits.").  That recent ruling simply confirmed what the Court had already ruled:  Defendants did not change their infringement-inducing conduct until after the Court issued the permanent injunction decision.  ECF # 426, at 7-8.

---

[4] Defendants, moreover, have fully understood since the inception of this case that the damages phase case would encompass additional works—this is the very point of bifurcation.  This was discussed at the initial case management conference in this matter and ***agreed*** by the parties and Judge Wilson.  While that initial case management conference was not recorded, with the filing of their more definite statement as to damages/direct infringement (which was ordered at the conference), Plaintiffs confirmed the direction given by the Court at the conference.  That filing was made contemporaneously with the conference and Defendants never objected or suggested the contrary.  *See* Plaintiffs' More Particular Statement of the Direct Infringements for which Defendants are Liable, ECF # 37, at 5 n.1 ("Per the Court's direction at the Status Conference, the secondary liability aspects of this case will be determined with reference to the representative works listed in Exhibit A.  A later phase of the litigation will determine the ***extent of the infringing activity*** and resulting damages and other considerations" (emphasis added)).  This Court has since directed Plaintiffs to identify all such works (not merely those included as part of its initial filing).  ECF # 554, at 4.  Clearly, the Court did not issue such orders or schedule a trial to commence on November 5 based on the belief that Defendants' could reopen broad discovery into matters already deemed irrelevant to the case.

**II.     Independent of the Existing Protective Order, Plaintiffs Are Entitled to a Protective Order to Protect Against Irrelevant and Harassing Discovery.**

Defendants of course want to disregard the existing protective order, but this Court should not.  However, even independent of the existing protective order, Plaintiffs would still be entitled to relief from Defendants' improper discovery demands.  With regard to each of the categories identified in Plaintiffs' ex parte application, Defendants' discovery requests are irrelevant, overbroad, and harassing.

a.     Plaintiffs are entitled to a protective order on topics related to Plaintiffs' efforts to investigate infringement (Plfs' App. at 6-9).

As set forth in Plaintiffs' opening brief, discovery with respect to Plaintiffs' investigative techniques "to monitor Defendants' website" is irrelevant to any damages issues in this case.  Defendants' opposition presents a scattershot of speculative arguments about why discovery on these topics might be permissible:

First, Defendants assert that whether Plaintiffs "devoted any resources to investigating or monitoring the sites . . . could directly impact the economic analysis and actual damages."  Defs' Br. 13.  But Defendants do not even purport to explain how the funds devoted to internal investigations have any rational relationship to actual damages.  And that would be the case if actual damages were at issue in this case.  But, here, Plaintiffs have elected statutory damages for all the works in suit.[5]

---

[5] Defendants also argue that they should be "permitted to ask a witness who knows how they identified the alleged infringements they are claiming …."  Defs' Br. 13.  But Defendants clearly are not entitled to the mental impression work product of outside litigation counsel of in-house counsel.  Beyond that, however, to the extent Defendants want to ask about the process of identifying the works in suit, ***Plaintiffs have agreed to produce a witness on this very topic***.  *E.g.*, Current Topics 4, 29.  Defendants Topics 6 and 34 go far beyond this relevant discovery and cover Plaintiffs' investigative work product regarding any internal analyses of Defendants' websites over the course of the past seven years.

Second, Defendants suggest that Plaintiffs secretly have in their *possession* Defendants' internal, proprietary server logs based on their "spidering," and that Plaintiffs' repeated discovery motions were simply a ruse to pretend they did not already have this data.  Defs' Br. 13-14.  This is both baseless and irrelevant.  As Defendants are fully aware based on the extensive litigation before Your Honor regarding the Server Log Data, Defendants have exclusive possession of log data for their own websites.  Plaintiffs can observe what is publicly visible on the websites (such as the presence of dot-torrent files for Plaintiffs' works) but cannot access Defendants' data as to the number of times each such file has been downloaded by Defendants' users, *i.e.*, Plaintiffs have no access to this data.  Defendants' false (and unsupported) arguments to the contrary cannot support discovery at all, much less with respect to Plaintiffs' highly sensitive anti-piracy investigations.

