JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
 sfabrizio@jenner.com
KENNETH L. DOROSHOW (*pro hac vice*)
 kdoroshow@jenner.com
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001
Telephone: (202) 639-6000
Facsimile: (202) 661-4823

GIANNI P. SERVODIDIO (*pro hac vice*)
 gps@jenner.com
919 Third Avenue, 37th Floor
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., *et. al.*<br><br>                 Plaintiffs,<br>      v.<br>GARY FUNG, *et. al.*<br><br>                 Defendants. | Case No.  CV-06-05578 SVW (JCx)<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT OWNERSHIP, CAUSATION, AND DIRECT INFRINGEMENT**<br><br>Date: October 28, 2013<br>Time: 1:30 PM<br>Ctrm: 6<br>Judge: The Hon. Stephen V. Wilson<br><br>(REDACTED VERSION) |

Plaintiffs hereby move for summary judgment establishing that Plaintiffs own, and Defendants are liable for the direct infringement of the 3,947 copyrighted works identified in the list appended hereto as Exhibit 1 to the Aul Declaration (the "MSJ Works").[1]

## BACKGROUND

In *Columbia Pictures Indus., Inc. v. Fung*, No. CV-06-05578 SVW (JCx), 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009), this Court concluded that Defendants are liable for inducing copyright infringement. The Ninth Circuit affirmed. 710 F.3d 1020 (9th Cir. 2013). On remand, this Court has ruled that, to establish causation and direct infringement for each copyrighted work for which they seek statutory damages, "Plaintiffs will need to prove that, for each work, they 1) owned the copyright; and 2) that an *American* user downloaded a Dot-Torrent file of that work from one of Defendants' websites." Order, Aug. 7, 2013, ECF # 554, at 4 (emphasis in original); *see also* Order, July 3, 2013, ECF # 527, at 3 n.2 ("for BitTorrent files downloaded from Defendants' websites, no causation dispute exists: Defendants have caused the infringement"). Both elements are plainly met here.

First, there is no genuine dispute of fact that Plaintiffs own each of the MSJ Works. The official certificate of copyright registration for each work and the chain

---

[1] On September 16, 2013, at the Court's direction, Plaintiffs file a listing of works in suit, identifying 4,145 of Plaintiffs' copyrighted works (the "September 16 List"). ECF # 604. The MSJ Works that are the subject of this Motion are slightly fewer in number. Defendants' untimely production of website server log data, which is the subject of a separate motion for sanctions before the Magistrate Judge, has substantially hampered the process of analyzing the full extent of Defendants' infringement of Plaintiffs' copyrighted works. That process is continuing. However, because Plaintiffs desire to maintain the November 5, 2013 damages trial date, and in the hope of streamlining the trial itself, Plaintiffs are prepared to limit their request for statutory damages to the fewer number of MSJ Works that are the subject of this Motion.

of title documents Plaintiffs have produced to Defendants prove as much beyond credible dispute. Moreover, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ These facts establish as a matter of law that Defendants are liable for the direct infringement of each MSJ Work.

Determining these issues on summary judgment will substantially streamline the November 5, 2013 trial in this matter. It will avoid the need to call eight or nine separate witnesses on these issues, and will avoid potentially having to present the jury with individualized evidence as to thousands of copyrighted works. The trial will then focus, as it should, on the jury's consideration of the quantum of statutory damages that should be awarded for each copyrighted work that Defendants have infringed.

## ARGUMENT

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Once the moving party has met its initial burden, the responding party must "identify specific facts that show a genuine issue for trial." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 983 (C.D. Cal. 2006) ("*Grokster IV*"). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000); *see also Grokster IV*, 454 F. Supp. 2d at 983. "Only genuine disputes – where the evidence is such that a reasonable jury could return a verdict for the nonmoving party – over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Grokster IV*, 454 F. Supp. 2d at 983 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As shown below, there is no genuine dispute here that, for each of the MSJ Works, (1) Plaintiffs own the copyright in the work, and (2) a user in the United States downloaded a Dot-Torrent file for the work from Defendants' websites.

## I. Plaintiffs Own the Copyright for Each of the MSJ Works.

Defendants cannot credibly dispute that Plaintiffs, the world's major motion picture studios, own the copyrights for each of the MSJ Works, based on the documentation Plaintiffs have produced to Defendants. For most of these works, one of the Plaintiffs-in-suit is listed by name directly on the official certificate of copyright registration maintained by the United States Copyright Office. *See* Statement of Uncontroverted Facts, dated September 30, 2013 ("SUF") ¶ 1. Thus, for example, Warner Bros. Entertainment Inc. is a Plaintiff and is asserting infringement of its major motion picture "*Harry Potter and the Half-Blood Prince*," which is work number 3,352 on Exhibit 1 to the Aul Declaration. The official Certificate of Registration (Number PA 1-647-906), which was produced to Defendants, reveals the following:

"TITLE OF THIS WORK: Harry Potter and the Half-Blood Prince"

\* \* \*

"COPYRIGHT CLAIMANT(S): Warner Bros. Entertainment Inc."

