Michael S. Elkin (admitted *pro hac vice*)
melkin@winston.com
Thomas Patrick Lane (admitted *pro hac vice*)
tlane@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York  10166
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

Ira P. Rothken (SBN: 160029)
ira@techfirm.net
Jared R. Smith (SBN: 130343)
jared@techfirm.net
**ROTHKEN LAW FIRM**
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone:   (415) 924-4250
Facsimile:   (415) 924-2905

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111-5802
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants,
GARY FUNG and ISOHUNT WEB TECHNOLOGIES, INC.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GARY FUNG, et al.,<br><br>                    Defendants. | Case No. CV 06-5578-SVW (JCx)<br>*[Judge Stephen V. Wilson, Dept. 6]*<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE***<br><br>Hearing:      October 28, 2013<br>Time:            1:30 p.m.<br>Trial Date:  November 5, 2013 |

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 2

    A.  This Case ......................................................................................... 2

    B.  Despite Affirming Liability Based On Inducement, The Ninth Circuit Makes Clear Causation Must Be Carefully Assessed In Damages Phase........................................................................... 3

    C.  Plaintiffs Seek To Exponentially Expand The Scope Of The Case In The Damages Phase ...................................................................... 4

III.  PLAINTIFFS' MOTIONS IN LIMINE SHOULD BE DENIED...................... 4

    A.  The Jury Is Afforded Wide Discretion In Deciding The Amount Of Statutory Damages ........................................................................... 4

    B.  Defendants Do Not Seek to Re-Litigate This Court's Finding Of Inducement Liability as to the 44 Works, But Seek To Have Damages Litigated For the First Time In Compliance With The United States Constitution ............................................................... 6

        1.  3,903 Claimed Works Were Just Identified Last Month, Six Years After Plaintiffs' Summary Judgment Motion Was Presented ................................................................................ 7

        2.  The Ninth Circuit Specifically Held That Causation Is An Issue  Properly Considered When Deciding Damages.................. 9

        3.  Defendants Should Be Allowed To Introduce Evidence Related  to Plaintiffs' Mitigation of Damages............................... 10

    C.  Defendants Should Be Permitted to Educate the Jury About How Defendants' Websites Fit Within the BitTorrent Ecosystem.................. 13

IV.  CONCLUSION ...................................................................................... 17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Autodesk, Inc. v. Flores*
2011 WL 337836 (N.D. Cal. Jan. 31, 2011)........................................16

*Columbia Pictures Indus., Inc. v. Fung*
710 F.3d 1020 (9th Cir. 2013) ..................................................3, 4

*Feltner v. Columbia Pictures Television, Inc.*
523 U.S. 340 (1998)............................................................4, 5

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*
807 F.2d 1110 (2d Cir. 1986)....................................................6

*Harris v. Emus Records Corp.*
734 F.2d 1329 (9th Cir. 1984) ..................................................5

*Microsoft Corp. v. Ricketts*
2007 WL 1520965 (N.D. Cal. May 24, 2007).....................................16

*Muppets Studio, LLC v. Pacheco*
2013 WL 2456617 (C.D. Cal. June 6, 2013)......................................16

*N.A.S. Impor. Corp. v. Chenson Enters., Inc.*
968 F.2d 250, 252-53 (2d Cir. 1992) ...........................................16

*Nexon Am. Inc. v. Kumar*
2012 WL 1116328 (C.D. Cal. Apr. 3, 2012) .....................................16

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*
74 F.3d 488 (4th Cir. 1996) ...................................................16

*Symantec Corp. v. Logical Plus, Inc.*
2010 WL 2330388 (N.D. Cal. June 4, 2010)......................................16

## STATUTES

17 U.S.C. § 504(c) ............................................................4

## OTHER AUTHORITIES

4 Nimmer on Copyright § 14.04 [B][1][a] (2005)...............................9, 10

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

U.S. Constitution, 7th Amendment.............................................................................4

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

# I.     <u>INTRODUCTION</u>

Plaintiffs' so-called "Motions *In Limine*" ("Motions") ask the Court to ignore that the Supreme Court has found that in copyright cases, the jury has the power to consider factors that might inform them on what they find fair and just when deciding where on the wide scale—from $750 through $150,000 per infringed work—a plaintiff should be awarded statutory damages.  Here, assuming the jury awarded the minimum award for all 3,947 works Plaintiffs currently assert, the jury could award as low as $2,960,250.  If the jury awarded the maximum for each work, it would award as high as $592,050,000.  And the jury could award anything in between, and could apply a host of factors in evaluating whether to award different amounts with respect to certain works or types of works or infringements.