Finally, Defendants argue they should be allowed to seek discovery on whether "Plaintiffs have been diligent in investigating and notifying Defendants" in an effort to ascertain actual damages.  Defs' Br. 13.  As Plaintiffs explain below, *infra*, at 7-10, Defendants' fishing expedition into Plaintiffs' actual damages should be precluded.  Defendants already know each instance in which any Plaintiffs provided a notice to Defendants of copyright infringement of any work.  But even if this were not the case, Plaintiffs' investigative practices have no plausible relationship to any quantification or analyses of Plaintiffs' actual damages.

      b.  <u>Plaintiffs are entitled to a protective order on topics related to</u>
<u>Plaintiffs' alleged use of BitTorrent Technology and topics related to</u>
<u>marketing and distribution strategy.  (Plfs' App. at 11-18).</u>

Defendants argue that *twelve* of the Stricken or Limited topics in their Current Notice, ranging from Plaintiffs' use of BitTorrent technology to Plaintiffs' distribution and marketing strategy, are permissible because Defendants are entitled to discovery on Plaintiffs' actual damages.  Defs' Br. at 8-11.  Such arguments,

**REPLY BRIEF IN SUPPORT OF**
**EX PARTE APPLICATION**
**RE RULE 30(b)(6) DEPOSITION**

however, simply cannot support the requested discovery given the posture of this case, especially with a damages trial on statutory damages five weeks away.

As noted above, Defendants fail to address the fundamental point: Plaintiffs have the absolute right to elect statutory damages under the Copyright Act, 17 U.S.C. § 504(c)(2).  And the purpose of permitting plaintiffs to elect statutory damages is to *prevent* plaintiffs from having to engage in the arduous discovery process of determining actual damages.  For instance, in *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 234 (1952), the Supreme Court upheld a statutory damages award, on the ground that an actual damages analysis would require the plaintiff to "audit the whole Woolworth business."  *Id.* at 233.  Here, Defendants seek to audit the entire business of the six movie studio plaintiffs, with grossly overbroad requests "regarding revenue, profits, and licensing."  Defs' Br. at 8.  The whole point of statutory damages is to ensure that plaintiffs do *not* have to do this. [6]

Furthermore, Plaintiffs' actual damages are irrelevant because statutory damages "need not reflect actual damages."  *Kamar Intern. v. Russ Berrie & Co., Inc.*, 829 F.2d 783, 787 (9th Cir. 1987).  In fact, even when the Plaintiffs cannot prove *any* damages, and even when the Defendants did not make *any* profits, statutory damages are still authorized.  *Woolworth*, 344 U.S. at 234. The purpose of statutory damages may be to punish the infringer, or to discourage other future infringers.  *Nintendo of America, Inc. v. Dragon Pacific Intern.*, 40 F.3d 1007, 1011 (9th Cir. 1994).  Here, Defendants have been adjudicated to be *willful* infringers, and in the context of willful infringement, the Ninth Circuit has held that a plaintiff

---

[6] With specific regard to Current Notice Topic 20, which requests discovery on Plaintiffs' revenues, indistinguishable case law specifically holds that the amount of revenue earned by the plaintiff is irrelevant to statutory damages and not discoverable.  Plfs' App. at 20-21.  Defendants do not address this case law or explain the relevance of Plaintiffs' revenues to Plaintiffs' actual damages.

REPLY BRIEF IN SUPPORT OF
EX PARTE APPLICATION
RE RULE 30(b)(6) DEPOSITION

who suffers only *nominal* actual damages can obtain *maximum* statutory damages. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir. 1990). Accordingly, Defendants' attempt to establish that Plaintiffs' actual damages are low is irrelevant and cannot be justified in light of the discovery burden.[7] Plaintiffs already have advised Defendants that Plaintiffs do not possess documents concerning the actual harm caused by Defendants' websites. As stated, in the event Judge Wilson rules on October 28 that actual damages have any relevance at all in a statutory case where the Defendants have been ruled to be "willful" infringers, then, at that time, the Court can consider whether a jury instruction is appropriate.