*See* Declaration of Francis L. Aul, submitted herewith ("Aul Decl."), Ex. 2 (U.S. Copyright Office Certificate of Registration No. PA 1-647-906). This is *prima facie* evidence that Plaintiffs own these copyrights. 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *United Fabrics Intern., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (same); *Island Software and*

*Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (court entitled to take judicial notice of copyright registrations as proof of copyright ownership); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1100 (S.D. Cal. 2012) (taking judicial notice of registration and holding that ownership had been established based on registration).

For the remainder of the MSJ Works, Plaintiffs acquired ownership of the copyright through written assignments or transfers of title. *See* SUF ¶ 1; *Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*, No. 95-36192, 116 F.3d 484, 1997 WL 303244, at *3 (9th Cir. 1997) (unpublished table opinion) (transfer of copyright ownership can be established by written document signed by owner or agent). Most times the acquisition involved a direct transfer from the claimant in the Certificate of Registration to the Plaintiff-in-suit; other times it involved multiple transfers. Regardless, Plaintiffs have produced to Defendants documentation demonstrating a complete and unbroken chain of title. To illustrate with one of the more involved chains of title among the MSJ Works, Plaintiff Warner Bros. Entertainment Inc. is asserting infringement of the popular motion picture "*Analyze That*," starring Robert De Niro and Billy Crystal (work number 2,541 on Exhibit 1 to the Aul Declaration). The official Certificate of Registration (Number PA 1-195-956), which was produced to Defendants, reveals the following:

"TITLE OF THIS WORK: Analyze That"

\* \* \*

"COPYRIGHT CLAIMANT(S): WV Films II LLC"

*See* Aul Decl. Ex. 3 (U.S. Copyright Office Certificate of Registration No. PA 1-195-956). WV Films II LLC is not a Plaintiff-in-suit. However, official documents, each of which was properly recorded with and maintained by the U.S. Copyright Office, reflect the assignment of the rights to "*Analyze That*" to Plaintiff Warner Bros. Entertainment Inc. Specifically:

- WV Film II LLC assigned the rights to "Warner Bros., a Division of Time Warner Entertainment Company, L.P." *See* Aul Decl. Ex. 4 (U.S. Copyright Office Certificate of Recordation, Volume 3492, Page 694: "This Memorandum dated December 5, 2002 confirms that for value received, the undersigned, WV FILMS II LLC … has granted and licensed under copyright to WARNER BROS., a division of Time Warner Entertainment Company, L.P. … the exclusive right to market, distribute and otherwise exploit the theatrical motion picture entitled 'ANALYZE THAT'").

- Time Warner Entertainment Company, L.P. subsequently assigned the rights to the movie to "Warner Communications Inc." *See* Aul Decl. Ex. 5 (U.S. Copyright Office Certificate of Recordation, Volume 3492, Pages 133-215, at 1-4, 6 & 123: "COPYRIGHT ASSIGNMENT dated as of March 31, 2003 made by Time Warner Entertainment Company, L.P. . . . in favor of Warner Communications, Inc." for multiple works, including *Analyze That*).

- Warner Communications Inc. immediately assigned the rights to the Plaintiff-in-suit, "Warner Bros. Entertainment Inc." *See* Aul Decl. Ex. 6 (U.S. Copyright Office Certificate of Recordation, Volume 3492, Pages 216-298, at 1-4, 5 & 123: "COPYRIGHT ASSIGNMENT dated as of March 31, 2003 made by Warner Communications, Inc. . . . in favor of Warner Bros. Entertainment Inc." for multiple works, including *Analyze That*).

This sort of chain of title documentation fully proves Plaintiffs' ownership of the MSJ Works. *See* Nimmer on Copyright § 12.11[C] ("Once plaintiff . . . submit[s] the certificate that he himself filed, or prov[es] his chain of title from the previous registrant[], the burden shifts to the defendant to establish the invalidity of plaintiff's title from the author.").