Plaintiffs' Motions in effect ask the Court to allow the jury to consider only evidence of Plaintiffs' cherry-picked *negative* facts in connection with Defendants' websites and the alleged infringements, and to prevent Defendants from providing any evidence of mitigating factors such as Defendants' efforts to remove the infringements at issue as soon as they became aware of them; Defendants' policies of taking down claimed infringements upon notice; any evidence relevant to the causation analysis demanded by the Ninth Circuit before deciding the "degree" of liability when "calculating damages"; and any evidence about any actual injury (or lack thereof) to Plaintiffs, including any evidence about how Defendants' system fits within the overall scheme of the Internet and relates to other search engines.  In other words, Plaintiffs want the Court to shield the jury from the realities of this case.  Rather than allowing the jury to decide what is just here based upon the evidence, Plaintiffs essentially seek to prevent Defendants from presenting any mitigating evidence to defend against the nearly $600 million in statutory damages sought by Plaintiffs.  This is improper under the law, and fundamentally unjust in this case.

Contrary to Plaintiffs' characterizations, Defendants are not seeking to "shift responsibility" to Plaintiffs or other third parties—but the jury is entitled to evaluate in

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543

the first instance the level of financial "responsibility" appropriate here.  It is impossible for the jury to do that without understanding the circumstances surrounding the alleged infringements.  Further, the prior findings of inducement were decided long before Plaintiffs had even identified last month the nearly 4,000 new works for which they now seek damages, making Plaintiffs' argument that Defendants should be barred from "re-litigating" specific issues with respect to any of those works (such as notice, fair use, and failure to mitigate) particularly troublesome and inappropriate.

Statutory damages should not result in a "windfall," which is precisely what Plaintiffs are seeking here. This is particularly true in a mass copyright infringement case such as this one where the realities of the Internet can expose an Internet service provider to secondary liability for—and hundreds of millions of dollars in potential damages for—potentially thousands of direct infringements that it did not itself commit and may have had no knowledge of at all. The jury must be provided evidence of the relevant facts to inform its broad discretion in awarding a just amount of statutory damages.  Because Plaintiffs' Motions merely seek to block relevant information from the jury, the Court should deny Plaintiffs' Motions in their entirety.

## II.   **STATEMENT OF FACTS**

### A.   **This Case**

Defendants' websites facilitate user searches and access to information—using a similar type of search engine functionality as Yahoo! or Google—and neither store nor transmit any copyrighted material in the process of servicing user requests for search results.  Plaintiffs brought this action seeking to hold Defendants liable for inducing certain alleged direct infringements by Defendants' users through Defendants' system.  While this Court found in 2009 that Defendants were liable for inducing infringement of 44 works, granting Plaintiffs' motion filed in (and based on a record from) 2007, no damages for any infringements in this case have yet been

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

assessed.   While the prior phase focused on inducement of "Box Office Movies,"[1] Plaintiffs are now largely seeking damages for works that are not movies released in the theaters—but rather are television episodes or other television programming (types of shows that are widely authorized as available online for free).  In fact, more than 3,190 of the 3,947 works at issue are television shows.

### B. Despite Affirming Liability Based On Inducement, The Ninth Circuit Makes Clear Causation Must Be Carefully Assessed In Damages Phase

In its decision the Ninth Circuit explained that even though it was adopting a "loose causation" theory for purposes of assessing injunctive relief, it expected the District Court would deal more carefully with issues of causation specifically when assessing damages, stating:

> We do not decide the degree to which Fung can be held liable for having caused infringements by users of his sites or trackers. The only issue presently before us is the permanent injunction, which, as in *Grokster III*, does not in this case depend on the 'exact calculation of infringing use[ ] as a basis for a claim of damages.' 545 U.S. at 941, 125 S.Ct. 2764. We therefore need not further entertain Fung's causation arguments at this time, but leave it to the district court to consider them, in light of the observations we have made, when it calculates damages.

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1039 (9th Cir. 2013) ("*Fung II*").