Finally, Defendants' arguments concerning actual damages underscore that the Court should grant Plaintiffs' pending motion for evidentiary sanctions precluding Defendants from presenting any argument to the jury that Plaintiffs have not offered evidence of actual damages. See ECF # 558, at 12. There is no dispute that a timely production of Defendants' Website data would have allowed Plaintiffs to conduct an analysis of actual damages. *See id.* at 11-12. Having violated a Court Order to produce this key evidence every two weeks throughout this case,

---

[7] Defendants rely unpublished district court case law, suggesting that actual damages might be one of many sub-factors a court can consider in assessing actual damages. Defs' Br. at 9-11. But this case law certainly does not establish that Defendants are entitled to bully Plaintiffs into actual damages discovery *when Plaintiffs have disclaimed the use of any actual damages theory*. Ninth Circuit case law holds that actual damages can serve as a *floor* for statutory damages, and a factfinder can go up – but not down – from that floor in granting statutory damages. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1178 n.7 (9th Cir. 1977) (1909 Act) (noting that "[u]nder no circumstances" can statutory damages be less than actual damages, and statutory damages "can only benefit, but not hurt, the aggrieved party"). Thus, it may be that a *plaintiff* can introduce actual damages evidence in an effort to establish a floor for statutory damages. But no case has ever suggested that a *defendant* may unilaterally turn a case into an actual damages case, and take protracted discovery, when the *plaintiff* has elected statutory damages and disclaimed any actual damages argument

1   Defendants should not be allowed to conduct incredibly broad discovery into

2   Plaintiffs' confidential distribution and licensing arrangements to support their

3   argument that Plaintiffs have failed to show actual damages.  Indeed, this is exactly

4   the kind of prejudice that Plaintiffs' proposed evidentiary sanction would prevent.

5           c.   Plaintiffs are entitled to a protective order on topics related to

6                Plaintiffs' efforts to send DMCA notices or prevent copyright

7                infringement.  (Plfs' App. at 9-11).

8           Defendants assert that they have "a robust copyright policy modeled after the

9   DMCA under which Plaintiffs could have provided notice concerning alleged

10  infringements of their works."  Defs' Br. at 12.  This is an open declaration that

11  Defendants intend to relitigate issues they have already lost.  There is simply no way

12  to reconcile Defendants' current position with Judge Wilson's findings that

13  "Defendants' intent to induce infringement is overwhelming and beyond reasonable

14  dispute," *Fung I*, 2009 WL 6355911 at *11.  These specific findings further come in

15  the context of Judge Wilson having specifically rejected all attempt by Defendants

16  to invoke the DMCA as a defense in this case.  *Id.* at *15-18.[8]

17          Defendants assert that notwithstanding these findings, Plaintiffs could have

18  mitigated their damages by sending DMCA notices.  Of course, this argument is

19  premised on the theory that Defendants had some kind of legal obligation to

20  mitigate their damages by sending DMCA notices, which is directly contrary to

21  copyright law.  Plfs' App. at 11.  In a pending summary judgment motion to dismiss

22  _____

23  [8] Defendants suggest that even though the DMCA safe harbor is unavailable,
    Plaintiffs' alleged failure to send DMCA notices might somehow reduce statutory

24  damages.  Defendants cite no authority for that counterintuitive proposition.  Cases
    have unanimously held that plaintiffs have no legal obligation to stop copyright

25  infringement, and any discovery into Plaintiffs' prevention efforts would thus be

26  irrelevant.  *See* Plfs' App. at 11.  Defendants ignore this authority in their brief.

27

28

1  Defendants' "failure to mitigate" affirmative defense altogether, Plaintiffs explain

2  that mitigation is a concept that applies only to a claim for actual damages; a failure

3  to mitigate has no relevance to (and is not legally cognizable as a defense to) a claim

4  for statutory damages – which is the only claim in the upcoming damages trial.