The copyright ownership evidence for each of the MSJ Works follows the same pattern: either the official Certificate of Registration on its face identifies the

1  Plaintiff-in-suit as the owner by name, or Plaintiffs have produced both the
2  Certificate of Registration and chain of title documentation showing the
3  assignment(s) from the Claimant on the Certificate of Registration to the Plaintiff-
4  in-suit.
5      Because there can be no genuine dispute as to these facts, Plaintiffs have
6  established their ownership of each of the MSJ Works listed on Exhibit 1 of the Aul
7  Declaration.[2]

## II. A Dot-Torrent File For Each MSJ Work Was Downloaded From Defendants' Websites By A User In The United States.

To verify that a Dot-Torrent file for each MSJ Work was downloaded from Defendants' websites by a user in the United States, Plaintiffs:



---

[2] Rather than submitting voluminous documents for the MSJ Works, each Plaintiff has submitted a declaration summarizing the basis for its ownership of each of its respective MSJ Works. *See* SUF ¶ 1. Plaintiffs, moreover, have produced all of the underlying documents in discovery, each of which is admissible as either a business record or a public record, to Defendants. Therefore, the Court may rely on these summaries in lieu of the underlying documents themselves. *See* Fed. R. Evid. 1006 ("proponent may use a summary … to prove the content of voluminous writings … that cannot be conveniently examined in court"); *Trustees of Operating Engineers Pension Trust v. Smith-Emery Co., Inc.*, 906 F. Supp. 2d 1043, 1067-69 (C.D. Cal. 2012) (plaintiffs may use Rule 1006 chart to support summary judgment motion, as long as underlying documents are admissible and were produced in discovery). Of course, should the Court wish to see the underlying documents, Plaintiffs are prepared to submit them at the Court's request.

- Downloaded a Dot-Torrent file for each MSJ Work and manually verified that the associated content file (*i.e.*, the movie or television show) is a full-length, infringing copy of the corresponding MSJ work.

*See generally*, Declaration of Bruce J. Ward, submitted herewith ("Ward Decl.") ¶¶ 5-21; Aul Decl. ¶¶ 3-15. As a result, there cannot be any genuine dispute that, for each MSJ Work, a user in the United States downloaded a corresponding Dot-Torrent file from Defendants' websites.



Thus, Defendants' own data

establish beyond dispute that, for each of the MSJ Works, a corresponding Dot-Torrent file was downloaded from Defendants' websites. *See* SUF ¶ 2.

[text redacted] *Fung*, 2009 WL 6355911 at *9 n.16 (relying on IP address geolocation analysis; "Defendants' own expert has opined that IP-based location analysis is highly accurate"). Thus, it cannot be disputed that, in every case, Dot-Torrent files for the MSJ Works were downloaded by U.S. users – in most cases thousands of times. SUF ¶ 2.

3. Finally, Plaintiffs themselves downloaded Dot-Torrent files for each MSJ Work from Defendants' websites, which resulted in the downloading of the actual

---

[3] [footnote text redacted]

content file (the movie or television show) associated with the Dot-Torrent file. SUF ¶ 2; Aul Decl. ¶¶ 3-8; Ward Decl. ¶¶ 10-16. Plaintiffs then manually viewed each downloaded movie or television show to verify that the Dot-Torrent file in fact results in the downloading of a full-length infringing copy of the corresponding MSJ Work. SUF ¶ 2; Aul Decl. ¶¶ 3-5, 9-15. For example, Plaintiffs downloaded the Dot-Torrent file named "Harry.Potter.And.The.Half. Blood.Prince.2009.DvDRip-FxM" from Defendants' website, which resulted in the automatic downloading of the associated content file; Plaintiffs then opened the content file and manually observed that it was indeed a full-length version of the copyrighted motion picture "*Harry Potter and the Half-Blood Prince*." While it is typically obvious from just the name of a Dot-Torrent file whether the file corresponds to one of Plaintiffs' works (as reflected in the "Harry Potter" illustration above), to eliminate any doubt, Plaintiffs downloaded and manually verified each MSJ Work. *Id.*

Plaintiffs followed this general procedure for each of the MSJ Works.

## CONCLUSION

In sum, Plaintiffs have confirmed beyond genuine dispute that Plaintiffs own copyrights in each of the MSJ Works and that, for each such work, a user in the United States downloaded a corresponding Dot-Torrent file from one of Defendants' websites. By the terms of the Court's August 7, 2013 Order, Plaintiffs have established ownership, causation, and direct infringement of each MSJ Work. Plaintiffs' motion for summary judgment, therefore, should be granted.

| | | |
|---|---|---|
| 1 | Dated: September 30, 2013 | Respectfully submitted, |
| 2 | | JENNER & BLOCK LLP |
| 3 | | |
| 4 | | By: _____ |
| 5 | | Steven B. Fabrizio |
| 6 | | STEVEN B. FABRIZIO |
| | | GIANNI P. SERVODIDIO |
| 7 | | KENNETH L. DOROSHOW |
| 8 | | |
| | | JENNER & BLOCK LLP |
| 9 | | |
| 10 | | KAREN R. THORLAND |
| | | FARNAZ M. ALEMI |
| 11 | |   MOTION PICTURE ASSOCIATION |
| | |   OF AMERICA |
| 12 | | *Attorneys for Plaintiffs* |