Thus, the Ninth Circuit made clear that "causation . . . cannot be assumed" and that Plaintiffs must plausibly link direct infringements of the works to Defendants' inducements.  *Id.* at 1038-39.  As the Ninth Circuit explicitly cautioned, "proving that

---

[1] For example, Plaintiffs argued on summary judgment that Defendants "systematically encouraged users to upload infringing dot-torrent files for top Box Office Movies in theatrical release in the United States," and complained about Defendants' Box Office Movie Feature. [Plaintiffs' Reply In Support of MSJ at 5:3-5) (Dkt. 327) (citing SUF  50; Mem. At 18:14-19:2.)].  This Court and the Ninth Circuit both relied on this in their orders.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

3

an entity had an unlawful purpose at a particular time in providing a product or service does not infinitely expand its liability in either temporal direction . . . an individual or entity's unlawful objective at time B is not a virus that infects all future actions. People, companies and technologies must be allowed to rehabilitate . . .  lest the public be deprived of a useful good or service they are still capable of producing." *Id.* at 1038; *Grokster III*, 545 U.S. at 937; *Sony*, 464 U.S. at 432.   To date, there has been no analysis of any temporal association between any of the specific induced infringements of this case and any conduct by Defendants found to be inducing.

### C.   Plaintiffs Seek To Exponentially Expand The Scope Of The Case In The Damages Phase

Just last month—despite the fact that infringement of only 44 works was at issue in the liability phase—Plaintiffs indicated that they would seek statutory damages for inducing direct copyright infringement of 4,145 copyrighted works in the damages phase.   Only after Defendants pressed repeatedly for Plaintiffs to provide chain of title and ownership discovery sufficient to establish ownership of each of the thousands of alleged works, pointed out defects in that a substantial number of registrations and chain of title documents appeared to be missing, and sought *ex parte* relief from the Magistrate, Plaintiffs have now withdrawn almost 200 claimed works, reducing the number of works for which they are seeking damages to 3,947, and thereby reducing potential statutory damages by more than $3 million.  Plaintiffs now seek maximum statutory damages of up to $150,000 per infringed work, or almost $600 million for infringements of the remaining works.

### III.   PLAINTIFFS' MOTIONS *IN LIMINE* SHOULD BE DENIED

### A.   The Jury Is Afforded Wide Discretion In Deciding The Amount Of Statutory Damages

17 U.S.C. § 504(c) provides statutory damages for copyright infringement of up to $150,000.00 per work infringed.  In *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340 (1998), the Supreme Court held that the Seventh Amendment of the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

United States Constitution requires a jury trial to determine the amount of statutory damages in a copyright case. *Id.* at 353. As the Supreme Court explained in *Feltner*, "[t]he right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner." *Id.* (emphasis in original). This is because it has "long been recognized" that "the jury are judges of damages." *Id.* As the Supreme Court has also held the calculation should be based on:

> the court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, is made the measure of the damages to be paid, but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum. Within these limitations the court's discretion and sense of justice are controlling...

*F.W. Woolworth Co. v. Contemporary Arts. Inc.,* 344 U.S. 228, 232 (1952) (quoting *L. A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106 (1919)).

The jury "has wide discretion in determining the amount of statutory damages to be awarded, *constrained only by the specified maxima and minima*." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (emphasis added). The trier of fact must be guided by "what is just in the particular case…considering the nature of the copyright, the circumstances of the infringement and the like" *F.W. Woolworth,* 344 U.S. at 232. Courts have considered the following factors as relevant to informing their determination of statutory damages: (1) the expenses saved and the profits reaped, (2) the revenues lost by the plaintiff, (3) the value of the copyright, (4) the deterrent effect on others besides the defendant, (5) whether the defendant's conduct was innocent or willful, (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced, and (7) the potential for discouraging the defendant. *Coach, Inc. v. Am. Fashion Gift*,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

5

CV 12-07647-MWF RZX, 2013 WL 950938, at *2 (C.D. Cal. Mar. 12, 2013); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10–5151 SC, 2011 WL 1483436, at *6 (N.D. Cal. Apr. 19, 2011); ; *see also, Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 144 (2d Cir. 2010) (factors relevant to statutory damages are (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.)

"Statutory damages are intended to serve as a deterrent…but that does not justify…a windfall." *Microsoft Corp. v. Ricketts*, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007); *Adobe Sys., Inc. v. Tilley*, C 09-1085 PJH, 2010 WL 309249, at *5-6 (N.D. Cal. Jan. 19, 2010) (concluding that an award of $50,000 per infringement would be a "windfall"  and recommending that the plaintiff instead be awarded less in statutory damages); *Cohorst v. BRE Properties, Inc.*, 2011 WL 7061923, at *14 (S.D. Cal. Nov. 14, 2011) ("Statutory damages . . . can be unconstitutional in application under . . . [the] U.S. Constitution if they constitute 'excessive fines' or are imposed without due process of law.").