5          d.  <u>Plaintiffs are entitled to a protective order on the topic related to</u>

6              <u>willfulness (Plfs' App. at 20).</u>

7          As set forth in Plaintiffs' application, Judge Wilson already has determined

8  that Defendants' conduct is willful as a matter of law.  Undeterred, Defendants

9  argue that this topic should remain in the case because Judge Wilson is still

10 considering how the jury instructions should address the issue of willfulness.  Defs'

11 Br. at 12.  But Topic 25 is not about willfulness.  Instead, it is about Defendants'

12 affirmative defense of *innocent infringement*, which requires Defendants to

13 "sustain[] the burden of proving, and the court finds, that such infringer was not

14 aware and had no reason to believe that his or her acts constituted an infringement

15 of copyright."  17 U.S.C. § 504(c)(2).  Such a defense is barred by the court's

16 finding that Defendants' infringement was willful.  Indeed, Judge Wilson indicated

17 in the clearest terms that his finding Defendants to be "willful" infringers fully

18 disposed of Defendants' affirmative defense of "innocent" infringement.

19         e.  <u>Plaintiffs are entitled to a protective order on the other topics addressed</u>

20             <u>in Plaintiffs' application (Plfs' App. at 21-22).</u>

21         With regard to Current Notice Topic 21 (which addresses Plaintiffs'

22 organizational structure), Defendants speculate that some anonymous member of a

23 "street marketing" team associated with one of the Plaintiffs decided to give away

24 one of Plaintiffs' full length motion pictures or television shows for unlimited

25 downloading over the Internet.  Defs' Br. at 14.  This is pure speculation – and

26 reflects a lack of understanding of how movies and television shows are promoted

27 (the experience of Defendants' counsel is with sound recordings, not motion

28 pictures; but their knowledge of "street" marketing of recordings has no relevance to

**REPLY BRIEF IN SUPPORT OF
EX PARTE APPLICATION
RE RULE 30(b)(6) DEPOSITION**

movies and television).  Defendants' gratuitous and unsupported assertion cannot justify discovery into the extremely broad topic of "Your organizational structure, including divisions and entities of any kind, and the identity of its officers, directors, and employees."  For the reasons set forth in Plaintiffs' opening brief and not addressed by Defendants, Plfs' App. at 16-27, the Court should limit such topics as per the earlier protective order to questions concerning whether plaintiffs authorized the general and unrestricted distribution of the works in suit.[9]  Plaintiffs have already attested in this case that for the works in suit no such general and unrestricted distribution of the works has ever been authorized.

## III.     The Court Should Award Plaintiffs Their Costs And Attorneys' Fees

Defendants' attempts to relitigate issues on which they have lost must stop. Defendants barely even acknowledge they are already subject to a protective order – their efforts to argue that circumstances have changed are misleading at best.  *Supra*, at 5.  And Defendants' attempt to explode discovery in a manner inconsistent with Judge Wilson's schedule should not be countenanced.  Plaintiffs should be awarded costs and attorneys' fees for the cost of precluding Defendants' frivolous topics.

## <u>CONCLUSION</u>

For the foregoing reasons, a protective order in the form of the proposed order should be granted, and Plaintiffs should be awarded their costs and reasonable attorneys' fees incurred in making this application.

---

[9] Defendants offer no response to Plaintiffs' objections to Current Notice Topic 20 (Plaintiffs' revenues), Plfs' App. at 20-21, or Current Notice Topic 23 (Plaintiffs' conversations with Defendants), Plfs' App. at 23.  Accordingly, Defendants have waived any arguments that they can pursue these topics.

REPLY BRIEF IN SUPPORT OF
EX PARTE APPLICATION
RE RULE 30(b)(6) DEPOSITION

1

2   Dated:  October 4, 2013              Respectfully submitted,

3                                        JENNER & BLOCK LLP

4
                                         By: /s/ Gianni Servodidio
5                                        Gianni Servodidio

6
                                         STEVEN B. FABRIZIO
7                                        GIANNI P. SERVODIDIO
8                                        KENNETH L. DOROSHOW
                                           JENNER & BLOCK LLP
9
                                         KAREN R. THORLAND
10                                       FARNAZ M. ALEMI
11                                         MOTION PICTURE ASSOCIATION OF
                                           AMERICA
12                                       15301 Ventura Boulevard
13                                       Building E
                                         Sherman Oaks, CA 91403
14
15                                       *Attorneys for Plaintiffs*
16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY BRIEF IN SUPPORT OF
EX PARTE APPLICATION
RE RULE 30(b)(6) DEPOSITION**