**B.     Defendants Do Not Seek to Re-Litigate This Court's Finding Of Inducement Liability as to the 44 Works, But Seek To Have Damages Litigated For the First Time In Compliance With The United States Constitution**

While Defendants do not intend to seek to revisit any of the concluded liability decisions—Defendants must be permitted to present evidence that may inform the jury when determining statutory damages.   Plaintiffs spend six pages arguing incorrectly that Defendants seek to "re-litigate" this Court's summary judgment findings that Defendants are liable for inducing infringement of some of Plaintiffs' works.  Plaintiffs miss the point—damages have never been litigated in this case, and only 44 works had even been identified as infringed during the liability phase.  The jury is given such a very broad range and broad factors to consider so they can decide

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

6

what is fair when deciding how many millions, or hundreds of millions, to award against an individual with limited resources, Gary Fung, and his small company.

Defendants must be able to present evidence to show why under these circumstances—where the infringements themselves were not committed directly by Mr. Fung or his company; Defendants had no specific knowledge of the alleged direct infringements; Defendants followed notice and takedown procedures outlined by the DMCA; and where there is a disconnect between the conduct found "inducing" in the prior decisions and the resulting infringements here—the jury should award well below the maximum available statutory damages. *None* of these issues have been decided, and *all* of these issues bear on damages here.

### 1. 3,903 Claimed Works Were Just Identified Last Month, Six Years After Plaintiffs' Summary Judgment Motion Was Presented

Further, what Plaintiffs call a "full and complete evidentiary record" fails to account for the fact that such record was based on a "sample" of 44 works; now Plaintiffs have identified nearly a hundred times that number with close to 4,000 works. How could there be undisputed facts that have been litigated regarding works that were not named in this case until 6 years after Plaintiffs submitted the record on summary judgment and claimed infringements that only took place *after* the summary judgment order? Defendants cannot be foreclosed from arguing evidence relating to the broad and unrestricted factors that may inform the jury in a case where damages could be anywhere from $750 per work infringed (which if all were found infringing would be just under $3 million), or nearly $600 million if the jury finds the maximum level of damages appropriate for each of the claimed works. The jury could of course also come up with endless alternate conclusions, and could find the appropriate level of statutory damages differed, for instance, between (1) works that Defendants knew about *vs.* works that they did not; (2) works that are theatre released film *vs.* a TV series or another type of work based on Plaintiffs' actual damages (or lack thereof); (3) the jury could increase the penalty for works that were shown to be more directly

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   caused by the allegedly infringing conduct (e.g., if Defendants "assisted" a user to

2   locate that work or if "box office" movies were at issue); *vs*. those that were not

3   related to or specifically implicated by any of the allegedly inducing activities.  In

4   short, it is up to the jury.  The Court should not restrain the jury from having all

5   available information so that it can attempt to reach the most equitable result in the

6   circumstances.

7          Indeed, in some instances, matters that have been addressed in some respects

8   before will be relevant under a new prism.  In other words, the information is no

9   longer weighed to decide inducement, but whether it might assist the jury in

10  exercising its broad discretion in deciding the award of statutory damages.  For

11  example, even if Defendants were determined to be ineligible for DMCA safe harbor

12  during the liability phase, the notice-and-takedown procedures that Defendants

13  implement modeled after the DMCA are a relevant mitigating factor.  Similarly, the

14  fact that the Court did not ever address whether sufficient notice of the works was

15  received under the DMCA, that notice (or lack thereof) could again become relevant

16  here given that the jury is now asked to decide either work by work or in categories

17  what they consider just and equitable in these circumstances.

18         Plaintiffs seek to rely on a motion *in limine* granted in the *Limewire* case that

19  precluded the defendants in that case from introducing evidence or argument

20  inconsistent with the facts established as a matter of law.  Of course a minute entry

21  from a district court in New York is not binding on this Court's evidentiary

22  considerations in this case.   Even if this Court considered that decision, it is

23  distinguishable. First, the Ninth Circuit already determined that a closer look at

24  causation must be made before damages can be decided.  *Fung*, 710 F.3d at 1039 (9th

25  Cir. 2013).   And other cases in the Second Circuit have held precisely the opposite

26  way as *Limewire* on this issue.  *See, e.g., Arista Records LLC v. Usenet. com, Inc.,* No.

27  07 Civ. 8822,2010 WL 3629688, at \*2-9 (S.D.N.Y. Feb. 2, 2010) (notwithstanding

28  grant of summary judgment on direct and secondary liability, considering all of the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

8

1  Second Circuit factors in determining statutory damage amount).  Plaintiffs cannot

2  reasonably argue that there are facts established in the record regarding whether

3  Defendants took down or were aware of or removed certain works if they were not

4  even identified until last month, and summary judgment was decided in 2009 based

5  upon a record submitted with Plaintiff's motion for summary judgment in 2007.

6  Plaintiffs also argue that Defendants should be precluded from arguing or

7  presenting any evidence that their infringement was innocent or not willful, due to this

8  Court's anticipated rulings on Plaintiffs' motions for summary judgment.  (Mot. at 3

9  n.1.)  But even assuming this Court enters an order finding willfulness as a matter of

10  law, the only practical impact is that the ceiling for statutory damages is raised to

11  $150,000.  The degree of willfulness must still be evaluated because it is relevant to

12  selecting an appropriate amount of damages.  Professor Nimmer has stated that "the

13  determination of statutory damages within the applicable limits may turn upon such

14  factors as . . . the revenues lost by the plaintiffs as a result of the defendant's conduct

15  and the infringers' state of mind – whether willful, knowing or innocent."  4 Nimmer

16  on Copyright § 14.04 [B][1][a] (2005). As Plaintiffs also acknowledge,  "the level of

17  egregiousness of Defendants' infringement" is "a primary consideration for the jury in

18  determining the appropriate level of statutory damages."  Although Defendants of

19  course do not seek to relitigate the Court's findings, Defendants submit that evidence

20  rebutting the alleged *egregiousness* of Defendants' infringement will inform the jury

21  in reaching of an appropriate award of damages in this case, and their state of mind

22  regarding the infringements at issue.

23          **2.      The Ninth Circuit Specifically Held That Causation Is An Issue
                       Properly Considered When Deciding Damages**

24

25          In affirming this Court in part, the Ninth Circuit made clear that causation

26  issues would be dealt with more closely during the damages phase of this case.

27  Specifically, the Court stated that it did not yet "decide the degree to which Fung can

28  be held liable for having caused infringements by users of his sites or trackers" and

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

9

"need not further entertain Fung's causation arguments at this time, but leave it to the district court to consider them…when it calculates damages." *Fung II*, 710 F.3d at 1039.

With their Motions, Plaintiffs are advocating that the Court *ignore* this directive entirely, and rather than allow the jury to "consider" causation when "it calculates damages"; Plaintiffs insist that the Court should *preclude the jury from considering it before trial.* The Court is not "calculating damages"—that is the jury's function since *Feltner.* 523 U.S. 340, 353. The Ninth Circuit made clear that "causation . . . cannot be assumed" and that Plaintiffs must plausibly link direct infringements of the works to Defendants' inducements. *Id.* at 1038-39. Moreover, the panel held that causation must be shown even in an instance where "fault is unquestionably present." *Id.* As the Ninth Circuit explicitly cautioned, "proving that an entity had an unlawful purpose at a particular time in providing a product or service does not infinitely expand its liability in either temporal direction . . . an individual or entity's unlawful objective at time B is not a virus that infects all future actions.  People, companies and technologies must be allowed to rehabilitate . . . lest the public be deprived of a useful good or service they are still capable of producing." *Id.* at 1038.

Plaintiffs' attempt to remove the issue of causation from the jury under the guise that this Court has already determined the issue in their favor flies in the face of the Ninth Circuit's decision and inappropriately expands the Court's prior rulings. The jury should be allowed to consider, in rendering a fair statutory damages award, whether and to what extent Defendants' actions caused the infringements at issue in this case.

### 3. Defendants Should Be Allowed To Introduce Evidence Related to Plaintiffs' Mitigation of Damages

Plaintiffs also seek to prevent Defendants from arguing or introducing evidence that Plaintiffs failed to mitigate their damages.  Given the broad discretion the jury may consider before awarding any damages, and given that the alleged infringements here involve nearly 4,000 works that were only named for the first time on September

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10

16, 2013, that Plaintiffs have only just identified the allegedly infringing files last week, and given that Defendants may have immediately removed the alleged infringement at issue upon notice, the jury must be permitted to hear evidence regarding whether Defendants immediately removed any alleged infringement at issue, *or* whether Plaintiffs provided notice to Defendants of those works, as such factors could mitigate the amount that the jury believes is appropriate in damages for that particular work.[2]

Defendants have implemented a copyright policy modeled after the DMCA under which Plaintiffs could have provided notice concerning alleged infringements of their works.  (Decl. of Gary Fung in Opp. to Pl. Mot. Summ. Jdgmt. on Aff. Defenses (Dkt. 584-3) at ¶¶ 2-6, 8.)  Even if Defendants were not held entitled to DMCA safe harbor, following such procedures and processing such notices regarding specific works at issue would have resulted in Defendants taking down or removing access to Plaintiffs' alleged titles, thereby preventing further harm and mitigating Plaintiffs' damages with respect to titles that were removed.  A jury is entitled to consider whether that happened.

Plaintiffs argue that the Court has already barred Defendants from presenting a mitigation of damages defense.  (Mot. at 13.)  As Plaintiffs know, their motion for summary judgment on this affirmative defense is pending.  (*See* Mot. at 3 n.1; Dkt. 564.)  Moreover, the Court's earlier holding that "inducement *liability* [does not] turn on whether Plaintiffs could have mitigated their damages" is not relevant.  Even if failure to mitigate damages does not prevent liability, evidence relating to this subject might be considered relevant to the jury in deciding where on the wide spectrum to set statutory damages.

Plaintiffs' arguments that Defendants' DMCA defenses have been rejected, and that Plaintiffs were not obligated to give notice before filing this suit, are straw-men.

---

[2] The Court should also bifurcate the damages phase as between the 44 works at issue in the summary judgment decision and the 3,903 new works just identified by Plaintiffs for the first time last month.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

(*See* Mot. at 11 and n.3.)  Defendants are not asking the Court to resurrect their DMCA defenses that were denied by this Court and affirmed on appeal based upon the summary judgment record, which would have immunized Defendants from liability from *any* monetary damages for compliance with the safe harbor. Defendants are seeking to introduce relevant evidence to be considered when determining *how much* monetary damages should be awarded in statutory damages. Moreover, Defendants' argument is not that Plaintiffs were *obligated* to give notice as a prerequisite to suit, but that, under the familiar doctrine of mitigation of damages, Plaintiffs' damages should be reduced due to their failure to take reasonable steps that would likely have lowered their damages, possibly down to zero if the close to 4000 works Plaintiffs have just identified last week as claims for damages were identified to us through our usual notice and takedown process.  Plaintiffs' cited cases therefore are beside the point.  *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004) (granting defendant's summary judgment motion where plaintiff never attempted to notify defendant of alleged infringements because, although it was not required to give prior to filing suit, plaintiff was unable to prove defendant's knowledge of infringement); *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 521 (S.D.N.Y. 2010) *vacated in part on other grounds*, 676 F.3d 19 (2d Cir. 2012) (granting defendant's summary judgment motion and noting, quoting legislative reports, that although plaintiffs are "not obligated" to give notice in order to bring an infringement action, knowledge of infringement will not be imputed and the DMCA safe harbor may apply).

In addition, to the extent the Court believes that a jury is likely to be confused by Defendants' presentation of such evidence, a limiting instruction would be sufficient to resolve any confusion.  *See, e.g.*, *Scott v. Felker*, C07-4279CRBPR, 2009 WL 961404, at *7 (N.D. Cal. Apr. 8, 2009) ("juries are presumed to follow limiting instructions with respect to the purposes for which evidence is admitted") (citing *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997)).  Moreover, that Plaintiffs

may choose to put on rebuttal evidence is no reason to foreclose this avenue of argument, and would by no means be a "sideshow." This is a damages trial, and mitigation issues go directly to the heart of Plaintiffs' claim for damages.

Defendants should be allowed to argue and present evidence of Plaintiffs' failures to mitigate, not only with respect to Plaintiffs' failure to provide adequate notice of copyright infringement, but all other failures. For example, as Plaintiffs note, Defendants previously have argued that Plaintiffs could have, but did not, create a website containing a database of dot-torrents leading to known or likely infringing files that could have been used as filters, and would likely have prevented much of the infringement at issue in this case. (*See* Mot. at 12.) The jury should be allowed to consider all evidence of Plaintiffs' failure to mitigate in consideration of the proper statutory damages award in this case.

### C. Defendants Should Be Permitted to Educate the Jury About How Defendants' Websites Fit Within the BitTorrent Ecosystem

Defendants should also be permitted to explain to the jury how Defendants' website functions within and relate to peer-to-peer file sharing through the Internet. BitTorrent technology is a kind of "peer-to-peer" technology, enabling one user to find and share material with others over the Internet, rather than providing access to a centralized repository of files. *Fung II*, 710 F.3d at 1027. This technology is employed by a variety of websites and providers. Users can employ this technology to locate, access, share, and distribute a vast array of content originating from all over the globe. This includes a wide range of non-copyrighted material—including music, films, and other material in the public domain—as well as software, movies, games, music, and other entertainment programming that may be protected by copyright law, for which the copyright holders may or may not have authorized or licensed free distribution.

BitTorrent technology breaks up the file into many smaller pieces or data packets, and permits users to download lots of different pieces from different peers at

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

the same time.  Once pieces of a file have been downloaded, the file is automatically assembled into its original form.   The recipients of the materials then become sub-distributors, transferring materials to other recipients.  To share copies of games, films, music, and the like using BitTorrent technology, a publisher first creates very small files called "torrents" or "dot-torrent" files, which have the file extension ".torrent." Torrents are small, special-purpose data packets with metadata describing much larger content files and include instructions for software to initiate download of actual content files off-site. Torrents are not subject to copyright protection. Then, the publisher makes the torrent files available by uploading them to one or more websites that collect, organize, and index them. *See id.* at 1026-28.

Torrent files are indexed by a variety of search engines, including Google, Yahoo!, and Bing.  General purpose search engines like these are participants in the "multi-actor marketplace" of BitTorrent, along with isoHunt and many others.  Indeed, the vast majority (more than 95%) of torrent files searchable on isoHunt are also searchable on Google, Yahoo!, or Bing.  *See Fung II*, 2010 WL 6762829, at *29 (Br. of Appellants.)  After the torrents are created and made available, participating users trade pieces among themselves.  The transient, changing group of participants is called a "swarm," and it is not associated with any particular device, provider, service, or website.  *Fung II*, 710 F.3d at 1027.  The content of files that are published or exchanged is typically identified by the name of the files, but such content is not actually ascertainable except by joining the swarm. *Id.* at 1027-28.  Swarm members can include users located domestically and abroad.  The exchange of information through the swarm is facilitated by "trackers," which act like an index and manage traffic. *Id.*  "[N]o content is stored on or passes through trackers." *Id.* at 1028.  The tracker's primary purpose is to provide a list of peers that have files associated with a particular torrent file available for download. *Id.*  Defendants' websites— isoHunt.com ("isoHunt"), Torrentbox.com, and Podtropolis.com—are torrent sites. They collect and organize torrent files—which, again, are not copyright protected—

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

14

and permit users to search their collections.  Users search these sites by keyword or category (like games, movies, television shows, music, and so on).  *Id.*

Understanding the nature of Defendants' business and role in any actual infringement is not "shifting the responsibility" as Plaintiffs claim—it involves educating the jury on the actual role that Defendants played, so they can determine appropriate amount of statutory damages, and relates to what Plaintiffs' "actual damages" are, if any.  As noted in the case relied on heavily by Plaintiffs, *Limewire*, the court noted that the "reality" is that Plaintiffs would have faced competition from other infringers, even if Defendants had not infringed, which would lower their lost profits attributable to Defendants' conduct.  *Arista Records LLC v. Lime Grp. LLC*, 785 F. Supp. 2d 423, 426 (S.D.N.Y. 2011).

Likewise, because there were (and are) so many other file-sharing and BitTorrent systems distributing the very same torrent files, Plaintiffs' copyrighted works would likely have been infringed regardless of Defendants' inducement. Defendants' expert intends to offer testimony about this, as well as the economic impact of BitTorrent and other file sharing on content sales.  This is relevant to the jury's consideration of causation and, also, the egregiousness of Defendants' conduct. As the *Limewire* court recognized, even if Defendants cannot use evidence of the existence of other file-sharing websites to rebut causation, "[s]uch evidence may be admissible to show (1) that a diminution in Plaintiffs' profits over time is only partially attributable to Defendants (because others caused some of Plaintiffs' actual losses), and (2) the extent to which a large award in this case is likely to deter other infringers."  *Limewire*, 785 F. Supp. 2d at 426.  To the latter point, the *Limewire* court held that Defendants could use this evidence to argue that a large damage award would not deter other infringers of Plaintiffs' works—which is a relevant consideration for statutory damages.  *See Coach*, 2013 WL 950938, at *2.  It is not that Defendants are arguing that "everybody does it"; but this evidence is relevant to make sure that Plaintiffs do not obtain a "windfall" of statutory damages.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Moreover, whether Plaintiffs' lost profits as a result of Defendants' conduct is a relevant factor in determining statutory damages, and the extent to which they have not lost profits that can be connected to Defendants' conduct, is relevant to the jury's consideration of a proper award. *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) ("When determining the amount of statutory damages to award for copyright infringement, courts consider . . . the expenses saved, and profits earned, by the infringer" and "the revenue lost by the copyright holder") (citing *N.A.S. Impor. Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)). The Fourth Circuit is in accord. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.,* 74 F.3d 488, 496 (4th Cir. 1996) (listing "the actual damages suffered by the plaintiffs" as a factor the jury should consider in determining statutory damages in a case where the infringement was found willful).

Cases within the Ninth Circuit have repeatedly held that statutory damages must bear some relation to actual damages, ***even in cases where the defendant's infringement was also found to be willful***. *Muppets Studio, LLC v. Pacheco,* CV 12-7303 JGB FFMX, 2013 WL 2456617, at *2 (C.D. Cal. June 6, 2013) (while the defendant knew she was copying Muppets characters, and therefore "demonstrating willfulness" the plaintiff "has not provided the Court with evidence that the requested amount is proper under the factors listed above" because "[t]here is no evidence of actual profits, or how the introduction of these items specifically affected Plaintiff's profit."); *Nexon Am. Inc. v. Kumar*, 2:11-CV-06991-ODW, 2012 WL 1116328, at *5-6 (C.D. Cal. Apr. 3, 2012); *Autodesk, Inc. v. Flores*, 10-CV-01917-LHK, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011) (noting that a willfulness finding "does not end the inquiry, however, for the district court is given broad discretion to determine the amount of statutory damages"); *Symantec Corp. v. Logical Plus, Inc.,* C 06-7963 SI, 2010 WL 2330388, at *3 (N.D. Cal. June 4, 2010) (even where evidence of the defendant's willful infringement is considerable, the amount of damages sought by Symantec is "too high" given the plaintiff's "modest profits"); *Microsoft Corp. v.*

16

1  *Ricketts*, C 06-06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007) (even

2  where willful, "the Court thinks it just to award statutory damages in the amount of

3  $1500 per copyright infringed and $1000 per trademark infringed, for a total of

4  $12,500 because it was "twice the minimum under each statute to reflect the finding

5  of willfulness" and the "damages, coupled with the permanent injunction granted

6  against defendant, will adequately serve the purpose of deterrence").

7        Defendants should not be precluded from introducing evidence to rebut

8  Plaintiffs' attempt to advocate for the highest level of damages, when Defendants

9  have every right under the law to submit evidence that supports a lower award.

10 **IV.    CONCLUSION**

11       Plaintiffs' Motions *In Limine* are an improper attempt to stack the deck in their

12 favor so that the jury is only allowed to consider select negative facts associated with

13 this Court's finding of inducement liability, without taking into consideration the

14 entire context of Defendants' service and actions with respect to the claimed

15 infringements.  Plaintiffs will be entitled to put before the jury the Court's prior

16 finding on inducement liability, but the jury is entitled to consider the full range of

17 factors relevant to a determination of statutory damages. For the foregoing reasons,

18 Defendants respectfully request that the Court deny Plaintiffs' Motions.

19 Dated:  October 7, 2013          WINSTON & STRAWN LLP

20

21                                By:  */s/ Erin R. Ranahan*

22                                WINSTON & STRAWN LLP
                                     Michael S. Elkin
23                                   Thomas Patrick Lane
                                     Robb C. Adkins
24                                   Jennifer A. Golinveaux
                                     Erin R. Ranahan
25                                   Thomas Kearney

26                                ROTHKEN LAW FIRM
                                     Ira P. Rothken
27                                   Jared R. Smith

28                                *Attorneys for Defendants*
                                  GARY FUNG and ISOHUNT WEB
                                  TECHNOLOGIES, INC.

                                        17

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543